# Group Exhibit 6 – Part 2

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

Eastern   DISTRICT OF  New York

ROSS UNIVERSITY SCHOOL OF MEDICINE, LTD.

V.

BROOKLYN-QUEENS HEALTH CARE, LTD.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 1:09-CV-01410-KAM-RLM

TO: FRED T. HALLER, III, ESQ.
    C/O WALTER LOUGHLIN
    K&L GATES LLP
    599 LEXINGTON AVENUE
    NEW YORK, NEW YORK 10022

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):
SEE ATTACHED SCHEDULE A

| PLACE<br>BAKER & HOSTETLER, LLP, 45 ROCKEFELLER PLAZA, 11TH FLOOR, NEW YORK, NEW YORK 10111 | DATE AND TIME<br>10/25/2010 10:00am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated,
the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>RYAN P. FARLEY, ESQ.  ATTORNEY FOR PLAINTIFF  *Ryan P. Farley* | DATE<br>10/07/2010 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
RYAN P. FARLEY, ESQ. 45 ROCKEFELLER PLAZA - 10TH FLOOR, NEW YORK, NEW YORK 10111

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE | PLACE |
|---|---|
| SERVED: | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

American LegalNet, Inc.
www.USCourtForms.com

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

Schedule A

DEFINITIONS

"BQHC" means Brooklyn Queens Healthcare, Inc. and any affiliate, member, hospital, predecessor, or successor of Brooklyn Queens Healthcare, Inc.

"Caritas" means Caritas Health Care, Inc. and any affiliate, member, hospital, predecessor, or successor of Caritas Health Care, Inc., including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Mary Immaculate" means Mary Immaculate Hospital.

"Ross" means the Ross University School of Medicine School of Veterinary

"St. Johns" means St. Johns Hospital.

"SVCMC" means St. Vincent Catholic Medical Centers and any affiliate, member, hospital, predecessor, or successor of St. Vincent Catholic Medical Centers, including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Wyckoff" means Wyckoff Heights Medical Center and any affiliate, member, predecessor, or successor of Wyckoff Heights Medical Center.

DOCUMENTS TO BE PRODUCED

All documents from 2004 to the present that refer, relate, constitute, or pertain to:

1.     The acquisition or potential acquisition by Wyckoff, Caritas, and/or BQHC of any interest in any hospital or entity affiliated with SVCMC.

2.     The development, formation, and structure of the BQHC System.

3.     The development, formation, and structure of Caritas.

4.     The acquisition or potential acquisition by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

5.     Information packages and all other documents that refer, relate, or pertain to the topics that were or were to be discussed at meetings of Wyckoff's Board of Trustees.

6.     Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of BQHC's Board of Trustees.

7.     Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of Caritas' Board of Trustees.

8.     The authority of any chief restructuring officer concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

9.      The authority of Thomas Singleton concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

10.     The authority of Paul Goldberg concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

11.     The authority of Harold MacDonald concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

12.     The authority of Neil Mandava concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

13.     Any and all affiliation agreements between any medical school and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

14.     Any and all funds paid by any medical school to Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in connection with the provision of clinical portions rotation for students of that school.

15.     The transfer of funds or any other thing of value between Caritas and Wyckoff.

16.     Any and all audits of financial transactions and transfers between Caritas and Wyckoff (and/or the affiliates of Caritas or Wyckoff).

17.     All documents prepared by the New York Department of Health concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

18.     All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

19.     All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning a restructuring officer for Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

20.     The New York Department of Health Recommendation and/or argument that Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate hire a consultant or restructuring officer.

21.     Conditions that the New York Department of Health imposed upon Wyckoff, Caritas, and/or BQHC as a condition for the provision by the New York Department of Health of any loan or other financial assistance.

22.     The transfer or potential transfer of assets out of BQHC.

23.     The formation or potential formation of any new entity in order to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

24.    All actions taken to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

25.    All transactions between Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the one hand, and FTI Cambio, Thomas Singleton, and/or Paul Goldberg on the other hand.

26.    The provision at Wyckoff of clinical rotation slots for medical students that at any time Wyckoff, Caritas, and/or BQHC contemplated would be provided at St. Johns Hospital or Mary Immaculate Hospital.

27.    All communications, contracts, or other records of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate concerning the provision of clinical rotation slots for the students of [insert all other medical schools that we care about].

28.    The sums received by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in exchange for providing clinical rotation slots to students of any and all medical schools.

29.    All agreements under which Wyckoff was to provide clinical rotation slots to students of any and all medical school(s).

30.    All agreements from 2006 to the present in which Wyckoff, Caritas, and/or BQHC agreed to provide at Wyckoff clinical rotation slots to the students of any and all medical school(s).

31.    All communications between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

32.    The lawsuit between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

33.    Communications between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

34.    Any affiliation agreement or potential affiliation agreement between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

Eastern DISTRICT OF New York

ROSS UNIVERSITY SCHOOL OF MEDICINE, LTD.

**SUBPOENA IN A CIVIL CASE**

V.

BROOKLYN-QUEENS HEALTH CARE, LTD.

Case Number:¹ 1:09-CV-01410-KAM-RLM

TO: GARY GOFFNER
   C/O WALTER LOUGHLIN
   K&L GATES LLP
   599 LEXINGTON AVENUE
   NEW YORK, NEW YORK 10022

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHED SCHEDULE A

| PLACE | DATE AND TIME |
|---|---|
| BAKER & HOSTETLER, LLP, 45 ROCKEFELLER PLAZA, 11ᵀᴴ FLOOR, NEW YORK, NEW YORK 10111 | 10/25/2010 10:00am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| RYAN P. FARLEY, ESQ.  ATTORNEY FOR PLAINTIFF   *Ryan P. Farley* | 10/07/2010 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
RYAN P. FARLEY, ESQ. 45 ROCKEFELLER PLAZA - 10ᵀᴴ FLOOR, NEW YORK, NEW YORK 10111

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

¹ If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | |
|---|---|
| DATE | PLACE |
| SERVED: | |

| | |
|---|---|
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |

| | |
|---|---|
| SERVED BY (PRINT NAME) | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| | |
|---|---|
| | SIGNATURE OF SERVER |
| | |
| | ADDRESS OF SERVER |

American LegalNet, Inc.
www.USCourtForms.com

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance.
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc
www.USCourtForms.com

**Schedule A**

DEFINITIONS

"BQHC" means Brooklyn Queens Healthcare, Inc. and any affiliate, member, hospital, predecessor, or successor of Brooklyn Queens Healthcare, Inc.

"Caritas" means Caritas Health Care, Inc. and any affiliate, member, hospital, predecessor, or successor of Caritas Health Care, Inc., including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Mary Immaculate" means Mary Immaculate Hospital.

"Ross" means the Ross University School of Medicine School of Veterinary

"St. Johns" means St. Johns Hospital.

"SVCMC" means St. Vincent Catholic Medical Centers and any affiliate, member, hospital, predecessor, or successor of St. Vincent Catholic Medical Centers, including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Wyckoff" means Wyckoff Heights Medical Center and any affiliate, member, predecessor, or successor of Wyckoff Heights Medical Center.

DOCUMENTS TO BE PRODUCED

All documents from 2004 to the present that refer, relate, constitute, or pertain to:

1. The acquisition or potential acquisition by Wyckoff, Caritas, and/or BQHC of any interest in any hospital or entity affiliated with SVCMC.

2. The development, formation, and structure of the BQHC System.

3. The development, formation, and structure of Caritas.

4. The acquisition or potential acquisition by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

5. Information packages and all other documents that refer, relate, or pertain to the topics that were or were to be discussed at meetings of Wyckoff's Board of Trustees.

6. Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of BQHC's Board of Trustees.

7. Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of Caritas' Board of Trustees.

8. The authority of any chief restructuring officer concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

9.     The authority of Thomas Singleton concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

10.     The authority of Paul Goldberg concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.   -

11.     The authority of Harold MacDonald concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

12.     The authority of Neil Mandava concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

13.     Any and all affiliation agreements between any medical school and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

14.     Any and all funds paid by any medical school to Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in connection with the provision of clinical portions rotation for students of that school.

15.     The transfer of funds or any other thing of value between Caritas and Wyckoff.

16.     Any and all audits of financial transactions and transfers between Caritas and Wyckoff (and/or the affiliates of Caritas or Wyckoff).

17.     All documents prepared by the New York Department of Health concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

18.     All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

19.     All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning a restructuring officer for Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

20.     The New York Department of Health Recommendation and/or argument that Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate hire a consultant or restructuring officer.

21.     Conditions that the New York Department of Health imposed upon Wyckoff, Caritas, and/or BQHC as a condition for the provision by the New York Department of Health of any loan or other financial assistance.

22.     The transfer or potential transfer of assets out of BQHC.

23.     The formation or potential formation of any new entity in order to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

24.     All actions taken to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

25.     All transactions between Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the one hand, and FTI Cambio, Thomas Singleton, and/or Paul Goldberg on the other hand.

26.     The provision at Wyckoff of clinical rotation slots for medical students that at any time Wyckoff, Caritas, and/or BQHC contemplated would be provided at St. Johns Hospital or Mary Immaculate Hospital.

27.     All communications, contracts, or other records of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate concerning the provision of clinical rotation slots for the students of [insert all other medical schools that we care about].

28.     The sums received by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in exchange for providing clinical rotation slots to students of any and all medical schools.

29.     All agreements under which Wyckoff was to provide clinical rotation slots to students of any and all medical school(s).

30.     All agreements from 2006 to the present in which Wyckoff, Caritas, and/or BQHC agreed to provide at Wyckoff clinical rotation slots to the students of any and all medical school(s).

31.     All communications between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

32.     The lawsuit between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

33.     Communications between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

34.     Any affiliation agreement or potential affiliation agreement between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

Eastern  DISTRICT OF  New York

ROSS UNIVERSITY SCHOOL OF MEDICINE, LTD.

V.

BROOKLYN-QUEENS HEALTH CARE, LTD.

**SUBPOENA IN A CIVIL CASE**

Case Number:¹ 1:09-CV-01410-KAM-RLM

TO: GLADYS RODRIJUEZ
    C/O WALTER LOUGHLIN
    K&L GATES LLP
    599 LEXINGTON AVENUE
    NEW YORK, NEW YORK 10022

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHED SCHEDULE A

| PLACE | DATE AND TIME |
|---|---|
| BAKER & HOSTETLER, LLP, 45 ROCKEFELLER PLAZA, 11ᵀᴴ FLOOR, NEW YORK, NEW YORK 10111 | 10/25/2010 10:00am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| RYAN P. FARLEY, ESQ.  ATTORNEY FOR PLAINTIFF *Ryan P. Farley* | 10/07/2010 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
RYAN P. FARLEY, ESQ. 45 ROCKEFELLER PLAZA - 10ᵀᴴ FLOOR, NEW YORK, NEW YORK 10111

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

If action is pending in district other than district of issuance, state district under case number

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE SERVED: | PLACE |
|---|---|
| | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

American LegalNet, Inc.
www.USCourtForms.com

Rule 45. Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden,

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Schedule A

DEFINITIONS

"BQHC" means Brooklyn Queens Healthcare, Inc. and any affiliate, member, hospital, predecessor, or successor of Brooklyn Queens Healthcare, Inc.

"Caritas" means Caritas Health Care, Inc. and any affiliate, member, hospital, predecessor, or successor of Caritas Health Care, Inc., including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Mary Immaculate" means Mary Immaculate Hospital.

"Ross" means the Ross University School of Medicine School of Veterinary

"St. Johns" means St. Johns Hospital.

"SVCMC" means St. Vincent Catholic Medical Centers and any affiliate, member, hospital, predecessor, or successor of St. Vincent Catholic Medical Centers, including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Wyckoff" means Wyckoff Heights Medical Center and any affiliate, member, predecessor, or successor of Wyckoff Heights Medical Center.

DOCUMENTS TO BE PRODUCED

All documents from 2004 to the present that refer, relate, constitute, or pertain to:

1.     The acquisition or potential acquisition by Wyckoff, Caritas, and/or BQHC of any interest in any hospital or entity affiliated with SVCMC.

2.     The development, formation, and structure of the BQHC System.

3.     The development, formation, and structure of Caritas.

4.     The acquisition or potential acquisition by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

5.     Information packages and all other documents that refer, relate, or pertain to the topics that were or were to be discussed at meetings of Wyckoff's Board of Trustees.

6.     Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of BQHC's Board of Trustees.

7.     Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of Caritas' Board of Trustees.

8.     The authority of any chief restructuring officer concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

9.    The authority of Thomas Singleton concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

10.    The authority of Paul Goldberg concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

11.    The authority of Harold MacDonald concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

12.    The authority of Neil Mandava concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

13.    Any and all affiliation agreements between any medical school and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

14.    Any and all funds paid by any medical school to Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in connection with the provision of clinical portions rotation for students of that school.

15.    The transfer of funds or any other thing of value between Caritas and Wyckoff.

16.    Any and all audits of financial transactions and transfers between Caritas and Wyckoff (and/or the affiliates of Caritas or Wyckoff).

17.    All documents prepared by the New York Department of Health concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

18.    All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

19.    All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning a restructuring officer for Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

20.    The New York Department of Health Recommendation and/or argument that Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate hire a consultant or restructuring officer.

21.    Conditions that the New York Department of Health imposed upon Wyckoff, Caritas, and/or BQHC as a condition for the provision by the New York Department of Health of any loan or other financial assistance.

22.    The transfer or potential transfer of assets out of BQHC.

23.    The formation or potential formation of any new entity in order to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

24.     All actions taken to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

25.     All transactions between Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the one hand, and FTI Cambio, Thomas Singleton, and/or Paul Goldberg on the other hand.

26.     The provision at Wyckoff of clinical rotation slots for medical students that at any time Wyckoff, Caritas, and/or BQHC contemplated would be provided at St. Johns Hospital or Mary Immaculate Hospital.

27.     All communications, contracts, or other records of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate concerning the provision of clinical rotation slots for the students of [insert all other medical schools that we care about].

28.     The sums received by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in exchange for providing clinical rotation slots to students of any and all medical schools.

29.     All agreements under which Wyckoff was to provide clinical rotation slots to students of any and all medical school(s).

30.     All agreements from 2006 to the present in which Wyckoff, Caritas, and/or BQHC agreed to provide at Wyckoff clinical rotation slots to the students of any and all medical school(s).

31.     All communications between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

32.     The lawsuit between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

33.     Communications between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

34.     Any affiliation agreement or potential affiliation agreement between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

Eastern DISTRICT OF New York

ROSS UNIVERSITY SCHOOL OF MEDICINE, LTD.

**SUBPOENA IN A CIVIL CASE**

V.

BROOKLYN-QUEENS HEALTH CARE, LTD.

Case Number: 1:09-CV-01410-KAM-RLM

TO: HAROLD MCDONALD
    C/O WALTER LOUGHLIN
    K&L GATES LLP
    599 LEXINGTON AVENUE
    NEW YORK, NEW YORK 10022

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
    SEE ATTACHED SCHEDULE A

| PLACE | DATE AND TIME |
|---|---|
| BAKER & HOSTETLER, LLP, 45 ROCKEFELLER PLAZA, 11TH FLOOR, NEW YORK, NEW YORK 10111 | 10/25/2010 10:00am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| RYAN P. FARLEY, ESQ.  ATTORNEY FOR PLAINTIFF  *Ryan P. Farley* | 10/07/2010 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
RYAN P. FARLEY, ESQ. 45 ROCKEFELLER PLAZA - 10TH FLOOR, NEW YORK, NEW YORK 10111

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

$^i$ action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE | | PLACE |
|---|---|---|
| SERVED: | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

American LegalNet, Inc
www.USCourtForms.com

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance.

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

Schedule A

DEFINITIONS

"BQHC" means Brooklyn Queens Healthcare, Inc. and any affiliate, member, hospital, predecessor, or successor of Brooklyn Queens Healthcare, Inc.

"Caritas" means Caritas Health Care, Inc. and any affiliate, member, hospital, predecessor, or successor of Caritas Health Care, Inc., including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Mary Immaculate" means Mary Immaculate Hospital.

"Ross" means the Ross University School of Medicine School of Veterinary

"St. Johns" means St. Johns Hospital.

"SVCMC" means St. Vincent Catholic Medical Centers and any affiliate, member, hospital, predecessor, or successor of St. Vincent Catholic Medical Centers, including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Wyckoff" means Wyckoff Heights Medical Center and any affiliate, member, predecessor, or successor of Wyckoff Heights Medical Center.

DOCUMENTS TO BE PRODUCED

All documents from 2004 to the present that refer, relate, constitute, or pertain to:

1.    The acquisition or potential acquisition by Wyckoff, Caritas, and/or BQHC of any interest in any hospital or entity affiliated with SVCMC.

2.    The development, formation, and structure of the BQHC System.

3.    The development, formation, and structure of Caritas.

4.    The acquisition or potential acquisition by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

5.    Information packages and all other documents that refer, relate, or pertain to the topics that were or were to be discussed at meetings of Wyckoff's Board of Trustees.

6.    Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of BQHC's Board of Trustees.

7.    Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of Caritas' Board of Trustees.

8.    The authority of any chief restructuring officer concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

9.      The authority of Thomas Singleton concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

10.     The authority of Paul Goldberg concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

11.     The authority of Harold MacDonald concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

12.     The authority of Neil Mandava concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

13.     Any and all affiliation agreements between any medical school and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

14.     Any and all funds paid by any medical school to Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in connection with the provision of clinical portions rotation for students of that school.

15.     The transfer of funds or any other thing of value between Caritas and Wyckoff.

16.     Any and all audits of financial transactions and transfers between Caritas and Wyckoff (and/or the affiliates of Caritas or Wyckoff).

17.     All documents prepared by the New York Department of Health concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

18.     All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

19.     All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning a restructuring officer for Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

20.     The New York Department of Health Recommendation and/or argument that Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate hire a consultant or restructuring officer.

21.     Conditions that the New York Department of Health imposed upon Wyckoff, Caritas, and/or BQHC as a condition for the provision by the New York Department of Health of any loan or other financial assistance.

22.     The transfer or potential transfer of assets out of BQHC.

23.     The formation or potential formation of any new entity in order to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

24.     All actions taken to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

25.     All transactions between Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the one hand, and FTI Cambio, Thomas Singleton, and/or Paul Goldberg on the other hand.

26.     The provision at Wyckoff of clinical rotation slots for medical students that at any time Wyckoff, Caritas, and/or BQHC contemplated would be provided at St. Johns Hospital or Mary Immaculate Hospital.

27.     All communications, contracts, or other records of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate concerning the provision of clinical rotation slots for the students of [insert all other medical schools that we care about].

28.     The sums received by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in exchange for providing clinical rotation slots to students of any and all medical schools.

29.     All agreements under which Wyckoff was to provide clinical rotation slots to students of any and all medical school(s).

30.     All agreements from 2006 to the present in which Wyckoff, Caritas, and/or BQHC agreed to provide at Wyckoff clinical rotation slots to the students of any and all medical school(s).

31.     All communications between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

32.     The lawsuit between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

33.     Communications between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

34.     Any affiliation agreement or potential affiliation agreement between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

Eastern  DISTRICT OF  New York

ROSS UNIVERSITY SCHOOL OF MEDICINE, LTD.

V.

BROOKLYN-QUEENS HEALTH CARE, LTD.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 1:09-CV-01410-KAM-RLM

TO: HERMAN HOCHBERG
    C/O WALTER LOUGHLIN
    K&L GATES LLP
    599 LEXINGTON AVENUE
    NEW YORK, NEW YORK 10022

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHED SCHEDULE A

| PLACE | DATE AND TIME |
|---|---|
| BAKER & HOSTETLER, LLP, 45 ROCKEFELLER PLAZA, 11TH FLOOR, NEW YORK, NEW YORK 10111 | 10/25/2010 10:00am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| RYAN P. FARLEY, ESQ.  ATTORNEY FOR PLAINTIFF  *Ryan P. Farley* | 10/07/2010 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
RYAN P. FARLEY, ESQ. 45 ROCKEFELLER PLAZA - 10TH FLOOR, NEW YORK, NEW YORK 10111

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE | | PLACE |
|---|---|---|
| SERVED: | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

American LegalNet, Inc
www.USCourtForms.com

Rule 45. Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc
www.USCourtForms.com

Schedule A

DEFINITIONS

"BQHC" means Brooklyn Queens Healthcare, Inc. and any affiliate, member, hospital, predecessor, or successor of Brooklyn Queens Healthcare, Inc.

"Caritas" means Caritas Health Care, Inc. and any affiliate, member, hospital, predecessor, or successor of Caritas Health Care, Inc., including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Mary Immaculate" means Mary Immaculate Hospital.

"Ross" means the Ross University School of Medicine School of Veterinary

"St. Johns" means St. Johns Hospital.

"SVCMC" means St. Vincent Catholic Medical Centers and any affiliate, member, hospital, predecessor, or successor of St. Vincent Catholic Medical Centers, including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Wyckoff" means Wyckoff Heights Medical Center and any affiliate, member, predecessor, or successor of Wyckoff Heights Medical Center.

DOCUMENTS TO BE PRODUCED

All documents from 2004 to the present that refer, relate, constitute, or pertain to:

1.     The acquisition or potential acquisition by Wyckoff, Caritas, and/or BQHC of any interest in any hospital or entity affiliated with SVCMC.

2.     The development, formation, and structure of the BQHC System.

3.     The development, formation, and structure of Caritas.

4.     The acquisition or potential acquisition by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

5.     Information packages and all other documents that refer, relate, or pertain to the topics that were or were to be discussed at meetings of Wyckoff's Board of Trustees.

6.     Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of BQHC's Board of Trustees.

7.     Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of Caritas' Board of Trustees.

8.     The authority of any chief restructuring officer concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

9.      The authority of Thomas Singleton concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

10.     The authority of Paul Goldberg concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

11.     The authority of Harold MacDonald concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

12.     The authority of Neil Mandava concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

13.     Any and all affiliation agreements between any medical school and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

14.     Any and all funds paid by any medical school to Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in connection with the provision of clinical portions rotation for students of that school.

15.     The transfer of funds or any other thing of value between Caritas and Wyckoff.

16.     Any and all audits of financial transactions and transfers between Caritas and Wyckoff (and/or the affiliates of Caritas or Wyckoff).

17.     All documents prepared by the New York Department of Health concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

18.     All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

19.     All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning a restructuring officer for Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

20.     The New York Department of Health Recommendation and/or argument that Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate hire a consultant or restructuring officer.

21.     Conditions that the New York Department of Health imposed upon Wyckoff, Caritas, and/or BQHC as a condition for the provision by the New York Department of Health of any loan or other financial assistance.

22.     The transfer or potential transfer of assets out of BQHC.

23.     The formation or potential formation of any new entity in order to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

24.     All actions taken to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

25.     All transactions between Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the one hand, and FTI Cambio, Thomas Singleton, and/or Paul Goldberg on the other hand.

26.     The provision at Wyckoff of clinical rotation slots for medical students that at any time Wyckoff, Caritas, and/or BQHC contemplated would be provided at St. Johns Hospital or Mary Immaculate Hospital.

27.     All communications, contracts, or other records of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate concerning the provision of clinical rotation slots for the students of [insert all other medical schools that we care about].

28.     The sums received by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in exchange for providing clinical rotation slots to students of any and all medical schools.

29.     All agreements under which Wyckoff was to provide clinical rotation slots to students of any and all medical school(s).

30.     All agreements from 2006 to the present in which Wyckoff, Caritas, and/or BQHC agreed to provide at Wyckoff clinical rotation slots to the students of any and all medical school(s).

31.     All communications between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

32.     The lawsuit between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

33.     Communications between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

34.     Any affiliation agreement or potential affiliation agreement between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

Eastern DISTRICT OF New York

ROSS UNIVERSITY SCHOOL OF MEDICINE, LTD.

V.

BROOKLYN-QUEENS HEALTH CARE, LTD.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 1:09-CV-01410-KAM-RLM

TO: JOHN COOK JR., ESQ.
    C/O WALTER LOUGHLIN
    K&L GATES LLP
    599 LEXINGTON AVENUE
    NEW YORK, NEW YORK 10022

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
    SEE ATTACHED SCHEDULE A

| PLACE | DATE AND TIME |
|---|---|
| BAKER & HOSTETLER, LLP, 45 ROCKEFELLER PLAZA, 11TH FLOOR, NEW YORK, NEW YORK 10111 | 10/25/2010 10:00am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) RYAN P. FARLEY, ESQ.  ATTORNEY FOR PLAINTIFF *Ryan P. Farley* | DATE 10/07/2010 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
RYAN P. FARLEY, ESQ. 45 ROCKEFELLER PLAZA - 10TH FLOOR, NEW YORK, NEW YORK 10111

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE SERVED: | PLACE |
|---|---|
|  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| | SIGNATURE OF SERVER |
|---|---|
| | |
| | ADDRESS OF SERVER |
| | |

American LegalNet, Inc.
www.USCourtForms.com

Rule 45. Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

**Schedule A**

DEFINITIONS

"BQHC" means Brooklyn Queens Healthcare, Inc. and any affiliate, member, hospital, predecessor, or successor of Brooklyn Queens Healthcare, Inc.

"Caritas" means Caritas Health Care, Inc. and any affiliate, member, hospital, predecessor, or successor of Caritas Health Care, Inc., including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Mary Immaculate" means Mary Immaculate Hospital.

"Ross" means the Ross University School of Medicine School of Veterinary

"St. Johns" means St. Johns Hospital.

"SVCMC" means St. Vincent Catholic Medical Centers and any affiliate, member, hospital, predecessor, or successor of St. Vincent Catholic Medical Centers, including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Wyckoff" means Wyckoff Heights Medical Center and any affiliate, member, predecessor, or successor of Wyckoff Heights Medical Center.

DOCUMENTS TO BE PRODUCED

All documents from 2004 to the present that refer, relate, constitute, or pertain to:

1. The acquisition or potential acquisition by Wyckoff, Caritas, and/or BQHC of any interest in any hospital or entity affiliated with SVCMC.

2. The development, formation, and structure of the BQHC System.

3. The development, formation, and structure of Caritas.

4. The acquisition or potential acquisition by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

5. Information packages and all other documents that refer, relate, or pertain to the topics that were or were to be discussed at meetings of Wyckoff's Board of Trustees.

6. Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of BQHC's Board of Trustees.

7. Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of Caritas' Board of Trustees.

8. The authority of any chief restructuring officer concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

9.     The authority of Thomas Singleton concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

10.    The authority of Paul Goldberg concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

11.    The authority of Harold MacDonald concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

12.    The authority of Neil Mandava concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

13.    Any and all affiliation agreements between any medical school and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

14.    Any and all funds paid by any medical school to Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in connection with the provision of clinical portions rotation for students of that school.

15.    The transfer of funds or any other thing of value between Caritas and Wyckoff.

16.    Any and all audits of financial transactions and transfers between Caritas and Wyckoff (and/or the affiliates of Caritas or Wyckoff).

17.    All documents prepared by the New York Department of Health concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

18.    All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

19.    All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning a restructuring officer for Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

20.    The New York Department of Health Recommendation and/or argument that Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate hire a consultant or restructuring officer.

21.    Conditions that the New York Department of Health imposed upon Wyckoff, Caritas, and/or BQHC as a condition for the provision by the New York Department of Health of any loan or other financial assistance.

22.    The transfer or potential transfer of assets out of BQHC.

23.    The formation or potential formation of any new entity in order to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

24.    All actions taken to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

25.    All transactions between Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the one hand, and FTI Cambio, Thomas Singleton, and/or Paul Goldberg on the other hand.

26.    The provision at Wyckoff of clinical rotation slots for medical students that at any time Wyckoff, Caritas, and/or BQHC contemplated would be provided at St. Johns Hospital or Mary Immaculate Hospital.

27.    All communications, contracts, or other records of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate concerning the provision of clinical rotation slots for the students of [insert all other medical schools that we care about].

28.    The sums received by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in exchange for providing clinical rotation slots to students of any and all medical schools.

29.    All agreements under which Wyckoff was to provide clinical rotation slots to students of any and all medical school(s).

30.    All agreements from 2006 to the present in which Wyckoff, Caritas, and/or BQHC agreed to provide at Wyckoff clinical rotation slots to the students of any and all medical school(s).

31.    All communications between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

32.    The lawsuit between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

33.    Communications between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

34.    Any affiliation agreement or potential affiliation agreement between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

Eastern DISTRICT OF New York

ROSS UNIVERSITY SCHOOL OF MEDICINE, LTD.

V.

BROOKLYN-QUEENS HEALTH CARE, LTD.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 1:09-CV-01410-KAM-RLM

TO: JOHN RUCIGAY, ESQ.
C/O WALTER LOUGHLIN
K&L GATES LLP
599 LEXINGTON AVENUE
NEW YORK, NEW YORK 10022

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHED SCHEDULE A

| PLACE | DATE AND TIME |
|---|---|
| BAKER & HOSTETLER, LLP, 45 ROCKEFELLER PLAZA, 11TH FLOOR, NEW YORK, NEW YORK 10111 | 10/25/2010 10:00am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| RYAN P. FARLEY, ESQ. ATTORNEY FOR PLAINTIFF | 10/07/2010 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
RYAN P. FARLEY, ESQ. 45 ROCKEFELLER PLAZA - 10TH FLOOR, NEW YORK, NEW YORK 10111

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
| SERVED: | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

American LegalNet, Inc
www.USCourtForms.com

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc
www.USCourtForms.com

Schedule A

DEFINITIONS

"BQHC" means Brooklyn Queens Healthcare, Inc. and any affiliate, member, hospital, predecessor, or successor of Brooklyn Queens Healthcare, Inc.

"Caritas" means Caritas Health Care, Inc. and any affiliate, member, hospital, predecessor, or successor of Caritas Health Care, Inc., including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Mary Immaculate" means Mary Immaculate Hospital.

"Ross" means the Ross University School of Medicine School of Veterinary

"St. Johns" means St. Johns Hospital.

"SVCMC" means St. Vincent Catholic Medical Centers and any affiliate, member, hospital, predecessor, or successor of St. Vincent Catholic Medical Centers, including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Wyckoff" means Wyckoff Heights Medical Center and any affiliate, member, predecessor, or successor of Wyckoff Heights Medical Center.

DOCUMENTS TO BE PRODUCED

All documents from 2004 to the present that refer, relate, constitute, or pertain to:

1. The acquisition or potential acquisition by Wyckoff, Caritas, and/or BQHC of any interest in any hospital or entity affiliated with SVCMC.

2. The development, formation, and structure of the BQHC System.

3. The development, formation, and structure of Caritas.

4. The acquisition or potential acquisition by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

5. Information packages and all other documents that refer, relate, or pertain to the topics that were or were to be discussed at meetings of Wyckoff's Board of Trustees.

6. Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of BQHC's Board of Trustees.

7. Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of Caritas' Board of Trustees.

8. The authority of any chief restructuring officer concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

9.     The authority of Thomas Singleton concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

10.     The authority of Paul Goldberg concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

11.     The authority of Harold MacDonald concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

12.     The authority of Neil Mandava concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

13.     Any and all affiliation agreements between any medical school and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

14.     Any and all funds paid by any medical school to Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in connection with the provision of clinical portions rotation for students of that school.

15.     The transfer of funds or any other thing of value between Caritas and Wyckoff.

16.     Any and all audits of financial transactions and transfers between Caritas and Wyckoff (and/or the affiliates of Caritas or Wyckoff).

17.     All documents prepared by the New York Department of Health concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

18.     All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

19.     All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning a restructuring officer for Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

20.     The New York Department of Health Recommendation and/or argument that Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate hire a consultant or restructuring officer.

21.     Conditions that the New York Department of Health imposed upon Wyckoff, Caritas, and/or BQHC as a condition for the provision by the New York Department of Health of any loan or other financial assistance.

22.     The transfer or potential transfer of assets out of BQHC.

23.     The formation or potential formation of any new entity in order to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

24.    All actions taken to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

25.    All transactions between Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the one hand, and FTI Cambio, Thomas Singleton, and/or Paul Goldberg on the other hand.

26.    The provision at Wyckoff of clinical rotation slots for medical students that at any time Wyckoff, Caritas, and/or BQHC contemplated would be provided at St. Johns Hospital or Mary Immaculate Hospital.

27.    All communications, contracts, or other records of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate concerning the provision of clinical rotation slots for the students of [insert all other medical schools that we care about].

28.    The sums received by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in exchange for providing clinical rotation slots to students of any and all medical schools.

29.    All agreements under which Wyckoff was to provide clinical rotation slots to students of any and all medical school(s).

30.    All agreements from 2006 to the present in which Wyckoff, Caritas, and/or BQHC agreed to provide at Wyckoff clinical rotation slots to the students of any and all medical school(s).

31.    All communications between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

32.    The lawsuit between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

33.    Communications between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

34.    Any affiliation agreement or potential affiliation agreement between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

### Issued by the

# UNITED STATES DISTRICT COURT

Eastern DISTRICT OF New York

ROSS UNIVERSITY SCHOOL OF MEDICINE, LTD.

**SUBPOENA IN A CIVIL CASE**

V.

BROOKLYN-QUEENS HEALTH CARE, LTD.

Case Number:[1] 1:09-CV-01410-KAM-RLM

TO: NIRMAL MATTOO, M.D.
    C/O WALTER LOUGHLIN
    K&L GATES LLP
    599 LEXINGTON AVENUE
    NEW YORK, NEW YORK 10022

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHED SCHEDULE A

| PLACE | DATE AND TIME |
|---|---|
| BAKER & HOSTETLER, LLP, 45 ROCKEFELLER PLAZA, 11TH FLOOR, NEW YORK, NEW YORK 10111 | 10/25/2010 10:00am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| RYAN P. FARLEY, ESQ.  ATTORNEY FOR PLAINTIFF   *Ryan P. Farley* | 10/07/2010 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
RYAN P. FARLEY, ESQ. 45 ROCKEFELLER PLAZA - 10TH FLOOR, NEW YORK, NEW YORK 10111

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | | PLACE |
|---|---|---|---|
| SERVED: | | | |

| | SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

American LegalNet, Inc
www.USCourtForms.com

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

Schedule A

DEFINITIONS

"BQHC" means Brooklyn Queens Healthcare, Inc. and any affiliate, member, hospital, predecessor, or successor of Brooklyn Queens Healthcare, Inc.

"Caritas" means Caritas Health Care, Inc. and any affiliate, member, hospital, predecessor, or successor of Caritas Health Care, Inc., including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Mary Immaculate" means Mary Immaculate Hospital.

"Ross" means the Ross University School of Medicine School of Veterinary

"St. Johns" means St. Johns Hospital.

"SVCMC" means St. Vincent Catholic Medical Centers and any affiliate, member, hospital, predecessor, or successor of St. Vincent Catholic Medical Centers, including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Wyckoff" means Wyckoff Heights Medical Center and any affiliate, member, predecessor, or successor of Wyckoff Heights Medical Center.

DOCUMENTS TO BE PRODUCED

All documents from 2004 to the present that refer, relate, constitute, or pertain to:

1.     The acquisition or potential acquisition by Wyckoff, Caritas, and/or BQHC of any interest in any hospital or entity affiliated with SVCMC.

2.     The development, formation, and structure of the BQHC System.

3.     The development, formation, and structure of Caritas.

4.     The acquisition or potential acquisition by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

5.     Information packages and all other documents that refer, relate, or pertain to the topics that were or were to be discussed at meetings of Wyckoff's Board of Trustees.

6.     Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of BQHC's Board of Trustees.

7.     Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of Caritas' Board of Trustees.

8.     The authority of any chief restructuring officer concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

9. The authority of Thomas Singleton concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

10. The authority of Paul Goldberg concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

11. The authority of Harold MacDonald concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

12. The authority of Neil Mandava concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

13. Any and all affiliation agreements between any medical school and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

14. Any and all funds paid by any medical school to Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in connection with the provision of clinical portions rotation for students of that school.

15. The transfer of funds or any other thing of value between Caritas and Wyckoff.

16. Any and all audits of financial transactions and transfers between Caritas and Wyckoff (and/or the affiliates of Caritas or Wyckoff).

17. All documents prepared by the New York Department of Health concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

18. All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

19. All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning a restructuring officer for Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

20. The New York Department of Health Recommendation and/or argument that Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate hire a consultant or restructuring officer.

21. Conditions that the New York Department of Health imposed upon Wyckoff, Caritas, and/or BQHC as a condition for the provision by the New York Department of Health of any loan or other financial assistance.

22. The transfer or potential transfer of assets out of BQHC.

23. The formation or potential formation of any new entity in order to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

24.     All actions taken to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

25.     All transactions between Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the one hand, and FTI Cambio, Thomas Singleton, and/or Paul Goldberg on the other hand.

26.     The provision at Wyckoff of clinical rotation slots for medical students that at any time Wyckoff, Caritas, and/or BQHC contemplated would be provided at St. Johns Hospital or Mary Immaculate Hospital.

27.     All communications, contracts, or other records of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate concerning the provision of clinical rotation slots for the students of [insert all other medical schools that we care about].

28.     The sums received by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in exchange for providing clinical rotation slots to students of any and all medical schools.

29.     All agreements under which Wyckoff was to provide clinical rotation slots to students of any and all medical school(s).

30.     All agreements from 2006 to the present in which Wyckoff, Caritas, and/or BQHC agreed to provide at Wyckoff clinical rotation slots to the students of any and all medical school(s).

31.     All communications between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

32.     The lawsuit between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

33.     Communications between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

34.     Any affiliation agreement or potential affiliation agreement between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

Eastern  DISTRICT OF  New York

ROSS UNIVERSITY SCHOOL OF MEDICINE, LTD.

**SUBPOENA IN A CIVIL CASE**

V.

BROOKLYN-QUEENS HEALTH CARE, LTD.

Case Number:¹  1:09-CV-01410-KAM-RLM

TO: VICTORIA COOK, ESQ.
    C/O WALTER LOUGHLIN
    K&L GATES LLP
    599 LEXINGTON AVENUE
    NEW YORK, NEW YORK 10022

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHED SCHEDULE A

| PLACE<br>BAKER & HOSTETLER, LLP, 45 ROCKEFELLER PLAZA, 11ᵀᴴ FLOOR, NEW YORK, NEW YORK 10111 | DATE AND TIME<br>10/25/2010 10:00am |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>RYAN P. FARLEY, ESQ.  ATTORNEY FOR PLAINTIFF | DATE<br>10/07/2010 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
RYAN P. FARLEY, ESQ. 45 ROCKEFELLER PLAZA - 10ᵀᴴ FLOOR, NEW YORK, NEW YORK 10111

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

¹ action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED: | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

_____
SIGNATURE OF SERVER

_____
ADDRESS OF SERVER

American LegalNet, Inc.
www.USCourtForms.com

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

Schedule A

DEFINITIONS

"BQHC" means Brooklyn Queens Healthcare, Inc. and any affiliate, member, hospital, predecessor, or successor of Brooklyn Queens Healthcare, Inc.

"Caritas" means Caritas Health Care, Inc. and any affiliate, member, hospital, predecessor, or successor of Caritas Health Care, Inc., including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Mary Immaculate" means Mary Immaculate Hospital.

"Ross" means the Ross University School of Medicine School of Veterinary

"St. Johns" means St. Johns Hospital.

"SVCMC" means St. Vincent Catholic Medical Centers and any affiliate, member, hospital, predecessor, or successor of St. Vincent Catholic Medical Centers, including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Wyckoff" means Wyckoff Heights Medical Center and any affiliate, member, predecessor, or successor of Wyckoff Heights Medical Center.

DOCUMENTS TO BE PRODUCED

All documents from 2004 to the present that refer, relate, constitute, or pertain to:

1.     The acquisition or potential acquisition by Wyckoff, Caritas, and/or BQHC of any interest in any hospital or entity affiliated with SVCMC.

2.     The development, formation, and structure of the BQHC System.

3.     The development, formation, and structure of Caritas.

4.     The acquisition or potential acquisition by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

5.     Information packages and all other documents that refer, relate, or pertain to the topics that were or were to be discussed at meetings of Wyckoff's Board of Trustees.

6.     Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of BQHC's Board of Trustees.

7.     Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of Caritas' Board of Trustees.

8.     The authority of any chief restructuring officer concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

9.     The authority of Thomas Singleton concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

10.     The authority of Paul Goldberg concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

11.     The authority of Harold MacDonald concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

12.     The authority of Neil Mandava concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

13.     Any and all affiliation agreements between any medical school and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

14.     Any and all funds paid by any medical school to Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in connection with the provision of clinical portions rotation for students of that school.

15.     The transfer of funds or any other thing of value between Caritas and Wyckoff.

16.     Any and all audits of financial transactions and transfers between Caritas and Wyckoff (and/or the affiliates of Caritas or Wyckoff).

17.     All documents prepared by the New York Department of Health concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

18.     All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

19.     All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning a restructuring officer for Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

20.     The New York Department of Health Recommendation and/or argument that Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate hire a consultant or restructuring officer.

21.     Conditions that the New York Department of Health imposed upon Wyckoff, Caritas, and/or BQHC as a condition for the provision by the New York Department of Health of any loan or other financial assistance.

22.     The transfer or potential transfer of assets out of BQHC.

23.     The formation or potential formation of any new entity in order to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

24. All actions taken to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

25. All transactions between Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the one hand, and FTI Cambio, Thomas Singleton, and/or Paul Goldberg on the other hand.

26. The provision at Wyckoff of clinical rotation slots for medical students that at any time Wyckoff, Caritas, and/or BQHC contemplated would be provided at St. Johns Hospital or Mary Immaculate Hospital.

27. All communications, contracts, or other records of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate concerning the provision of clinical rotation slots for the students of [insert all other medical schools that we care about].

28. The sums received by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in exchange for providing clinical rotation slots to students of any and all medical schools.

29. All agreements under which Wyckoff was to provide clinical rotation slots to students of any and all medical school(s).

30. All agreements from 2006 to the present in which Wyckoff, Caritas, and/or BQHC agreed to provide at Wyckoff clinical rotation slots to the students of any and all medical school(s).

31. All communications between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

32. The lawsuit between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

33. Communications between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

34. Any affiliation agreement or potential affiliation agreement between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

### Issued by the

# UNITED STATES DISTRICT COURT

Eastern  DISTRICT OF  New York

ROSS UNIVERSITY SCHOOL OF MEDICINE, LTD.

V.

BROOKLYN-QUEENS HEALTH CARE, LTD.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 1:09-CV-01410-KAM-RLM

TO: VINCENT ACURI
    C/O WALTER LOUGHLIN
    K&L GATES LLP
    599 LEXINGTON AVENUE
    NEW YORK, NEW YORK 10022

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
    SEE ATTACHED SCHEDULE A

| PLACE | DATE AND TIME |
|---|---|
| BAKER & HOSTETLER, LLP, 45 ROCKEFELLER PLAZA, 11TH FLOOR, NEW YORK, NEW YORK 10111 | 10/25/2010 10:00am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>RYAN P. FARLEY, ESQ.  ATTORNEY FOR PLAINTIFF  *Ryan P. Farley* | DATE<br>10/07/2010 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
RYAN P. FARLEY, ESQ. 45 ROCKEFELLER PLAZA - 10TH FLOOR, NEW YORK, NEW YORK 10111

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE | PLACE |
|---|---|
| SERVED: | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

American LegalNet, Inc
www.USCourtForms.com

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

Schedule A

DEFINITIONS

"BQHC" means Brooklyn Queens Healthcare, Inc. and any affiliate, member, hospital, predecessor, or successor of Brooklyn Queens Healthcare, Inc.

"Caritas" means Caritas Health Care, Inc. and any affiliate, member, hospital, predecessor, or successor of Caritas Health Care, Inc., including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Mary Immaculate" means Mary Immaculate Hospital.

"Ross" means the Ross University School of Medicine School of Veterinary

"St. Johns" means St. Johns Hospital.

"SVCMC" means St. Vincent Catholic Medical Centers and any affiliate, member, hospital, predecessor, or successor of St. Vincent Catholic Medical Centers, including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Wyckoff" means Wyckoff Heights Medical Center and any affiliate, member, predecessor, or successor of Wyckoff Heights Medical Center.

DOCUMENTS TO BE PRODUCED

All documents from 2004 to the present that refer, relate, constitute, or pertain to:

1.      The acquisition or potential acquisition by Wyckoff, Caritas, and/or BQHC of any interest in any hospital or entity affiliated with SVCMC.

2.      The development, formation, and structure of the BQHC System.

3.      The development, formation, and structure of Caritas.

4.      The acquisition or potential acquisition by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

5.      Information packages and all other documents that refer, relate, or pertain to the topics that were or were to be discussed at meetings of Wyckoff's Board of Trustees.

6.      Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of BQHC's Board of Trustees.

7.      Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of Caritas' Board of Trustees.

8.      The authority of any chief restructuring officer concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

9.   The authority of Thomas Singleton concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

10.   The authority of Paul Goldberg concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

11.   The authority of Harold MacDonald concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

12.   The authority of Neil Mandava concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

13.   Any and all affiliation agreements between any medical school and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

14.   Any and all funds paid by any medical school to Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in connection with the provision of clinical portions rotation for students of that school.

15.   The transfer of funds or any other thing of value between Caritas and Wyckoff.

16.   Any and all audits of financial transactions and transfers between Caritas and Wyckoff (and/or the affiliates of Caritas or Wyckoff).

17.   All documents prepared by the New York Department of Health concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

18.   All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

19.   All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning a restructuring officer for Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

20.   The New York Department of Health Recommendation and/or argument that Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate hire a consultant or restructuring officer.

21.   Conditions that the New York Department of Health imposed upon Wyckoff, Caritas, and/or BQHC as a condition for the provision by the New York Department of Health of any loan or other financial assistance.

22.   The transfer or potential transfer of assets out of BQHC.

23.   The formation or potential formation of any new entity in order to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

24.     All actions taken to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

25.     All transactions between Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the one hand, and FTI Cambio, Thomas Singleton, and/or Paul Goldberg on the other hand.

26.     The provision at Wyckoff of clinical rotation slots for medical students that at any time Wyckoff, Caritas, and/or BQHC contemplated would be provided at St. Johns Hospital or Mary Immaculate Hospital.

27.     All communications, contracts, or other records of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate concerning the provision of clinical rotation slots for the students of [insert all other medical schools that we care about].

28.     The sums received by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in exchange for providing clinical rotation slots to students of any and all medical schools.

29.     All agreements under which Wyckoff was to provide clinical rotation slots to students of any and all medical school(s).

30.     All agreements from 2006 to the present in which Wyckoff, Caritas, and/or BQHC agreed to provide at Wyckoff clinical rotation slots to the students of any and all medical school(s).

31.     All communications between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

32.     The lawsuit between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

33.     Communications between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

34.     Any affiliation agreement or potential affiliation agreement between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

Eastern DISTRICT OF New York

ROSS UNIVERSITY SCHOOL OF MEDICINE, LTD.

**SUBPOENA IN A CIVIL CASE**

v.

BROOKLYN-QUEENS HEALTH CARE, LTD.

Case Number:¹ 1:09-CV-01410-KAM-RLM

TO: ALBERT WILSHIRE
    C/O WALTER LOUGHLIN
    K&L GATES LLP
    599 LEXINGTON AVENUE
    NEW YORK, NEW YORK 10022

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHED SCHEDULE A

| PLACE | DATE AND TIME |
|---|---|
| BAKER & HOSTETLER, LLP, 45 ROCKEFELLER PLAZA, 11ᵀᴴ FLOOR, NEW YORK, NEW YORK 10111 | 10/25/2010 10:00am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| RYAN P. FARLEY, ESQ.  ATTORNEY FOR PLAINTIFF *Ryan P Farley* | 10/07/2010 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
RYAN P. FARLEY, ESQ. 45 ROCKEFELLER PLAZA - 10ᵀᴴ FLOOR, NEW YORK, NEW YORK 10111

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

AO 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE | PLACE |
|------|-------|
| SERVED: | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|------------------------|-------------------|

| SERVED BY (PRINT NAME) | TITLE |
|------------------------|-------|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

SIGNATURE OF SERVER

ADDRESS OF SERVER

American LegalNet, Inc
www.USCourtForms.com

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc
www.USCourtForms.com

Schedule A

DEFINITIONS

"BQHC" means Brooklyn Queens Healthcare, Inc. and any affiliate, member, hospital, predecessor, or successor of Brooklyn Queens Healthcare, Inc.

"Caritas" means Caritas Health Care, Inc. and any affiliate, member, hospital, predecessor, or successor of Caritas Health Care, Inc., including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Mary Immaculate" means Mary Immaculate Hospital.

"Ross" means the Ross University School of Medicine School of Veterinary

"St. Johns" means St. Johns Hospital.

"SVCMC" means St. Vincent Catholic Medical Centers and any affiliate, member, hospital, predecessor, or successor of St. Vincent Catholic Medical Centers, including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Wyckoff" means Wyckoff Heights Medical Center and any affiliate, member, predecessor, or successor of Wyckoff Heights Medical Center.

DOCUMENTS TO BE PRODUCED

All documents from 2004 to the present that refer, relate, constitute, or pertain to:

1. The acquisition or potential acquisition by Wyckoff, Caritas, and/or BQHC of any interest in any hospital or entity affiliated with SVCMC.

2. The development, formation, and structure of the BQHC System.

3. The development, formation, and structure of Caritas.

4. The acquisition or potential acquisition by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

5. Information packages and all other documents that refer, relate, or pertain to the topics that were or were to be discussed at meetings of Wyckoff's Board of Trustees.

6. Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of BQHC's Board of Trustees.

7. Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of Caritas' Board of Trustees.

8. The authority of any chief restructuring officer concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

9.      The authority of Thomas Singleton concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

10.     The authority of Paul Goldberg concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

11.     The authority of Harold MacDonald concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

12.     The authority of Neil Mandava concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

13.     Any and all affiliation agreements between any medical school and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

14.     Any and all funds paid by any medical school to Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in connection with the provision of clinical portions rotation for students of that school.

15.     The transfer of funds or any other thing of value between Caritas and Wyckoff.

16.     Any and all audits of financial transactions and transfers between Caritas and Wyckoff (and/or the affiliates of Caritas or Wyckoff).

17.     All documents prepared by the New York Department of Health concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

18.     All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

19.     All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning a restructuring officer for Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

20.     The New York Department of Health Recommendation and/or argument that Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate hire a consultant or restructuring officer.

21.     Conditions that the New York Department of Health imposed upon Wyckoff, Caritas, and/or BQHC as a condition for the provision by the New York Department of Health of any loan or other financial assistance.

22.     The transfer or potential transfer of assets out of BQHC.

23.     The formation or potential formation of any new entity in order to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

24.    All actions taken to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

25.    All transactions between Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the one hand, and FTI Cambio, Thomas Singleton, and/or Paul Goldberg on the other hand.

26.    The provision at Wyckoff of clinical rotation slots for medical students that at any time Wyckoff, Caritas, and/or BQHC contemplated would be provided at St. Johns Hospital or Mary Immaculate Hospital.

27.    All communications, contracts, or other records of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate concerning the provision of clinical rotation slots for the students of [insert all other medical schools that we care about].

28.    The sums received by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in exchange for providing clinical rotation slots to students of any and all medical schools.

29.    All agreements under which Wyckoff was to provide clinical rotation slots to students of any and all medical school(s).

30.    All agreements from 2006 to the present in which Wyckoff, Caritas, and/or BQHC agreed to provide at Wyckoff clinical rotation slots to the students of any and all medical school(s).

31.    All communications between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

32.    The lawsuit between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

33.    Communications between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

34.    Any affiliation agreement or potential affiliation agreement between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

Eastern  DISTRICT OF  New York

ROSS UNIVERSITY SCHOOL OF MEDICINE, LTD.

**SUBPOENA IN A CIVIL CASE**

V.

BROOKLYN-QUEENS HEALTH CARE, LTD.

Case Number:[1] 1:09-CV-01410-KAM-RLM

TO: ADAM FIGUEROA
C/O WALTER LOUGHLIN
K&L GATES LLP
599 LEXINGTON AVENUE
NEW YORK, NEW YORK 10022

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHED SCHEDULE A

| PLACE | DATE AND TIME |
|---|---|
| BAKER & HOSTETLER, LLP, 45 ROCKEFELLER PLAZA, 11TH FLOOR, NEW YORK, NEW YORK 10111 | 10/25/2010 10:00am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) RYAN P. FARLEY, ESQ.  ATTORNEY FOR PLAINTIFF *Ryan P. Farley* | DATE 10/07/2010 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
RYAN P. FARLEY, ESQ. 45 ROCKEFELLER PLAZA - 10TH FLOOR, NEW YORK, NEW YORK 10111

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance.

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

**Schedule A**

DEFINITIONS

"BQHC" means Brooklyn Queens Healthcare, Inc. and any affiliate, member, hospital, predecessor, or successor of Brooklyn Queens Healthcare, Inc.

"Caritas" means Caritas Health Care, Inc. and any affiliate, member, hospital, predecessor, or successor of Caritas Health Care, Inc., including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Mary Immaculate" means Mary Immaculate Hospital.

"Ross" means the Ross University School of Medicine School of Veterinary

"St. Johns" means St. Johns Hospital.

"SVCMC" means St. Vincent Catholic Medical Centers and any affiliate, member, hospital, predecessor, or successor of St. Vincent Catholic Medical Centers, including without limitation the bankruptcy estate and/or bankruptcy trustee of any of the foregoing.

"Wyckoff" means Wyckoff Heights Medical Center and any affiliate, member, predecessor, or successor of Wyckoff Heights Medical Center.

DOCUMENTS TO BE PRODUCED

All documents from 2004 to the present that refer, relate, constitute, or pertain to:

1.     The acquisition or potential acquisition by Wyckoff, Caritas, and/or BQHC of any interest in any hospital or entity affiliated with SVCMC.

2.     The development, formation, and structure of the BQHC System.

3.     The development, formation, and structure of Caritas.

4.     The acquisition or potential acquisition by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

5.     Information packages and all other documents that refer, relate, or pertain to the topics that were or were to be discussed at meetings of Wyckoff's Board of Trustees.

6.     Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of BQHC's Board of Trustees.

7.     Information packages and all other documents that refer, relate or pertain to the topics that were or were to be discussed at meetings of Caritas' Board of Trustees.

8.     The authority of any chief restructuring officer concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

9.      The authority of Thomas Singleton concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

10.     The authority of Paul Goldberg concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

11.     The authority of Harold MacDonald concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

12.     The authority of Neil Mandava concerning the affairs of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

13.     Any and all affiliation agreements between any medical school and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

14.     Any and all funds paid by any medical school to Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in connection with the provision of clinical portions rotation for students of that school.

15.     The transfer of funds or any other thing of value between Caritas and Wyckoff.

16.     Any and all audits of financial transactions and transfers between Caritas and Wyckoff (and/or the affiliates of Caritas or Wyckoff).

17.     All documents prepared by the New York Department of Health concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

18.     All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning financial transactions and transfers between Caritas and Wyckoff (and/or their affiliates).

19.     All communications between the New York Department of Health, on the one hand, and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the other hand, concerning a restructuring officer for Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

20.     The New York Department of Health Recommendation and/or argument that Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate hire a consultant or restructuring officer.

21.     Conditions that the New York Department of Health imposed upon Wyckoff, Caritas, and/or BQHC as a condition for the provision by the New York Department of Health of any loan or other financial assistance.

22.     The transfer or potential transfer of assets out of BQHC.

23.     The formation or potential formation of any new entity in order to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

24.     All actions taken to protect the assets of Wyckoff and/or BQHC from the creditors of Caritas.

25.     All transactions between Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate, on the one hand, and FTI Cambio, Thomas Singleton, and/or Paul Goldberg on the other hand.

26.     The provision at Wyckoff of clinical rotation slots for medical students that at any time Wyckoff, Caritas, and/or BQHC contemplated would be provided at St. Johns Hospital or Mary Immaculate Hospital.

27.     All communications, contracts, or other records of Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate concerning the provision of clinical rotation slots for the students of [insert all other medical schools that we care about].

28.     The sums received by Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate in exchange for providing clinical rotation slots to students of any and all medical schools.

29.     All agreements under which Wyckoff was to provide clinical rotation slots to students of any and all medical school(s).

30.     All agreements from 2006 to the present in which Wyckoff, Caritas, and/or BQHC agreed to provide at Wyckoff clinical rotation slots to the students of any and all medical school(s).

31.     All communications between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

32.     The lawsuit between American University of the Caribbean and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

33.     Communications between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.

34.     Any affiliation agreement or potential affiliation agreement between Ross University School of Medicine and Wyckoff, Caritas, BQHC, St. Johns, and/or Mary Immaculate.