**K&L|GATES**

K&L Gates LLP
599 Lexington Avenue
New York, NY 10022-6030

T 212.536.3900   www.klgates.com

March 7, 2011

Walter P. Loughlin
D 212.536.4065
F 212.536.3901
walter.loughlin@klgates.com

Honorable Roanne L. Mann
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Ross University School of Medicine v. Brooklyn-Queens Health Care Inc. and Wyckoff Heights Medical Center*, No. 09 Civ. 1410 (KAM) (RLM)

Dear Judge Mann:

On behalf of Defendants in the above-captioned case, I write to oppose the application of Ross University School of Medicine ('Ross') for entry of a default judgment on the ground that Defendants failed to obey this Court's February 10, 2011 Order concerning discovery.

As the balance of this letter demonstrates, Defendants have complied in good faith with Ross's discovery demands and the Court's Order. More importantly, Ross's application fails to disclose the fact that Ross itself agreed to suspend discovery for a substantial part of the past year -- initially in March 2010, while the principals sought to negotiate a resolution of this matter, and later, in November 2010, while the parties sought to mediate this dispute.

Nonetheless, Defendants have produced over 4,000 pages of discovery materials in the past year, and are actively reviewing for responsiveness and privilege 35 GB of email communications and other electronically stored information. The expensive and time-consuming review of this material should be completed by March 11. We expect to begin producing the first 1,000 pages of this material on March 8 or 9.

The Discovery Process Interrupted by Two Separate Suspensions

This case was first commenced in April 2009. Although nearly two years have elapsed, and the pleadings have been amended twice, the issues in dispute are narrow -- whether BQHC breached agreements it entered into with Ross, and whether any such liability can be imposed on Wyckoff Heights Medical Center.

My firm and I first entered our appearance approximately one year ago, on February 22, 2010. Within two weeks, on March 10, 2010, we produced approximately 500 pages of discovery material.[1] Less than three weeks later, on or about March 29, 2010, counsel for Ross

---

[1] This production included: Consolidated Financial Statements for Wyckoff for 2006-08; BQHC Financial Statements for 2007-08; Wyckoff Board Meeting Minutes for January 2008-March 2009; BQHC Board Meeting Minutes for March 2008-January 2009; a list of BQHC and Wyckoff Board Members; BQHC Directors & Officers insurance policy documents; Wyckoff, BQHC, and other

K&L|GATES

Honorable Roanne L. Mann
March 7, 2011
Page 2

proposed a "hiatus" with respect to further work on the case while the principals for both parties sought to negotiate a resolution of the dispute.[2] The principals engaged in this process, which included exchanges of written proposals and a personal meeting, until the end of August 2010. No resolution was reached.

Shortly thereafter, in October 2010, counsel for Ross proposed that the parties explore whether a resolution could be reached through mediation. On or about November 10, 2010, while counsel were engaged in the process of identifying mutually acceptable mediators, Defendants produced an additional 3,200 pages of discovery.[3] The parties engaged in the mediation process in December 2010 and January 2011. During this period, another suspension of discovery occurred. As counsel advised the Court, there was "an understanding between counsel for both parties to focus on the selection of a mediator and protocol for mediation, and that during that process, to curtail the active litigation phase of the case, including the exchange of discovery materials." (Joint Request to Court, dated December 13, 2010).[4]

On December 14, 2010, after counsel advised the Court that a two-day mediation was scheduled for January 25-26, the Court instructed counsel to submit a report on the status of the mediation by February 4, 2010. Although I had anticipated that the February 4 report would be a joint undertaking by both counsel, and would focus solely on advising the Court on the progress and status of the mediation, counsel for Ross chose unilaterally to make a lengthy submission "from Plaintiff Ross University School of Medicine's ('Ross') perspective," burdening the Court with a substantial amount of email communication and other correspondence between counsel, and seeking to have the Court re-open fact discovery, order Defendants to produce additional documents and interrogatory answers within 14-21 days, and to extend the discovery cut-off an additional 60 days thereafter.

Clearly, Ross's goal in submitting this report was to obtain an extension of fact discovery. This present application for a default judgment is a transparent attempt to achieve the same goal.

Compliance with the Court's February 10 Order

By Order dated February 10, 2011, the Court responded to Ross's request by "reluctantly reopen[ing] fact discovery" until March 15, 2011, and instructing that "all outstanding discovery

---

corporate formation documents, certificates of incorporation, and by-laws; and various tracts and agreements between and related to BQHC, Wyckoff and Caritas.

[2] A copy of the March 29 email from Ross's counsel to Defendants' counsel proposing the hiatus is annexed to this letter.

[3] This production included the closing documents related to Caritas's acquisition of Mary Immaculate and St. John's Queens Hospitals; Caritas financing documentation and documents related to the sale of Caritas property.

[4] Ross advised the Court that "the parties agreed to defer pressing their positions on the discovery disputes and focus on the meditation." (Letter from Ross's counsel to Court, dated Feb. 4, 2011.)

K&L|GATES

Honorable Roanne L. Mann
March 7, 2011
Page 3

demands" be responded to by February 22, 2011. It is this Order which Ross contends Defendants have "failed to obey," within the meaning of Fed.R.Civ.P. 37(b)(2).

Counsel conferred by telephone within days of the Court's February 10 Order. In view of the fact that the Order provided only 12 days for responses to outstanding discovery, I expected Ross to identify the priority items it believed to be necessary. However, counsel for Ross continued to press for broad discovery spanning a substantial range of subject matters and custodians: "Plaintiff's bottom line remains that defendants should produce the documents requested and answer fully the interrogatories that were served." (Feb. 15, 2011 email communication from George J. Tzanetopolous to Walter P. Loughlin) Ross's counsel also pressed for email communications and other electronically stored information of nine named individuals, including two in-house lawyers, over a nearly four-year period.

On February 22, counsel for the Defendants produced hundreds of pages of additional documents, including corporate formation documents, minutes of Board of Directors meetings dating back to 2006, employment contracts, and inter-company agreements, and began the review of email and other electronically-stored information.

It is well-settled that "default judgments [are] the most severe sanctions which the Court may apply," and constitute a "harsh remedy to be utilized only in extreme situations." *Marfia v. T.C. Ziraat Bankasi, New York Branch,* 100 F.3d 243, 253 (2d Cir. 1996). The touchstones of conduct warranting a default include "willfulness, bad faith, or culpability." *Pennacchio v. Powers,* 2010 U.S. Dist. Lexis 99067, *17 (E.D.N.Y. 2010) (denying motion for default, despite a history of non-compliance with court orders and a prior warning of potential for default, because there was no evidence of bad faith).[5]

In sum, Ross's application must be viewed in the context of (1) Defendants' good faith compliance with its discovery demands, (2) Ross's agreements to suspend discovery in the past year, and (3) the extremely narrow issues at the heart of this litigation. Finally, because there is no evidence that Defendants or their counsel have engaged in egregious conduct justifying a default judgment, Ross's motion should be denied.

Respectfully submitted,

Walter P. Loughlin

cc: George J. Tzanetopolous, Esq.

Attachment

---

[5] The lone case cited by Ross, *United States Freight Co. v. Penn Cent. Transp. Co.,* 716 F.2d 954 (2d Cir. 1983), does not support the requested default. A default was entered in that case only after what the Court described as a "continuing saga of dilatory conduct on the part of Defendants with respect to this litigation."

## Loughlin, Walter P.

| | |
|---|---|
| **From:** | Ware, Michael O. [MWare@mayerbrown.com] |
| **Sent:** | Thursday, March 25, 2010 4:35 PM |
| **To:** | Loughlin, Walter P. |
| **Subject:** | Ross v. BQHC hiatus stipulation |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Red |
| **Attachments:** | 10-03-25 draft ltr stip re hiatus.docx |

Pat, how's this to implement the hiatus?

Michael Ware
Mayer Brown LLP
1675 Broadway
New York, N.Y. 10019
mware@mayerbrown.com
Tel. +1 212 506 2593
Fax +1 212 262 1910

---

IRS CIRCULAR 230 NOTICE. Any tax advice expressed above by Mayer Brown LLP was not intended or written to be used, and cannot be used, by any taxpayer to avoid U.S. federal tax penalties. If such advice was written or used to support the promotion or marketing of the matter addressed above, then each offeree should seek advice from an independent tax advisor.

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

MAYER·BROWN

Mayer Brown LLP
1675 Broadway
New York, New York 10019-5820

Main Tel +1 212 506 2500
Main Fax +1 212 262 1910
www.mayerbrown.com

**Michael O. Ware**
Direct Tel +1 212 506 2593
mware@mayerbrown.com

March ___, 2010

Walter P. Loughlin, Esq.
K&L Gates LLP
599 Lexington Ave.
New York, N.Y. 10022

Re: Ross Univ. v. BQHC

Dear Pat:

Please countersign below to confirm our agreement (a) that Ross's time to serve its discovery responses is extended through May 3, 2010; and (b) that, unless we agree otherwise in the meantime, on or before April 26, 2010, we will submit a scheduling motion in substantially the form of the markup I sent Justin Roeber on March 18. We'll revise the draft motion to set all dates approximately 30 days later and we'll mention the period for negotiations as an additional reason for which the scheduling adjustment is necessary.

Sincerely yours,


Michael O. Ware


Agreed:


_____
Walter P. Loughlin
*Attorney for defendants*