# Exhibit 1

# K&L|GATES

K&L Gates LLP
599 Lexington Avenue
New York, NY 10022-6030

T 212.536.3900    www.klgates.com

March 15, 2011

Walter P. Loughlin
D 212.536.4065
F 212.536.3901
walter.loughlin@klgates.com

**VIA FEDEX**

George Tzanetopoulos, Esq.
Baker & Hostetler LLP
191 North Wacker Drive
Chicago, IL 60601-1901

Re:    <u>Ross University v. Brooklyn Queens Health Care, et al., 09cv1410 (KAM)(RLM)</u>

Dear George:

Enclosed please find two CDs containing defendants Brooklyn Queens Health Care, Inc. and Wyckoff Heights Medical Center's supplemental document production. One disc contains documents bearing the bates numbers "BQHC 04006" through "BQHC 04246," and the other disc contains documents bearing the bates numbers "BQHC 04247" through "BQHC 12460."

The enclosed documents are responsive to a number of the categories from your First Request to BQHC for the Production of Documents, including: documents concerning donations received by BQHC during the Relevant Period; documents concerning the "397 Himrod" account; documents concerning audits or investigations of the BQHC companies during the Relevant Period; documents concerning DOH meetings, investigations, announcements, loans, analyses, evaluations, and assessments in March 2007; documents concerning services provided by three administrative services vendors; and documents concerning services provided by Reliance Globalcom. We have also included a series of documents reflecting payments due to or from Caritas and a copy of Deloitte's July 2007 report prepared for BQHC, Wyckoff, and Caritas.

Pursuant to our discussion with Judge Mann on Friday and your communication to me of today's date, this material is being produced subject to the Protective Order which we have agreed to submit to the Court.

We will produce additional non-privileged, responsive ESI material as soon as it becomes available.

NY-861770 v2

K&L|GATES

George Tzanetopoulus
March 15, 2011
Page 2

Sincerely yours,

Walter P. Loughlin

# K&L|GATES

K&L Gates LLP
599 Lexington Avenue
New York, NY  10022-6030

T  212.536.3900    www.klgates.com

March 22, 2011

Walter P. Loughlin
D 212.536.4065
F 212.536.3901
walter.loughlin@klgates.com

**VIA FEDEX**

George Tzanetopoulos, Esq.
Baker & Hostetler LLP
191 North Wacker Drive
Chicago, IL 60606-1901

Re:   Ross University v. Brooklyn Queens Health Care, et al., 09cv1410 (KAM)(RLM)

Dear George:

Enclosed please find one CD containing defendants Brooklyn Queens Health Care, Inc. and Wyckoff Heights Medical Center's supplemental document production. The disc contains documents bearing the bates numbers "BQHC 12461" through "BQHC 15550."

The enclosed documents are responsive to your requests for documents concerning services performed by FTI Cambio during the Relevant Period and contracts for such services. This material is being produced subject to the Protective Order entered by Judge Mann.

We will produce additional non-privileged, responsive ESI material as soon as it becomes available.

Sincerely yours,

*Walter P. Loughlin* /APB

Walter P. Loughlin

NY-863535 v1

# K&L|GATES

K&L Gates LLP
599 Lexington Avenue
New York, NY  10022-6030

T 212.536.3900    www.klgates.com

March 23, 2011

Anthony P. Badaracco
D 212.536.3973
F 212.536.3901
anthony.badaracco@klgates.com

**VIA FEDEX**

George Tzanetopoulos, Esq.
Baker & Hostetler LLP
191 North Wacker Drive
Chicago, IL 60606-1901

Re:    Ross University v. Brooklyn Queens Health Care, et al., 09cv1410 (KAM)(RLM)

Dear George:

Enclosed please find one CD containing a full version of defendants Brooklyn Queens Health Care, Inc. and Wyckoff Heights Medical Center's supplemental document production originally made on March 15, 2011. The disc contains documents bearing the bates numbers "BQHC 04247" through "BQHC 12460." On March 15, 2011, we produced documents bearing the same bates numbers but with several native format files inadvertently omitted; this CD contains all of the files you received on March 16, 2011 with the native format files included.

Sincerely yours,

Anthony P. Badaracco

NY-864682 v1

# K&L|GATES

K&L Gates LLP
599 Lexington Avenue
New York, NY 10022-6030

T 212.536.3900   www.klgates.com

March 25, 2011

Anthony P. Badaracco
D 212.536.3973
F 212.536.3901
anthony.badaracco@klgates.com

**By PDF and FedEx**

George Tzanetopoulos, Esq.
Baker & Hostetler LLP
191 North Wacker Drive
Chicago, IL 60606-1901

Re:   Ross University v. Brooklyn Queens Health Care, et al., 09cv1410 (KAM)(RLM)

Dear George:

Enclosed please find two discs containing defendants Brooklyn Queens Health Care, Inc. and Wyckoff Heights Medical Center's supplemental document production. One disc contains documents bearing the bates numbers "BQHC 15551" through "BQHC 51449." The second disc contains documents bearing the bates numbers "BQHC 51450" through "BQHC 51779." The enclosed documents are responsive to your requests for documents concerning Ross University, clerkships provided at Wyckoff Heights Medical Center and the Caritas hospitals, financial statements and ledgers kept by the defendants, contracts signed by the individuals named in your requests, and transfers of senior employees between Wyckoff Heights Medical Center and the Caritas hospitals, among others.

Please be in touch if you have any questions.

Sincerely yours,

Anthony P. Badaracco

NY-865841 v1

# K&L|GATES

K&L Gates LLP
599 Lexington Avenue
New York, NY  10022-6030

T 212.536.3900      www.klgates.com

April 12, 2011

Anthony P. Badaracco
D 212.536.3973
F 212.536.3901
anthony.badaracco@klgates.com

**By PDF and FedEx**

George Tzanetopoulos, Esq.
Baker & Hostetler LLP
191 North Wacker Drive
Chicago, IL 60606-1901

Re:   Ross University v. Brooklyn Queens Health Care, et al., 09-cv-1410 (KAM)(RLM)

Dear George:

Enclosed please find one disc containing defendants Brooklyn Queens Health Care, Inc. ("BQHC") and Wyckoff Heights Medical Center ("Wyckoff")'s supplemental document production. The disc contains documents bearing the bates numbers "BQHC 51780" through "BQHC 52025."

The first set of documents, bearing the bates numbers "BQHC 51780" through "BQHC 51810," contains minutes from BQHC Board of Trustees meetings. We recently discovered that our earlier productions did not include minutes from these particular meetings; these documents complete the set of minutes in our possession.

The second set of documents, bearing the bates numbers "BQHC 51811" through "BQHC 52025," includes minutes from Caritas Health Care, Inc. ("Caritas") Board of Trustees meetings, audited Caritas financial statements, and a document filed in the Caritas bankruptcy proceedings that reflects all Caritas interests in real property. These documents are responsive to requests contained in your March 29, 2011 subpoena to Caritas. While we do not represent Caritas, which is not a defendant in this action, we are producing Caritas documents responsive to your requests that are accessible to our clients, BQHC and Wyckoff, in order to facilitate the discovery process.

Please be in touch if you have any questions.

Sincerely yours,

Anthony P. Badaracco

# Exhibit 2

## Tzanetopoulos, George J.

**From:**    Tzanetopoulos, George J.
**Sent:**    Friday, March 25, 2011 12:55 PM
**To:**      Loughlin, Walter P.; Roeber, Justin H.
**Subject:** RE: Ross v. BQHC

Pat:

I am sorry to hear about your injury.  I hope that all is going as well as it can.  I am glad that you got your mountain climbing in last year.

Let's find a time to talk early next week.  I disagree with much that you have said about the plaintiff's requests, but we can take that up if it matters.

What is of present concern is that Judge Mann set the new discovery cutoff in place following your indication that we would have the ESI on March 14th.  What has come in has come in later than that and the production still is not complete.  So, our time to review the material and get ready for the remainder of the necessary discovery is again getting cut short.

I can be available any time on Monday that works for you and/or Justin and on Tuesday before 3:30 central / 4:30 eastern.  Please let me know what works for you.

Best regards,
George Tzanetopoulos

> **From:** Loughlin, Walter P. [mailto:Walter.Loughlin@klgates.com]
> **Sent:** Friday, March 25, 2011 11:59 AM
> **To:** Tzanetopoulos, George J.; Roeber, Justin H.
> **Subject:** Re: Ross v. BQHC
>
> George: I was in a car accident last weekend and managed to break a bone in my foot. I will be on crutches for a couple months and have a doctor's appointment this afternoon that will keep me from getting on a call this afternoon. But isn't a call today premature? I said in our call with Judge Mann that I would respond to your second request in two weeks. That call was two weeks ago today. We have more esi to produce shortly. We will respond to your second request today. Much of what you have asked for seems either duplicative of prior requests, irrelevant to your claims and our defenses, or material clearly in your own possession. We will be producing some responsive material and otherwise making material available. Why don't you wait to see our response, which will go out today, and then we can confer early next week about whether you have issues, and if you do, you can bring any such issues to Judge Mann's attention in a motion to compel if we are not able to resolve things among ourselves. Pat
> Walter P. Loughlin
> K & L Gates
> 599 Lexington Avenue
> New York, New York 10022
> 212 536-4065 (o)
> 917 251-5574 (cell)
> walter.loughlin@klgates.com

4/18/2011

**From:** Tzanetopoulos, George J. [mailto:gtzanetopoulos@bakerlaw.com]
**Sent:** Friday, March 25, 2011 12:37 PM
**To:** Loughlin, Walter P.; Roeber, Justin H.
**Subject:** RE: Ross v. BQHC

Pat and Justin:

I still have not heard back from you about a call today to discuss defendants' production. I believe that Judge Mann's order requires us to report in on any disagreements/outstanding issues next week. Is there a time today that works for you?

Thanks.
George Tzanetopoulos

**From:** Tzanetopoulos, George J.
**Sent:** Wednesday, March 23, 2011 4:35 PM
**To:** Loughlin, Walter P.; Roeber, Justin H.
**Subject:** Ross v. BQHC

Pat and Justin:

We received from you on March16[th] and again today disks with defendants' ESI production. Pat's cover letter for today's production indicates that there is more to come. We have been in the process of reviewing the material and there appear to be some important missing items (although perhaps some of those items are in the material yet to be produced). However, one consistent set of missing records appears to be an error by the vendor that made the disks for you. For quite a few of the email attachments, the files produced to us simply have one page markers to indicate that the actual attachment is being produced in native format, but the native format documents were not in fact included in the disks (this typically appears to be the case when there is an Excel spreadsheet attachment). I have attached a list of the bates numbers for those missing attachments that were flagged by such markers. Please have your vendor forward them as soon as possible.

I would appreciate setting a time on Friday, March 25th for a call with either or both of you to discuss where things stand. Please let me know what time on Friday works for you. I can make myself available at your convenience.

Best regards,
George Tzanetopoulos

**My Bio** | **Web site** | **V-card**

T 312.416.6225         **George J. Tzanetopoulos**
F 312.416.6265         gtzanetopoulos@bakerlaw.com

**www.bakerlaw.com**

                      Baker & Hostetler LLP

4/18/2011

191 North Wacker Drive
Chicago, Illinois 60606-1901



--------------------------------------------

IRS Circular 230 Disclosure:

To ensure compliance with requirements imposed by the IRS in Circular 230, we
inform you that, unless we expressly state otherwise in this communication
(including any attachments), any tax advice contained in this communication is
not intended or written to be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing
or recommending to another party any transaction or other matter addressed
herein.

--------------------------------------------

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

This electronic message contains information from the law firm of K&L Gates LLP.  The contents may be
privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not
an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this
message is prohibited.  If you have received this e-mail in error, please contact me at
Walter.Loughlin@klgates.com.

4/18/2011

## Tzanetopoulos, George J.

**From:** Tzanetopoulos, George J.
**Sent:** Thursday, April 07, 2011 9:24 AM
**To:** Roeber, Justin H.; Loughlin, Walter P.
**Subject:** Ross v. BQHC

Pat and Justin:

I write to confirm our conversation of Tuesday regarding defendants' response to Ross' Second Request for Production of Documents.

As to Requests 1-4, the documents should be produced. They plainly relate to plaintiff's claim for specific performance as well as defendants' "lack of authority" defense. To the extent that defendants have concerns about competitive information in any of the documents, I offered to accept production (at least initially) subject to an "attorneys' eyes only" protective order.

As to Requests 5-20 and 26-32, you stated that defendants would not withhold any documents based on the stated objections and would produced all of the requested documents.

As to Request 21, you stated that defendants' position was the loan referenced in the affidavit that Mr. Lavan submitted in the bankruptcy proceedings was a loan between Wyckoff and Caritas, and that Mr. Lavan's statement that the loan was between BQHC and Caritas was erroneous. You also stated that you will produce documents related to the loan between Wyckoff and Caritas.

As to Requests 22-24, I noted that defendants' position that I could travel to New York and "inspect" the requested board packages, but not have copies was improper. There is a protective order in place and the documents should be produced. You said that you would reconsider your position and get back to me.

As to Request 35, I noted that there is substantial evidence that funds of Caritas and/or Wyckoff were used to pay debts of the other. The bank records are, perhaps, the best proof of those facts and, at a minimum, clearly relevant to the subject matters at issue. They should be produced. You said that you would consider defendants' position and get back to me.

I also noted that our review of the documents produced by defendants to date shows that a number of documents referenced in what was produced are missing. We have earlier provided lists identifying some of those documents. We will get a list to you of more missing documents that we have identified. We request that all missing documents be produce promptly.

As I noted, we do need to bring any disputes to the Court's attention promptly. Accordingly, I request that you get back to me with the defendants' position on the open items no later than Monday.

Thank you.

Best regards,
George Tzanetopoulos

**Tzanetopoulos, George J.**

| | |
|---|---|
| **From:** | Tzanetopoulos, George J. |
| **Sent:** | Tuesday, April 12, 2011 10:44 AM |
| **To:** | 'Roeber, Justin H.'; 'Loughlin, Walter P.' |
| **Subject:** | RE: Ross v. BQHC |

Gentlemen:

I still have not heard from you about the items that during our phone conversation of April 5th you said that you were going to reconsider. Please let me know where defendants stand on these issues so that we can get before the Court with respect to any areas of disagreement. Thanks.

Best regards,
George Tzanetopoulos

> **From:** Tzanetopoulos, George J.
> **Sent:** Thursday, April 07, 2011 9:24 AM
> **To:** Roeber, Justin H.; Loughlin, Walter P.
> **Subject:** Ross v. BQHC
>
> Pat and Justin:
>
> I write to confirm our conversation of Tuesday regarding defendants' response to Ross' Second Request for Production of Documents.
>
> As to Requests 1-4, the documents should be produced. They plainly relate to plaintiff's claim for specific performance as well as defendants' "lack of authority" defense. To the extent that defendants have concerns about competitive information in any of the documents, I offered to accept production (at least initially) subject to an "attorneys' eyes only" protective order.
>
> As to Requests 5-20 and 26-32, you stated that defendants would not withhold any documents based on the stated objections and would produced all of the requested documents.
>
> As to Request 21, you stated that defendants' position was the loan referenced in the affidavit that Mr. Lavan submitted in the bankruptcy proceedings was a loan between Wyckoff and Caritas, and that Mr. Lavan's statement that the loan was between BQHC and Caritas was erroneous. You also stated that you will produce documents related to the loan between Wyckoff and Caritas.
>
> As to Requests 22-24, I noted that defendants' position that I could travel to New York and "inspect" the requested board packages, but not have copies was improper. There is a protective order in place and the documents should be produced. You said that you would reconsider your position and get back to me.
>
> As to Request 35, I noted that there is substantial evidence that funds of Caritas and/or Wyckoff were used to pay debts of the other. The bank records are, perhaps, the best proof of those facts and, at a minimum, clearly relevant to the subject matters at issue. They should be produced. You said that you would consider defendants' position and get back to me.

I also noted that our review of the documents produced by defendants to date shows that a number of documents referenced in what was produced are missing. We have earlier provided lists identifying some of those documents. We will get a list to you of more missing documents that we have identified. We request that all missing documents be produce promptly.

As I noted, we do need to bring any disputes to the Court's attention promptly. Accordingly, I request that you get back to me with the defendants' position on the open items no later than Monday.

Thank you.

Best regards,
George Tzanetopoulos

## Tzanetopoulos, George J.

| | |
|---|---|
| **From:** | Tzanetopoulos, George J. |
| **Sent:** | Monday, April 04, 2011 5:09 PM |
| **To:** | Loughlin, Walter P. |
| **Cc:** | Roeber, Justin H.; Badaracco, Anthony P. |
| **Subject:** | RE: Ross v. BQHC |

10:30 central / 11:30 eastern would work for me.

---

**From:** Loughlin, Walter P. [mailto:Walter.Loughlin@klgates.com]
**Sent:** Monday, April 04, 2011 5:07 PM
**To:** Tzanetopoulos, George J.
**Cc:** Roeber, Justin H.; Badaracco, Anthony P.
**Subject:** Re: Ross v. BQHC

George: How about sometime Tues (tomorow) morning? You pick. Pat

Walter P. Loughlin
K & L Gates
599 Lexington Avenue
New York, New York 10022
212 536-4065 (o)
917 251-5574 (cell)
walter.loughlin@klgates.com


**From:** Tzanetopoulos, George J. [mailto:gtzanetopoulos@bakerlaw.com]
**Sent:** Monday, April 04, 2011 10:49 AM
**To:** Loughlin, Walter P.
**Subject:** Ross v. BQHC

Pat:

     I have passed along your most recent offer to Ross.  The folks there are working on it.  On another front, there are a number of discovery issues that remain outstanding.  Please let me know when today or tomorrow you would be available to discuss them?

     Thanks.

Best regards,
George Tzanetopoulos

**My Bio  |  Web site  |  V-card**

T 312.416.6225
F 312.416.6265

**George J. Tzanetopoulos**
gtzanetopoulos@bakerlaw.com

**www.bakerlaw.com**

Baker & Hostetler LLP

4/18/2011

191 North Wacker Drive
Chicago, Illinois 60606-1901



-----------------------------------------

IRS Circular 230 Disclosure:

To ensure compliance with requirements imposed by the IRS in Circular 230, we inform
you that, unless we expressly state otherwise in this communication (including any
attachments), any tax advice contained in this communication is not intended or written
to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal
Revenue Code or (ii) promoting, marketing or recommending to another party any
transaction or other matter addressed herein.

-----------------------------------------

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

This electronic message contains information from the law firm of K&L Gates LLP.  The contents may be
privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not
an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this
message is prohibited.  If you have received this e-mail in error, please contact me at
Walter.Loughlin@klgates.com.

## Tzanetopoulos, George J.

| | |
|---|---|
| **From:** | Roeber, Justin H. [Justin.Roeber@klgates.com] |
| **Sent:** | Tuesday, April 12, 2011 4:56 PM |
| **To:** | Loughlin, Walter P.; Tzanetopoulos, George J. |
| **Cc:** | Badaracco, Anthony P. |
| **Subject:** | RE: Ross v. BQHC |
| **Attachments:** | 4-12-11 discovery response to George Tzanetopoulos.pdf |

George,

Please see the attached letter.

Justin

**Justin Roeber**
**K&L Gates LLP** 599 Lexington Ave. New York, NY 10022-6030
p: (212) 536-4837 f: (212) 536-3901 e: justin.roeber@klgates.com

---

**From:** Loughlin, Walter P.
**Sent:** Tuesday, April 12, 2011 1:19 PM
**To:** 'gtzanetopoulos@bakerlaw.com'; Roeber, Justin H.
**Subject:** Re: Ross v. BQHC

Just digging out the last bit of information. I will be able to respond this afternoon.
Walter P. Loughlin
K & L Gates
599 Lexington Avenue
New York, New York 10022
212 536-4065 (o)
917 251-5574 (cell)
walter.loughlin@klgates.com

---

**From:** Tzanetopoulos, George J. [mailto:gtzanetopoulos@bakerlaw.com]
**Sent:** Tuesday, April 12, 2011 11:43 AM
**To:** Roeber, Justin H.; Loughlin, Walter P.
**Subject:** RE: Ross v. BQHC

Gentlemen:

I still have not heard from you about the items that during our phone conversation of April 5th you said that you were going to reconsider. Please let me know where defendants stand on these issues so that we can get before the Court with respect to any areas of disagreement. Thanks.

Best regards,
George Tzanetopoulos

---

**From:** Tzanetopoulos, George J.
**Sent:** Thursday, April 07, 2011 9:24 AM
**To:** Roeber, Justin H.; Loughlin, Walter P.
**Subject:** Ross v. BQHC

Pat and Justin:

I write to confirm our conversation of Tuesday regarding defendants' response to Ross' Second Request for Production of Documents.

As to Requests 1-4, the documents should be produced. They plainly relate to plaintiff's claim for specific performance as well as defendants' "lack of authority" defense. To the extent that defendants have concerns about competitive information in any of the documents, I offered to accept production (at least initially) subject to an "attorneys' eyes only" protective order.

As to Requests 5-20 and 26-32, you stated that defendants would not withhold any documents based on the stated objections and would produced all of the requested documents.

As to Request 21, you stated that defendants' position was the loan referenced in the affidavit that Mr. Lavan submitted in the bankruptcy proceedings was a loan between Wyckoff and Caritas, and that Mr. Lavan's statement that the loan was between BQHC and Caritas was erroneous. You also stated that you will produce documents related to the loan between Wyckoff and Caritas.

As to Requests 22-24, I noted that defendants' position that I could travel to New York and "inspect" the requested board packages, but not have copies was improper. There is a protective order in place and the documents should be produced. You said that you would reconsider your position and get back to me.

As to Request 35, I noted that there is substantial evidence that funds of Caritas and/or Wyckoff were used to pay debts of the other. The bank records are, perhaps, the best proof of those facts and, at a minimum, clearly relevant to the subject matters at issue. They should be produced. You said that you would consider defendants' position and get back to me.

I also noted that our review of the documents produced by defendants to date shows that a number of documents referenced in what was produced are missing. We have earlier provided lists identifying some of those documents. We will get a list to you of more missing documents that we have identified. We request that all missing documents be produce promptly.

As I noted, we do need to bring any disputes to the Court's attention promptly. Accordingly, I request that you get back to me with the defendants' position on the open items no later than Monday.

Thank you.

Best regards,

George Tzanetopoulos

---

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

This electronic message contains information from the law firm of K&L Gates LLP.  The contents may be
privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an
intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is
prohibited.  If you have received this e-mail in error, please contact me at Justin.Roeber@klgates.com.

4/18/2011

K&L | GATES

K&L Gates LLP
599 Lexington Avenue
New York, NY  10022-6030

T 212.536.3900    www.klgates.com

April 12, 2011

Walter P. Loughlin
D 212.536.4065
F 212.536.3901
walter.loughlin@klgates.com

**By PDF and FedEx**

George J. Tzanetopolous, Esq.
Baker & Hostetler LLP
191 North Wacker Drive
Chicago, IL  60601-1901

Re:   Ross University v. Brooklyn-Queens Health Care, et al,
      09-cv-1410 (KAM) (RLM)

Dear George:

This will respond to the discovery issues identified in your e-mail of April 7, 2011, following our telephone conversation on the same subject on April 5, 2011.

Requests 1-2

You have requested contracts between Wyckoff Heights Medical Center ("Wyckoff") and other medical schools on the ground that such information is needed to determine the capacity of Wyckoff to accommodate medical student clerkships, as well as Ross's requested relief of specific performance.  You have acknowledged the business sensitivity of Wyckoff providing Ross with the terms of its agreements with competitors of Ross.  Although you have suggested that the contracts and related materials be provided on an "attorney's eyes only" basis, neither my clients nor I am comfortable with the risk of disclosure of such information, even by parties acting on complete good faith.  Nor does it seem appropriate to saddle you with the burden of information which cannot be shared with your client.

As an alternative, I propose that Wyckoff furnish an Interrogatory answer, certified as to its accuracy, and verifiable through examination at a deposition, setting forth information about clerkship or rotation capacity.

Requests 3-4

You have requested documents relating to any policies of Wyckoff concerning the number of medical students to whom Wyckoff can provide clinical clerkship rotations at a given time, as well as quality and/or educational standards at Wyckoff for medical student clinical clerkship rotations.  There are no documents responsive to these requests.

# K&L|GATES

George J. Tzanetopolous
April 12, 2011
Page 2

Requests 5-12

    I am advised that, with respect to the contracts signed by specific persons, the responsive contracts have been produced.

Request 21

    With respect to the request for documents related to a purported loan between Brooklyn-Queens Health Care, Inc. ("BQHC") and Caritas Health Care, Inc. ("Caritas") reflected in a statement by John Lavan in Caritas's bankruptcy files, I have been advised that there was no single transaction in the amount suggested by Mr. Lavan's statement. Rather, as we discussed on the phone on April 5, that amount represents an aggregate approximation of loans that Wyckoff made to Caritas early in Caritas's existence. As you know, BQHC has never had the capacity to make loans, nor even its own bank accounts. Of course, we have already produced the "due to/due from" documents, which reflect all loans and transfers between Wyckoff and Caritas.

Request 22-24

    With respect to Wyckoff and BQHC board packages, they are available for inspection and copying at Wyckoff. My clients do not have ready access to any Caritas board packages. Pursuant to an Order entered by the Bankruptcy Court, Caritas's records are maintained in a document repository in Cincinnati, Ohio. Apart from the limited number of Caritas documents which were retained in Brooklyn, the production of which we have facilitated for the mutual convenience of Ross and my client, other Caritas documents will have to be obtained through the Proskauer firm, to whom the Caritas subpoena has been referred. If you are interested in pursuing additional Caritas documents, please let me know and I will put you in touch with the appropriate attorneys at Proskauer.

Request 35

    Finally, you seek Wyckoff's bank account records on the ground that a document identified as a January 13, 2009 memorandum of John Kastanis to state Senator Malcolm Smith amounts to "substantial evidence" that funds of Caritas and/or Wyckoff were used to pay the debts of the other. I have reviewed the memorandum and can find none of the evidence, substantial or otherwise, to which you refer. Even if such evidence existed, a point I do not concede for a moment, Wyckoff's bank account statements would not be relevant one way or the other.

K&L|GATES

George J. Tzanetopolous
April 12, 2011
Page 3

As you know, we continue to provide additional documents as they become available to us. At last count, despite the narrowness of the issues reflected in your Complaint, we have now produced over 52,000 pages of documents.

Sincerely yours,

Walter P. Loughlin

**Tzanetopoulos, George J.**

---

| | |
|---|---|
| **From:** | Loughlin, Walter P. [Walter.Loughlin@klgates.com] |
| **Sent:** | Thursday, April 21, 2011 10:36 AM |
| **To:** | Tzanetopoulos, George J. |
| **Cc:** | Roeber, Justin H. |
| **Subject:** | Re: Ross v. BQHC |

Dear George: As I indicated in our telephone conversation yesterday, I will confer with my client about these discovery issues, and your proposed 60-day extension of the current discovery cut-off date, and come back to you as soon as I can. As I said yesterday, I will not consent to any adjournment if the additional time is used by you to serve additional document discovery requests. Any additional time should be used to absorb the documents already produced and prepare for and take depositions. In the interim, however, I wanted to respond immediately to your email about the board package issue. We responded some time ago to your request for such documents by offering inspection and copying of these documents. This is the first I have heard that you regard this proposal--which you did not even mention in our call yesterday-- as some sort of gamesmanship on our part.

Setting that to one side, since such disparagement of motives is not productive, your statement that your colleague, in conversation with Justin Roeber, requested that the board packages be copied and the copies sent to you is wrong. There were two conversations. In the first, your colleague told Mr. Roeber that she wanted to know the volume of the materials so she could assess whether she wanted to come to inspect and copy them. Mr. Roeber found out the information, and called your colleague to report in the second conversation that there were approximately 4,000 pages of documents in up to 30 binders. That is where things were left. Pat

Walter P. Loughlin
K & L Gates
599 Lexington Avenue
New York, New York 10022
212 536-4065 (o)
917 251-5574 (cell)
walter.loughlin@klgates.com

---

**From:** Tzanetopoulos, George J. [mailto:gtzanetopoulos@bakerlaw.com]
**Sent:** Wednesday, April 20, 2011 09:36 PM
**To:** Loughlin, Walter P.
**Subject:** Ross v. BQHC

Pat:

To follow up on our conversation this afternoon:

As to plaintiff's Document Requests Nos. 1 and 2, the documents are plainly relevant, the protective order that I proposed addresses any of defendants' legitimate concerns, and your proposal that plaintiff rely on defendants' response to an interrogatory without production of the underlying documents that contain the information is not acceptable.  We reiterate our request for the documents.

As to plaintiff's Document Requests Nos. 22-24, the suggestion that I (or one of my colleagues) must come to Wyckoff to inspect the records is pure gamesmanship.  Your colleague, Justin Roeber,

confirmed to my colleague, Gillian Whittlesey, that there are only 4,000 pages of these documents. Ms. Whittlesey asked Mr. Roeber to simply have the documents copied and forwarded to us. We reiterate that request.

As to plaintiff's Document Requests Nos. 35, there is substantial evidence that funds were used interchangeably among entities whose corporate separateness defendants assert in response to plaintiff's piercing claims. The bank records are clearly relevant evidence in those claims.

You stated that you would review these matters with your client and get back to me with defendants' position. Please do so as soon as possible.

Best regards,
George Tzanetopoulos

My Bio | Web site | V-card

T 312.416.6225
F 312.416.6265

www.bakerlaw.com

George J. Tzanetopoulos
gtzanetopoulos@bakerlaw.com

Baker & Hostetler LLP
191 North Wacker Drive
Chicago, Illinois 60606-1901



-----------------------------------------

IRS Circular 230 Disclosure:

To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that, unless we expressly state otherwise in this communication (including any attachments), any tax advice contained in this communication is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or other matter addressed herein.

-----------------------------------------

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result

4/22/2011

of e-mail transmission.

This electronic message contains information from the law firm of K&L Gates LLP.  The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited.  If you have received this e-mail in error, please contact me at Walter.Loughlin@klgates.com.

**Tzanetopoulos, George J.**

---

**From:** Loughlin, Walter P. [Walter.Loughlin@klgates.com]
**Sent:** Monday, April 25, 2011 7:17 AM
**To:** Tzanetopoulos, George J.
**Cc:** Roeber, Justin H.
**Subject:** Re: Ross v. BQHC

George: I was able to speak to my client on Friday. I will write to you this morning setting forth our position on the issues you have raised. Justin Roeber reports that he did not receive the voice mail to which you refer. Be that as it may, I understand your position on the production of the board packages. Pat
Walter P. Loughlin
K & L Gates
599 Lexington Avenue
New York, New York 10022
212 536-4065 (o)
917 251-5574 (cell)
walter.loughlin@klgates.com

---

**From:** Tzanetopoulos, George J. [mailto:gtzanetopoulos@bakerlaw.com]
**Sent:** Friday, April 22, 2011 03:12 PM
**To:** Loughlin, Walter P.
**Cc:** Roeber, Justin H.
**Subject:** RE: Ross v. BQHC

Pat:

    I certainly understand your wish to consult with your client about the outstanding discovery issues and extension. Nonetheless, we are overdue in raising unresolved discovery disputes with Judge Mann. I believe that we should contact the Court on Monday to note the disputes that remain and inform the Court of plaintiff's request for the extension. If we can do that with all issues joined, that would be best. If not, I intended to write to Judge Mann Monday afternoon to make our extension request and note that there are discovery disputes that remain outstanding that may or may not be resolved between the parties.

    As to the discovery extension, unless the documents produced by defendants raise other issues, we do not at the moment anticipate issuing further requests to defendants. However, as I noted during our call, the documents that we have reviewed to date indicate the existence of documents that were requested, but not produced. As I also indicated, we are double checking defendants' production to be sure that we did not miss them in our review. As to those documents, we will send along a list of what appears to be missing and request that those records be produced.

    On the board packages, I do not impugn motives, but do disagree with you. Throughout this case, both sides have produced (either via email or disk) the documents that were not withheld pursuant to privilege or objection. Defendants' response to plaintiff's second request for production took a different tack with the board packages and proposed only to make them available for inspection. During

the call that you, Justin Roeber, and I had on April 5, 2011, I raised the issue and asked that the documents be produced.  My confirming email to you and Justin of April 7, 2011 noted the issue and asked that you simply produce the records.  Ms. Whittlesey informs me that after the two telephone conversations to which your note refers, she left a message for Justin asking that the documents be sent to us.  The bottom line again is our request that you simply forward those documents, as both sides have done with the other documents in this case.

Best regards,
George Tzanetopoulos

---

**From:** Loughlin, Walter P. [mailto:Walter.Loughlin@klgates.com]
**Sent:** Thursday, April 21, 2011 10:36 AM
**To:** Tzanetopoulos, George J.
**Cc:** Roeber, Justin H.
**Subject:** Re: Ross v. BQHC

Dear George: As I indicated in our telephone conversation yesterday, I will confer with my client about these discovery issues, and your proposed 60-day extension of the current discovery cut-off date, and come back to you as soon as I can. As I said yesterday, I will not consent to any adjournment if the additional time is used by you to serve additional document discovery requests. Any additional time should be used to absorb the documents already produced and prepare for and take depositions. In the interim, however, I wanted to respond immediately to your email about the board package issue. We responded some time ago to your request for such documents by offering inspection and copying of these documents. This is the first I have heard that you regard this proposal--which you did not even mention in our call yesterday-- as some sort of gamesmanship on our part.
Setting that to one side, since such disparagement of motives is not productive, your statement that your colleague, in conversation with Justin Roeber, requested that the board packages be copied and the copies sent to you is wrong. There were two conversations. In the first, your colleague told Mr. Roeber that she wanted to know the volume of the materials so she could assess whether she wanted to come to inspect and copy them. Mr. Roeber found out the information, and called your colleague to report in the second conversation that there were approximately 4,000 pages of documents in up to 30 binders. That is where things were left. Pat
Walter P. Loughlin
K & L Gates
599 Lexington Avenue
New York, New York 10022
212 536-4065 (o)
917 251-5574 (cell)
walter.loughlin@klgates.com

---

**From:** Tzanetopoulos, George J. [mailto:gtzanetopoulos@bakerlaw.com]
**Sent:** Wednesday, April 20, 2011 09:36 PM
**To:** Loughlin, Walter P.
**Subject:** Ross v. BQHC

Pat:

To follow up on our conversation this afternoon:

As to plaintiff's Document Requests Nos. 1 and 2, the documents are plainly relevant, the protective order that I proposed addresses any of defendants' legitimate concerns, and your proposal that plaintiff rely on defendants' response to an interrogatory without production of the underlying documents that contain the information is not acceptable. We reiterate our request for the documents.

As to plaintiff's Document Requests Nos. 22-24, the suggestion that I (or one of my colleagues) must come to Wyckoff to inspect the records is pure gamesmanship. Your colleague, Justin Roeber, confirmed to my colleague, Gillian Whittlesey, that there are only 4,000 pages of these documents. Ms. Whittlesey asked Mr. Roeber to simply have the documents copied and forwarded to us. We reiterate that request.

As to plaintiff's Document Requests Nos. 35, there is substantial evidence that funds were used interchangeably among entities whose corporate separateness defendants assert in response to plaintiff's piercing claims. The bank records are clearly relevant evidence in those claims.

You stated that you would review these matters with your client and get back to me with defendants' position. Please do so as soon as possible.

Best regards,
George Tzanetopoulos

**My Bio  |  Web site  |  V-card**

T 312.416.6225
F 312.416.6265

www.bakerlaw.com

George J. Tzanetopoulos
gtzanetopoulos@bakerlaw.com

Baker & Hostetler LLP
191 North Wacker Drive
Chicago, Illinois 60606-1901



---------------------------------------------

IRS Circular 230 Disclosure:

To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that, unless we expressly state otherwise in this communication (including any attachments), any tax advice contained in this communication is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or other matter addressed herein.

---------------------------------------------

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

This electronic message contains information from the law firm of K&L Gates LLP.  The contents may be
privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not
an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this
message is prohibited.  If you have received this e-mail in error, please contact me at
Walter.Loughlin@klgates.com.

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

4/25/2011

# K&L|GATES

K&L Gates LLP
599 Lexington Avenue
New York, NY 10022-6030

T 212.536.3900    www.klgates.com

April 25, 2011

Walter P. Loughlin
D 212.536.4065
F 212.536.3901
walter.loughlin@klgates.com

George J. Tzanetopolous, Esq.
Baker & Hostetler LLP
191 North Wacker Drive
Chicago, IL 60601-1901

Re:    Ross University v. Brooklyn-Queens Health Care, et al,
       09-cv-1410 (KAM) (RLM)

Dear George:

I write to set forth the defendants' position with respect to the issues you recently raised.

First, you have asked us to consent to an application you intend to make to Judge Mann for a further 60-day extension of the current fact discovery cut-off. I recognize that it would be very difficult for the parties to absorb the documents produced by both sides, prepare for and take and defend depositions in the next few weeks (especially since we received thousands of pages of material from you just a few days ago).

However, as I have already stated to you, the defense opposes any request for an extension if that extension will be used by the plaintiff to serve further demands for document discovery. This case is over two years old. Judge Mann has already "reluctantly" agreed to an extension and subsequently granted a further extension in response to your default motion. My clients have already produced a massive amount of document discovery on the very narrow issues in this case, at great cost and disruption to the operations of a non-profit hospital serving a primarily disadvantaged patient population. After two years of discovery and the production of more than 50,000 pages of material by the defendants, document discovery should come to an end.

You have stated, in response, that you "do not at the moment anticipate further requests" for document discovery. That statement provides rather cold comfort. The defendants will consent to your request for an extension of fact discovery on the condition that plaintiff serves no further requests for discovery during that extension. Obviously, this proviso would not apply to issues with respect to the completeness of any outstanding requests for document production.

Second, you seek all contracts and related documents with respect to contracts entered into by defendants for the provision of clinical clerkships for other medical schools at

# K&L|GATES

George J. Tzanetopolous
April 25, 2011
Page 2

Wyckoff over the four-year period between April 6, 2009 and January 31, 2013. You have stated that this production is relevant to your claim for the equitable relief of specific performance, i.e., requiring Wyckoff to provide clerkships for which Ross pre-paid Caritas, and which Caritas ceased to provide upon its February 2009 bankruptcy. Indeed, you have even suggested that you need these contracts in order to ask the Court to require Wyckoff to repudiate such contracts in order to make clerkships available to Ross students — beyond the large number of Ross students currently being trained at Wyckoff pursuant to long-standing arrangements not at issue in this litigation.

You have acknowledged the business sensitivity of disclosing to Ross the specific terms of contracts between Wyckoff and its competitors, and have proposed that the contracts be produced to you on an "attorney's eyes only" basis without disclosure of their contents to your client or its parent company.

Because the key issue with respect to your specific performance claim turns on the capacity of Wyckoff to provide clerkships at the time the Court entertains your request for the equitable relief of specific performance, the actual contracts are not necessary. Balancing the sensitivity of these matters against your purported need to establish Wyckoff's ability, at some future date, to provide clerkships to Ross as a matter of specific performance, I have offered to provide an Interrogatory Answer that would set forth the capacity information, including increases in capacity as current contracts expire, as to which you could take sworn testimony from Wyckoff management in depositions to verify this information. This seems an appropriate balancing of the relevant interests.

Third, you have requested board packages circulated to the Boards of Trustees of Wyckoff and BQHC. Unlike much of the discovery already produced, which was stored electronically, this material comprises thousands of pages contained in approximately 30 three-ring binders. The defendants' position is that this material is of such limited relevance and so duplicative of what has already been produced, including the minutes of meetings of these boards, and would require such expense and inconvenience to produce, at the risk of disrupting the defendants' medical operations, that it would be more sensible for plaintiff's counsel to inspect these materials and choose what portions of them it wishes to have copied. That remains our position.

Finally, you seek bank statements of Wyckoff. You have stated that you believe such bank statements will provide evidentiary support for your allegation that "in all meaningful respects, Wyckoff controlled and controls BQHC," as well as your contention that Wyckoff paid obligations of Caritas, which you characterize as commingling of funds. (Am. Compl. ¶¶ 69, 78.) The bank statements are not probative of these contentions. As you acknowledge in your own pleadings, BQHC is not an operational company and has "few, if any assets." (*Id.*) It is difficult to understand how Wyckoff's bank statements would be evidence of

# K&L|GATES

George J. Tzanetopolous
April 25, 2011
Page 3

Wyckoff's alleged control of BQHC, its parent company and sole corporate member. With respect to the alleged "commingling," Wyckoff's bank statements would show checks drawn on such accounts but would not identify the source of any obligation paid. Consequently, it is difficult to discern how production of the bank statements would be relevant to your claims. Moreover, we have already produced the "due to-due from" records accounting for benefits conferred by one defendant entity on another.

For the foregoing reasons, the defendants (1) consent to a 60-day adjournment of fact discovery with the proviso set forth above, (2) decline to produce the requested contracts and bank statements, and (3) agree to arrange for the inspection and copying of the requested board packages.

Sincerely yours,

*Walter P. Loughlin* /APB

Walter P. Loughlin

# Exhibit 3

K&L GATES LLP
Walter P. Loughlin (WL 4760)
Justin Roeber (JR 9100)
599 Lexington Avenue
New York, NY 10022
Telephone: 212-536-3900
Fax: 212-536-3901

*Attorneys for Defendants*
*Brooklyn-Queens Health Care, Inc.*
*and Wyckoff Heights Medical Center*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ROSS UNIVERSITY SCHOOL OF
MEDICINE, LTD.,

                         Plaintiff,

          -against-

BROOKLYN-QUEENS HEALTH CARE,
INC. and WYCKOFF HEIGHTS MEDICAL
CENTER,

                       Defendants.

-------------------------------------------------------x

) 09 Civ. 1410 (KAM) (RLM)

) **DEFENDANTS WYCKOFF
HEIGHTS MEDICAL CENTER &
BROOKLYN-QUEENS HEALTH
CARE, INC.'S RESPONSES AND
OBJECTIONS TO PLAINTIFF'S
SECOND REQUEST FOR THE
PRODUCTION OF DOCUMENTS**

        Defendants Wyckoff Heights Medical Center ("Wyckoff") and Brooklyn-Queens Health

Care, Inc. ("BQHC") (together "Defendants"), by their attorneys K&L Gates LLP, hereby object

and respond pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local

Rules of the United States District Court for the Eastern District of New York ("Local Rules"),

including but not limited to Local Civil Rule 26.3, to Plaintiff Ross University School of

Medicine ("Ross University")'s Second Request for the Production of Documents (the

"Document Requests," and, individually, a "Document Request") as set forth below and on the

grounds specified herein.

## GENERAL OBJECTIONS

The Defendants make the following objections to the Document Requests, regardless of whether such objections are stated separately in response to each Document Request. These objections form a part of the response to each and every Document Request, and are set forth here to avoid duplication and repetition. Although these General Objections may be specifically referred to in a response, failure to mention a General Objection specifically should not be construed as a waiver of any such objection.

1.     The Defendants object to each Document Request to the extent it is premature and seeks to impose obligations on the Defendants that are inconsistent with or greater than the obligations imposed by the Federal Rules of Civil Procedure, Local Rules, any other applicable rule, and any court order that may be entered that governs discovery.

2.     The Defendants object to each Document Request to the extent it calls for the production of documents subject to the attorney-client, attorney work product, legal-professional, common interest, joint defense, or other privileges under applicable law. Information and documents covered by one or more privilege or immunity will not be produced. In the event that any privileged or protected document is disclosed by the Defendants, the disclosure is inadvertent and will not constitute a waiver of any privilege or protection.

3.     The Defendants object to each Document Request to the extent it seeks information protected from disclosure by any protective order, non-disclosure agreement, privacy law, or any other applicable law.

2

4.      The Defendants object to each Document Request to the extent it is vague and ambiguous, overbroad or unduly burdensome or calls for the production of documents that are not reasonably calculated to lead to the discovery of admissible evidence.

5.      The Defendants object to each Document Request to the extent it purports to require the Defendants to reach a legal conclusion about any document, thing or event.

6.      The Defendants object to each Document Request to the extent it requires the Defendants to produce "all" documents in a specified category or categories.  The Defendants object to each Document Request to the extent it is not reasonably practicable to review each document in every one of the Defendants' files to determine if any document contained therein may be responsive to the request.  The Defendants object to each Document Request to the extent it requires the Defendants to search for and produce information, including e-mails and similar electronic information, that is not reasonably accessible.

7.      The Defendants object to each Document Request to the extent it is overbroad with respect to time and is not limited on its face to a reasonable time period.

8.      The Defendants object to each Document Request to the extent it is duplicative of any other Document Request, or to the requests contained in Plaintiff's First Request To BQHC For The Production Of Documents.

9.      The Defendants object to each Document Request to the extent it seeks documents that are not within the Defendants' actual possession, custody, or control, seeks documents that are not maintained by the Defendants in their normal course of business, or seeks information that is no longer available to the Defendants.

10.      Each of the Defendants' responses which state that any non-privileged documents will be produced does not constitute a representation that such documents exist.

3

11.    The Defendants object to each Document Request to the extent it seeks documents that are publicly available or to which Plaintiff has equal access.

12.    The Defendants object to each Document Request to the extent it seeks production of confidential, proprietary, or sensitive business information.  To the extent the Defendants produce documents in response to Plaintiff's Requests in these actions, such production will be subject to the entry of a stipulated protective order among all the parties regarding the use of confidential information.

13.    In providing responses to the Document Requests, the Defendants do not in any way waive or intend to waive:

    (a)    objections as to relevancy, materiality and/or admissibility;

    (b)    rights to object on any ground to the use of any of the responses herein, in any subsequent proceedings, including the trial of this action or any other action;

    (c)    objections as to vagueness or ambiguity; and

    (d)    rights to object on any ground to any further document requests or other discovery requests involving or related to the Document Requests.

14.    The objections and responses herein are based on the Defendants' present knowledge and information and belief and will be supplemented or amended, if necessary, should the Defendants discover additional information or grounds for response or objection.

## SPECIFIC OBJECTIONS AND RESPONSES

Subject to and without waiving the foregoing General Objections, the Defendants hereby specifically respond and object to the Document Requests as follows:

### Document Request No. 1

All contracts for the provision of medical student clinical clerkship rotations at Wyckoff during any time from April 6, 2009 through January 31, 2013.

**RESPONSE**: The Defendants object on the ground that this Document Request is overbroad in scope and seeks documents neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence. The Defendants also object on the ground that this Document Request is duplicative of Requests 36 and 37 in Plaintiff's First Document Request.

### Document Request No. 2

All documents that refer, relate, or pertain to the number of medical students to whom Wyckoff provided clinical clerkship rotations during all times from December 28, 2006 and the present.

**RESPONSE:** The Defendants object on the ground that this Document Request is overbroad in scope and seeks documents neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence. The Defendants also object on the ground that this Document Request is duplicative of Requests 36 and 37 in Plaintiff's First Document Request.

### Document Request No. 3

All documents that refer, relate, or pertain to any policy or policies of Wyckoff concerning the number of medical students to whom Wyckoff can provide clinical clerkship rotations at a given time.

**RESPONSE:** The Defendants object on the ground that this Document Request is overbroad in scope and seeks documents neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence.

### Document Request No. 4

All documents that refer, relate, or pertain to quality and/or educational standards at Wyckoff for medical student clinical clerkship rotations.

**RESPONSE:** The Defendants object on the ground that this Document Request is vague, overbroad in scope, unduly burdensome, and seeks documents neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence. The Defendants also object on the ground that this Document Request is duplicative of Requests 36 and 37 in Plaintiff's First Document Request.

### Document Request No. 5

All documents that refer, relate, or pertain to the authority of Thomas Singleton to act or to enter into contracts on behalf of BQHC, Wyckoff, or the Hospitals.

**RESPONSE:** The Defendants object on the ground that this Document Request is vague, overbroad in scope, and duplicative of Request 23 in Plaintiff's First Document Request. The Defendants also object to this Document Request to the extent it requires the Defendants to respond on behalf of entities as to which there is no basis to believe had any involvement in the subject matter of this litigation. Subject to and without waiving the foregoing General and Specific Objections, the Defendants will produce responsive, non-privileged documents.

**Document Request No. 6**

All contracts signed by Thomas Singleton on behalf of BQHC, Wyckoff, or the Hospitals.

**RESPONSE:** The Defendants object on the ground that this Document Request is overbroad. Subject to and without waiving the foregoing General and Specific Objections, the Defendants will produce responsive, non-privileged documents.

**Document Request No. 7**

All documents that refer, relate, or pertain to the authority of Paul Goldberg to act or to enter into contracts on behalf of BQHC, Wyckoff, or the Hospitals.

**RESPONSE:** The Defendants object on the ground that this Document Request is vague, overbroad in scope, and duplicative of Request 23 in Plaintiff's First Document Request. The Defendants also object to this Document Request to the extent it requires the Defendants to respond on behalf of entities as to which there is no basis to believe had any involvement in the subject matter of this litigation. Subject to and without waiving the foregoing General and Specific Objections, the Defendants will produce responsive, non-privileged documents.

**Document Request No. 8**

All contract (*sic*) signed by Paul Goldberg on behalf of BQHC, Wyckoff, or the Hospitals.

**RESPONSE:** The Defendants object on the ground that this Document Request is overbroad. Subject to and without waiving the foregoing General and Specific Objections, the Defendants will produce responsive, non-privileged documents.

**Document Request No. 9**

7

All documents that refer, relate, or pertain to the authority of Harold McDonald to act or to enter into contracts on behalf of BQHC, Wyckoff, or the Hospitals.

**RESPONSE:** The Defendants object on the ground that this Document Request is vague, overbroad in scope, and duplicative of Request 23 in Plaintiff's First Document Request. The Defendants also object to this Document Request to the extent it requires the Defendants to respond on behalf of entities as to which there is no basis to believe had any involvement in the subject matter of this litigation. Subject to and without waiving the foregoing General and Specific Objections, the Defendants state that they are not aware of any documents responsive to this request.

**Document Request No. 10**

All contracts signed by Harold McDonald on behalf of BQHC, Wyckoff, or the Hospitals.

**RESPONSE:** The Defendants object on the ground that this Document Request is overbroad. The Defendants object on the ground that this Document Request is overbroad in scope and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing General and Specific Objections, the Defendants will produce responsive, non-privileged documents.

**Document Request No. 11**

All documents that refer, relate, or pertain to the authority of Julius Romero to act or to enter into contracts on behalf of BQHC, Wyckoff, or the Hospitals.

**RESPONSE:** The Defendants object on the ground that this Document Request is vague and overbroad in scope. The Defendants also object to this Document Request to the extent it requires the Defendants to respond on behalf of entities as to which there is no basis to believe had

8

any involvement in the subject matter of this litigation. Subject to and without waiving the foregoing General and Specific Objections, the Defendants state that they are not aware of any documents responsive to this request.

**Document Request No. 12**

All contracts signed by Julius Romero on behalf of BQHC, Wyckoff, or the Hospitals.

**RESPONSE:** The Defendants object on the ground that this Document Request is overbroad in scope and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing General and Specific Objections, the Defendants will produce responsive, non-privileged documents.

**Document Request No. 13**

The Table of Organization for BQHC referred to in the minutes of the board of trustees meeting of March 6, 2008.

**RESPONSE:** Subject to and without waiving the foregoing General and Specific Objections, the Defendants will produce responsive, non-privileged documents.

**Document Request No. 14**

All documents that refer, relate, or pertain to consideration of transferring or the transfer of "properties currently owned by BQHC, Inc. into a new holding corporation" as set forth in the minutes of the January 8, 2009 board of trustees meeting.

**RESPONSE:** Subject to and without waiving the foregoing General Objections, the Defendants will produce responsive, non-privileged documents, if any.

**Document Request No. 15**

9

All documents that refer, relate, or pertain to the transfer of Wyckoff Heights Medical Center senior management employees to the Caritas payroll as discussed in the minutes of the January 10, 2008 board of trustees meeting.

**RESPONSE:** The Defendants object on the ground that this Document Request seeks documents not reasonably calculated to lead to the discovery of admissible evidence, and further on the ground that it is duplicative of other Document Requests. The Defendants further object on the ground that it does not control Caritas, and therefore will not have access to such documents. Subject to and without waiving the foregoing General and Specific Objections, the Defendants will produce responsive, non-privileged documents in their possession, if any.

### Document Request No. 16

All documents that refer, relate, or pertain to the transfer of Wyckoff Heights employees from the Caritas payroll back to the Wyckoff Heights Medical Center payroll.

**RESPONSE:** The Defendants object on the ground that this Document Request seeks documents not reasonably calculated to lead to the discovery of admissible evidence, and further on the ground that it is duplicative of other Document Requests. Subject to and without waiving the foregoing General and Specific Objections, the Defendants will produce responsive, non-privileged documents in their possession, if any.

### Document Request No. 17

All documents that refer, relate, or pertain to the loan, advance, and/or transfer of any funds between Wyckoff and Caritas.

**RESPONSE:** The Defendants object on the ground that this Document Request is overbroad in scope, vague, and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. Additionally, responsive documents have already been

produced.  Subject to and without waiving the foregoing General and Specific Objections, the Defendants will produce responsive, non-privileged documents in their possession.

**Document Request No. 18**

All documents that refer, relate, or pertain any loans between BQHC and Caritas.

**RESPONSE**: The Defendants object on the ground that this Document Request seeks documents neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence.  The Defendants further object to the extent this Document Request is duplicative of other requests. Subject to and without waiving the foregoing General and Specific Objections, the Defendants will produce responsive, non-privileged document in their possession, if any.

**Document Request No. 19**

All documents that refer, relate, or pertain any loans between Wyckoff and Caritas.

**RESPONSE:** The Defendants object on the ground that this Document Request seeks documents neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence.  The Defendants further object to the extent this Document Request is duplicative of other requests. Additionally, responsive documents have already been produced.   Subject to and without waiving the foregoing General and Specific Objections, the Defendants will produce responsive, non-privileged documents in their possession.

**Document Request No. 20**

All documents that refer, relate, or pertain any loans between BQHC and Wyckoff.

**RESPONSE:** The Defendants object on the ground that this Document Request seeks documents neither relevant to the claims or defenses in this action nor reasonably calculated to

lead to the discovery of admissible evidence. The Defendants further object to the extent this Document Request is duplicative of other requests. Subject to and without waiving the foregoing General and Specific Objections, the Defendants will produce responsive, non-privileged documents in their possession, if any.

**Document Request No. 21**

All documents that refer, relate, or pertain to BQHC's loan to Caritas of $1,000,000 (including all documents that refer, relate, or pertain to the source of the funds lent) that is described in Affidavit of John Lavan, The Chief Restructuring Officer of Caritas, In Support Of Chapter 11 Petitions And First Day Pleadings in the matter captioned, *In re Caritas Health Care, Inc.*, No. 1-09-40901.

**RESPONSE**: The Defendants object on the ground that the information contained in Document Request No. 21 assumes facts that are not accurate. The Defendants also object on the ground that this Document Request seeks documents neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence. The Defendants also object to the extent this Document Request is duplicative of other requests, particularly Document Request No. 18, and object to the extent that documents responsive to such other requests have already been produced.

**Document Request No. 22**

All "board packages" or other materials distributed to the trustees of BQHC during the Relevant Period.

**RESPONSE**: The Defendants object on the ground that this Document Request is overbroad, unduly burdensome, and seeks documents neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence. The

12

Defendants further object to the extent this Document Request pertains to materials that are privileged and/or confidential.  The Defendants also object on the grounds that the time and expense of producing the requested documents outweighs the evidentiary value of such documents.  Subject to and without waiving the foregoing General and Specific Objections, the Defendants will make copies of the "board packages" available to Plaintiff for inspection upon request.

### Document Request No. 23

All "board packages" or other materials distributed to the trustees of Wyckoff during the Relevant Period.

**RESPONSE**: The Defendants object on the ground that this Document Request is overbroad, unduly burdensome, and seeks documents neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence.  The Defendants further object to the extent this Document Request pertains to materials that are privileged and/or confidential.  The Defendants also object on the grounds that the time and expense of producing the requested documents outweighs the evidentiary value of such documents.  Subject to and without waiving the foregoing General and Specific Objections, the Defendants will make copies of the "board packages" available to Plaintiff for inspection upon request.

### Document Request No. 24

All "board packages" or other materials distributed to the trustees of Caritas during the Relevant Period.

**RESPONSE**: The Defendants object on the ground that this Document Request is overbroad, unduly burdensome, and seeks documents neither relevant to the claims or defenses

13

in this action nor reasonably calculated to lead to the discovery of admissible evidence. The Defendants further object to the extent this Document Request pertains to materials that are privileged and/or confidential. The Defendants also object on the grounds that the time and expense of producing the requested documents outweighs the evidentiary value of such documents. Subject to and without waiving the foregoing General and Specific Objections, the Defendants will make copies of the "board packages" available to Plaintiff for inspection upon request.

**Document Request No. 25**

All documents that constitute, refer, relate, or pertain to communications between Ross and Thomas Singleton.

**RESPONSE:** The Defendants object on the ground that this Document Request is vague, overbroad in scope, unduly burdensome, and seeks documents that are equally available to Ross. The Defendants also object to this Document Request to the extent it is duplicative of other requests.

**Document Request No. 26**

All documents that constitute, refer, relate, or pertain to communications between Ross and Paul Goldberg.

**RESPONSE:** The Defendants object on the ground that this Document Request is vague, overbroad in scope, unduly burdensome, and seeks documents that are equally available to Ross. The Defendants also object to this Document Request to the extent it is duplicative of other requests.

**Document Request No. 27**

14

All documents that constitute, refer, relate, or pertain to communications between Ross and Dominick Gio.

**RESPONSE:** The Defendants object on the ground that this Document Request is vague, overbroad in scope, unduly burdensome, and seeks documents that are equally available to Ross. The Defendants also object to this Document Request to the extent it is duplicative of other requests.

### Document Request No. 28

All documents that constitute, refer, relate, or pertain to communications between Ross and Harold McDonald.

**RESPONSE:** The Defendants object on the ground that this Document Request is vague, overbroad in scope, unduly burdensome, and seeks documents that are equally available to Ross. The Defendants also object to this Document Request to the extent it is duplicative of other requests.

### Document Request No. 29

All documents that constitute, refer, relate, or pertain to communications between Ross and Julius Romero.

**RESPONSE:** The Defendants object on the ground that this Document Request is vague, overbroad in scope, unduly burdensome, and seeks documents that are equally available to Ross. The Defendants also object to this Document Request to the extent it is duplicative of other requests.

### Document Request No. 30

All documents that constitute, refer, relate, or pertain to communications between Ross and David Hoffman.

**RESPONSE**: The Defendants object on the ground that this Document Request is vague, overbroad in scope, unduly burdensome, and seeks documents that are equally available to Ross. The Defendants also object to this Document Request to the extent it is duplicative of other requests. The Defendants further object to the extent that this Document Request pertains to materials that are privileged and/or confidential.

**Document Request No. 31**

All documents that constitute, refer, relate, or pertain to the contract between Wyckoff and Medical Information Technology, Inc. ("Meditech") under which Meditech provided medical billing software to Caritas and/or the Hospitals.

**RESPONSE:** The Defendants object on the ground that this Document Request is overbroad in scope and seeks documents neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence. The Defendants also object to this Document Request to the extent it is duplicative of other requests, including those that comprise Plaintiff's First Request. Subject to and without waiving the foregoing General and Specific Objections, The Defendants will produce responsive, non-privileged documents.

**Document Request No. 32**

All documents that constitute, refer, relate, or pertain to any contract between Wyckoff and another party for the provision of goods or services to Caritas and/or the Hospitals.

**RESPONSE**: The Defendants object on the ground that this Document Request is vague, ambiguous, overbroad in scope, and unduly burdensome. The Defendants also object to this Document Request to the extent it is duplicative of other requests, including those in Plaintiff's First Request, and on the ground that such documents have already been produced. Wyckoff

16

further objects on the ground that it does not control Caritas, and objects to the extent that it does not have access to such documents.

### Document Request No. 33

All documents that constitute, refer, relate, or pertain to any contract between BQHC and another party for the provision of goods or services to Caritas and/or the Hospitals.

**RESPONSE**: The Defendants object on the ground that this Document Request is vague, ambiguous, overbroad in scope, unduly burdensome, and seeks documents neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence. The Defendants also object to this Document Request to the extent it is duplicative of other requests, including those in Plaintiff's First Request, and such documents have already been produced. Wyckoff further objects on the ground that it does not control Caritas and objects to the extent that it does not have access to such documents.

### Document Request No. 34

All documents that support defendants' calculation of damages.

**RESPONSE:** The Defendants object to this Document Request on the grounds that is not relevant. The Defendants have not calculated Plaintiff's damages.

### Document Request No. 35

All bank statements of Wyckoff during the relevant period.

**RESPONSE:** The Defendants object on the ground that this Document Request is overbroad in scope, unduly burdensome, and seeks documents neither relevant to the claims or defenses in this action nor reasonably calculated to lead to the discovery of admissible evidence.

Dated: New York, New York
     March 25, 2011

K&L GATES LLP

By:

Walter P. Loughlin (WL 4760)
Justin Roeber (JR 9100)
599 Lexington Avenue
New York, NY 10022
Telephone: 212-536-3900
Fax: 212-536-3901

Exhibit 4

K&L GATES LLP
Walter P. Loughlin (WL 4760)
Justin Roeber (JR 9100)
599 Lexington Avenue
New York, NY 10022
Telephone: 212-536-3900
Fax: 212-536-3901

*Attorneys for Defendants*
*Brooklyn-Queens Health Care, Inc.*
*and Wyckoff Heights Medical Center*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ROSS UNIVERSITY SCHOOL OF                        )
MEDICINE, LTD.,                                  )
                                                 )    09 Civ. 1410 (KAM) (RLM)
                          Plaintiff,             )
                                                 )    **DEFENDANT BROOKLYN-**
                                                 )    **QUEENS HEALTH CARE, INC.'S**
            -against-                            )    **RESPONSES AND OBJECTIONS**
                                                 )    **TO PLAINTIFF'S FIRST SET OF**
BROOKLYN-QUEENS HEALTH CARE,                     )    **INTERROGATORIES**
INC. and WYCKOFF HEIGHTS MEDICAL                 )
CENTER,                                          )
                                                 )
                          Defendants.            )
                                                 )
-------------------------------------------------------------x

       Defendant Brooklyn-Queens Health Care, Inc. ("BQHC"), by its attorneys K&L Gates

LLP, hereby objects and responds pursuant to Rules 26 and 33 of the Federal Rules of Civil

Procedure, and the Local Rules of the United States District Court for the Eastern District of

New York ("Local Rules"), to Plaintiff Ross University School of Medicine ("Ross

University")'s First Set of Interrogatories to BQHC (the "Interrogatories") as set forth below and

on the grounds specified herein.

## OBJECTIONS TO DEFINITIONS

    1.      BQHC objects to the definition of "BQHC Companies" to the extent it requires

BQHC to respond on behalf of entities as to which there is no basis to believe had any involvement

in the subject matter of this litigation.  BQHC responds to these interrogatories only on behalf of itself.

## GENERAL RESPONSES AND OBJECTIONS

1.     BQHC objects to the Interrogatories to the extent that they are intended or could be interpreted to call for information that is protected by (i) the attorney-client privilege; (ii) attorney work product doctrine; or (iii) any other applicable privilege or protection.

2.     BQHC objects to the Interrogatories to the extent that they purport to require BQHC to produce information outside the scope of discovery under the Federal Rules of Civil Procedure, as modified, explained and/or clarified by the Local Rules and the Rules of this Court (the "Rules").

3.     BQHC objects to the Interrogatories to the extent that they are unduly duplicative, repetitive and cumulative, containing multiple questions seeking the same information.

4.     BQHC objects to the Interrogatories to the extent they seek information of which BQHC is not aware, or information that is not in the possession, custody or control of BQHC.

5.     BQHC objects to the Interrogatories to the extent they seek or require a response that is not relevant to the subject matter of this case, not reasonably calculated to lead to the discovery of admissible evidence, or otherwise not within the scope of discovery as provided by the Rules.

6.     BQHC objects to the Interrogatories to the extent they fail to identify an applicable time period and/or purport to apply to a time period that is overly broad.

7.     BQHC objects to the Interrogatories to the extent they subject BQHC to undue burden or unnecessary expense as set forth in Rule 26(b)(2)(iii) of the Federal Rules of Civil Procedure.

8.      In providing these objections, and in producing the responses pursuant hereto, BQHC does not in any way waive or intend to waive, but rather intends to preserve and is preserving:

(a)     All objections as to competency, relevancy, materiality and admissibility of the responses and the subject matter thereof;

(b)     All objections as to vagueness, ambiguity and undue burden;

(c)     All rights to object on any ground to the use of any said responses to the Interrogatories or the subject matter thereof, in any subsequent proceedings, and during the trial of this or any other action; and

(d)     All rights to object on any ground to any request for further responses to these or any other Interrogatories or other discovery Request involving or related to the subject matter of these Interrogatories.

9.      The inadvertent or mistaken production of irrelevant or non-responsive information subject to the protections of the attorney-client privilege, work product doctrine, or other privileges shall not constitute a general, inadvertent, implicit, subject matter, separate, independent or other waiver of any objection or any such privilege or protection, and does not put in issue or constitute the affirmative use of advice of counsel or of any privileged communications. All such inadvertently produced information, if any, shall be returned to BQHC, along with any copies made thereof.

10.     The objections set forth herein applicable to all Interrogatories shall be applicable to each specific Interrogatory as if set forth in full in response to each specific Interrogatory and, accordingly, will not be repeated therein.

11.     BQHC expressly reserves the right under the Rules to amend or supplement its responses if it should obtain additional information after the date hereof.

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

Subject to and without waiving any of the foregoing General Objections, BQHC responds as follows to Plaintiff's individual interrogatories:

**Interrogatory No. 1:** Identify each person who was a member of the boards of any of the BQHC Companies at any time during the Relevant Period, specifying for each person so identified the board or boards on which he or she served and the periods of service and any periods of board chairmanship.

**Answer:** BQHC objects on the ground that this Interrogatory is overbroad in scope and unduly burdensome. BQHC also objects to the definition of BQHC Companies to the extent it requires BQHC to respond on behalf of entities as to which there is no basis to believe had any involvement in the subject matter of this litigation. BQHC responds only for itself. Subject to and without waiving the foregoing and all general objections set forth above, BQHC states that pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, it will produce documents within its possession, custody, or control responsive to this interrogatory.

**Interrogatory No. 2:** Identify each person who served as an Officer of any of the BQHC Companies at any time during the Relevant Period, specifying for each person so identified titles held and functions performed and the periods of service.

**Answer:** BQHC objects on the ground that this Interrogatory is overbroad in scope and unduly burdensome. BQHC also objects to the definition of BQHC Companies to the extent it requires BQHC to respond on behalf of entities as to which there is no basis to believe had any involvement in the subject matter of this litigation. BQHC responds only for itself. Subject to and

- 4 -

without waiving the foregoing and all general objections set forth above, BQHC states that pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, it will produce documents within its possession, custody, or control responsive to this interrogatory.

**Interrogatory No. 3:** Identify the employer or employers during the Relevant Period of each person identified in response to Interrogatory Nos. 1 and 2 above, noting periods of employment and changes from time to time, and the sources and amounts of that person's compensation from any of the BQHC Companies.

**Answer:** BQHC objects on the ground that this Interrogatory is overbroad in scope and unduly burdensome. BQHC also objects to the definition of BQHC Companies to the extent it requires BQHC to respond on behalf of entities as to which there is no basis to believe had any involvement in the subject matter of this litigation. BQHC responds only for itself. Subject to and without waiving the foregoing and all general objections set forth above, BQHC states that pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, it will produce documents within its possession, custody, or control responsive to this interrogatory.

**Interrogatory No. 4:** To the extent not covered in your answers to Interrogatory Nos. 1-2 above, specify the board memberships, titles and positions held at, and the emoluments received from, each of the BQHC Companies from time to time during the Relevant Period by each of Harold McDonald, Thomas Singleton, Paul Goldberg, Julius Romero, Dominic Gio, David Hoffman and Edward J. (Buzz) Dowling, Jr.

**Answer:** BQHC objects on the ground that this Interrogatory is overbroad in scope and unduly burdensome. BQHC also objects to the definition of BQHC Companies to the extent it requires BQHC to respond on behalf of entities as to which there is no basis to believe had any involvement in the subject matter of this litigation. BQHC responds only for itself. Subject to and

without waiving the foregoing and all general objections set forth above, BQHC states that pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, it will produce documents within its possession, custody, or control responsive to this interrogatory.

**Interrogatory No. 5:** Identify the "other facilities" mentioned in Exhibit B to the Affiliation Agreement, which states: "In the event the Hospitals are not operative, and the University is not in material breach of the Agreement, BQHC agrees to provide the University with an equivalent number of clerkships as agreed to herein at one or more of its other facilities."

**Answer:** Subject to and without waiving the foregoing and all general objections set forth above, BQHC states that the "other facilities" mentioned in Exhibit B to the Affiliation Agreement refers to any and all BQHC affiliated facilities at which BQHC may be able to offer clerkships, including, but not limited to, Wyckoff Heights Medical Center.

**Interrogatory No. 6:** Describe in detail all services that FTI Cambio provided to the BQHC Companies, specifying the names and roles of all persons involved in the provision of such services.

**Answer:** BQHC objects on the ground that this Interrogatory is overbroad in scope and unduly burdensome. Subject to and without waiving the foregoing and all general objections set forth above, BQHC states that pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, it will produce documents within its possession, custody, or control responsive to this interrogatory.

**Interrogatory No. 7:** To what "statute and government regulations" does the Eleventh Defense refer?

**Answer:** BQHC objects to this Interrogatory on the grounds that it calls for information protected by the attorney-client privilege and work product doctrine. BQHC further objects to

this Interrogatory on the grounds that it calls for legal analysis and conclusions inappropriate at

this stage in the litigation.

Dated: New York, New York
     March 10, 2010

K&L GATES LLP

By: _____

Walter P. Loughlin (WL 4760)
Justin Roeber (JR 9100)
599 Lexington Avenue
New York, NY 10022
Telephone: 212-536-3900
Fax: 212-536-3901

<u>**VERIFICATION**</u>

STATE OF NEW YORK     )
                            ) ss.:

COUNTY OF KINGS     )

     I, Vincent Arcuri, being duly sworn, do hereby verify that I have read the foregoing

**RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF**

**INTERROGATORIES TO DEFENDANT BROOKLYN-QUEENS HEALTH CARE**

**INC.** and that the information contained in the responses is true and complete to the best of my

knowledge, information and belief.

Dated: Brooklyn, New York
        March 11, 2010

BROOKLYN-QUEENS HEALTH CARE INC.

By: _____

Title: Vice -Chair_____

Sworn to before me
this 11 day of _____ 2010

_____
Notary Public

PATRICIA MILLSPAUGH
Notary Public, State of New York
No. 01MI4861742
Qualified in Queens County
Commission Expires June 23, 20 10

NY-733234 v1

Exhibit 5

Redacted

# Exhibit 6

# Troubled Queens Hospitals Will Receive State Aid and Review Management and Fiscal Practices

## Use of Money Restricted to Payroll, Benefits and Overdue Taxes

**ALBANY,** March 16, 2007 - Acting New York State Health Commissioner Richard F. Daines, M.D. today announced that the State will be offering a $6 million loan to two affiliated Queens hospitals, St. John's Queens and Mary Immaculate, so that they can pay workers, continue providing employee health and pension benefits, and pay overdue taxes and penalties. Before receiving the funds, however, the hospitals and their affiliate, Wyckoff Heights Medical Center in Brooklyn, must agree to retain an independent monitor to review and reform their problematic financial operations, management practices and governance structure.

"We summoned Wyckoff's management team to come to Albany earlier this week to discuss the situation," said Dr. Daines. "We believe that the system's financial problems were caused by serious management and governance issues. Our finance and legal teams will continue to look into this situation."

St. John's and Mary Immaculate, now collectively known as Caritas Health Care, changed hands in late 2006 when they were sold by St. Vincent Catholic Medical Centers to the owners of Wyckoff as part of a bankruptcy proceeding. In the course of the Department's current inquiry, hospital officials admitted that funds had been transferred between Caritas and Wykoff, contrary to representations made earlier that they would not do so.

Dr. Daines indicated that the loan offer to Caritas will contain restrictions on how it can be spent and a list of other conditions. These include a requirement that Caritas and Wyckoff retain a management consultant, to be selected from a list provided by the Department, which will, among other things:

- Conduct an analysis of the financial operations of the hospitals during the months leading up to the shortfalls, including a forensic audit of financial transactions and transfers between the affiliates;
- Evaluate the adequacy of internal controls, systems and procedures and make recommendations for improvement which the hospitals must follow;
- Assess the qualifications and performance of management, the reasonableness of compensation, and make recommendations for change;
- Assess the composition and governance of the Boards of Trustees and recommend any needed changes.

Dr. Daines said, "Our top priority is to assure patient access to needed services. But we can no longer bail out poorly run hospitals without taking steps to improve and assure proper management. With these funds Caritas will be able to make its next payroll. We are nonetheless conducting a full investigation into what went wrong here and we are making management take responsible steps to stabilize the hospitals."

Revised: March 2007

# Exhibit 7

AFFILIATE SUBORDINATION AGREEMENT, dated as of January 1, 2007 (as it may be amended, modified or supplemented from time to time, this "*Agreement*"), by and among HFG HEALTHCO-4 LLC, a Delaware limited liability company (in the capacities described below, together its successors and assigns, "*HF-4*"), HFG HEALTHCO-5 LLC, a Delaware limited liability company (in the capacity described below, together its successors and assigns, "*HF-5*"), HEALTHCARE FINANCE GROUP INC. (in the capacities described below, together its successors and assigns, "*HFG*" ; and collectively, with HF-4 and HF-5 with the respect to the subordination rights set forth herein, the "*Senior Creditor*"), BROOKLYN-QUEENS HEALTH CARE, INC., a New York not-for-profit corporation (together its successors and assigns, "*BQHC*"), WYCKOFF HEIGHTS MEDICAL CENTER, a New York not-for-profit corporation (together its successors and assigns, "*Wyckoff*" collectively, with BQHC with the respect to the subordination set forth herein, each a "*Junior Creditor*" and collectively, the "*Junior Creditors*"), and CARITAS HEALTH CARE, INC., a New York not-for-profit corporation (the "*Company*").

The Company and BQHC have entered into that certain Administrative Services Agreement, dated as August 21, 2006 (as it may amended modified or supplemented from time to time in a manner permitted hereunder, the "*Services Agreement*"), and (ii) BQHC and Wyckoff have entered into that certain Administrative Services Subcontract, dated as of August 21, 2006 (as it may amended modified or supplemented from time to time in a manner permitted hereunder, the "*Services Subcontract*"; together with the Services Agreement, the "*Administrative Services Agreements*"). The "Service Fee" under the Administrative Services Agreements and the "Subcontract Service Fee" under the Services Subcontract are herein referred to as "*Admin Payments*".

BQHC has loaned to the Borrower $1,000,000 in cash (the "*BQHC Obligation*"), and Wyckoff has entered into lease obligations for equipment provided to the Borrower with a fair value of not less than $3,200,000 (the "*Wyckoff Obligation*"; together with the BQHC Obligation, are herein referred to as the "*Affiliate Obligations*"; the Affiliate Obligations together with the Admin Payments, are herein referred to as the "*Junior Payments*"). The BQHC Obligation is not documented between BQHC and the Borrower and the Wyckoff Obligation is not documented between Wyckoff and the Borrower.

The Company has entered into that certain Revolving and Term Loan and Security Agreement, dated as of January 1, 2007 (such agreement, as it may be amended, modified or supplemented from time to time, together with all instruments, and other related Documents (as defined therein), and together with any agreements in connection with the replacement, refunding or refinancing the same, the "*Senior Loan Agreement*"), among HF-4 as a Revolving Lender and as agent for the Revolving Lenders (in such capacity, together with its successors and assigns, the "*Revolving Agent*"), HF-5 as the "*Term Loan Lender*", and together with the Revolving Lenders, collectively, the "*Senior Creditors*"), HFG, in its capacity as administrative agent for the Senior Creditors (in such capacity, the "*Administrative Agent*") and in its capacity as collateral agent for the Senior Creditors, (in such capacity, the "*Collateral Agent*"). Terms not otherwise defined herein shall have the meanings set forth in the Senior Loan Agreement.

The fundings under the Senior Loan Agreement constitute a direct and significant benefit to the Junior Creditors. In connection with the consummation of the Senior Loan Agreement,

BQHC 02395

the Senior Creditor requires that the Junior Creditors subordinate, to the extent and in the manner hereinafter set forth, the Junior Payments to the Senior Obligations.

Accordingly, in consideration of the foregoing premises and the covenants contained herein, the parties hereto agree as follows:

Section 1.  Definitions.

As used in this Agreement, the terms defined above shall have their respective meanings set forth above and the following terms shall have the following meanings:

1.1.  "*Business Day*" shall mean any day on which banks are not authorized or required to close in New York City, New York.

1.2.  "*Senior Default*" shall mean any Default or Event of Default under the Senior Loan Agreement.

1.3.  "*Senior Obligations*" shall have the meaning of "Lender Debt" under the the Senior Loan Agreement.

Section 2.  Subordination; Acknowledgment of Senior Liens.

2.1.  Subordination.  So long as any Senior Obligations are outstanding, the Junior Creditors agree that the Junior Payments are and shall be expressly subordinate and junior in right of payment and satisfaction to the payment in full of all Senior Obligations on the terms set forth herein.

The expression "*payment in full*" or "*paid in full*" or any similar term or phrase when used in this Agreement shall mean the final and indefeasible payment in full in cash of all such Senior Obligations, which payment shall have been retained by the Senior Creditor for a period of time in excess of all applicable preference or other similar periods under applicable bankruptcy, insolvency or creditors' rights laws.

2.2.  Special Representation.  The Junior Creditors represent and warrant that (i) the Junior Payments represent the only payment obligations, contractual or otherwise, owing or to be owing by the Company to the Junior Creditors, and (ii) the transactions relating to the Wyckoff Obligation, including the related payment obligations, are no less favorable to the Borrower than would be obtained in a comparable arm's-length transaction with a third party who is not an Affiliate.

2.3.  Acknowledgment of Senior Lien.  The Junior Creditor hereby agrees and acknowledges that (i) the Senior Creditor has been granted a Lien upon the Collateral, and (ii) the Junior Creditors have no Lien on the Collateral or on any other assets of the Company.

BQHC 02396

2.4.    No Challenge.  Each Junior Creditor hereby agrees that it shall not challenge, contest or seek to avoid the rights of the Senior Creditor under the Senior Loan Agreement, including without limitation, the Lien of the Senior Creditor thereunder.

2.5.    Permitted Payments.

(a)    The Junior Creditors hereby acknowledge and agree that the Senior Creditor is an intended third party beneficiary of the contractual provisions containing limitations to the making of the Admin Payments set forth under Section 4.2 of the Services Agreement and under Section 6 of the Services Subcontract (the "*Payment Limitation Provisions*").  Accordingly, the Borrower and each Junior Creditor each covenants and agrees that, without the prior written consent of the Senior Creditor, (i) the Borrower will not pay, and no Junior Creditor will receive or retain any direct or indirect payment of Admin Payments in violation of the Payment Limitation Provisions, or (ii) amend, modify or waive the Payment Limitation Provisions in any manner.  Each Junior Creditor covenants and agrees that, without the prior written consent of the Senior Creditor, it will not commence any action or proceeding against the Company to enforce payment on all or any part of the Admin Payments.

(b)    The Senior Creditor agrees that the Junior Creditor may receive and retain any direct or indirect payments of Admin Payments that are not in violation of the Payment Limitation Provisions.

(c)    The Borrower and each Junior Creditor each covenants and agrees that, without the prior written consent of the Senior Creditor, the Borrower will not pay, and no Junior Creditor will receive or retain any direct or indirect payment on account of the BQHC Obligation (i) prior to January 1, 2008, (ii) in an amount in any month in excess of $83,333, or (iii) at any time that a Senior Default exists is continuing or would occur as a result of such payment.  Each Junior Creditor covenants and agrees that, without the prior written consent of the Senior Creditor, it will not commence any action or proceeding against the Company to enforce payment on all or any part of the BQHC Obligation.

(d)    The Senior Creditor agrees that BQHC may receive and retain any direct or indirect payments pertaining to the BQHC Obligation that are not in violation of this Agreement, including Section 2.5(c).

(e)    The Borrower and each Junior Creditor each covenants and agrees that, without the prior written consent of the Senior Creditor, (i) the Borrower will not pay, and no Junior Creditor will receive or retain any direct or indirect payment on account of the Wyckoff Obligation (i) prior to March 15, 2007, (ii) in an amount in any month in excess of $320,000, or (iii) at any time that a Senior Default exists is continuing or would occur as a result of such payment.  Each Junior Creditor covenants and agrees that, without the prior written consent of the Senior Creditor, it will not commence any action or proceeding against the Company to enforce payment on all or any part of the Wyckoff Obligation.

BQHC 02397

(f)     The Senior Creditor agrees that Wyckoff may receive and retain any direct or indirect payments pertaining to the Wyckoff Obligation that are not in violation of this Agreement, including Section 2.5(e).

2.6.    Insolvency, Etc.

(a)     In the event of any insolvency, bankruptcy, receivership, liquidation, reorganization or other similar proceedings, relative to the Company or to its property, or in the event of any proceedings for voluntary liquidation, dissolution or other winding up of the Company, whether or not involving insolvency or bankruptcy, so long as any Senior Obligations are outstanding, the holders of Senior Obligations shall be entitled in any such proceedings to receive payment in full of all Senior Obligations before the Junior Creditors are entitled in such proceedings to receive any payment on account of the Junior Payments, and to that end in any such proceedings, so long as any Senior Obligations remain outstanding, any payment or distribution of any kind or character, whether in cash or in other property, to which the Junior Creditors would be entitled but for the provisions hereof shall be delivered to the holders of Senior Obligations to the extent necessary to make payment in full of all Senior Obligations remaining unpaid, after giving effect to any concurrent payment or distribution to or for the holders of Senior Obligations in respect thereof.

2.7.    Turnover of Payments Received.  Should any Junior Creditor receive a payment, distribution, security or instrument with respect to the Junior Payments in violation of the provisions of Section 2.5 of this Agreement, such Junior Creditor shall receive and hold the same in trust, as trustee, for the benefit of the Senior Creditor, segregated from other funds and property of such Junior Creditor, and shall be paid over promptly  (and in any event within two Business Days) to the Senior Creditor for application to the Senior Obligations remaining due and payable until the same shall have been paid in full.  The Borrower shall adjusts its books and records to indicate that such the amount reflected in such Junior Payment remains due and owing.

If it is later determined (for example, following the delivery of the Borrower's financial statements) that a Junior Payment was made during a period in which a Senior Default existed, the Junior Creditor that was recipient of such Junior Payment shall receive and hold the same in trust, as trustee, for the benefit of the Senior Creditor, segregated from other funds and property of such Junior Creditor, and such amount shall be paid over promptly  (and in any event within two Business Days) to the Senior Creditor for application to the Senior Obligations remaining due and payable until the same shall have been paid in full.  The Borrower shall adjusts its books and records to indicate that such the amount reflected in such Junior Payment remains due and owing.

2.8.    Subordination Not Affected.  Without the necessity of any reservation of rights against or any notice to or further assent by any Junior Creditor, any demand for payment of any Senior Obligations made by any holder of Senior Obligations may be rescinded in whole or in part by such holder and any Senior Obligations may be continued, the holders of Senior Obligations may exercise or refrain from exercising any rights and remedies against the Company and others, the Senior Obligations, or any collateral security therefor or right of offset with respect thereto, may be extended, modified, accelerated, compromised, waived, surrendered or released by the holders of

BQHC 02398

the Senior Obligations, and any agreement or instrument evidencing, securing or otherwise relating to the Senior Obligations may be amended or modified, all without impairing, abridging, releasing or affecting the subordination provided for herein. The Junior Creditors waive any and all notice (except notices specifically provided for herein) of the creation or modification of any Senior Obligations and notice of or proof of reliance by the Senior Creditor upon the subordination provided for herein. The Senior Obligations shall conclusively be deemed to have been created, contracted or incurred in reliance upon the provisions of this Agreement.

       2.9.   No Limitations. The agreements with respect to the Junior Obligations set forth in this Section 2 are not intended and shall not be construed as a limitation in any manner of the rights and remedies granted to the Senior Creditor under the Senior Loan Agreement.

       Section 3.    Miscellaneous.

       3.1.   Modifications. No amendment, modification, termination or waiver of any provision of this Agreement, or consent to any departure therefrom, shall in any event be effective without the written concurrence of the Senior Creditor and the Junior Creditors.

       3.2.   Termination. This Agreement shall remain in full force and effect until payment in full of all Senior Obligations, *provided* that this Agreement shall continue to be effective or be reinstated (as the case may be) if at any time payment of any of the Senior Obligations is refunded or must otherwise be returned by the Senior Creditor upon any bankruptcy, arrangement, reorganization or similar proceeding for relief of debtors under state or federal law, all as though such payment had not been made.

       3.3.   Third Party Rights. This Agreement is solely for the benefit of the Senior Creditor and the Junior Creditors, and no other person shall have any right, benefit, priority or other interest under, or because of the existence of, this Agreement.

       3.4.   Counterparts. This Agreement and any amendments, waivers, consents, or supplements may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument.

       3.5.   No Proceedings. The Junior Creditors hereby agree that it will not institute a bankruptcy or insolvency proceeding against HF-4 or HF-5 so long as any senior indebtedness issued by HF-4 shall be outstanding or there shall not have elapsed one year plus one day since the last day on which any such senior indebtedness shall have been outstanding.

       3.6.   Governing Law. This Agreement shall be governed by, and shall be construed and enforced in accordance with, the internal laws of the State of New York, without regard to conflicts of laws principles.

       3.7.   Waiver. No waiver by any party hereto of any breach hereof shall operate or be construed as a waiver of any subsequent breach hereof.

BQHC 02399

3.8.   <u>Descriptive Headings</u>.   The descriptive headings of this Agreement are for convenience only and shall have no legal effect.

BQHC 02400

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**SENIOR CREDITOR:**

HFG HEALTHCO-4 LLC
By: HFG Healthco-4, Inc., a member
as Revolving Agent and a Revolving Lender

By _Mary L. Brady_
  Name:    MARY L. BRADY
  Title:     VICE PRESIDENT

HFG HEALTHCO-5 LLC
By: HFG Healthco-5, Inc., a member
as Term Lender

By _Mary L. Brady_
  Name:    MARY L. BRADY
  Title:     VICE PRESIDENT

HEALTHCARE FINANCE GROUP INC.
as Administrative Agent, as Term Loan
Collateral Agent, Revolving Loan Collateral
Agent and Collateral Agent

By_____
  Name (Printed):
  Title:

Notice Address:
199 Water Street
New York, New York  10038
Attention:  Chief Credit Officer
Fax:  (212) 785-8512

With a Copy to:
Terry D. Novetsky, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, New York  10022
Fax:  (212) 836-6490

**JUNIOR CREDITORS:**

BROOKLYN-QUEENS HEALTH CARE, INC.

By:_____
  Name:
  Title:

Notice Address:

WYCKOFF HEIGHTS MEDICAL CENTER

By:_____
  Name:
  Title:

Notice Address:

With a Copy to:

31387413.WPD

7

BQHC 02401

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**SENIOR CREDITOR:**

HFG HEALTHCO-4 LLC
By: HFG Healthco-4, Inc., a member
as Revolving Agent and a Revolving Lender

By *Mary L. Brady*
  Name:   MARY L. BRADY
  Title:    VICE PRESIDENT

HFG HEALTHCO-5 LLC
By: HFG Healthco-5, Inc., a member
as Term Lender

By *Mary L. Brady*
  Name:   MARY L. BRADY
  Title:    VICE PRESIDENT

HEALTHCARE FINANCE GROUP INC.
as Administrative Agent, as Term Loan
Collateral Agent, Revolving Loan Collateral
Agent and Collateral Agent

By_____
  Name (Printed):
  Title:

Notice Address:
199 Water Street
New York, New York 10038
Attention: Chief Credit Officer
Fax: (212) 785-8512

With a Copy to:
Terry D. Novetsky, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, New York 10022
Fax: (212) 836-6490

**JUNIOR CREDITORS:**

BROOKLYN-QUEENS HEALTH CARE, INC.

By:_____
  Name:
  Title:

Notice Address:

WYCKOFF HEIGHTS MEDICAL CENTER

By:_____
  Name:
  Title:

Notice Address:

With a Copy to:

BQHC 02402

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**SENIOR CREDITOR:**

HFG HEALTHCO-4 LLC
By: HFG Healthco-4, Inc., a member
as Revolving Agent and a Revolving Lender

By_____
   Name:
   Title:

HFG HEALTHCO-5 LLC
By: HFG Healthco-5, Inc., a member
as Term Lender

By_____
   Name:
   Title:

HEALTHCARE FINANCE GROUP INC.
as Administrative Agent, as Term Loan
Collateral Agent, Revolving Loan Collateral
Agent and Collateral Agent

By _____
Name (Printed): Robert O'Lynch
Title: C.O.O.

Notice Address:
199 Water Street
New York, New York  10038
Attention:  Chief Credit Officer
Fax:  (212) 785-8512

With a Copy to:
Terry D. Novetsky, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, New York  10022
Fax:  (212) 836-6490

**JUNIOR CREDITORS:**

BROOKLYN-QUEENS  HEALTH  CARE,
INC.

By:_____
   Name:
   Title:

Notice Address:

WYCKOFF HEIGHTS MEDICAL CENTER

By:_____
   Name:
   Title:

Notice Address:

With a Copy to:

31387413.WPD

BQHC 02403

The Company, by its execution of this Agreement, hereby acknowledges and agrees to the foregoing provisions of this Agreement.

CARITAS HEALTH CARE, INC.,

By: _____

Name:

Title:

Notice Address:

31387413.WPD

BQHC 02404

# Exhibit 8

BROOKLYN QUEENS HEALTHCARE, INC.

BOARD OF TRUSTEES MEETING

MINUTES

JANUARY 8, 2009

PRESENT:                                    EXCUSED:

Emil Rucigay, Esq.                          John H. Cook, Jr., Esq
Fred T. Haller, Esq.                        Adam Figueroa
Herman Hochberg                             Frank Chiarello
Rajiv Garg                                  Krishna Mehta
Vito J. D'Alessandro, M.D.
Gary Goffner
Vincent Arcuri

David Hoffman, Esq. – Legal Counsel

Mr. Arcuri called the meeting to order at 3 p.m.

APPROVAL OF THE MINUTES OF THE PREVIOUS MEETING:

ON A MOTION PROPERLY MADE BY MR. HALLER, SECONDED BY DR.
D'ALESSANDRO, ALL IN FAVOR, THE MINUTES OF THE PREVIOUS
MEETING OF DECEMBER 4, 2008 WERE APPROVED BY THE BOARD OF
TRUSTEES.

RESOLUTION:

Mr. Arcuri mentioned that a resolution for Caritas to obtain an interest free loan from the
Dormitory Authority in the amount of $3,500,000 was unanimously approved by the
BQHC Board on January 6th. (APPENDED TO THE MINUTES).

Mr. Garg advised the Board Members that there is need to establish a new tax I.D.
number for BQHC. Following some discussion it was decided that this issue will be
discussed further at a separate meeting with Mr. Garg, Mr. Hoffman and Mr. Haller.
Discussion then ensued regarding the tax laws (17) and review of the properties owned
by Wyckoff Heights Medical Center. Mr. Garg reported that we have the opportunity to
potentially raise $4 million through the financing of certain real estate owned by Wyckoff
and/or BQHC.

Mr. Arcuri provided an update on yesterday's Caritas Board meeting, which was attended
by Ms. Paula Miceli, a representative of the Queens Borough President's Office. A
February 16, 2009 meeting will be held to discuss alternatives to a likely Caritas

BQHC 00211

BQHC Meeting – January 8, 2009
Page 2

bankruptcy filing and closure. Several local elected officials are expected to attend the meeting. Mr. Arcuri stated that the elected officials will be notified that the Department of Health will no longer continue to subsidize the Caritas operations and the hospitals will likely close. The impact of a closure on the Queens communities will also be discussed. Mr. Hochberg expressed his concerns in reference to potential unsafe conditions at the hospitals during a prolonged closure process.

Mr. Arcuri informed the Board Members that Caritas has only two weeks of cash to maintain operations. He went on to say that additional funds may be available to New York State as a result of a Federal stimulus package. We are hoping that the elected officials can convince the State to continue the Caritas subsidies until the availability of additional Federal funds is determined.

Mr. Hoffman advised the Board of Trustees that Wyckoff has engaged a law firm to provide advice in an effort to protect the interests of Wyckoff in the event of a Caritas bankruptcy. Mr. Goffner inquired as to Wyckoff's Caritas related contractual obligations. Mr. Hoffman replied that at this time there are two which we are aware of; one is a medical school obligation and the other is a pension obligation.

North Shore's interest in St. John's Queens Hospital was discussed. Mr. Hoffman stated that while the Department of Health may not provide guarantees for the financing necessary to rebuild the hospital, North Shore may decide to proceed with an acquisition without State financing guarantees.

Dr. D'Alessandro inquired as to whether the Medical Staff of Caritas is fully aware of the status of the current situation. Mr. Hoffman replied that Mr. John Kastanis, CEO of Caritas, recently held Town Hall Meetings at both of the hospitals and announced a likely bankruptcy filing and closure of the hospitals.

Mr. Garg mentioned that there is an opportunity to raise working capital of approximately $4 million dollars through the financing of certain BQHC and/or Wyckoff properties. The potential financing was discussed in great detail by the Board Members and it was suggested that the following resolution be adopted as follows:

     **Resolved** that the BQHC Board Members voted to transfer all ancillary properties currently owned by BQHC, Inc. into a new holding corporation with a new tax I.D. number.

Mr. Rucigay stated that at yesterday's Caritas meeting he tried to stress to the elected officials the importance of the continuance of the Hospitals for the sake of the community's financial future. He inquired as to whether the Board Members felt it would be proper for Mr. Arcuri to contact Paula Miceli from the Borough President's

Office and, through her, contact the Queens Chamber of Commerce. He mentioned that the loss of 2,500 jobs would have a dire impact on Queens County economy.

Mr. Lavan advised the Board of Trustees that Caritas must act quickly due to numerous cash flow problems which the hospitals are now experiencing. He went on to say that we are approximately two weeks away from a filing, absent political intervention, and discussed the ramifications of this with the Board Members. Mr. Lavan stated that it is our preference to have the Caritas Hospitals remain open.

Mr. Lavan stated that the Department of Health is slowly running out of re-structuring money at a time when more and more hospitals are facing similar financial problems. He noted that North Shore cannot not secure financing for their proposed SJQ construction project. I n light of the current situation, we will begin to plan for the closure of the two Caritas hospitals. We will prepare for a chapter eleven filing followed by a chapter seven liquidation. In open discussion, Mr. Lavan mentioned that North Shore may still be interested in an acquisition even without State financing guarantees.

Mr. Lavan stated that a non-bankruptcy alternative will be formulated for Wyckoff. In an attempt to clean up some of the balance sheet we will need the following:

$14 million dollars in receivables owed to Wyckoff which is fully reserved on the balance sheet.

A mortgage holiday for a period of one year period of time.

A temporary loan from DASNY on the Garity Post property to provide Wyckoff the funds necessary to make it's February 2009 bond holder payments.

Refund of an excess malpractice umbrella insurance policy which could generate $4 million dollars in cash.

Mr. Lavan stated that the above package in total, would help us to manage cash needs to maintain Wyckoff's operations through the end of 2009.

Mr. Rucigay commented on yesterday's meeting and stated that he felt that the Department's concern is the fiscal stability of Wyckoff and what they would like to see is improvement in the Hospital's finances.

Lively discussion ensued regarding the proposed Medicaid cuts and it was mentioned by Mr. Rucigay that at no point did the Department indicate that assistance to the poor, needy, and indigent be diminished.

BQHC Meeting -- January 8, 2009
Page 4

**ADJOURNMENT:**

ON A MOTION DULY MADE BY MR. HOCHBERG, SECONDED BY MR.
HALLER, ALL IN FAVOR, THE MEETING ADJOURNED AT 5:45 P.M.

RESPECTFULLY SUBMITTED:                    APPROVED BY:

PATRICIA MILLSPAUGH                         EMIL RUCIGAY, ESQ.
EXECUTIVE SECRETARY                         CHAIRMAN

BQHC 00214

# Exhibit 9

Redacted