**K&L|GATES**

K&L Gates LLP
599 Lexington Avenue
New York, NY 10022-6030

T 212.536.3900    www.klgates.com

October 31, 2011

Walter P. Loughlin
D 212.536.4065
F 212.536.3901
walter.loughlin@klgates.com

**Via ECF**

Hon. Kiyo A. Matsumoto
United States District Court Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East, Room N406
Brooklyn, New York 11201

    Re:    Ross University v. Brooklyn-Queens Health Care, et al,
            09-cv-1410 (KAM) (RLM)

Dear Judge Matsumoto:

    My firm and I represent Defendants Brooklyn-Queens Health Care, Inc. ("BQHC") and Wyckoff Heights Medical Center ("Wyckoff," together with BQHC, "Defendants") in the above-captioned matter. As referenced in my letter dated October 28, 2011, I write, pursuant to Rule IV(B)(1) of Your Honor's Chambers Practices, to request a pre-motion conference regarding Defendants' intention to file a motion for partial summary judgment challenging the legal validity of two of the principal theories of liability alleged by Plaintiff Ross University School of Medicine, Ltd. ("Ross").

**I.**    **Background Facts**

    This action arises out of agreements entered into by BQHC and Ross to provide Ross students with clinical clerkships at two hospitals, Mary Immaculate Hospital and St. John's Queens Hospital, both of which were located in Queens, New York, and were known together as Caritas Health Care, Inc. ("Caritas"). BQHC is the passive parent and sole corporate member of both Caritas and Wyckoff.

    Specifically, on December 28, 2006, Ross and BQHC entered into an Affiliation Agreement (the "Agreement") by which Ross prepaid for 50 core and 50 elective clerkships for its students at Caritas, at a cost of $312.50 per week, per clerkship, which was set off against Ross' $5 million prepayment for those clerkships. The Agreement also stated, among other things, that "[i]n the event [Mary Immaculate and St. John's Queens] are not operative, and [Ross] is not in material breach of the Agreement, BQHC agrees to provide [Ross] with an equivalent number of clerkships . . . at one or more of its other facilities." This initial Agreement was amended on December 5, 2007 and on February 28, 2008, on which dates Ross prepaid an additional $4 million and $3 million, respectively, for additional clerkships.


**K&L GATES**

Hon. Kiyo A. Matsumoto
October 31, 2011
Page 2

On February 6, 2009, Caritas filed for protection under Chapter 11 of the Bankruptcy Code. *In re Caritas Healthcare, Inc., et al.*, Jt. Admin. Ch. 11 Case No. 09-B-40901 (Bankr. E.D.N.Y.). Mary Immaculate and St. John's Queens both ceased hospital operations shortly thereafter. Two months later, Ross filed this action, alleging two principal theories of liability: (1) breach of contract against BQHC seeking specific performance of the Agreement; and (2) piercing of BQHC's corporate veil, in order to impose BQHC's liability for breach of the Agreement onto Wyckoff, because "BQHC has few, if any, assets," and "Wyckoff controlled and controls BQHC." Second Amended Complaint ("SAC") ¶¶ 55-80. As an alternative to its specific performance claim, Ross alleged that it was entitled to money damages for the difference between the cost of clerkships under the Agreement, as amended, and its allegedly greater costs in placing its students in clerkship positions at other hospitals.

As set forth in Defendants' Answer to the SAC, BQHC is a New York not-for-profit corporation organized under the laws of New York State and the sole corporate member of both Wyckoff and Caritas. Answer ¶ 3. As such, BQHC appoints the Trustees of Wyckoff and did so with respect to Caritas, and certain members of the Board of Trustees of Wyckoff are also members of the Board of Trustees of BQHC. *Id.* at ¶¶ 3, 14, 71. However, because BQHC is not a licensed hospital operator under Article 28 of New York's Public Health Law, BQHC neither controls nor operates Wyckoff; nor does Wyckoff control BQHC.

## II. Defendants Have Strong Grounds For Partial Summary Judgment

Defendants are entitled to partial summary judgment dismissing two of Ross' theories of liability for the following reasons:

*First*, Ross cannot pierce BQHC's corporate veil and impose liability on Wyckoff for BQHC's alleged breach of the Agreement because Ross cannot meet the legal standard for such relief. New York courts will not disregard an entity's corporate form and pierce its veil except in obvious cases of abuse. *See, e.g., TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339, 680 N.Y.S.2d 891, 893 (1998) (holding that veil piercing requires a "showing that the corporation was dominated as to the transaction attacked and that such domination was the instrument of fraud or otherwise resulted in wrongful . . . consequences").

Here, the record elicited during discovery shows that Wyckoff and BQHC observed corporate formalities and maintained their corporate separateness. There is no evidence that BQHC was created as an "instrument of fraud." *See id.* Rather, BQHC was designed as a valid passive parent company to provide the necessary institutional separateness between Caritas, a Catholic hospital system that "honor[ed] the ethical and religious directives" of the United States Conference of Catholic Bishops, and Wyckoff, a secular hospital that does not. D. Hoffman Dep. (6/1/11) at 111:20–115:2; *see also* P. Goldberg Dep. (7/6/11) at 44:5–8 ("[T]he point of BQHC[] was to make sure that one organization didn't be responsible for the other organization's debts.") [*sic*]; *TNS Holdings*, 92 N.Y.2d at 339 ("An inference of abuse does not arise . . . where a corporation was formed for legal purposes . . .").

**K&L|GATES**

Hon. Kiyo A. Matsumoto
October 31, 2011
Page 3

*Second,* Ross' request for specific performance – specifically, an Order requiring BQHC to direct Wyckoff to give Ross clerkships at Wyckoff – should be dismissed because BQHC is prohibited, as a matter of law, from directing Wyckoff's operations. Under Article 28 of New York's Public Health Law, only a corporation licensed by the New York Department of Health may direct a hospital's clinical operations; no other entity may do so. *See* N.Y. Public Health Law §§ 2800 *et seq.* Here, the record evidence shows that Wyckoff is licensed to operate hospitals, but BQHC is not. BQHC thus has no authority to direct Wyckoff's operations, and any Order requiring BQHC to do so – as Ross seeks by way of its specific performance claim – would violate the express terms of the Public Health Law.

Furthermore, Ross's interpretation of the relief to which it is entitled, if it prevails on its specific performance claim against BQHC, would force Wyckoff either to breach additional contracts that it has with other medical schools, or to hire large numbers of new faculty, which would be impractical or impossible given the limitations on Wyckoff's space and patient population. *See* J. St. James Dep. (6/30/11) at 33:17–24 (stating Wyckoff must "either take those other schools [with clerkships guaranteed at Wyckoff] out and put the Ross folks in, or invest in Wyckoff to add enough faculty for our students to keep the rotations").

### III. Proposed Briefing Schedule

As set forth in my October 28, 2011 letter, it is Defendants' position that summary judgment should precede the parties' preparation and filing of the Joint Pre-Trial Order ("JPTO") because the Court's ruling on summary judgment could have a material impact on the scope and content of the JPTO. In the October 28 letter, Defendants proposed the following briefing schedule: (a) moving papers due December 2, 2011; (b) opposition papers due January 10, 2012; and (c) reply papers due January 24, 2012. The parties' JPTO would be filed 30 days after the Court rules on summary judgment. We have conferred with counsel for Ross, which has objected to any change to the current pre-trial schedule.

Defendants respectfully request a pre-motion conference at the Court's earliest convenience on their motion for partial summary judgment on the grounds set forth above.

Respectfully submitted,

*Walter P. Loughlin* s/APB

Walter P. Loughlin

cc: George J. Tzanetopoulos, Esq. *(by email only)*