# Baker Hostetler

Baker&Hostetler LLP

191 North Wacker Drive
Suite 3100
Chicago, IL 60606-1901

T 312.416.6200
F 312.416.6201
www.bakerlaw.com

November 4, 2011

George J. Tzanetopoulos
direct dial: 312.416.6225
gtzanetopoulos@bakerlaw.com

**BY ECF**

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East, Room N406
Brooklyn, New York  11201

      Re:    *Ross University. v. Brooklyn-Queens Health Care Inc.*
              No. 09 Civ. 1410 (KAM) (RLM)

Dear Judge Matsumoto:

      I represent Plaintiff Ross University School of Medicine, Ltd. ("Ross") and write in response to Defendants' request for a conference on their proposed motion for partial summary judgment.  Plaintiff does not oppose the briefing schedule proposed by defense counsel.  It does, however, vigorously oppose the proposed motion and believes it to be baseless.

      **I.**      **Background.**

      Ross is a medical school.  Like many such institutions, Ross enters into contracts with hospitals in the United States to provide clinical clerkships to its medical students.  Ross and Defendant Wyckoff Heights Medical Center ("Wyckoff"), a large hospital in New York, are parties to one such long-standing clerkship agreement.

      In 2006, Wyckoff decided to expand its operations by purchasing St. John's and Mary Immaculate Hospitals (the "Hospitals") out of bankruptcy.  To finance its purchase, Wyckoff's President and CEO approached Ross and proposed a contract under which Ross would advance substantial sums in exchange for a long-term guarantee that clerkships would be provided at the Hospitals.  Wyckoff's CEO referred to this program as the "Expansion of Wyckoff's International Medical Student Training Program," and Wyckoff promoted itself to Ross as the "sponsor" of the Hospitals and touted its "Transition/Turnaround Plan" for their financial health.  Wyckoff rearranged its corporate structure for purposes of making this purchase.  It renamed the entity that held Wyckoff's heavily encumbered parking lot as "Brooklyn-Queens Health Care, Inc." ("BQHC"), and caused BQHC to become the corporate parent of Wyckoff and newly-formed Caritas Healthcare Planning, Inc. ("Caritas"), which held the Hospitals.

# Baker Hostetler

Honorable Kiyo A. Matsumoto
November 4, 2011
Page 2

After lengthy negotiations, Ross and BQHC signed a written clerkship agreement. BQHC guaranteed that it would cause the Hospitals to provide clinical clerkships to Ross at a contractually specified quantity and price. Ross advanced a $5 million prepayment that was to be drawn down by the provision of clerkships. The material term of the contract at the center of this dispute is one that BQHC offered and Ross insisted upon to protect its advance; it provides: "In the event the Hospitals are not operative, and the University is not in breach of the Agreement, BQHC agrees to provide the University with an equivalent number of clerkships as agreed to herein at one or more of its other facilities." The only such other facility is Wyckoff. The parties twice amended their agreement to increase Ross's prepayment, increase the number of clerkships guaranteed, and extend the contract term through January 2018.

The Hospitals were a financial disaster from the outset of Wyckoff's purchase. By February 2009, the Hospitals and Caritas filed for bankruptcy, and they closed in March 2009. After BQHC and Wyckoff refused to honor the contractual requirement to provide replacement clerkships at Wyckoff, Ross brought the present action for breach of contract. BQHC controls Wyckoff's Board of Trustees. But BQHC is (and apparently always was) an assetless shell. Accordingly, Ross seeks specific performance of BQHC's promise to cause the provision of the contractually guaranteed clerkships at Wyckoff. Ross also seeks to "reverse pierce" the corporate veil to hold Wyckoff liable for any damages award entered against BQHC.

## II. Partial summary judgment will not narrow the issues for trial.

The confines of a pre-motion conference letter do not permit a full discussion of the issues, which we will provide in briefing. However, we will briefly outline some of the key reasons that the motions should be denied.

***Veil Piercing.*** Under New York law, veil piercing is a jury question. *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 136-37 (2nd Cir. 1991). Defendants' proposed motion on this issue is not well taken because the facts developed in discovery will merit a jury finding in favor of piercing. Here, the evidence strongly supports findings in Ross's favor on numerous fact issues that New York courts have found support piercing the corporate veil, including:

- BQHC is and has always been undercapitalized;
- The New York Department of Health found that Wyckoff and BQHC wrongfully transferred funds between corporate entities (indeed, there is substantial evidence that Ross's payments for the clerkships at issue were immediately transferred to Wyckoff and used to pay Wyckoff's bills);

- Because state agencies were willing to provide financial support to the Hospitals, but not to Wyckoff, Wyckoff transferred scores of employees (many of whom had no responsibilities for work at the Hospitals) from Wyckoff to the Caritas payroll;
- Contracts were signed by the same person on behalf of both Wyckoff and BQHC;
- The credit of the related entities was used interchangeably;
- The boards and officers of Wyckoff and BQHC were nearly identical; and
- BQHC, although it had no physical presence or assets of its own, used that of Wyckoff when it needed to do so.

Further, contrary to Defendants' assertion, Ross need not prove fraud to support a verdict holding Wyckoff liable for BQHC's acts. Instead, Ross may show only "wrongful or inequitable consequences" related to the parties' agreement. *See TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339 (1998). And there is substantial evidence that the corporate structure used to contract with Ross resulted in wrongful and inequitable consequences: BQHC solicited millions from Ross with the promise that if the Hospitals ceased to operate, it would cause the clerkships to be provided at Wyckoff. It was Wyckoff's management that engineered this deal and Wyckoff was the entity that stood behind the parties' contract. Now Wyckoff seeks to avoid liability for its conduct by hiding behind BQHC, an asset-less corporation. In short, factual issues will clearly preclude summary judgment on Ross's veil piercing claim.

***Specific performance.*** Defendants also seek partial summary judgment on the issue of specific performance. Under New York law, specific performance of a contract will be ordered where "the plaintiff has no adequate remedy at law" to remedy a defendant's breach. *Connecticut Nat'l Bank v. Trans World Airlines, Inc.*, 762 F. Supp. 76, 79–80 (S.D.N.Y. 1991). One instance in which courts hold there is no adequate remedy at law is when there is a "likelihood that an award of damages could not be collected." *Restatement (Second) of Contracts* § 360 (2010); *Connecticut Nat'l Bank*, 762 F. Supp. at 80. Defendants assert that this Court cannot order specific performance because BQHC is not licensed under New York's Public Health Law to provide clinical clerkships. Again, this argument is without merit.

It is undisputed that: (1) BQHC controls Wyckoff's board; and (2) Wyckoff is licensed to provide these clerkships. There is nothing unlawful about (nor any restrictions on the Court's discretion to exercise its equitable powers to order) BQHC to specifically perform its contractual obligation to cause a properly licensed entity that it controls to provide the promised clerkships. *See, e.g., Tetra Tech., Inc. v. Harter*, 823 F. Supp. 1116, 1118 (S.D.N.Y. 1993) (signatory of contract need not be "licensed under an applicable state statute" where the contract contemplates that a party with a proper license will be caused to perform the regulated obligation); *Charlebois v. J.M. Weller Assocs., Inc.*, 72 N.Y.2d 587, 591–95 (1988) (same).

# Baker Hostetler

Honorable Kiyo A. Matsumoto
November 4, 2011
Page 4

      Further, Defendants' argument is belied by their own conduct. BQHC entered into dozens of contracts on behalf of Wyckoff for services that bear directly on the hospital's operations. Indeed, BQHC and Wyckoff have already lost on summary judgment a breach of contract suit brought by another medical school that entered into a contract for a nearly identical arrangement.

      In sum, Defendants seek partial summary judgment on two issues that are both unripe for decision. This case is ready for trial on the merits and there is no need to delay proceedings in order to brief motions that will not materially advance the litigation.

                                                      Respectfully submitted,

                                                    /s/ George J. Tzanetopoulos

cc:     Walter P. Loughlin