UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
ROSS UNIVERSITY SCHOOL OF
MEDICINE, LTD.,

Plaintiff,

– against –

BROOKLYN-QUEENS HEALTH CARE,
INC. and WYCKOFF HEIGHTS MEDICAL
CENTER,

Defendants.
-------------------------------------------------X

09 Civ. 1410 (KAM) (RLM)

## PLAINTIFF ROSS UNIVERSITY'S
## MEMORANDUM OF LAW IN SUPPORT OF
## ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

**BAKER & HOSTETLER LLP**

George Tzanetopoulos
191 North Wacker Drive, Suite 3100
Chicago, Illinois, 60606
Tel: (312) 416-6200
Fax: (312) 416-6201
gtzanetopoulos@bakerlaw.com

Sammi Malek
45 Rockefeller Plaza, 11th Floor
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201
smalek@bakerlaw.com

*Counsel for Plaintiff Ross University School of Medicine, Ltd.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ........................................................................................................... 2

SUMMARY JUDGMENT STANDARD ..................................................................................... 4

ARGUMENT ................................................................................................................................. 4

I.     PARTIAL SUMMARY JUDGMENT IS WARRANTED AS TO THE AMOUNT
OF ROSS' DAMAGES. ..................................................................................................... 4

        A.     Legal Standard For Partial Summary Judgment As To The Amount Of
Damages................................................................................................................. 5

        B.     The Court Should Grant Partial Summary Judgment In Ross' Favor As To
The Amount Of Damages. ..................................................................................... 6

II.    PARTIAL SUMMARY JUDGMENT IS WARRANTED ON LIABILITY FOR
BREACH OF CONTRACT. .............................................................................................. 8

III.   PARTIAL SUMMARY JUDGMENT IN ROSS' FAVOR IS WARRANTED ON
CERTAIN AFFIRMATIVE DEFENSES. ......................................................................... 9

        A.     Summary Judgment Should Be Granted In Favor Of Ross On The Fourth,
Fifth, Seventh, and Eighth Affirmative Defenses Because Defendants
Have Not Returned The Unearned Prepayment Balance. ...................................... 9

        B.     Ross Is Entitled To Judgment In Its Favor On The Sixth Affirmative
Defense Because The Plain Language Of The Contract Provides That
BQHC Is The Contracting Party. .......................................................................... 11

CONCLUSION ............................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Bank of N. Am. v. Shapiro*,
  298 N.Y.S.2d 399 (N.Y. App. Div. 1969) ............................ 10

*Estate of Lieberman, In Re*, 132 N.Y.S.2d 558 (N.Y. Sur. Ct. 1954) ............................ 10

*Felix Storch, Inc. v Martinucci Desserts USA, Inc*,
  924 N.Y.S.2d 308 (N.Y. County Ct. 2011) ............................ 11

*Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219 (2d Cir.1994) ............................ 4

*Goldston v. Bandwidth Tech. Corp.*,
  859 N.Y.S.2d 651 (N.Y. App .Div. 2008) ............................ 10

*Isik Jewelry v. Mars Media, Inc.*,
  418 F. Supp. 2d 112 (E.D.N.Y. 2005) ............................ 8

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ............................ 4

*McDonald's Corp. v. Robert A. Makin, Inc.*,
  653 F. Supp. 401 (W.D.N.Y. 1986) ............................ 10

*Monsanto Co. v. Haskel Trading, Inc.*,
  13 F. Supp. 2d 349 (E.D.N.Y. 1998) ............................ 5

*Sparaco v. Lawler, Matusky, Skelly Eng's LLP*,
  60 F. Supp. 2d 247 (S.D.N.Y. 1999) ............................ 8

*Textron Financial Corp. v. Seven Falls Golf & River Club, LLC*,
  No. 09-312, 2011 WL 251115 (W.D.N.C. Jan. 25, 2011) ............................ 5

*Univ. of Minnesota v. Agbo*,
  673 N.Y.S.2d 812 (N.Y. App. 1998) ............................ 10

*Washington Heights Fed. Sav. & Loan Ass'n v. Brooklyn Fur Storage Corp.*,
  161 N.Y.S.2d 674 (N.Y. Sup. Ct. 1957) ............................ 10

*Woodard v. Southampton Fed. Sav. & Loan Ass'n*,
  161 N.Y.S.2d 522 (N.Y. Sup. Ct. 1957) ............................ 10

## PRELIMINARY STATEMENT

This case is a claim for breach of a written contract between Ross University School of Medicine, Ltd. ("Ross") and Brooklyn Queens Health Care, Inc. ("BQHC") under which BQHC agreed to provide clinical clerkships for Ross' students at two hospitals (the "Hospitals") held by one of BQHC's subsidiaries, Caritas Health Care Planning, Inc. ("Caritas").

The contract documents consist of an Initial Affiliation Agreement between Ross and BQHC and two amendments to that Initial Affiliation Agreement. The key terms of the Initial Affiliation Agreement provided that during the term of the contract: (1) Ross will make a $5,000,000 prepayment for clinical clerkship slots; (2) "BQHC [will] cause the Hospitals to provide clinical clerkships . . . during the term of [the] Agreement, and until the Pre-Payment Funds have been exhausted"; (3) thereafter, for the remainder of the contract term, Ross will pay for subsequent clerkships on a "'services performed' basis" at the contract rate; (4) "BQHC guarantee[s] that the Hospitals shall provide the University with a minimum number of fifty (50) core clerkships slots" and "fifty (50) elective clerkship slots" during the term of the Agreement; and (5) BQHC shall pay interest on Ross' unearned prepayment balances at LIBOR +1%. The agreement also provided that "[i]n the event the Hospitals are not operative, and the University is not in material breach of the Agreement, BQHC agrees to provide the University with an equivalent number of clerkships as agreed to herein at one or more of its other facilities." The amendments added another $7,776,455 to Ross' prepayment, extended the contract term, and provided for additional clerkships.

Wyckoff Heights Medical Center ("Wyckoff") is the only other subsidiary of BQHC that can provide replacement clinical clerkships. The Hospitals filed for bankruptcy and closed in March 2009. Defendants have, however, refused to provide replacement clerkships at Wyckoff.

Ross brought this action against BQHC and Wyckoff for damages and specific performance. Ross also seeks to "pierce the corporate veil" and hold Wyckoff liable for any damages award.

Ross now respectfully moves this Court for partial summary judgment in its favor on three separate issues: (1) the amount of damages; (2) BQHC's liability for breach of contract; and (3) certain affirmative defenses asserted by defendants.[1]

## STATEMENT OF FACTS

BQHC is a New York not-for-profit corporation and is the sole member of Wyckoff and Caritas, which held the Hospitals. Pl.'s 56.1 Stmt. ¶1; App. A, Second Am. Compl & Answer ¶3; App. A at ROSS0056.

The Affiliation Agreement Between Ross University School of Medicine, School of Veterinary Medicine, Limited, Portsmouth, Dominica and Brooklyn Queens Health Care, Inc. (the "Initial Affiliation Agreement") is attached hereto as Appendix B. Pl.'s 56.1 Stmt. ¶2; App. B; App. C, Deposition of H. McDonald, at pp. 20:3-21:6. The Initial Affiliation Agreement was executed on December 28, 2006. Pl.'s 56.1 Stmt. ¶3; App. B at ROSS0066. The first amendment to the Initial Affiliation Agreement (the "First Amendment") is attached hereto as Appendix D. Pl.'s 56.1 Stmt. ¶4; App. D; App. E, Deposition of J. Romero, at p. 39:24-40:19. The First Amendment was executed on December 5, 2007. Pl.'s 56.1 Stmt. ¶5; App. D at ROSS0055. The second amendment to the Initial Affiliation Agreement and accompanying side letter agreement (the "second amendment") is attached hereto as Appendix F. Pl.'s 56.1 Stmt. ¶6; App. F; App. G, Deposition of T. Singleton, at pp. 11:10-13:3. The second amendment was executed on February 28, 2008. Pl.'s 56.1 Stmt. ¶7; App. G at BQHC42915, 42917.

---

[1] Should this Court grant partial summary judgment to Ross, the issues remaining for trial would be narrowed to Ross' claim for veil piercing and its prayer for specific performance.

The Hospitals filed for bankruptcy in February 2009 and have ceased to operate. Pl.'s 56.1 Stmt. ¶8; App. A, Second Am. Compl & Answer ¶¶ 46, 47. Wyckoff and its clinics can provide clinical clerkships. Pl.'s 56.1 Stmt. ¶9; App. E, Deposition of J. Romero, at p. 108:3-20. Defendants have refused to provide replacement clerkships for those lost as a result of the closure of the Hospitals. Pl.'s 56.1 Stmt. ¶10; App. H, Deposition of R. Garg, at pp. 58:11–59:23.

The report of Ross' damages expert is attached hereto as Appendix I. Pl.'s 56.1 Stmt. ¶11; App. I; App. J, Dep. of E. Davis, at p. 14:14-15:3. She calculated Ross' damages in three components: (1) the Outstanding Pre-payment Balance that remains unearned; (2) the Incremental Costs on Replacement Clerkships Through June 30, 2011; and (3) the Present Value of Future Replacement Costs From July 1, 2011 Through January 31, 2018. Pl.'s 56.1 Stmt. ¶12; App. I, Ex. A. The report of defendants' putative damages expert is attached hereto as Appendix K. Pl.'s 56.1 Stmt. ¶13; App. K; App. L, Deposition of A. Duffy, at p. 7:22-24. He calculated damages using those same three categories. Pl.'s 56.1 Stmt. ¶14; App. K, Ex. A.

Both parties' experts calculated the Outstanding Pre-payment Balance to be $6,277,266. Pl.'s 56.1 Stmt. ¶15; App. I, Ex. A; App. K, Ex. A. Both side's experts calculated the Incremental Costs on Replacement Costs through June 30, 2011 to be $1,073,501. Pl.'s 56.1 Stmt. ¶16; App. I, Ex. A; App. K, Ex. A. Ross' expert calculated the Present Value of Future Replacement Costs From July 1, 2011 Through January 31, 2018 to be $12,738,735. Pl.'s 56.1 Stmt. ¶17; App. I, Ex. A. Defendants' putative expert calculated the Present Value of Future Replacement Costs From July 1, 2011 Through January 31, 2018 to be $5,525,367. Pl.'s 56.1 Stmt. ¶18; App. K, Ex. A.

3

## SUMMARY JUDGMENT STANDARD

Under the familiar Rule 56 standards, partial summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden is upon the moving party to demonstrate the absence of any genuine issues of material fact. *See Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1223 (2d Cir.1994). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted).

## ARGUMENT

**I.    Partial Summary Judgment Is Warranted As To The Amount Of Ross' Damages.**

First, Ross respectfully requests that the Court enter partial summary judgment setting the amount of damages to be awarded should Ross prevail on liability in this action. This motion advances two alternative bases for this request. Ross' damages expert has calculated damages in three components that total $20,089,501. Defendants' purported damages expert adopted without change the first two components calculated by Ross' expert and differed only on the third component. He opined that total damages are $12,876,134. Ross has moved to preclude defendants' purported expert on the grounds that: (1) his testimony is cumulative on the points where he has simply adopted the calculation of Ross' expert; and (2) at deposition he conceded

his lack of qualifications as an expert on the third component of damages (rates for future replacement clerkships).[2]

If the Court grants Ross' motion to preclude defendants' expert, Ross respectfully requests that the Court enter partial summary judgment holding that damages are the amount calculated by Ross' expert, $20,089,501. Alternatively, if the Court does not grant Ross' motion to preclude, Ross requests that the Court enter partial summary judgment holding that damages are at minimum the amount calculated by defendants' expert, $12,876,134, and limiting the damages proceedings at trial to a determination of whether damages on the third component of damages (Present Value of Future Replacement Costs From July 1, 2011 Through January 31, 2018) are $12,738,735 or $5,525,367.

### A. Legal Standard For Partial Summary Judgment As To The Amount Of Damages.

Partial "[s]ummary judgment with respect to damages is appropriate when there is no genuine issue of material fact regarding the amount of damages claimed. *Textron Financial Corp. v. Seven Falls Golf & River Club, LLC*, No. 09-312, 2011 WL 251115, *6 (W.D.N.C. Jan. 25, 2011). Where the submissions on a motion for summary judgment establish a range of damages, the Court may appropriately order that trial proceedings on damages to be limited to establishing the amount within that range. *See Monsanto Co. v. Haskel Trading, Inc.*, 13 F. Supp. 2d 349, 362 (E.D.N.Y. 1998) ("Given, however, that the parties agree that the defendants' revenues are no more than $3,794,723.00 and no less than $3,684,622.75, at trial, I will hear evidence regarding the defendants' revenues only to the extent that such evidence serves to determine where, between those amounts, the defendants' revenues fall.").

---

[2] Ross incorporates herein by reference that motion to preclude and its supporting materials.

### B. The Court Should Grant Partial Summary Judgment In Ross' Favor As To The Amount Of Damages.

Ross' damages expert, Elizabeth K. Davis, calculated Ross' damages resulting from the breach in three categories: (1) the balance of the prepayments, including interest at the contractually specified rate, that remains unearned; (2) the incremental cost in excess of the contract rate that Ross was required to spend through June 30, 2011 to replace clerkships lost under the breached contract; and (3) a projection (reduced to present value) of incremental costs in excess of the contract rate that Ross will be required to spend from June 30, 2011 through the January 31, 2018 end of the contract term to replace lost clerkships. App. I, Ex. A. The chart in her report that summarizes the damages calculation is reproduced below:

| Exhibit A Summary of Damages | |
|---|---|
| Outstanding Pre-Payment Balance | $ 6,277,266 |
| Incremental Costs on Replacement Clerkships Through June 30, 2011 | 1,073,501 |
| Present Value of Future Incremental Costs on Replacement Clerkships From July 1, 2011 Through January 31, 2018 | 12,738,735 |
| Total | $ 20,089,501 |

App. I, Ex. A.

Defendants' proffered damages expert, Anthony G. Duffy, calculated Ross' damages in a nearly-identical manner. The chart in his report that summarizes his damages calculation is reproduced below:

| Exhibit A Summary of Damages | |
|---|---|
| Outstanding Pre-Payment Balance [1] | $ 6,277,266 |
| Incremental Costs on Replacement Clerkships through June 30, 2011 [1] | 1,073,501 |
| Present Value of Future Incremental Costs on Replacement Clerkships from July 1, 2011 through January 31, 2018 [2] | 5,525,367 |
| Total | $ 12,876,134 |
| Sources: | |
| 1. The Davis Report | |
| 2. Calculated in Exhibit B | |

App. K, Ex. A.

6

Duffy's opinion concerning the amount of the first two categories of damages (Outstanding Pre-Payment Balance and Incremental Costs on Replacement Clerkships through June 30, 2011) is identical to the amounts calculated by Ross' damages expert. *Compare* App. I, Ex. A *with* App. K, Ex. A. Indeed, at his deposition Duffy conceded that while he reviewed Ms. Davis's calculations of these elements of damages, he did not evaluate their reasonableness and had no criticism of the calculations. *See* App. L, Deposition of Duffy, at pp. 43:11-46:19, 83:6-17. Rather, he simply plugged Ms. Davis's amounts into his damages calculations. *Id.*

On the third component of the damages calculation (Present Value of Future Incremental Costs on Replacement Clerkships from July 1, 2011 through January 31, 2018), Duffy reached a different result than did Ross' expert, by using the formula that Ross' expert created for this calculation and plugging into that formula a CPI-U projection, rather than the compound annual growth rate used by Ross' expert. *See* App. L, Deposition of Duffy, at p. 53:6-15.

The amount of damages is amenable to resolution on this motion for partial summary judgment. Ross' damages expert has calculated damages in the sum of $20,089,501. As noted above, Ross has moved to preclude defendants' purported expert. If the Court grants Ross' motion to preclude, that calculation will not be genuinely disputed and the Court should enter partial summary judgment on the amount of damages in the amount of $20,089,501.

Alternatively, if the Court does not grant the motion to preclude, the Court should enter partial summary judgment holding that damages are at minimum the amount calculated by defendants' expert, $12,876,134, and limiting the damages proceedings at trial to a determination of whether the third component of damages is $12,738,735 or $5,525,367. Defendants' proffered expert adopted without change Ross' expert's calculation of damages for the unearned prepayment of $6,277,266 and damages for Incremental Costs on Replacement Clerkships

through June 2011 of $1,073,501. Thus, even if his testimony is not excluded, the only damages issue that will remain for trial is the question of the proper calculation of the third component.

In sum, if the Court grants Ross' motion to preclude defendants' expert, the Court should enter partial summary judgment holding that Ross' damages are $20,089,501. If the Court does not grant Ross' motion to preclude, the Court should enter partial summary judgment holding that damages are at minimum $12,876,134 and limit proceedings at trial on damages to a determination whether the third component of damages (Present Value of Future Replacement Costs From July 1, 2011 Through January 31, 2018) is $12,738,735 or $5,525,367.

## II. Partial Summary Judgment Is Warranted On Liability For Breach Of Contract.

The Court should also grant summary judgment in Ross' favor holding that BQHC breached the parties' contract. "Under New York law, a party asserting a breach of contract claim must prove: (1) the existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Isik Jewelry v. Mars Media, Inc.*, 418 F. Supp. 2d 112, 127 (E.D.N.Y. 2005) (granting summary judgment in favor of plaintiff on breach of contract claim). Because "[c]ontract construction presents a question of law, not of fact," a claim for breach may be appropriately decided on summary judgment. *See Sparaco v. Lawler, Matusky, Skelly Eng's LLP*, 60 F. Supp. 2d 247, 255-56 (S.D.N.Y. 1999) ("[A]s the parties' subjective intent is irrelevant and the words of the contract are unambiguous, I can resolve this dispute by construing the contract. And as I construe the contract, the . . . defendants are wrong and plaintiff is right.").

A written contract plainly exists. Pl.'s 56.1 Stmt. ¶¶2-7; App. B; App. D; App. F. Ross performed. It made $12,776,455 in prepayments. App. I, Ex. B at Column C. There can be no dispute that one of the contract terms provides that: "[i]n the event the Hospitals are not operative, and the University is not in material breach of the Agreement, BQHC agrees to

8

provide the University with an equivalent number of clerkships as agreed to herein at one or more of its other facilities." App. B at ROSS0064.

There also is no dispute about the fact that the Hospitals have ceased to operate. Pl.'s 56.1 Stmt. ¶8; App. A, Second Am. Compl & Answer ¶¶ 46, 47. Further, there is no genuine material dispute about the fact that BQHC did not provide replacement clerkships at another of its facilities. Pl.'s 56.1 Stmt. ¶10; App. H, Deposition of R. Garg, at pp. 58:11–59:23. The refusal to provide replacement clerkships is a clear breach.

In sum, there is no material dispute that, following the closure of the Hospitals, BQHC's refusal to provide Ross with "an equivalent number of clerkships . . . at one or more of its other facilities" constitutes a breach of the parties' agreement. Accordingly, summary judgment is appropriate in Ross' favor holding that BQHC has breached the parties' contract.

### III. Partial Summary Judgment In Ross' Favor Is Warranted On Certain Affirmative Defenses.

#### A. Summary Judgment Should Be Granted In Favor Of Ross On The Fourth, Fifth, Seventh, and Eighth Affirmative Defenses Because Defendants Have Not Returned The Unearned Prepayment Balance.

Defendants' Fourth, Fifth, Seventh, and Eighth Affirmative Defenses seek to avoid the contract on the grounds of impossibility, *ultra vires*, lack of authority, and mutual mistake, respectively. Each of these defenses is flawed on a number of levels. However, for purposes of this motion, Ross is entitled to judgment on all of them as a matter of law because it is undisputed that defendants have not returned to Ross the more than $6.2 million of Ross' prepayments that remains unearned. App. I, Ex. A; App. K, Ex. A.

Courts have consistently held that under New York law "it is against the law as well as sound morals to permit a party to a contract to repudiate the contract or his obligation under it, and at the same time retain the consideration that he has received." *McDonald's Corp. v. Robert*

9

*A. Makin, Inc.*, 653 F. Supp. 401, 403 (W.D.N.Y. 1986). This rule applies to each of the defenses under discussion here.

Thus, while New York law permits rescission of contracts in cases of "mutual mistake" (and we note that defendants have not shown circumstances that would trigger this equitable remedy), a party that seeks to rescind a contract must "return the consideration received on the contract sought to be rescinded." *In re Estate of Lieberman*, 132 N.Y.S.2d 558, 559 (N.Y. Sur. Ct. 1954). Similarly, "a corporation cannot avail itself of the defense of *ultra vires* where the contract has been, in good faith, fully performed by the other party, and the corporation has had the benefit of the performance of the contract." *Woodard v. Southampton Fed. Sav. & Loan Ass'n*, 161 N.Y.S.2d 522, 526 (N.Y. Sup. Ct. 1957); *Washington Heights Fed. Sav. & Loan Ass'n v. Brooklyn Fur Storage Corp.*, 161 N.Y.S.2d 674, 676 (N.Y. Sup. Ct. 1957) ("it is well settled in this State that where, as in the case at bar, one party has received the full benefit of an ultra vires contract, it cannot plead the invalidity of the contract to defeat an action upon it by the other party").

The same principle applies where a party tries to avoid a contract by denying that those who entered into the contract on the party's behalf had authority to do so. Where a party retains the benefits of the contractual performance of another party it is "bound by the agreement, whether [it] authorized it or not." *Goldston v. Bandwidth Tech. Corp.*, 859 N.Y.S.2d 651, 655 (N.Y. App .Div. 2008); *Bank of N. Am. v. Shapiro*, 298 N.Y.S.2d 399, 399 (N.Y. App. Div. 1969) ("[h]aving made use of the proceeds, [defendants] could not assert that the loans were unauthorized"). Defendants' refusal to return the unearned prepayment is likewise fatal as a matter of law to their attempt to employ an "impossibility" defense. *See Univ. of Minnesota v. Agbo*, 673 N.Y.S.2d 812, 813 (N.Y. App. 1998) ("even assuming 'impossibility of performance'

by defendant, plaintiff's performance conferred a financial benefit to defendant which defendant acknowledges receiving. Defendant cannot keep the benefit without paying for it.").

In short, the Fourth, Fifth, Seventh, and Eighth Affirmative Defenses are unavailable as a matter of law because defendants have not returned the unearned prepayments. Thus, Ross is entitled to summary judgment in its favor on each of these defenses.

### B. Ross Is Entitled To Judgment In Its Favor On The Sixth Affirmative Defense Because The Plain Language Of The Contract Provides That BQHC Is The Contracting Party.

The Sixth Affirmative Defense asserts that Ross' claims are "barred on the ground that Defendant BQHC acted as agent for a disclosed principal, Caritas." App. A, Second Am. Compl & Answer ¶86. The rule that "[w]hen an agent acts on behalf of a disclosed principal, the agent will not be personally liable for a breach of contract unless there is clear and explicit evidence of the agent's intention to be personally liable," *Felix Storch, Inc. v Martinucci Desserts USA, Inc*, 924 N.Y.S.2d 308 (N.Y. County Ct. 2011), has no application here because the plain language of the contract documents makes clear that BQHC is the contracting party to be bound. Thus, as a matter of law Ross is entitled to judgment in its favor on this defense.

The terms of the Initial Affiliation Agreement could not be clearer about this point. The title of the contract says that it is an "Affiliation Agreement Between Ross University School of Medicine, School of Veterinary Medicine, Limited and **Brooklyn Queens Health Care, Inc.**" App. B at ROSS0056 (emphasis supplied). The very first sentence of the contract: (1) provides that "[t]his Agreement is made between" Ross "and **Brooklyn Queens Health Care, Inc.**"; (2) recites that BQHC "owns and operates" the Hospitals "through its subsidiary," Caritas; and (3) defines the "Parties" to the contract as "**BQHC** and the University." *Id.* (emphasis supplied). The operative terms of the contract provide that "**BQHC** shall cause the Hospitals to provide clinical clerkships," "**BQHC** guarantee[s] that the Hospitals shall provide the University with"

11

the minimum number of core and elective clerkships, and "**BQHC** shall pay, or shall cause the Hospitals to pay," Ross interest on the unearned prepayment balances. *Id.* at ROSS0062-63 (emphasis supplied). The clause that is central to the present dispute states that "[i]n the event the Hospitals are not operative, and the University is not in material breach of the Agreement, **BQHC** agrees to provide the University with an equivalent number of clerkships as agreed to herein at one or more of its other facilities." *Id.* at ROSS0064 (emphasis supplied). The signature block on the contract provides that the agreement was executed on behalf of "***Brooklyn Queens Health Care, Inc.***" *Id.* at ROSS0066. The first and second amendments to the contract are to the same effect. App. D at ROSS0055; App. F at BQHC42915, 42917.

Thus, the agreement at issue in this action plainly is one in which BQHC is the contracting party. BQHC committed itself, *inter alia*, to cause one subsidiary that it controlled to provide clerkships to Ross and, in the event that the hospitals owned by that subsidiary ceased to operate, to provide those clerkships—whose supply BQHC expressly guaranteed—at another of BQHC's facilities. There is simply no basis for the defense that BQHC was acting as an "agent" for a "disclosed principal," Caritas.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff Ross University School of Medicine, Ltd. respectfully requests that this Court enter partial summary judgment in its favor on the amount of damages at issue, defendant Brooklyn Queens Health Care, Inc.'s liability for breach of contract, and defendants' fourth, fifth, sixth, seventh, and eighth affirmative defenses, and grant such other relief as this Court deems fit.

|  | Respectfully submitted, |
|---|---|
|  | **BAKER & HOSTETLER LLP** |
|  | / s/ George Tzanetopoulos |
| Sammi Malek | George Tzanetopoulos |
| 45 Rockefeller Plaza, 11th Floor | 191 North Wacker Drive, Suite 3100 |
| New York, New York 10111 | Chicago, Illinois, 60606 |
| Tel: (212) 589-4200 | Tel: (312) 416-6200 |
| Fax: (212) 589-4201 | Fax: (312) 416-6201 |
| smalek@bakerlaw.com | gtzanetopoulos@bakerlaw.com |
|  | *Counsel for Plaintiff Ross University School of Medicine, Ltd.* |

13