# APPENDIX C



UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

------------------------------------------------

ROSS UNIVERSITY SCHOOL OF MEDICINE, LTD.,

        Plaintiff,

   vs.     No. 09 CV 01410(KAM)(RLM)

BROOKLYN-QUEENS HEALTH CARE, LTD. And WYCKOFF HEIGHTS MEDICAL CENTER,

        Defendants.
------------------------------------------------

DEPOSITION OF HAROLD McDONALD

New York, New York

Monday, June 27th, 2011

Reported by:
Jeremy Frank, MPM
JOB NO. 77969

1  McDonald
2  Loughlin?
3     A.   About an hour or so.
4     Q.   Is Wyckoff either paying for or
5  reimbursing you for the cost of your counsel
6  today?
7     A.   They are paying for my counsel
8  today.
9     Q.   Is Wyckoff reimbursing you for
10 your time today?
11    A.   Unfortunately, no.
12    Q.   At present do you have any type of
13 financial arrangements with Wyckoff, a
14 separation agreement of any kind, a financial
15 arrangement with the hospital following your
16 departure?
17    A.   No, I don't.
18    Q.   Any noncompete?
19    A.   No.
20    Q.   Let's take you back in time to the
21 period of time around 2005-2006, what
22 responsibilities did you have at Wyckoff in
23 connection with the acquisition, Wyckoff's
24 acquisition of St. John's and Mary Immaculate
25 Hospitals?

McDonald

A. During 2006 it was to work with the team at Wyckoff to put the deal together, and from September '06 to January '07 I was the acting executive director of St. John's and Mary Immaculate, working and reporting to St. Vincent's Medical Center.

Q. During what period of time did you say?

A. This was prior to the closing, this was '06, fall, early fall to January when they the deal was closed.

Q. Let's focus on your work as part of the team that put the deal together for Wyckoff.

Who was on that team?

A. It was David Hoffman, Emil Rucigay, Dominick Gio, myself, and Rich Sarli.

Q. What was Mr. Hoffman's role?

A. Mr. Hoffman managed all of the legal aspects.

Q. At that time was David Hoffman general counsel of Wyckoff Heights Medical Center?

A. Yes, to my knowledge.

19

                    McDonald

Q.    His too.

      What was your role?

A.    As chief operating officer.

Q.    On the team?

A.    On the team, it was to develop a transition plan.

Q.    Mr. Rucigay?

A.    Was to manage or oversee as a board member, he was chair of the board.

Q.    Mr. Sarli?

A.    Chief financial officer for Caritas.

Q.    And Mr. Gio?

A.    President and CEO of Wyckoff Caritas and Brooklyn-Queens Health Care.

      MR. TZANETOPOULOS:  Let's mark these as Plaintiff's 1, 2 and 3, for identification.

      (Plaintiff's Exhibits 1 through 3, affiliation agreement and letters, marked for identification, as of this date.)

Q.    Take a minute, look at them, when you're ready, I'll ask you questions.

      Are you ready?

1  McDonald
2  A.    Yes.
3  Q.    Mr. McDonald, have you ever had a
4  chance to review Exhibits 1, 2 and 3?
5  A.    Yes.
6  MR. TZANETOPOULOS:  For the record,
7  Exhibit 1 is entitled the affiliate
8  agreement between Ross University School
9  of Medicine and Brooklyn-Queens Health
10  Care, it has been marked with Bates
11  numbers ROSS0056 through ROSS0067.  The
12  last page, 0067, is a fax cover sheet.
13  Exhibit 2 is a two-page letter from
14  Dominick Gio president and chief
15  executive officer of Wyckoff Heights
16  Medical Center, to Nancy Perri, vice
17  president academic affairs Ross
18  University School of Medicine dated
19  August 21st, 2006, Bates numbered
20  ROSS031314 through 031315.
21  And Exhibit 3 is another letter
22  from Mr. Gio dated August 21st, 2006 this
23  time to Yife Tien, chief executive
24  officer of the American University of the
25  Caribbean that has been marked ROSS0607

McDonald

and 0608.

Q. The first question is easy, I hope, the signature on Exhibit 1 on the page marked ROSS0066, is that yours?

A. Yes.

Q. Okay.

If you look at the last sentence of what appears to be identical letters except for the addressee in Exhibits 2 and 3, is the Harold E. McDonald to which Mr. Gio refers you?

A. Yes.

Q. What responsibilities did you have at this time a little before in connection with the medical student clerkship proposals that are contained in Mr. Gio's letters in Exhibits 2 and 3?

A. The responsibility was to develop a plan with the medical schools to ramp up as quickly as possible to the number of clerkship rotations that we were planning which involved a considerable amount of work.

Q. My next question is what work was done in the development of that plan?