# Exhibit 1

## WYCKOFF HEIGHTS MEDICAL CENTER

### SECRETARY'S CERTIFICATE

THE UNDERSIGNED, Frederick T. Haller III, Secretary of Wyckoff Heights Medical Center, a New York not-for-profit corporation (the "Corporation"), hereby certifies on behalf of the Corporation pursuant to Section 4.3 of the Asset Purchase Agreement, dated as of May 9, 2006 (as amended, the "Asset Purchase Agreement"), by and among Caritas Health Care Planning, Inc., Saint Vincents Catholic Medical Centers of New York, CMC Occupational Health Services, P.C., CMC Physician Services, P.C., CMC Radiological Services, P.C. and CMC Cardiology Services, P.C., that:

1.   annexed hereto as Exhibit A is a true and complete copy of the By-laws of the Corporation;

2.   the Certificate of Incorporation (including all amendments) annexed hereto as Exhibit B has not been amended since December 31, 2006, and nothing has occurred since December 1, 2006 that would adversely affect the Corporation's corporate existence or good standing;

3.   annexed hereto as Exhibit C is a true and complete copy of the resolutions of the Board of Trustees of the Corporation authorizing the execution, delivery and performance of the Asset Purchase Agreement and all instruments and documents to be delivered in connection therewith, and the transactions contemplated thereby, by the Corporation; and

4.   the persons named in the table annexed hereto as Exhibit D have been duly elected, duly qualified, and as of the date hereof, are officers of the Corporation, holding the respective offices set forth opposite their name, and the signature set forth opposite the name of the officer is the true signature of such officer.

Capitalized terms used but not defined herein shall have the meanings set forth in the Asset Purchase Agreement.

[REMAINDER OF PAGE IS INTENTIONALLY LEFT BLANK]

4471/76874-001 Current/9123148v1

BQHC 00338

BQHC 00338-00001

IN WITNESS WHEREOF, the undersigned has executed this Secretary's Certificate as of January 1, 2007.

By: _____

Name: Frederick T. Haller III

Title:   Secretary

2

BQHC 00339

BQHC 00338-00002

**Exhibit A**
**Bylaws**

4471/76874-001 Current/9123148v1

BQHC 00340

BQHC 00338-00003

# WYCKOFF HEIGHTS MEDICAL CENTER BY-LAWS

**MARCH 16, 2006**

BQHC 00341

BQHC 00338-00004

## TABLE OF CONTENTS

**BY-LAWS**
**WYCKOFF HEIGHTS MEDICAL CENTER**

**ARTICLE I.**........................................................................................................1
ORGANIZATION

**ARTICLE II.** . ....................................................................................................1
PURPOSE AND PHILOSOPHY

**ARTICLE III**
BOARD OF TRUSTEES........................................................................................2

**ARTICLE IV**
OFFICERS............................................................................................................6

**ARTICLE V.**
COMMITTEES......................................................................................................9.

**ARTICLE VI.**
THE AUXILIARY OF WYCKOFF HEIGHTS MEDICAL CENTER....................13.

**ARTICLE VII.**
MEDICAL DIRECTOR..........................................................................................14

**ARTICLE VIII.**
MEDICAL AND DENTAL STAFF AND MEDICAL BOARD;
MEDICAL STAFF BY-LAWS, RULES AND REGULATIONS....................................14.

**ARTICLE IX.**
INDEMNIFICATION................................................................................................16

**ARTICLE X.**
DEPOSITS, CHECKS, LOANS AND CONTRACTS ................................................18

**ARTICLE XI.**
COMPLIANCE WITH THE LAW; CONFLICT OF INTEREST..............................19

BQHC 00342

BQHC 00338-00005

**ARTICLE XII.**
AMENDMENT OF BY-LAWS ............................................................................................ 20

**ARTICLE XIII.**
ADOPTION OF BY-LAWS AND PERIODIC REVIEW ......................................................... 21

ii.

BQHC 00343

BQHC 00338-00006

## WYCKOFF HEIGHTS MEDICAL CENTER
## BY-LAWS

### ARTICLE I.

### ORGANIZATION

1.01.    Name.    The name of the Medical Center is Wyckoff Heights Medical Center.

1.02.    Incorporation.    Wyckoff Heights Medical Center ("Wyckoff"), a corporation formed as the German Hospital Society of Brooklyn (the Certificate of Incorporation was filed by the Department of State on November 2, 1889 under "an act for the incorporation of Societies or Clubs for certain lawful purpose" and known as Chapter 267 of the Laws of 1875 and the acts amendatory thereof for that purpose) owns, maintains and operates Wyckoff (also the "Medical Center" or "Medical Center"), a non-profit voluntary Medical Center or Medical Centers.

1.03.    Office.    The principal office and place of business of Wyckoff is 374 Stockholm Street, Brooklyn, New York.

1.04.    Network Membership.    The Medical Center is a member of the New York Presbyterian Healthcare Network ("Network") (successor to The New York and Presbyterian Hospital Care Network, formerly The NYH Care Network) and part of the New York Presbyterian Healthcare System.    The Medical Center is an affiliate of the New York Presbyterian Hospital (successor by merger to The Society of The New York Hospital) and Cornell University Medical College by agreement.

### ARTICLE II.

### PURPOSE AND PHILOSOPHY

The role and purpose for which Wyckoff Heights Medical Center has been formed are to establish and maintain, and operate, on a not-for-profit basis, a Medical Center facility for the prevention, diagnosis, treatment and/or rehabilitation of inpatients, ambulatory service patients and out-patients who visit, live and work in the community and strengthen quality programs of clinical, education and preventive medicine and to provide skillful and compassionate medical care, health services and clinical research to meet the needs of these patients. The Medical Center is committed to fulfilling it=s role and purpose in compliance with the spirit and letter of the law and all pertinent regulatory

1

BQHC 00344

BQHC 00338-00007

and accreditation standards, including, but not limited to, the Joint Commission on Accreditation of Healthcare Organizations.

The Medical Center is part of The New York and Presbyterian Healthcare System. The mission of the System is providing a single standard of the highest quality care by adopting the best clinical and administrative practices, expanding the scope of clinical services provided, increasing the commitment to excellence in teaching and research, and continuing to fulfill the responsibility for caring for the undeserved. This will be achieved through an integrated academic health care delivery system that provides the highest quality medical care in a compassionate, caring and cost-effective manner to the people of the New York City Metropolitan area.

## ARTICLE III.

### BOARD OF TRUSTEES

3.01.  Powers and Duties.  The affairs of the Medical Center are to be managed under the direction of the Board of Trustees. The Board shall establish policy, promote performance improvement and provide for organizational management and planning and fulfill other obligations set forth in the law, regulations and requirements of regulatory and accreditation organizations. The Board shall assist management and the Medical-Dental Staff to develop the mission, value and vision statements of the Medical Center and to maintain and encourage an environment where compliance with the law and adherence to ethical behavior is enhanced.

3.02.  Number of Trustees.  The number of Trustees shall consist of not less than ten (10) and not more than forty-five (45).

3.03.  Qualifications of Trustees.  Trustees shall be selected on the basis of their interest in Wyckoff and the Medical Center, their areas of expertise and their commitment to participate fully on the Board of Trustees so as to enable the Medical Center to fulfill its role and purpose. Physicians who are members of the Medical and Dental Staff of the Medical Center shall be eligible for membership on the Board of Trustees, provided that such physicians satisfy the criteria applicable to all candidates for membership on the Board.

3.04.  Term of Office; Election.  Subject to the provisions of Section 4.04.2 hereof, each Trustee shall be elected or appointed and qualified, and assume office whichever is later, as provided in Section 4.04.1 and 4.04.2 hereof, for a term of five (5) years and shall hold office for that time or until his or her death or resignation or removal from office. Slate I, elected in June 1997 to a five (5) year term expiring June 2002.

2

BQHC 00345

BQHC 00338-00008

Slate II elected in June 1997 to a one (1) year term to June 1998 and then in June 1998 elected to a five (5) year term expiring 2003 and Slate III elected in June 1997 to a two (2) year term to June 1999 and then in June 1999 elected to a five (5) year term expiring 2004.

3.04.1.  Classification.  The Board of Trustees shall be divided into three or more classes for the purpose of staggering their terms of office.  All classes shall be as nearly equal as possible.

3.05..  Trustees Emeritus.  The Trustees may elect Trustees Emeritus regardless of age.  Trustees Emeritus may attend all meetings of the Board of Trustees (but without vote) and shall be eligible to serve as non-voting members of all standing and special committees of the Board of Trustees, except the Executive Committee.

3.06.  Annual and Regular Monthly Meetings.  A regular monthly meeting of the Board of Trustees shall be held in every month, except for the months of February, July, August and September on the first Thursday or on such other day or month or hours or place as the Board of Trustees, the Chairman of the Board of Trustees (the "Chairman") or the President (the "President") shall from time to time direct, provided that notice thereof is given to each Trustee as provided in Section 4.09.  In case such day shall fall on a legal holiday, the meeting shall be held on such other day as may be directed by the Board of Trustees, the Chairman or the President.  The regular monthly meeting held in June of each year shall constitute the Annual Meeting of the Board of Trustees.

3.06.1.  Size of the Board:  Election and Removal of Trustees.  The Members of the Board of Trustees shall determine, by resolution, the number of Trustees pursuant to Section 4.02 and may vote; to elect Trustees to the Board at such times as a vacancy may exist, and to remove Trustees of the Board with or without cause; except any Trustee in office on March 7, 1996 can be removed only for cause.

3.07.  Special Meetings.  A special meeting of the Board of Trustees may be called at any time by the Secretary at the direction of the Chairperson of the Board or Members or upon the written demand of not less than one-fifth (1/5) of the entire Board of Trustees and shall be held at such time and place designated in the notice thereof.  The business conducted at the Special Meetings shall be limited to the purpose for which the Special Meeting was called, as stated in the Notice of Special Meeting.

3.08.  Notice of Meetings.  At least ten (10) days notice prior to the regular meetings (including the annual meeting) shall be given in person, by first class mail, overnight mail, electronic mail, or telegram to each Trustee at his or her address as shown on the records of the Medical Center.  All special meetings of the Board of Trustees shall be held upon notice.  At least three (3) days prior notice of a special meeting must be given to each trustee in person, by first class mail, overnight mail, electronic mail, or

3

BQHC 00346

BQHC 00338-00009

telegram. Such notice of a special meeting shall state the purpose(s) for which the meeting is called. No business other than that specified in the Notice of a Special Meeting shall be transacted at such meeting. No notice need be given of any adjourned meeting, provided the time, date and place to which the meeting is adjourned is announced at the meeting at which the adjournment is taken. Notice of any meeting of the Board of Trustees, whether regular or special, may be waived by any Trustee by written waiver or by personal attendance at such meeting.

3.09. <u>Quorum.</u> The quorum for the transaction of all business shall in the case of a Board of 15 Trustees then in office or less be one-third of the number of Trustees then in office and in the case of a Board of more than 15 Trustees then in office shall be five Trustees plus one additional Trustee for every 10 Trustees (or fraction thereof) then in office in excess of 15. In the absence of a quorum, a majority of the Trustees present may adjourn the meeting from time to time until a quorum is present. Notice of any such adjournment shall be given to the Trustees who were not present at the time of adjournment, and unless such time and place are announced at the meeting, to the other Trustees. At any such adjourned meeting at which a quorum is present, any business may be transacted which might have been transacted at the meeting as originally called.

3.10. <u>Voting Requirements.</u> Each Trustee shall be entitled to one vote on each matter submitted to a vote of Trustees. At all meetings of the Board of Trustees, all matters shall be decided by the vote of a majority of the Trustees present at the meeting entitled to vote thereon, except as at the time may be otherwise expressly required by law, by the Medical Center's Certificate of Incorporation or by these By-Laws. Except as otherwise provided by law or in these By-Laws, action by the vote of at least two-thirds (2/3) of the entire Governing Body of the Medical Center at any Annual Meeting, Regular Meeting or Special Meeting held upon notice of the proposed action shall be required for: (1) amendment of the Certificate of Incorporation of the Medical Center; (2) The sale, lease, exchange or other disposition of substantially all of the assets of the Medical Center; (3) merger or consolidation of the Medical Center in accordance with Article IX of the Not-for-Profit Corporation Law ("NPCL"); (4) non-judicial dissolution of the Medical Center in accordance with Article X of the NPCL; (5) authorization for amendment of these By-Laws to provide that the quorum or voting requirement for the transaction of any item of business be greater than that which is required by the NPCL; and (6) repeal or amendment of this Section 4.11. (b).

3.11.. <u>Action Without A Meeting</u>. Any action required or permitted to be taken by the Board of Trustees may be taken without a meeting if all members of the Board entitled to vote thereon consent in writing to the adoption of the resolution authorizing the action. The resolution and the written  consents thereto shall be filed with the minutes of the proceedings of the Board.

4

BQHC 00347

BQHC 00338-00010

3.12.  Telephonic Meetings.  Any one or more members of the Board of Trustees may participate in a meeting of the Board by means of conference telephone or similar communications equipment allowing all persons participating in the meeting to hear each other at the same time.  Participation by such means shall constitute presence in person at a meeting.

3.13.  Attendance At Meetings.  Attendance at each meeting of the Board of Trustees shall be limited to the Trustees, Trustees Emeritus, the President, the President of the Medical Board and such others as may be invited individually to any specific meeting by the Chairman or the President for purposes germane to such meetings or otherwise required to attend by law or the JCAHO.  The duly designated medical staff representative(s) shall be invited to report at each regular meeting.  Upon the motion of any Trustee, the Board of Trustees may meet in executive session with attendance limited to Trustees and Trustees Emeriti.

3.14.  Establishment of a Medical Staff.  The Board of Trustees shall establish a medical staff and Medical Board.  The responsibilities and rights pertaining to the medical staff and Medical Board are set forth in Article IX herein and the Medical Staff By-Laws and Rules and Regulations.

3.15.  Evaluation of the Performance of the President.  The Board of Trustees shall monitor the performance of the President and Chief Executive Officer and shall evaluate his or her performance on an annual basis.

3.16.  Board Self-Evaluation.  The Board of Trustees shall evaluate its own performance on an annual basis.

3.17.  Board Orientation and Continuing Education. The Board of Trustees shall pursue a program of orientation and continuing education which shall include, but not be limited to, current information about (a) the Medical Center, its mission and values, clinical and administrative programs and community outreach, (b) the healthcare environment; and the role and responsibilities of Medical Center trustees.

3.18.  Trustee Participation on Committees of the Medical Center.  From time to time, the Board of Trustees may appoint one or more Trustees to serve on one or more of the Medical Center=s Committees.

5

BQHC 00348

BQHC 00338-00011

## ARTICLE IV.

## OFFICERS

4..01.  Number of Officers.  The officers of the Medical Center shall be the Chairperson, the President, Vice President, one or more Vice Chairpersons, a Treasurer, a Secretary, past Chairperson(s) and Member at Large.  The Board of Trustees may elect such other officers, agents and employees as it shall deem necessary or appropriate.  Any two of the foregoing offices may be held by the same person, except for the office of Chairperson and Secretary.

4.02.  Qualification of Officers.  All officers shall be members of the Board of Trustees and have the powers and duties set forth in this Article.  All officers shall have such other qualifications as the Executive Committee and the Board of Trustees may deem appropriate.

4.03.  Election; Term of Office.  Subject to Section 4.05 relating to vacancies, officers shall be elected at the Annual Meeting of the Board of  Trustees and shall hold office until the next Annual Meeting of the Board of Trustees or until their successors shall be elected and shall have qualified, but may be removed at any meeting, with or without cause, by a majority vote of the Board of Trustees in which a quorum of at least a majority of the voting Trustees then in office is present.

4.03.1.  Nominations.  The Executive Committee shall prepare and submit to the Secretary its slate of candidates for officership at the regular monthly meeting of the board of Trustees in June, or at the regular monthly meeting in connection with the Annual Meeting.  Independent nominations may be submitted, in person or by mail, to the Secretary by any voting member of the Board, provided such nominations are received within three (3) days of the date scheduled for such meeting.

4.04.  Resignation.  Any officer may resign at any time by giving written notice of such resignation to the Board of Trustees, the Chairperson, the President or the Secretary. Such resignation shall take effect at the time specified therein or, if not so specified, upon receipt thereof by the Board of Trustees, the Chairperson, the President or the Secretary, as the case may be. ·

4.05.  Vacancies.  If any office becomes or is declared vacant for any reason, the vacancy may be filled at any time by the Board of Trustees.

4.06.  Powers and Duties.  The powers and duties of the officers shall be such as may be prescribed by or pursuant to these By-Laws or from time to time by the Board of

6

BQHC 00349

BQHC 00338-00012

Trustees and, to the extent not so prescribed, as usually appertain to their respective offices, subject to the control of the Board of Trustees.

4.07. <u>Chairperson of the Board of Trustees</u>. The Chairperson shall preside at all meetings of the Board of Trustees and shall supervise the activities of the Board and its Committees. When the Chairperson is unable to act, the President shall exercise the powers and duties of the office of Chairperson unless the Chairperson with the approval of the Trustees shall have designated another Trustee for this purpose. The Chairperson shall be responsible to consult with representatives of the System to develop a criteria based process for selecting a qualified and competent chief executive officer.

4.08. <u>President</u>. The President shall be the Chief Executive Officer of the Medical Center and shall have the general powers and duties of supervision and management necessary to operate the Medical Center and all of its activities and departments. The President shall be qualified for his or her responsibilities through education and experience. The President shall represent the Board of Trustees and the Chairperson in the management of the Medical Center. The President shall be responsible for the development, submission and implementation on a timely basis of all plans to maintain the Medical Center=s compliance with statutory and regulatory requirements and requirements of the Joint Commission on Accreditation of Healthcare Organizations (AJCAHO®); and correct on a timely basis any operational deficiencies identified by these agencies or accreditation organizations, and shall report periodically to the Board of Trustees on the progress being made in developing and carrying out any such plans of correction. The President is responsible for communicating the Medical Center Mission, vision and value statements to the staff, require compliance with ethical conduct and to ensure that the responsible administrative and clinical staff members work collaboratively to develop, review and revise departmental procedures no longer than three (3) years. The President shall be responsible to inform the staff of policies and procedures. The President shall collaborate with the officers and medical staff leadership to resolve any conflicts among them which may arise and shall inform the Board as to both the conflict and the plan to resolve it. If the President is unable to act, the Chairperson shall designate another qualified Medical Center administrator to exercise the powers and duties of the President until such time that the Chairperson decides that the President is able to resume them. The President shall attend all meetings as a voting member of the Board of Trustees, the Executive Committee, and all committees of the Board of Trustees. The President shall have the authority, whenever action must be taken immediately in the best interest of patient care in the Medical Center, to summarily suspend all or any portion of the clinical privileges of any Medical Center member, such suspension to become effective immediately upon imposition, subject thereafter to such due process mechanisms as are contained in these By-Laws and the By-Laws, Rules and Regulations of the Medical Staff. In all cases of disputed authority or disputed interpretation as to these By-Laws or the By-Laws, Rules and Regulation of the Medical

7

BQHC 00350

BQHC 00338-00013

Staff, the decision of the President shall govern until the Board of Trustees shall determine otherwise.

4.09.  Vice Presidents.  Vice Presidents shall have such powers and duties as may be assigned to them from time to time by the Board of Trustees, the Chairperson or the President.

4.10.  Treasurer.  The Treasurer shall also be the Chief Financial Officer and shall be responsible for maintaining adequate records of all assets, liabilities and financial transactions of the Medical Center.  The Treasurer shall also be responsible for the collection and disposition of all corporate funds and other property of the Medical Center, and shall have authority to endorse any and all checks and drafts which may be drawn to the order of the Medical Center or any of its operating units or any of the Divisions, Clinics or Departments of the Medical Center.  The Treasurer shall render to the Chairperson and the President at their request and to the Board of Trustees at the regular meetings of the Board of Trustees or at its committees, and as the Board otherwise requests, an account of all significant transactions as Treasurer and of the financial condition of the Medical Center.  The Treasurer shall have such other powers and duties as may be assigned from time to time by the Board of Trustees, the Chairperson or the President.  At the direction of the Board of Trustees or the President, the Treasurer is authorized to delegate any one or more of the foregoing responsibilities to any Assistant Treasurer.

4.11.  Secretary.  The Secretary shall be responsible for the corporate files and records of the Medical Center but not for the Administration or Medical files and records of the Medical Center.  The Secretary shall have custody of the common seal and of all the papers and documents belonging to the Medical Center for which neither the Treasurer nor any other person shall have been made responsible.  The Secretary shall cause notice of meetings of the Board of Trustees and of the Executive Committee to be given to the Trustees and to members of the Executive Committee, respectively.  In consultation with the Chairperson of each committee of the Board of Trustees and committee of the Medical Center, the Secretary shall be responsible for scheduling all meetings of the committees of the Board of Trustees and committees of the Medical Center, and shall attend all such meetings and keep accurate minutes of their proceedings.  Such minutes shall reflect all business conducted, including findings, conclusions and recommendations made or taken.  The Secretary shall also cause appropriate notice to be given in regard to all elections, appointments, directions, authorizations, approvals and any other actions taken by the Board of Trustees, the Executive Committee, the committees of the Board of Trustees and the committees of the Medical Center.  The Secretary shall have such other powers and duties as may be assigned from time to time by the Board of Trustees, the Chairperson or the President.  At the direction of the Board

8

BQHC 00351

BQHC 00338-00014

of Trustees or President, the Secretary is authorized to delegate any of these functions to one or more Assistant Secretaries.

4.12.   Member-at-Large.  The Member-at-Large shall:  (a) serve on the Executive Committee of the Board; (b) in the event of a Board Officer=s absence, serve in the capacity of such Officer; and  have such powers and perform such duties as may be assigned by the Board of Trustees, the Chairperson and/or the Medical Center.

## ARTICLE V.

## COMMITTEES

5.01.   General.  These By-Laws provide for the establishment of three (3) types of committees:

    a.    Standing Committees of the Board, which shall be established on an on going basis and the members of which shall be members of the Board of Trustees;

    b.    Special Committees of the Board, which may be created from time to time as needed, with specific limited powers and the members of which shall be members of the Board of Trustees; and

    c.    Committees of the Medical Center, which shall be established on an ongoing basis, and differ from the standing and special committees in that all their members need not be members of the Board of Trustees.

Further distinctions between these three (3) types of committees are provided in this Article.

5.02.  Standing Committees of the Board of Trustees.  The Board of Trustees, by resolution adopted by a majority of the entire Board, may designate from among its members standing committees of the Board of Trustees, each consisting of three or more Trustees, and each of which, to the extent provided in the resolution or in these By-Laws, shall have all the authority of the Board of Trustees which lawfully may be delegated to such a committee.  Trustees Emeritus shall be eligible to serve as non-voting members of standing committees of the Board of Trustees, except the Executive Committee, whose members shall serve by virtue of position as officers and member-at-large of the Board as per Section 5.12 of these By-Laws.  Except as otherwise provided in these By-Laws, the Board of Trustees shall designate the members of each standing committee of the Board

9

BQHC 00352

BQHC 00338-00015

of Trustees at the Annual Meeting of the Board of Trustees on the recommendation of the chairperson of that standing committee, for one- (1) year terms or until their successors are designated. All committee members shall serve at the pleasure of the Board of Trustees. The Chairman and the President shall be members of all standing committees of the Board of Trustees ex officio.

5.03. Special Committees of the Board of Trustees. The Board of Trustees may create such special committees of the Board of Trustees as it may deem desirable. Such committees shall have only the powers specifically delegated to them by the Board of Trustees. Except as provided herein, the members of special committees of the Board of Trustees shall be Trustees or non-voting Trustees Emeritus.

5.04 Committees of the Medical Center. The members of committees of the Medical Center need not be Trustees or Trustees Emeriti. In each case, the members and the chairperson or co-chairperson or any vice chairperson of such committees shall be appointed by the Chairperson, after consultation with the President, with the consent of the Board of Trustees, for such terms as the Chairperson shall determine, and shall serve at the pleasure of the Chairperson and the Board of Trustees.

5.05. Chairperson of Standing Committees. Each standing committee of the Board of Trustees shall have a chairperson or co-chairperson and may have one or more vice chairperson who shall be Trustees and who shall be designated by the Board of Trustees from among that committee's members on the recommendation of the Executive Committee, with the approval of the Chairperson, after consultation with the President, for one (1) year or until their successors are designated. All committee chairperson or co-chairperson and vice chairperson shall serve at the pleasure of the Board of Trustees and the Board of Trustees shall have the power at any time to fill vacant chairpersonships or to remove any chairperson, co-chairperson or vice chairperson from office with or without cause.

5.06. Designated Standing Committees of the Board of Trustees. The standing committees of the Board of Trustees shall be as follows (subject to the authority of the Board of Trustees to designate additional committees as set forth in Section 6.02.).

5.06.1. Executive Committee.

a. Powers. The Executive Committee shall have all of the powers of the Board of Trustees between meetings of the Board of Trustees which lawfully may be delegated to such a committee. The Chairperson shall be the chairperson of the Executive Committee.

b. Duties and Responsibilities. The Executive Committee shall receive reports from and make recommendations to the Board of Trustees in connection with (a)

10

BQHC 00353

BQHC 00338-00016

planning for the Medical Center; (b) the Medical Center=s finances; (c) Medical Center operations, including, but not limited to, matters relating to the medical staff, environment of care, human resources and legal and regulatory matters; and (d) the nomination and election of Trustees and officers of the Medical Center. The Committee shall review and make recommendations to the Board of Trustees at the end of the fiscal year for the annual operating and capital budget for the following year. The Executive Committee shall receive reports: (a) from the President on significant matters, including, but not limited to, the provision of high quality patient care, finances, investments, fund-raising, real estate, personnel, legal and regulatory compliance, insurance coverage, and information technology, and (b) from the Committee Chairs on committee business and recommendations for Board approval.

        c. Meeting Times. The Committee shall meet at times determined by the Chair and shall report to the Board of Trustees at the Board meeting next following as to Committee actions and activities.

    5.06.2. Executive Compensation Committee. The Executive Compensation Committee shall review executive compensation at least annually and make recommendations regarding compensation to the Board of Trustees. No Trustee who is an employee or member of the medical staff shall be a member of the committee or participate in its decisions. The Committee shall consult with the System in connection with obtaining reliable compensation surveys as recommended by regulation.

    5.06.3    Audit and Compliance Committee    The Audit and Compliance Committee shall be comprised of three or more Trustees who are not employees of the Corporation or members of the Medical Staff, who do not have any relationship which in the opinion of the Board would interfere with the exercise of independent judgment in carrying out the responsibilities of a member of the Committee and who are able to read and understand fundamental financial statements. The Chairman of the Committee shall have accounting or related financial management expertise. The Committee shall have direct responsibility for the appointment, compensation and oversight of the work of the independent auditors employed by the Corporation for the purpose of preparing or issuing an audit report or related work, and such independent auditors shall report directly to the Committee. The Committee shall have such other duties and powers as are established by an Audit and Compliance Committee Charter approved by the Board and shall have the resources and authority appropriate to discharge its duties, including the authority to retain and receive advice and assistance from outside legal, accounting or other advisers.

    5.07. Committees of the Medical Center. The Standing Committees of the Medical Center shall be as follows: (subject to the authority of the Board of Trustees to create additional committees as set forth in Section 6.02).

11

BQHC 00354

BQHC 00338-00017

5.07.1.  Long Range Planning Committee.  The Long Range Planning Committee shall consist of members of the Board of Trustees, the President of the Medical Center, and such representatives of the Medical and Dental Staff, the Medical Center and administrative staff, and other Medical Center departments and areas as determined by the Board of Trustees.  The Long Range Planning Committee shall do the following:  (a) consider and recommend to the Board of Trustees such measures for improving the facilities and services of the Medical Center as it may deem advisable from time to time; (b) shall have general responsibility for long-range institutional planning activities to meet the needs of the community, including major alterations and new buildings for the future development of the Medical Center; work in concert with the Executive Committee and shall develop an overall plan and budget for short term and long term development of the Medical Center; such plan and budget to be reviewed and updated at least annually.  In formulating the overall plan and budget, the Long Range Planning Committee, through the President of the Medical Center, and together with the Executive Committee, shall establish a planning process within the Medical Center to accomplish this goal.  Such overall plan and budget, and planning process, shall be documented and represent the most effective available method for defining and meeting the health needs of the community, and shall coordinate the Medical Center's services with those of other health care facilities and related community resources.  A three- (3) year capital expenditure plan for the Medical Center shall be developed, which shall identify the anticipated sources of financing for, and the objectives of, each proposed capital expenditure.  The Long Range Planning Committee shall meet upon the call of the Chairperson thereof.

5.07.2  Organizational Performance Evaluation Committee.  The Organizational Performance Evaluation Committee shall have at least one member who is a Trustee and who is not otherwise affiliated with the Medical Center in an employment or contractual capacity.  The Organizational Performance Evaluation Committee shall exercise all duties and responsibilities required by law and regulation and shall assist the Medical Center and the Board of Trustees in fulfilling responsibilities for meeting levels of patient care and safety as required by law and regulation and the requirements of accreditation organizations.  The committee shall report its activities, findings, and recommendations to the Medical Board; and the Board of Trustees, at least four times a year.  The Organizational Performance Evaluation Committee shall receive reports as to organizational performance improvement and quality assessment and risk management affecting patient care and safety.

5.08.  Meetings of the Committees.  Committees designated or created by the Board of Trustees may meet either regularly at stated times or specially on notice given at least 24 hours in advance by the Secretary, the chairman of the committee or any two members thereof by mail, telegraph, telecopy or other electronic means, telephone or in person to all other members thereof, but no notice of any regular meeting need be given, and no notice of any special meeting need be given at which all members shall be present or

12

BQHC 00355

BQHC 00338-00018

notice of which shall be waived by all absent members before or after such meeting. Such committees or the Board of Trustees may make rules for the holding and conduct of their meetings. In the absence of a provision by the Board of Trustees or a provision in the rules of the committee to the contrary, a majority of the members of such committee entitled to vote shall constitute a quorum for the transaction of business, the vote of a majority of the members entitled to vote present at a meeting at the time of such vote if a quorum is then present or the unanimous written consent of all members thereof entitled to vote shall be the act of such committee, and any one or more members of such committee may participate in a meeting of such committee by means of a conference telephone or similar communications equipment allowing all persons participating in the meeting to hear each other at the same time and participation by such means shall constitute presence in person at such meeting.

## ARTICLE VI.

### THE AUXILIARY OF WYCKOFF HEIGHTS MEDICAL CENTER
(Physician's Wives Guild)

6.01. General. The Auxiliary of Wyckoff (the AAuxiliary©) shall be Wyckoff's only auxiliary organization. The Auxiliary is an unincorporated association which forms an integral part of Wyckoff=s corporate organization, provides volunteer support services for the benefit of Wyckoff and the patients of the Medical Center and promotes the health and welfare of the community.

6.02. Programs. The Auxiliary shall delineate its purpose and function for approval by the Board of Trustees. Subject to the approval of the Board of Trustees and to further its purposes, the Auxiliary may conduct programs some of which may require financial support. All fundraising functions, support services and other programs conducted by the Auxiliary for these and other purposes shall require authorization of the Board of Trustees, and the Board of Trustees may from time to time recommend to the Auxiliary other projects and activities which the Board of Trustees deems to be in the best interests of Wyckoff. The Auxiliary shall submit its annual operating budget to the Finance Committee of the Board of Trustees for review prior to its approval by the Auxiliary.

6.03. Governance. Names of candidates for all offices of the Auxiliary including vacancies therein shall be submitted to the Executive Committee of the Board of Trustees in writing by the Auxiliary Executive Committee for consultation prior to their presentation to the Auxiliary Board for election at the annual meeting of the membership of the Auxiliary in April of each year, and no election or appointment of any candidate to

13

BQHC 00356

BQHC 00338-00019

an Auxiliary office shall be held without such prior submission and consultation. By-Laws of the Auxiliary and all amendments thereto shall become effective only when approved by the Board of Trustees and thereafter duly adopted by the Auxiliary. The Auxiliary, subject to the approval of the Board of Trustees, may create, maintain and dissolve sub-auxiliary units for specialized functions as it shall determine. The President of the Auxiliary shall report to the Board of Trustees in writing concerning its activities not less than once each year. The Board of Trustees shall establish a mechanism for services provided by individual volunteers.

## ARTICLE VII.

### MEDICAL DIRECTOR

The Board of Trustees shall appoint a Medical Director who shall perform all duties and responsibilities required by law and regulation. Such appointment shall be made after consultation with the Medical Board. The Board of Trustees shall specify the Medical Director=s responsibilities to and relationships with the Board of Trustees, Medical Center Administration and the Medical and Dental Staff. The Medical Director shall report to the Board through the President.

## ARTICLE VIII.

### MEDICAL AND DENTAL STAFF
### AND MEDICAL BOARD; MEDICAL STAFF BY-LAWS, RULES AND
### REGULATIONS

8.01.   Medical Staff By-laws, Rules and Regulations - Coordination with these By-laws. The rules pertaining to the Medical Staff and Medical Board shall be set forth in the Medical Staff By-Laws, Rules and Regulations including the mechanism for resolving any differences between the Medical Board and Board as to any medical staff matter. The Board of Trustees shall approve the By-Laws, Rules and Regulations of the Medical Staff, and all amendments thereto shall become effective only upon approval by the Board of Trustees. Neither the Medical Staff nor the Board shall amend the By-laws of the Medical Staff unilaterally. The Secretary of the Board and the President of the Medical Board shall communicate and coordinate amendments of the By-laws of the Medical Center and the Medical Staff in order to avoid conflict. In the event that a conflict exists in spite of their efforts, the By-laws of the Medical Center shall prevail.

14

BQHC 00357

BQHC 00338-00020

8.02.   <u>Responsibilities of the Board Towards the Medical Staff</u>.  The Board shall fulfill its duties to the medical staff as set forth in the Medical Staff By-laws.  The Board shall review and as it deems appropriate, approve appointments and re-appointments as recommended by the Medical Board and shall abide by its duties in connection with corrective action for a member of the Medical Staff in accordance with the provisions of the Medical Staff By-laws, Rules and Regulations.

8.02.01   <u>Approval of Appointments.</u> The trustees who are members of the Quality Management Committee may in their discretion review and take final action on behalf of the Board of Trustees on Medical Board recommendations as to appointments, re-appointments and granting of clinical privileges and other credentialing, in the months where the Board of Trustees does not meet, or as otherwise requested by the Chairman. This subcommittee shall consist of at least two members.

8.03.   <u>Duties of the Medical Board</u>. In addition to such other duties as may be prescribed in the Medical Staff By-Laws, Rules and Regulations, it shall be the duty of the Medical Board to govern the Medical Staff, to advise the Board of Trustees in matters relating to the welfare of the Medical Center, the Medical Staff (including action taken by the Medical Board on a complaint pursuant to the Medical Staff By-Laws, Rules and Regulations), the medical care and treatment of patients in the Medical Center and programs of education, research and preventive medicine conducted at the Medical Center, and to receive and act on reports of the standing committees and sub-committees of the Medical Board and such special committees as may be appointed by the President of the Medical Board.  The Medical Board shall be responsible for the development, adoption and periodic review of the Medical Staff By-Laws, Rules and Regulations, and for ensuring that they are consistent with Medical Center policy and applicable legal and other requirements.  The Medical Board shall implement and report on the activities and mechanisms for monitoring and evaluating the quality of patient care, for identifying and resolving problems, and for identifying opportunities to improve care.  The Medical Board shall require a process designed to assure that all individuals who provide patient care services, but who are not subject to the medical staff privilege delineation process, are competent to provide such services.  The actions of the Medical Board are subject to review and approval or disapproval by the Board of Trustees.  The Medical Board, through its President, shall submit to the Board of Trustees periodic reports concerning the professional activities of the Medical Staff of the Medical Center.  The reports shall set forth the procedure for granting clinical privileges and the delineation of clinical privileges in connection with appointments and reappointments to the Medical Staff.

**ARTICLE IX.**

15

BQHC 00358

BQHC 00338-00021

## INDEMNIFICATION

9.01   Standing Indemnification.  Except to the extent expressly prohibited by the New York Not For Profit Corporation Law:

(a)   The Medical Center shall promptly indemnify each person who is a present or former Trustee, Honorary Trustee or Officer of the Medical Center or member of a committee established pursuant to Article VI who is made, or is threatened to be made, a party to any action or proceeding, whether civil or criminal or whether brought by or in the right of the Medical Center, or who is a subject of a government investigation, by reason of the fact that such person (I) is or was a Trustee, Honorary Trustee, Officer or committee member or (ii) in the case of a present or former Trustee, Honorary Trustee, or Officer, serves or served at the request of the Medical Center any other corporation, partnership, joint venture, trust, employee benefit plan or other enterprise in any capacity, against judgments, fines, amounts paid in settlement and expenses, including attorneys' fees, reasonably incurred in connection with such action or proceeding, or any appeal therein, or government investigation, except where a judgment or other final adjudication adverse to such person establishes that his or her acts were committed in bad faith or were the result of active and deliberate dishonesty and were material to the cause of action so adjudicated, or that he or she personally gained in fact a financial profit or other advantage to which he or she was not legally entitled; and

(b)   The Medical Center shall advance or promptly reimburse upon request of a person referred to in Section 11.01(a) all expenses, including attorneys' fees, reasonably incurred by such person in connection with any action, proceeding or government investigation of the kind referred to in Section 11.01(a) in advance of the final disposition thereof, subject to, should the Board of Trustees so require, receipt of a written undertaking by or on behalf of such person to repay such amounts if such person is ultimately found not to be entitled to indemnification under this Article XI or otherwise, where indemnification is granted, to the extent the expenses so advanced or reimbursed exceed the amount to which such person is entitled, provided that such person shall cooperate in good faith with any request of the Medical Center that common counsel be used by parties to any action, proceeding or government investigation who are similarly situated unless to do so would be inappropriate because of actual or potential differing interests between such parties; and

(c)   The Medical Center may purchase and maintain insurance on behalf of any person described in Section 11.01(a) against any liability asserted against him or her, whether or not the Medical Center would have the power to indemnify him or her against such liability under the provision of this Article or otherwise.

16

BQHC 00359

BQHC 00338-00022

9.02.  Indemnification by Resolution or Agreement.  The Medical Center, by a resolution of its Board of Trustees or the Executive Committee thereof or an agreement approved by the Board of Trustees or Executive Committee, may, to the fullest extent permitted by applicable law, indemnify and advance or reimburse expenses to any person, including a person entitled to indemnification pursuant to Section 11.01, but nothing herein shall limit or affect the rights of any such person under that section.

9.03.  Application.  A person for whom indemnification or the advancement or reimbursement of expenses is provided for under this Article XI may elect to have the provisions of this Article interpreted on the basis of the applicable law in effect: (1) at the time of the occurrence of the event or events giving rise to the action, proceeding or government investigation, to the extent permitted by law, or (2) at the time indemnification or advancement or reimbursement of expenses is provided or sought.

9.04.  Enforcement.

(a) The right to be indemnified or to the advancement or reimbursement of expenses pursuant to Section 11.01 or a resolution authorized pursuant to Section 11.02: (1) is a contract right pursuant to which the person entitled thereto may bring suit as if the provisions hereof or of any such resolution were set forth in a separate written contract between the Medical Center and such person, and (2) shall continue to exist after any rescission or restrictive modification hereof or of any such resolution with respect to events occurring prior thereto.

(b) If a request to be indemnified or for the advancement or reimbursement of expenses pursuant to Section 11.01 or a resolution or agreement authorized by Section 11.02 is not paid in full by the Medical Center within 30 days after a written claim has been received by an Officer of the Medical Center therefor and the claimant thereafter brings suit against the Medical Center to recover the unpaid amount of the claim which is successful in whole or in part, the Medical Center shall be obligated to pay the claimant the expenses, including reasonable attorneys' fees, of prosecuting such claim.

9..05.  General.

(a) The indemnification or advancement or reimbursement of expenses granted pursuant to or provided by the provisions of this Article XI shall: (1) be in addition to and shall not be exclusive of any other rights to indemnification and advancement or reimbursement of expenses to which such person may otherwise be entitled by law, certificate of incorporation, insurance policy, contract or otherwise, and (2) not include any professional malpractice liabilities or related expenses incurred by a member of the medical and dental or professional staff which result from the delivery of health care by such person.  Nothing in this Article XI shall be deemed a waiver of any rights that the Medical Center, any Trustee or other volunteer may have under the Volunteer Protection Act of 1997.

17

BQHC 00360

BQHC 00338-00023

(b) For purposes of this Article XI, the terms: (1) "the Medical Center" shall include any legal successor to the Medical Center, including any corporation or other entity which acquires all or substantially all of the assets of the Medical Center in one or more transactions, (2) "person" shall include the personal representative, testator or intestate of a person, (3) "Officer of the Medical Center" shall include persons who are elected by the Board of Trustees of the Medical Center as Officers of the Medical Center and (4) service "at the request of the Medical Center" shall include serving any: (I) other corporation or other entity which may be specified by resolution of the Board or its Executive Committee, (ii) any corporation, partnership, joint venture, trust or other enterprise of which fifty (50%) percent or more of the voting power or economic interest is held, directly or indirectly, by the Medical Center, or (iii) any employee benefit plan of the Medical Center or of any entity referred to in clauses (I) or (ii), and (5) "fines" shall without limitation include any penalties, taxes, assessments or similar required payments related to violations of the Federal Insurance Contributions Act.

(c) If any provision of this Article XI shall be found to be invalid or limited in application by reason of any law or regulation, it shall not affect the validity of the remaining provision hereof.

## ARTICLE X.

### DEPOSITS, CHECKS, LOANS AND CONTRACTS

10.01. <u>Deposits of Funds</u>. All funds of Wyckoff not otherwise employed shall be deposited in such banks, trust companies or other depositories as the Board of Trustees may from time to time determine.

10.02. <u>Checks</u>. All checks, drafts, endorsements, notes and evidences of indebtedness of Wyckoff shall be signed by such officer or officers or agent or agents of Wyckoff and in such manner as the Board of Trustees may from time to time determine. Endorsements for deposits to the credit of Wyckoff shall be made in such manner as the Board of Trustees may from time to time determine.

10.03. <u>Contracts</u>. No contracts may be entered into on behalf of Wyckoff unless and except as authorized by the Board of Trustees; any such authorization may be general or confined to specific instances.

18

## ARTICLE XI.

## COMPLIANCE WITH THE LAW; CONFLICT OF INTEREST

11.01. <u>Compliance with the Law and Adherence to Ethical Conduct.</u>   The Medical Center and staff shall comply with the law. and conduct themselves ethically. The President shall be responsible to encourage an environment of respect for and compliance with the law and ethical conduct.   The Executive/Finance Committee shall recommend the appointment of a Medical Center Compliance Officer and shall oversee a Medical Center Compliance Program. The Compliance Officer shall report directly to the Executive/Finance Committee and to the Board.

11.02. <u>Conflict of Interest.</u>   The Medical Center shall adhere to and communicate to appropriate parties the conflict of interest rules as defined by law, including the New York Not-for-Profit Law Section 715, "Interested Directors and Officers" which is made part hereof or any amendment thereto, and any requirements of the JCAHO .

a.   Trustees, Officers and all Medical Center staff members who make decisions as to purchases on behalf of the Medical Center shall be required to file a conflict of interest statement approved by the Compliance officer and the Medical Center auditors. That statement shall be reviewed by the Compliance Officer who shall make a report to the Executive/Finance Committee and Medical Center auditors disclosing any conflict of interest. Those persons who are required to complete a form shall be required to promptly inform the Compliance Officer of any conflict that arises during the course of the year.

b.   The Compliance Officer shall include information as to identification, avoidance and disclosure of conflicts of the interest in staff education as part of the Medical Center Compliance Program.

c.   Trustees and Officers shall be obligated to comply with the following guidelines in the performance of the duties:

I.   Any contract or other transaction between the Medical Center and one or more of its Trustees or Officers or between the Medical Center and any other corporation, firm, association, or other entity in which one or more of its Trustees or Officers are Directors, Trustees or Officers, or have a substantial financial interest, may be declared void or voidable by the Board of Trustees unless all of the following conditions are met:

19

BQHC 00362

BQHC 00338-00025

1.      The relevant and material facts as to such Trustee's or Officer's interest in such contract or transaction and as to any common trusteeship, officership or financial interests are disclosed in good faith in advance by such Trustee or Officer to the Board, and such facts are reflected in the Minutes of the Board meeting; and

2.      The interested Trustee or Officer has, in the judgment of the Board, fully met the burden of proof that the contract or transaction is fair and reasonable to the Medical Center at the time such contract is authorized, and such determination is reflected in the Minutes of the Board meeting;

3.      The Board authorized such contract or transaction by a vote of the majority of the Trustees present at a meeting at which a quorum is present, and the interested trustee or Officer shall not be counted in determining the presence of a quorum and in determining the vote; and

4.      The interested Trustee or Officer may make a presentation at the Board Meeting, but after such a presentation, the interested trustee or Officer may be requested to leave the meeting during the discussion of and the vote on the transaction or arrangement.

## ARTICLE XII.

### AMENDMENT OF BY-LAWS

12.01.      These By-Laws may be amended by a majority vote of the Governing Body at a meeting called for such purpose at which there is a quorum present, provided that written notice of the proposed amendment shall have been mailed to each Trustee at least five (5) days before the meeting at which any such action is taken.

20

**BQHC 00363**

BQHC 00338-00026

## ARTICLE XIII.

### ADOPTION OF BY-LAWS AND PERIODIC REVIEW

13.01.  These By-Laws shall be reviewed at least annually by the Chairman or his or her designee and be revised as necessary in accordance with the provisions of Article XIV of these By-Laws.  The date of each review shall be recorded upon completion.

The undersigned hereby certifies that the foregoing is a restatement of the Medical Center By-Laws as  approved by the Members  of the Board of Trustees on March 16, 2006.


Emil J. Rucigay, Esq.                                Dominick J. Gio
Chairman of the Board                          President & Chief Executive Officer


21

**BQHC 00364**

BQHC 00338-00027

**Exhibit B**
**Certificate of Incorporation**

4471/76674-001 Current/9123148v1

BQHC 00365

BQHC 00338-00028

*State of New York*    }   *ss:*
*Department of State* }

*I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.*

*Witness my hand and seal of the Department of State on*    **December 4, 2006**



*Special Deputy Secretary of State*

DOS-1266 (Rev. 11/05)

**BQHC 00366**

BQHC 00338-00029

We the undersigned, John H. Doscher, Diedrich Trockmann,
Julius Blanke, Henry Wagner, John H. Diruks, Louis Schul-
enburg, Henry Legemann, John C. C. Gatje, John U. Kettle,
John Kaster, Henry C. F. Brunjes, William H. Tomford,
_____ Henry Goosen, Christopher Hupken, Henry Meyer,
John Lilienthal, Charles M. Otten, Claus Muller, Christo-
pher Bimers, and Matthias Antonius, all of the City of
Brooklyn and being of full age and citizens and residents
of the United States and the State of New York being desir-
ous of associating ourselves together as a body corporate
under the act of the legislature of the State of New York
entitled "An act for the Incorporation of Societies or Clubs
for certain lawful purposes" and known as chapter 267 of
the Law of 1875 and the acts ammendatory thereof for that
purpose do hereby certify:

I.        That the name or title by which said society
shall be known in law shall be: German Hospital Society of
Brooklyn (Deutsche Hospital Gesellschaft von Brooklyn).

II.        The particular business and object of such
society shall be to erect and maintain a public Hospital and
Dispensary in the City of Brooklyn by benevolent donations.

III.        The number of trustees directors and managers
to manage the business and affairs of said society shall be
twenty one.

IV.        The names of the officers trustees or managers
to manage the business and affairs of said society during
the first year of its existence shall be as follows:

36-4-1

BQHC 00367

BQHC 00338-00030



John H. Boscher, Diedrich Treckmann, Julius Klemke, Henry Wagner, John H. Dierks, Lewis Schulenberg, Henry Logemann, John C. G. Qatje, John G. Kobbe, John Koster, Henry O. F. Brumjes, William H. Tomford, A. Jacobsen, Christopher Hunken, Henry Goosen, Henry Meyer, John Lilienthal, Charles H. Otten, Claus Muller and Christopher Ellmers and Matthias Antonius.

V.    The principal office of said society shall be in the City of Brooklyn County of Kings and State of New York and the business of said society shall be carried on in the City of Brooklyn.

In witness whereof we have hereunto set our hands and seals this eighteenth day of September 1889.

In presence of,

BQHC 00368

BQHC 00338-00031

On this 28th day of October 1889 before me
personally appeared John H. Boecker, Beckman der Weber,
Edward Black, Henry Wehner, John H. Plavke, Lorenzo Mann,
Eric, Henry Logemann, John C. Westfahl, John C. Kehn, John
Scheper, Henry G. E. Brunjes, William M. Rumford, Claus Hin-
gockel, Christian Hunken, Henry Meyer, John Lilienthal, Char-
les H. Otten, Claus Muller, Christopher Ellmers, to me known
and known to me, to be the individuals described in and who
executed the foregoing instrument and severally acknowledged
the execution thereof for the uses and purposes therein men-
tioned.

*[signature]*
Commr. of Deeds
City of Brooklyn

The foregoing articles of incorporation are hereby approved.

Dated Brooklyn, October 31st 1889.

I approve the within Certificate and Consent
that the same be filed

Brooklyn October 31, 1889

*[signature]* Willard Bartlett
J. S. C.

Indexed

Filed & Recorded Oct 31 1889

BQHC 00369

BQHC 00338-00032

**State of New York,**
**COUNTY OF KINGS.**

I, WILLIAM J. KAISER, Clerk of the County of Kings, and Clerk of the Supreme Court of the State of New York, in and for said County (said Court being a Court of Record), Do Hereby Certify, that I have compared the annexed with the original *Certificate of*

*Incorporation of German*

*Hospital of Brooklyn*

*filed & recorded*

in my office *Oct 31 1889* and that the same is a true transcript thereof, and of the whole of such original.

In Testimony Whereof, I have hereunto set my hand and affixed the seal of said County and Court, this _____ day of _____ 18__

_____ Clerk.

36 - 4 - 4

BQHC 00370

BQHC 00338-00033



Articles of

Incorporation

of

German Hospital

of Brooklyn

M. L. TOWNS,
COUNSELLOR AT LAW,
16 Court Street, Brooklyn.

STATE OF NEW YORK.
Office of Secretary of State.
FILED AND
RECORDED   NOV 2  1889  11 A. m.
DEPUTY SECRETARY OF STATE.

BQHC 00371

BQHC 00338-00034

*State of New York* } *ss:*
*Department of State* }

*I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.*

*Witness my hand and seal of the Department of State on*   **December 4, 2006**



*Special Deputy Secretary of State*

DOS-1266 (Rev. 11/05)

**BQHC 00372**

BQHC 00338-00035



STATE OF NEW YORK

## STATE BOARD OF CHARITIES

OFFICE AT THE CAPITOL

CAPITOL POST OFFICE BOX 17
TELEPHONE 766 CHAPEL    ALBANY, N.Y. ___ October 11, 1899.

In the matter of the

Extension of the Corporate Purposes

of the

German Hospital Society of Brooklyn.

WHEREAS, Application has been made to the State Board of Charities for its approval of the extension of the corporate purposes of the German Hospital Society of Brooklyn to permit said society to demand and accept remuneration and pay for such patients who may be able and willing to pay a reasonable charge for the aid and comfort extended to them on the part of the society, to be applied for the benefit of the same, and

WHEREAS, On due inquiry and investigation, it appears to said Board desirable and proper that the German Hospital Society of Brooklyn should so extend its corporate purposes,

NOW, THEREFORE, In pursuance of and in conformity with the provisions of Chapter 559 of the laws of the State of New York, passed May 6, 1895, the said State Board of Charities hereby certifies that it approves of the extension of the corporate purposes of the German Hospital Society of Brooklyn to permit said Society to demand and accept remuneration and pay from such patients who may be able and willing to pay a reasonable charge for the aid and comfort extended to them on the part of the society, to be applied for the benefit of the same, the certificate of extension of the corporate purposes being hereunto annexed.

IN WITNESS WHEREOF, the said Board has this 11th day of October, 1899, caused these presents to be subscribed by its officers and its official seal to be hereunto affixed.

_W. R. Stewart_ —
President.

Attest:

_Robt. W. Hebberd_
Secretary.

BQHC 00373

BQHC 00338-00036

State of New York,
City of New York,
Borough of Brooklyn,     } ss.
Kings County.

We, the undersigned, President and Secretary of the
German Hospital Society of Brooklyn, do hereby certify, that
on the 17th day of April, 1899, at a Special meeting of said
Society, duly called for that purpose, a resolution was adopted
in favor of extending the corporate purposes of such Society,
by adding to Paragraph II. of the certificate of incorporation,
of said Society, the following words, to wit:- "But it shall
be lawful for said Society to demand and accept remuneration
and pay from such patients who may be able and willing to pay
a reasonable charge for the aid and comfort extended to them
on the part of the Society, to be applied to the benefit of
the same", so that Paragraph II. of such Certificate of Incor-
poration shall read as follows: "The particular business and
object of such society shall be to erect and maintain a public
Hospital and Dispensary in the city of Brooklyn by benevolent
donations.  But it shall be lawful for said Society to demand
and accept remuneration and pay from such patients who may be
able and willing to pay a reasonable charge for the aid and
comfort extended to them on the part of the Society, to be
applied to the benefit of the same."

And we do further certify that such resolution was duly
adopted by the concurring vote of a majority of the members
of the corporation present at such special meeting duly called
for such purpose.

Dated the _____ day of May,     1899.

John H. Breckenridge

Henry C. A. Wagner  Sec.

34.37

BQHC 00374

BQHC 00338-00037



STATE OF NEW YORK,
Borough of Brooklyn,
County of Kings.

On this _____ day of _____ in the year one thousand
eight hundred and ninety-nine, before me personally came
_____ President and _____ Secretary
of the German Hospital Society of Brooklyn, to me known, and
known to me to be the individuals described in and who executed
the foregoing instrument, and severally acknowledged to me that
they executed the same.

_____
NOTARY PUBLIC, KINGS CO., N. Y.

BQHC 00375

BQHC 00338-00038



... that the undersigned, being a majority of the directors of the German Hospital Society of Brooklyn, do hereby certify, in pursuance of the resolution referred to in the annexed ... ... of the President and Secretary of the said corporation, that said corporation has extended its corporate duration as set forth in such resolution.

Dated the *first* day of *May*, 1899.

34-97-4

BQHC 00376

BQHC 00338-00039

State of New York,

Borough of Brooklyn, } SS:

County of Kings:

ON this _____ day of _____ in the year one thousand
eight hundred and ninety-nine, before me personally came
_____ _____ _____ _____ _____ _____ _____ _____
_____ _____ _____ _____ _____ _____ _____ _____
_____ _____ _____ _____ _____ _____ _____ _____
_____ _____ _____ _____ _____ _____ _____ _____
_____ _____ _____ _____ _____ _____ _____ _____
being a majority of the directors of the German Hospital
Society of Brooklyn, to me known, and known to me to be the
individuals described in and who executed the foregoing instru-
ment, and severally acknowledged to me that they executed the
same.

_Julius Lehrenkrauss_
NOTARY PUBLIC. KINGS CO., N. Y.

STATE OF NEW YORK, CITY OF BROOKLYN, COUNTY OF KINGS, S. S.:—
ON THE _second_ DAY OF _July_ IN THE YEAR ONE
THOUSAND eight HUNDRED AND _ninety_ BEFORE ME PERSON-
ALLY CAME _Julius Lehrenkrauss_ being
one of the above mentioned majority
of the directors of the German Hospital
Society of Brooklyn
TO ME KNOWN, AND KNOWN TO ME TO BE THE INDIVIDUAL DESCRIBED IN, AND
WHO EXECUTED THE FOREGOING INSTRUMENT, AND _duly_
ACKNOWLEDGED THAT HE EXECUTED THE SAME.

_[signature]_
NOTARY PUBLIC. KINGS CO., N. Y.

94-95-5

BQHC 00377

BQHC 00338-00040



I, the undersigned, a Justice of the Supreme Court, do hereby approve of the resolution referred to in the annexed certificates, and of the action had thereon by the said corporation at said special meeting, and of the act of the President and Secretary and a majority of the directors of said corporation as set forth in the annexed certificates.

Dated the ___ day of _____ 1899.

_____
JUSTICE OF THE SUPREME COURT

BQHC 00378

BQHC 00338-00041

STATE OF NEW YORK
COUNTY OF KINGS. } ss.:

I, WILLIAM P. WUEST, Clerk of the County of Kings, and Clerk of the Supreme Court of the State of New York in and for said County (said Court being a Court of Record) DO HEREBY CERTIFY that I have compared the annexed with the original *Amended Certificate of Incorporation of German Hospital Society of Brooklyn* filed and recorded in my office *June 2d 1899* and that the same is a true transcript thereof, and of the whole of such original.

**In Testimony Whereof,** I have hereunto set my hand and affixed the seal of said County and Court, this _____ day of _____ 189_.

William P. Wuest
Clerk.

34-97-7

**BQHC 00379**

BQHC 00338-00042



BQHC 00380

BQHC 00338-00043

*State of New York     }*
*Department of State }* ss:

*I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.*

*Witness my hand and seal of the Department of State on*   **December 4, 2006**



*Special Deputy Secretary of State*

DOS-1266 (Rev. 11/05)

**BQHC 00381**

BQHC 00338-00044

In the Matter of the Application : 
to change the name of the German :
Hospital Society of Brooklyn to the :
new name to be assumed, Wyckoff :
Heights Hospital of Brooklyn :

Pursuant to a resolution adopted at a meeting held on the 11th day of June, 1918, by the Board of Directors, recommending a change of name for the Society, notice is herewith given that a special meeting of the German Hospital Society of Brooklyn will be held on Wednesday, October 9th, 1918, at Schwaben Hall, corner Knickerbocker and Myrtle Avenues, Brooklyn, New York, at 8 p.m., for the purpose of voting upon the resolution to change the present name of "German Hospital Society of Brooklyn" to the new name proposed to be assumed, viz, "Wyckoff Heights Hospital of Brooklyn."

*Frederick A. Schurman*

Frederick A. Schurman
Vice President & Acting President

*Henry C.A. Wagner*

Henry C.A. Wagner
Secretary.

BQHC 00382

BQHC 00338-00045



BQHC 00383

BQHC 00338-00046

*State of New York*    *}*  *ss:*
*Department of State }*

*I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.*

*Witness my hand and seal of the Department of State on*    **December 4, 2006**



*Special Deputy Secretary of State*

DOS-1266 (Rev. 11/05)

**BQHC 00384**

BQHC 00338-00047



GERMAN HOSPITAL SOCIETY
OF
BROOKLYN

Pursuant to a resolution adopted at a meeting held
on the 18th day of October, 1918, by the Board of Directors,
recommending a change of name for the Society, notice is
herewith given that a special meeting of the German Hos-
pital Society of Brooklyn will be held on Monday,
November 11th, 1918, at the Hospital Building, St. Nicholas
Avenue and Stockholm Street, Brooklyn, New York, at 8 p.m.,
for the purpose of voting upon the resolution to change
the present name of "German Hospital Society of Brooklyn"
to the new name proposed to be assumed, viz, "Wyckoff
Heights Hospital Society of Brooklyn."

64

_Frederick C. Schunn_
                         Vice President & Acting President

_Henry C. A. Wagner_
                         Secretary.

This new notice is given because the word "Heights"
was omitted at the previous meeting it was decided the
change will read be "Wyckoff Heights Hospital Society of
Brooklyn."

BQHC 00385

BQHC 00338-00048



164

5647

Copy of Notice of Meeting
to Stockholders of the
German Hospital Society
of Brooklyn

to change name to
Wyckoff Heights Hospital
Society of Brooklyn

STATE OF NEW YORK
OFFICE OF
SECRETARY OF STATE

FILED OCT 28 1918

BQHC 00386

BQHC 00338-00049

*State of New York   }* ss:
*Department of State }*

*I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.*

*Witness my hand and seal of the Department of State on*   **December 4, 2006**



*Special Deputy Secretary of State*

DOS-1266 (Rev. 11/05)

BQHC 00387

BQHC 00338-00050

In the Matter of the Application
to change the Corporate Name of the
German Hospital Society of Brooklyn

------------------------------------------X

The German Hospital Society of Brooklyn by
the undersigned, its Vice President and Acting President,
and the Secretary, do hereby certify that on the 11th
day of November, 1918, at a special meeting of the members
of the German Hospital Society of Brooklyn at the Hospital
Building, St. Nicholas Ave. and Stockholm Street., at 8 p.m.,
the following resolution was on the same day adopted.

RESOLVED that the present name of the corporation,
to wit, "German Hospital Society of Brooklyn" be changed
and we do herewith change the same to the new name to be
assumed, to wit, "Wyckoff Heights Hospital Society of
Brooklyn." Be it further
RESOLVED that this change of name be made effective
immediately upon compliance with the requirements of the law.

It is further certified that the certifica-
tion of incorporation was filed in the office of the
Secretary of State on or about October 31st, 1889; that
the said corporation was organized under the general law
of the State, chapter 267 of the laws of 1875 and the acts
amendatory thereto; that the name under which the said
corporation was originally incorporated is "German Hos-
pital Society of Brooklyn"; that no subsequent
changes in the name have been made therein and that the
new name which the corporation desires to adopt is

BQHC 00388

BQHC 00338-00051

"Wyckoff Heights Hospital Society of Brooklyn."

It is further certified that at the said meeting and before acting upon the said resolution, there was presented and read to the meeting a certificate from the Secretary of State, in duplicate, to the effect that the name which said corporation proposes to assume is not the name of any other corporation appearing on his index of corporations as authorized to do business under the laws of the State of New York, or a name which he deems so nearly resembling it as to be calculated to deceive.

*Frederick C. Schurman*

Vice President & Acting President

*Henry C. A. Wynn*
Secretary.

Nov. 11th, 1918

BQHC 00389

BQHC 00338-00052

STATE OF NEW YORK : SS
COUNTY OF KINGS :

Frederick A. Schurman being duly sworn deposes and
says: that he is the Vice President and Acting President
of the corporation named in the foregoing certification;
that he has read the foregoing certification and knows
the contents thereof:  that the same is true to his
own knowledge except as to the matters therein stated
to be alleged on information and belief, and as to these
matters he believes them to be true.

Frederick A. Schurmann

Sworn to before me, this
11th    day of Nov., 1918 :

C. S. Rathbun

COMMISSIONER OF DEEDS
CITY OF NEW YORK

BQHC 00390

BQHC 00338-00053

STATE OF NEW YORK :
                  : SS
COUNTY OF KINGS :

Henry C.A. Wagner being duly sworn deposes and
says, that he is the Secretary of the corporation
named in the foregoing certification:    that he
has read the foregoing certification and knows the
contents thereof: that the same is true to his own
knowledge except as to the matters therein stated
to be alleged on information and belief, and as to
these matters he believes them to be true.

*Henry C. A. Wagner*

Sworn to before me, this
11th   day of Nov., 1918

*H R Rathburn*

COMMISSIONER

BQHC 00391

State and City of New York, )
County of Kings,    :  SS:
Borough of Brooklyn,   )

    On this 12th day of December, 1918, before
me personally came Frederick A. Schurman, to me known and
known to me to be the individual described in and who
executed the foregoing instrument, and he duly ack-
nowledged to me that he executed the same.

             *C. H. Rathbun*

           COMMISSIONER OF DEEDS
            OF NEW YORK

State and City of New York, )
County of Kings,    :  SS:
Borough of Brooklyn,   )

    On this 12th day of December, 1918, before
me personally came Henry C. A. Wagner, to me known and
known to me to be the individual described in and who
executed the foregoing instrument, and he duly ack-
nowledged to me that he executed the same.

             *C. H. Rathbun*

          COMMISSIONER OF DEEDS
         OF CITY OF NEW YORK.

BQHC 00392

BQHC 00338-00055

German Hospital Society of Brooklyn to the
name now to be assumed, Wyckoff
Heights Hospital Society of Brook-

WHEREAS the principal object of the organization of
the German Hospital Society of Brooklyn was for the purpose
of creating and maintaining a public hospital and dispensary
in the then and now Borough of Brooklyn, City and State of
New York, and

WHEREAS it did erect and has and still does maintain
and operate such a public hospital and dispensary, now lo-
cated on St. Nicholas Avenue and bounded by part of the blocks
of Himrod, Stockholm and Stanhope Streets, in the said
Borough of Brooklyn, and

WHEREAS in the conduct and operation of the said
hospital and dispensary the organization gives succor and
relief, within the limits of its capacity and ability, to
all suffering humanity, irrespective of race, color, creed,
religion or nationality, and

WHEREAS the name of the Society as indicated by the
word "German", would imply that the benefits given by it
were limited in its scope to a particular nationality and
in that respect might mislead, and has in fact resulted in
misleading, residents of the community into that erroneous
belief, and

WHEREAS in the estimation of a great many people the
word "German" has been brought into opprobrium by the acts
and misdeeds of the German Imperial Government against the
Government of the United States and its people, which has

BQHC 00393

BQHC 00338-00056

............ the ...... acts of war between our country and .......... Government

WHEREAS we believe that if continue the present name would be injurious to the corporation; and

WHEREAS the new name proposed to be assumed is significant of the location and will in our opinion, be of benefit to the hospital and dispensary; now therefore be it

RESOLVED that the present name of the corporation to wit, "German Hospital Society of Brooklyn" be changed and we do herewith change the same to the new name to be assumed, to wit, "Wyckoff Heights Hospital Society of Brooklyn". Be it further

RESOLVED that this change of name be made effective immediately upon compliance with the requirements of the law.

*Frederick A. Schumann*
*Henry. G. A. Nipken*

Adopted at a special meeting held on the 11th day of November, 1918, at the Hospital Building, pursuant to a notice previously given and published, which notice was sent to each member, in accordance with the law and statute in such cases made and provided.

BQHC 00394

BQHC 00338-00057



State of New York

This is to Certify that I have examined the corporation entries in this office, and find that the name

Wyckoff Heights Hospital Society of Brooklyn, Inc.

is not the name of any other corporation appearing thereon as authorized to do business under the laws of the State of New York, or a name which I deem so nearly resembling it as to be calculated to deceive.

Witness my hand and the seal of office of the Secretary of State, at the City of Albany this twenty-eighth day of October one thousand nine hundred and eighteen.

Second Deputy Secretary of State

STATE OF NEW YORK,
County of Kings,
City of New York,
Borough of Brooklyn.

JOSEPH T. KEARNEY, of the Borough of Brooklyn of the City of New York, being duly sworn, saith that he is Foreman of the Publisher of THE BROOKLYN CITIZEN, a daily Newspaper published in the Borough of Brooklyn aforesaid, and that the notice, of which the annexed is a true copy, has been published in said newspaper *one* in each week, for _____ *Two* _____ weeks successively, commencing on the _14th_ day of *November 1918*

SWORN AND SUBSCRIBED TO THIS _22nd_ DAY of *November 1918* BEFORE ME,

_J. T. Kearney_

Commissioner of Deeds, City of New York.

BQHC 00396

BQHC 00338-00059

---

In the Matter of the Application
to change the name of the German
Hospital Society of Brooklyn to the
new name to be assumed, Wyckoff
Heights Hospital Society of Brooklyn

---

Pursuant to a resolution adopted at a meeting held on the 14th day of October, 1918, by the Board of Directors, recommending a change of name for the Society, notice is herewith given that a special meeting of the German Hospital Society of Brooklyn will be held on Monday, November 11th, 1918, at the Hospital Building, St. Nicholas Avenue and Stockholm Street, Brooklyn, New York, at 8 p.m., for the purpose of voting upon the resolution to change the present name of "German Hospital Society of Brooklyn" to the new name proposed to be assumed, viz, "Wyckoff Heights Hospital Society of Brooklyn."

*Frederick A. Schurman*
Vice President & Acting President

*Henry C. A. Wegner*
Secretary.

This new notice is given because the word "Society" was omitted and at the last meeting it was decided to change the name to "Wyckoff Heights Hospital Society of Brooklyn."

BQHC 00397

BQHC 00338-00060

IN SUPPORT OF THE APPLICATION
to change the name of the German
Hospital Society of Brooklyn to that
proposed to be assumed, WYCKOFF
HEIGHTS HOSPITAL SOCIETY OF
BROOKLYN

STATE OF NEW YORK     :
CITY OF NEW YORK      :  SS
COUNTY OF KINGS       :

    CHARLES S. RATHBUN being duly sworn, deposes and
says, that he resides at No. 243 - 88th Street, Borough of
Brooklyn, City of New York.  That he is familiar with the
list of members of the German Hospital Society of Brooklyn;
that he knows all the names of members of the said Society
and their respective addresses.

    That on October 26th, 1918, at 3 p.m., he served a
copy of the notice of a special meeting of the said German
Hospital Society of Brooklyn to be held on Monday, November
11th, 1918, at the Hospital Building, St. Nicholas Avenue
and Stockholm Street, Borough of Brooklyn, City of New York,
at 8 p.m., for the purpose of voting upon the resolution to
change the present name of "German Hospital Society of
Brooklyn" to the new name proposed to be assumed, viz:
"Wyckoff Heights Hospital Society of Brooklyn", upon each of
the members of said Society to the number of four hundred and
eighty-six (486), by mail, by depositing in the Brooklyn
Post Office, Station ?, located at 681 Broadway, in the
Borough of Brooklyn, City of New York, a copy of said notice
in a duly prepaid enclosed envelope addressed respectively
to all of the said members of said Society, to four hundred
and twenty-four (424) of said members who reside in the

BQHC 00398

BQHC 00338-00061

Borough of Brooklyn, City of New York, to twenty (20) in the Borough of Manhattan, City of New York, to five (5) in Richmond Hill, New York, to three (3) in Jamaica, New York, to one (1) in Morris Park, New York, to one (1) in Union Course, New York, to one (1) in Spring Valley, New York, to one (1) in Amityville, New York, to one (1) in Lynbrook, New York, to one (1) in Woodside, New York, to one in Queens, New York, to one (1) in Hollis, New York, to one (1) in Rockaway, New York, to one (1) in Corona, New York, to one (1) in Middle Village, New York, to one (1) in Elmhurst, New York, to one (1) in Sea Cliff, New York, to six (6) in Glendale, New York, to three (3) in Woodhaven, New York, to ten (10) in Ridgewood, N.Y, to one (1) in East Williamsburg, New York, and to one (1) in Hoboken, New Jersey. That he knew each of the persons so served to be members of said Society, that a copy of said notice is herewith attached.

_Charles S Rathbun_

Sworn to before me this

2? day of October, 1918:

BQHC 00399

BQHC 00338-00062



**MEETING NOTICES.**

IN THE MATTER OF THE APPLICA-
tion to change the name of the German
Hospital Society of Brooklyn to the new
name to be assumed, Wyckoff Heights Hos-
pital Society of Brooklyn.

Pursuant to a resolution adopted at a
meeting held on the 14th day of October,
1918, by the Board of Directors, recom-
mending a change of name for the society,
notice is herewith given that a special
meeting of the German Hospital Society of
Brooklyn will be held on Monday, Novem-
ber, 11th, 1918, at the Hospital building,
St. Nicholas Avenue and Stockholm Street,
Brooklyn, New York, at 1 p. m., for the
purpose of voting upon the resolution to
change the present name of "German
Hospital Society of Brooklyn" to the new
name, hereinafter to be assumed, viz:
"WYCKOFF HEIGHTS HOSPITAL SO-
CIETY OF BROOKLYN."

FREDERICK A. SCHURMANN,
Vice-President and Acting President.

HENRY C. A. WAGNER,
Secretary.

This new notice is given because the
word "Society" was omitted and at the
last meeting it was decided to change the
name to "Wyckoff Heights Hospital Society
of Brooklyn."                    oc11 not

*139*

BQHC 00400

BQHC 00338-00063



STATE OF NEW YORK,
County of Kings,
City of New York,
Borough of Brooklyn.

JOSEPH T. KEARNEY, of the Borough of Brooklyn of the City of New York, being duly sworn, saith that he is Foreman of the Publisher of THE BROOKLYN CITIZEN, a daily Newspaper published in the Borough of Brooklyn aforesaid, and that the notice, of which the annexed is a true copy, has been published in said newspaper *once* in each week, for *two* weeks successively, commencing on the *28th* day of *October 1918*

SWORN AND SUBSCRIBED TO THIS *6th* DAY of *November 1918* BEFORE ME,

Commissioner of Deeds, City of New York.

New York No. 21 Kings No. 209 A
Commission Expires Jan. 31rd 1919

BQHC 00401

BQHC 00338-00064



BQHC 00402

BQHC 00338-00065



BQHC 00403

BQHC 00338-00066

*State of New York   }* ss:
*Department of State }*

*I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.*

*Witness my hand and seal of the Department of State on*   **December 4, 2006**



*Special Deputy Secretary of State*

DOS-1266 (Rev. 11/05)

BQHC 00404

BQHC 00338-00067

# CERTIFICATE OF REPORT OF EXISTENCE OF

Wyckoff Heights Hospital
Exact Name of Corporation

Pursuant to Section 57 of the Membership Corporations Law

1. The name of the corporation is   Wyckoff Heights Hospital
Name of Corporation

The original name was   German Hospital Society of Brooklyn
If name has been changed, insert original name

2. The certificate of incorporation was filed in the Department of State on   November 2, 1889
Date of Incorporation

3. The corporation was formed pursuant to   Laws of the State of New York 1875
Cite Incorporation Statute

4. The existence of the foregoing corporation is hereby continued.

To be signed by an officer,
trustee, director or five mem-
bers in good standing.

State of New York
County of Kings } ss.:

On this 18th day of June, 1951, before me personally appeared
G H Henry Hustedt to me personally known and known to me to be the
person(s) described in and who executed the foregoing certificate, and ( he) (they) thereupon acknowl-
edged to me that ( he) (they) executed the same for the uses and purposes therein mentioned.

Ferdinand Eknell
Notary Public.

FERDINAND E. KNELL
Notary Public, State of New York
County of   Qualified in Queens Co. No. 4141-18-5303
Cert. Filed with Kings Co. Reg. Office
Commission Expires March 30, 1953

NOTE: If the foregoing acknowledgment is taken without the State of New York, the signature of the notary public
should be authenticated by a certificate of the clerk of the county in which such notary has power to act, or
other proper officer.

BQHC 00405

BQHC 00338-00068



STATE OF NEW YORK

CERTIFICATE OF REPORT OF EXISTENCE OF

Exact Name of Corporation

Pursuant to Section 57 of the
MEMBERSHIP CORPORATIONS LAW

Louis Schenkweiler
Wyckoff Heights Hospital, of Brook-
lyn, N.Y., St. Nicholas Ave.
Stanhope and Stockholm Sts.
Brooklyn, New York

Name of Filer

STATE OF NEW YORK
DEPARTMENT OF STATE

FILED JUL 18 1951

FILING FEE $5.00

Secretary of State

BQHC 00406

BQHC 00338-00069

State of New York     }  ss:
Department of State }

*I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.*

Witness my hand and seal of the Department of State on     **December 4, 2006**



Special Deputy Secretary of State

DOS-1266 (Rev. 11/05)

BQHC 00407

BQHC 00338-00070

CERTIFICATE OF TYPE OF

NOT-FOR-PROFIT CORPORATION OF WYCKOFF HEIGHTS HOSPITAL

under Section 113 of the NOT-FOR-PROFIT

CORPORATION LAW

1.  The name of the Corporation is Wyckoff Heights Hospital.  It was originally formed under the name of German Hospital Society of Brooklyn on October 31st, 1889.  The name was changed to Wyckoff Heights Society of Brooklyn on November 11th, 1898 and changed to its present name on February 27th, 1968.

2.  The Certificate of Incorporation was filed by the Department of State on November 2nd, 1889 under "An act for the Incorporation of Societies or Clubs for certain lawful purposes" and known as Chapter 267 of the Law of 1875 and the acts amendatory thereof for that purpose.

3.  The post office address of said corporation to which the Secretary of State shall mail a copy of any notice required by law is 374 Stockholm Street, Brooklyn, New York 11227.

4. The said corporation is a Type B not for profit corporation as defined under Section 201 of this chapter.

Dated January 4th, 1972
at Brooklyn, New York

WYCKOFF HEIGHTS HOSPITAL

by *[signature]*
President
Board of Trustees

WYCKOFF HEIGHTS HOSPITAL

By *[signature]*
Secretary
Board of Trustees

BQHC 00408

BQHC 00338-00071

STATE OF NEW YORK
COUNTY OF

JOHN VAN N. MEYER, being duly sworn, deposes and says that he is the President of the Board of Trustees of Wyckoff Heights Hospital, the corporation herein; that he resides at Factory Road, Locust Valley, New York; that he has read the foregoing Certificate of Type of not-for-profit corporation of Wyckoff Heights Hospital and knows the contents thereof and that the same is true of his own knowledge except as to those matters therein stated to be alleged on information and belief, and that as to those matters he believes it to be true.

Sworn to before me this
4th day of January, 1972.

JOHN H. COOK, JR.
Notary Public, State of New York
No. 41-5800760 Queens County
Term Expires March 30, 1972

BQHC 00409

BQHC 00338-00072



BQHC 00410

BQHC 00338-00073

State of New York   *}*
Department of State *}* *ss:*

I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.

Witness my hand and seal of the Department of State on **December 4, 2006**



Special Deputy Secretary of State

DOS-1266 (Rev. 11/05)

**BQHC 00411**

BQHC 00338-00074

CERTIFICATE OF CHANGE OF NAME OF

WYCKOFF HEIGHTS HOSPITAL SOCIETY OF BROOKLYN to

WYCKOFF HEIGHTS HOSPITAL pursuant to Section forty of the General

Corporation Law.

(1) The name of the corporation is WYCKOFF HEIGHTS HOSPITAL

SOCIETY OF BROOKLYN.  The name under which the corporation was

originally incorporated was GERMAN HOSPITAL SOCIETY OF BROOKLYN,

NEW YORK.

(2) The certificate of incorporation of GERMAN HOSPITAL SOCIETY

OF BROOKLYN, NEW YORK was filed by the Department of State,

Albany, New York on the 31st day of October, 1889.

(3) The new name to be assumed is WYCKOFF HEIGHTS HOSPITAL.

IN WITNESS WHEREOF, the undersigned have executed and signed

this certificate the 28th day of November, 1967.

JEROME F. GLASSER, PRESIDENT

JOHN H. COOK, JR. SECRETARY

BQHC 00412

BQHC 00338-00075

STATE OF NEW YORK )
                  )   SS.
COUNTY OF QUEENS  )

On this 28th day of November, 1967, before me
personally appeared JEROME F. GLASSER to me known to be the
person described in and who executed the foregoing instrument
and duly acknowledged to me that he executed the same.

_____
NOTARY PUBLIC

JOYCE D. RINGE
Notary Public, State of New York
No. 41-3289450
Qualified in Queens County
Commission Expires March 30, 1969


STATE OF NEW YORK )
                  )   SS.
COUNTY OF QUEENS  )

On this 28th day of November, 1967, before me
personally appeared JOHN H. COOK, JR., to me known to be the
person described in and who executed the foregoing instrument
and duly acknowledged to me that he executed the same.

_____
NOTARY PUBLIC

JOYCE D. RINGE
Notary Public, State of New York
No. 41-3289450
Qualified in Queens County
Commission Expires March 30, 1969


BQHC 00413

BQHC 00338-00076

STATE OF NEW YORK:
CITY OF NEW YORK :SS
COUNTY OF KINGS  :

    JEROME F. GLASSER and JOHN H. COOK, JR. both being

duly sworn depose and say that they are respectively duly elected

President and Secretary of the Corporation known as Wyckoff

Heights Hospital Society of Brooklyn.

       That your deponents have been authorized to execute and

file a certificate of change of corporate name pursuant to the

annexed resolutions adopted by the unamimous vote of the majority

of the members of record of Wyckoff Heights Hospital Society of

Brooklyn who are entitled to vote being present and voting at a

meeting duly called for that purpose on October 5, 1967 upon like

notice as that required for the annual meeting of the corporation.

Sworn to before me this

28th day of November, 1967                (LS)

BQHC 00414

BQHC 00338-00077

I, JOHN H. COOK, JR., Secretary of Wyckoff Heights Hospital Society of Brooklyn, hereby certify that the Resolutions attached hereto is a true copy of Resolutions duly adopted by a majority of the members of record of the corporation who are entitled to vote and that such votes were cast at a meeting of the members called for that purpose on October 5, 1967 upon like notice as that required for the annual meeting of the corporation.

_____
Secretary

Dated: November 28th, 1967

BQHC 00415

BQHC 00338-00078

RESOLVED, that the members of record, who are entitled to vote,

hereby approve the motion before this meeting; that the corporate

name of Wyckoff Heights Hospital Society of Brooklyn be changed

to Wyckoff Heights Hospital;

RESOLVED, that the proper officers of this Society be, and they

hereby are authorized and directed in the name and on the behalf

of the Society and to the extent necessary under its corporate

seal to petition the Department of State, Albany, New York, for

approval of the certificate of change of corporate name from

Wyckoff Heights Hospital Society of Brooklyn to Wyckoff Heights

Hospital;

RESOLVED, that the proper officers of the Society be, and they

hereby are, authorized and directed, in the name and on the

behalf of the members of record of this Society and to the extent

necessary, under its corporate seal, to do any and all acts and

things, and to execute, acknowledge and deliver, file and record

any and all instruments and other documents which they may deem

necessary or expedient to effect the change of the corporate

name.

BQHC 00416

BQHC 00338-00079

HUGH R. JONES
CHAIRMAN
TATE BOARD OF SOCIAL WELFARE

**STATE OF NEW YORK**

**DEPARTMENT OF SOCIAL SERVICES**

GEORGE K. WYMAN
COMMISSIONER

*112 STATE STREET*
ALBANY, NEW YORK 12201

FELIX INFAUSTO
COUNSEL AND BOARD SECRETARY

February 20, 1968

John H. Cook, Jr., Esq.
5802 Metropolitan Avenue
Ridgewood, New York 11227

Dear Mr. Cook:

Subject: Wyckoff Heights Hospital Society of Brooklyn
(Change of Name)

This will acknowledge receipt of your letter of February 7, 1968 relative to the above corporation's proposal to change its name to the "Wyckoff Heights Hospital."

The corporation was originally incorporated in 1889 with the name "German Hospital Society of Brooklyn," and in 1899 the State Board of Charities approved an extension of the corporate purposes. In 1919 the hospital, which was then known as the Wyckoff Heights Hospital Society of Brooklyn, was approved by the State Board of Social Welfare to conduct a dispensary. We have also been advised that this hospital has an operating certificate issued by the Department of Hospitals of the City of New York.

The executed original proposed certificate of change of name of the Wyckoff Heights Hospital Society of Brooklyn to "Wyckoff Heights Hospital," pursuant to Section 40 of the General Corporation Law, has been given careful consideration and I am of the opinion that the certificate does not require the approval of the State Board of Social Welfare under the provisions of the statutes. Since the corporation has been in existence since 1889 and has a current operating certificate from the New York City Department of Hospitals, the State Board of Social Welfare would have no objection to the filing of this certificate of change of name.

Very truly yours,

STATE BOARD OF SOCIAL WELFARE

FELIX INFAUSTO
Secretary

Enc.

*1867 State Board of Social Welfare — A Century of Dedication 1967*

BQHC 00417

BQHC 00338-00080



CERTIFICATE OF CHANGE OF NAME OF

WYCKOFF HEIGHTS HOSPITAL SOCIETY OF BROOKLYN

-to-

WYCKOFF HEIGHTS HOSPITAL

RECEIVED
FEB 9 1968
SOCIAL WELFARE

LESTER C. RINGE
ATTORNEY AT LAW
RIDGEWOOD, NEW YORK

BQHC 00418

BQHC 00338-00081

*State of New York    }*  ss:
*Department of State }*

*I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.*

*Witness my hand and seal of the Department of State on*   **December 4, 2006**



*Special Deputy Secretary of State*

DOS-1266 (Rev. 11/05)

**BQHC 00419**

BQHC 00338-00082

F9105310000062

UNI

**CERTIFICATE OF CHANGE**

**OF**

**WYCKOFF HEIGHTS MEDICAL CENTER**

Under Section 803-A of the New York
Not-For-Profit Corporation Law

The undersigned, being the Chairman and Secretary of Wyckoff
Heights Medical Center (the "Corporation"), do hereby certify:

1.  The name of the Corporation is Wyckoff Heights Medical
Center.  The name under which the Corporation was formed is the
German Hospital Society of Brooklyn.

2.  The Certificate of Incorporation of said Corporation was
filed by the Department of State on December 2nd 1889.

3.  Paragraph 7 of the Certificate of Amendment of the
Corporation, dated February 23, 1990, which designates the
Secretary of State of the State of New York as agent of the
Corporation upon whom process against it may be served and sets
forth the post office address to which the Secretary of State
shall mail a copy of any process against it served upon him is
hereby changed to read as follows:

7.  The Secretary of State of the State of
New York is hereby designated the agent of
Wyckoff Heights Medical Center upon whom
process against it may be served.  The post
office address to which the Secretary of
State shall mail a copy of any process
against the Corporation served upon him is:
Wyckoff Heights Medical Center, 374 Stockholm
Street, Brooklyn, New York 11237, Attn.:
Office of the President.

BQHC 00420

BQHC 00338-00083

4.   The manner in which this change of the Certificate of Incorporation of Wyckoff Heights Medical Center was authorized was by vote of the Board of Directors at a meeting thereof, a quorum being present.

IN WITNESS WHEREOF, the undersigned have signed this Certificate this 16th day of May, 1991. It is affirmed that the statements herein are true under penalties of perjury.

*S/Frederick T. Haller*
Frederick T. Haller, Chairman

*S/M.A. Schauer*
William A. Schauer
Secretary

BQHC 00421

BQHC 00338-00084

F 910531000062

CERTIFICATE OF CHANGE

OF

WYCKOFF HEIGHTS MEDICAL CENTER

Under Section 803-A of the Business Corporation
Not-For-Profit Law of the State of New York

UNI

BILLED

STATE OF NEW YORK
DEPARTMENT OF STATE
FILED   MAY 3 1 1991
TAX $ _____
BY:     mb

Kalkines Arky Zall & Bernstein
1675 Broadway - 27th Floor
New York, New York  10019

King
910531000081

RECEIVED
MAY 23  12 00 PH '91

FILED
MAR 31  2 38 PH '91

RECEIVED
MAY 23  11 00 AM '91

BQHC 00422

BQHC 00338-00085

*State of New York* } ss:
*Department of State* }

*I hereby certify that the annexed copy has been compared with the original document in the custody of the Secretary of State and that the same is a true copy of said original.*

Witness my hand and seal of the Department of State on    **December 4, 2006**



*Special Deputy Secretary of State*

DOS-1266 (Rev. 11/05)

**BQHC 00423**

BQHC 00338-00086

CERTIFICATE OF AMENDMENT
OF THE CERTIFICATE OF INCORPORATION
OF WYCKOFF HEIGHTS HOSPITAL
UNDER SECTION 803 OF THE NOT-FOR-PROFIT CORPORATION LAW

* * * * *

WE, THE UNDERSIGNED, Frederick T. Haller and Emil J. Rucigay, being respectively the Chairman and Secretary of Wyckoff Heights Hospital hereby certify:

1.   The name of the Corporation is Wyckoff Heights Hospital. As currently constituted, the Corporation has no members.

2.   The Certificate of Incorporation was filed by the Department of State on November 2, 1889 under "An act for the Incorporation of Societies or Clubs for certain lawful purposes" and known as Chapter 267 of the Laws of 1875 and the acts amendatory thereof for that purpose.

3.   The Certificate of Incorporation does not discuss whether the Corporation shall have members. The By-laws of the Corporation state that the Corporation shall have no members.

4.   A)   The Certificate of Incorporation is amended to change the name of the Corporation to Wyckoff Heights Medical Center and to reconstitute the Corporation as a membership corporation.

B)   To effect the foregoing, Article I relating to the name of the Corporation is amended to read as follows:

"The name of the Corporation is Wyckoff Heights Medical Center."

C)   To effect the foregoing, a new Article VI is added to the Certificate to read as follows:

"The Corporation shall be a membership corporation."

5.   The amendment was authorized in the following manner:

BQHC 00424

BQHC 00338-00087

By unanimous vote of the Board of Trustees, there being no members entitled to vote.

6. The Secretary of State is designated as agent of the Corporation upon whom process against the Corporation may be served. The post office address within or without the state to which the Secretary of State shall mail a copy of any process against the Corporation served upon him is c/o Katsinas, Arky, Zall & Bernstein, 885 Third Avenue, New York, New York 10022.

7. The Corporation is a corporation as defined in subparagraph (a)(5) of section 102 of the Not-for-Profit Corporation Law.

8. The type of corporation which this Corporation is under section 201 of the not-for-profit corporation law is type B.

IN WITNESS WHEREOF, we have signed this Certificate on the 27th day of June, 1989 and we affirm the statements contained herein as true under penalties of perjury.

_Frederick T. Haller_

Frederick T. Haller, Chairman

_Emil J. Kuclgay_

Emil J. Kuclgay, Secretary

6.15.1/AE4

BQHC 00425

BQHC 00338-00088

CERTIFICATE OF APPROVAL

I, HON. RONALD J. AIELLO the undersigned, a Justice of the Supreme Court of the State of New York in the Eleventh Judicial District, in which the office of WYCKOFF HEIGHTS HOSPITAL is to be located, do hereby approve of the foregoing Amendment to the Certificate of Incorporation of WYCKOFF HEIGHTS HOSPITAL and of the filing thereof.

Dated:   JAN 7 1990
New York, New York
Brooklyn

_____
Justice of the Supreme Court
HON. RONALD J. AIELLO

The undersigned has no objection to the granting of judicial approval to the attached Amendment to the Certificate of Incorporation and waives statutory notice:

Robert Abrams
Attorney General
State of New York

By: _____

Date: _____

THE UNDERSIGNED HAS NO OBJECTION TO THE GRANTING OF JUDICIAL APPROVAL HEREON AND WAIVES STATUTORY NOTICE.

ROBERT ABRAMS ATTORNEY GEN.
STATE OF NEW YORK

By: _____
January 18, 1990
ASSISTANT ATTORNEY GENERAL

**BQHC 00426**

BQHC 00338-00089



STATE OF NEW YORK
DEPARTMENT OF HEALTH
CORNING TOWER BUILDING
ALBANY, N.Y. 12237

# PUBLIC HEALTH COUNCIL

Morton P. Hyman
Chairman

December 18, 1989

Mr. Francis J. Serbaroli
Kalkines, Arky, Zall & Bernstein
805 Third Avenue
New York, NY  10022-4802

Re:     Certificate of Amendment of the Certificate of Incorporation of
        Wyckoff Heights Hospital

Dear Mr. Serbaroli:

        AFTER INQUIRY and INVESTIGATION and in accordance with action taken
at a meeting of the Public Health Council held on the 15th day of December,
1989, I hereby certify that the Certificate of Amendment to the Certificate of
Incorporation of Wyckoff Heights Hospital hereafter to be known as Wyckoff
Heights Medical Center dated June 27, 1989 is approved.

                                        Sincerely,

                                        Karen S. Westervelt

                                        Karen S. Westervelt
                                        Executive Secretary

RECEIVED
DEC 2 7 1989

BQHC 00427

BQHC 00338-00090

## RESOLUTION

RESOLVED, that the Public Health Council, on this 15th day of December, 1989, approves the filing of the Certificate of Amendment to the Certificate of Incorporation of Wyckoff Heights Hospital, hereafter to be known as Wyckoff Heights Medical Center dated June 27, 1989.

BQHC 00428

BQHC 00338-00091

CERTIFICATE OF AMENDMENT

OF THE CERTIFICATE OF INCORPORATION

OF

WYCKOFF HEIGHTS HOSPITAL

UNDER SECTION 803 OF THE NOT-FOR-PROFIT CORPORATION LAW

KALKINES, ARKY, ZALL & BERNSTEIN

*Attorney(s) for*

*Office Address & Tel. No.:*

885 Third Avenue
New York, New York 10022-4802
(212) 230-2200

*Attorney(s) for*

*Service of a copy of the within*                                                      *is hereby admitted.*

*Dated:*

*Attorney(s) for*

*PLEASE TAKE NOTICE*

☐ **NOTICE OF ENTRY**  *that the within is a (certified) true copy of a entered in the office of the clerk of the within named Court on*

☐ **NOTICE OF SETTLEMENT**  *that an Order of which the within is a true copy will be presented for settlement to the Hon. one of the judges of the within named Court,*

*at* _____ *M.*

*Dated:*

STATE OF NEW YORK
DEPARTMENT OF STATE

FILED   FEB 2 3 1990

AMT. OF CHECK $
FILING FEES $
TAX $
COUNTY FEES $
COPY $
CERT $
REFUND $
SPEC HANDLE $

*Attorney(s) for*

*Office Address & Tel. No.:*

*To:*

*Attorney(s) for*

BY

BQHC 00429

BQHC 00338-00092