# Exhibit 43

SECOND AMENDMENT TO AFFILIATION AGREEMENT BETWEEN
ROSS UNIVERSITY SCHOOL OF MEDICINE SCHOOL OF VETERINARY
MEDICINE, LIMITED
Portsmouth, Dominica

And

BROOKLYN QUEENS HEALTH CARE, INC. THROUGH CARITAS HEALTH
CARE, INC. (formerly known as Caritas Health Care Planning, Inc.)
374 Stockholm Street, Brooklyn, New York 11237

WHEREAS, Ross University School of Medicine School of Veterinary Medicine, Limited, (the "University") and Brooklyn Queens Health Care, Inc. ("BQHC"), which through its affiliate, Caritas Healthcare Inc. ("Caritas"), owns and operates Mary Immaculate Hospital and Saint John's Queens Hospital in New York (the "Hospitals") (collectively, the "Parties"), have entered into that certain Affiliation Agreement on December 28, 2006, as amended December 5, 2007, relating to the participation of the University's medical students in clinical clerkships at the Hospitals during the period from January 1, 2007 to December 31, 2010 (the "Agreement"), as amended; and

WHEREAS, the Parties wish to continue the Agreement, but make certain additional amendments and modifications to it, effective as of December 1, 2007, as set forth herein (the "Amendment").

NOW, THEREFORE, in consideration of the premises and the mutual premises and undertakings of the Parties set forth below, the Parties hereby amend the Agreement as follows:

Except for those changes expressly indicated in this Amendment, the Agreement shall otherwise remain in full force and effect according to its terms and those of its Exhibits.

AMENDMENTS TO SECTION I OF THE AGREEMENT

The first sentence of the first paragraph of Section I shall be deleted and replaced with the following: "That this Agreement will commence January 1, 2007 and will continue until January 31, 2015. The University shall have the option (the "Option") in its sole discretion to extend the Agreement, as amended, for three (3) additional years, from January 31, 2015 until January 31, 2018, subject to the terms hereinafter set forth. The University shall be deemed to have automatically exercised the Option unless it provides BQHC written notice on or before October 31, 2014 of its intention not to exercise the Option."

Additionally, the following language shall be added at the end of paragraph 1 of Section I: "In the event of termination by either Party in accordance with the terms of this paragraph, BQHC or Caritas, as appropriate, shall return within seven (7) days of the termination date, all unamortized Prepayment Funds, Additional Prepayment Funds (which includes without limitation any additional prepayments made after December 5, 2007), Monetary Consideration and any other amounts due and owing the University."

AMENDMENTS TO EXHIBIT B TO THE AGREEMENT

The following shall be added to the end of subpart "a" of the first paragraph of Exhibit B: "The University shall deposit or cause to be deposited with BQHC or Caritas on or before February 28,

5198542-3
4471/20937-004 Current/10820242v2

Received Time Feb. 28.   4:17PM


PLAINTIFF'S EXHIBIT
Romero 7
July 1, 2011
B. Shrestha

CONFIDENTIAL                                                                 BQHC 42911

7185581818  Administration                              17:58:01   02-28-2008    3/10

2008, by wire or such other commercially reasonable manner as may be agreed upon by the Parties, an additional $3,000,000 US Dollars. The University shall deposit or cause to be deposited with BQHC or Caritas on or before April 1, 2008, by wire or such other commercially reasonable manner as may be agreed upon by the Parties, an additional $1,000,000 US Dollars; provided, that BQHC is not in breach at such time of any material obligation under the Agreement, as amended, or this Amendment following the University's delivery of written notice to BQHC of such breach. If, on April 1, 2008, BQHC is in breach of any material obligation under the Agreement, as amended, or this Amendment following the delivery of such notice by the University to BQHC, then the deposit of the additional $1,000,000 US Dollars will be deferred until BQHC has cured such breach to the reasonable satisfaction of the University; provided, that BQHC shall forfeit the additional $1,000,000 US Dollars if such breach remains uncured for thirty (30) days following the delivery by the University of its written notice of such breach (unless such thirty (30) day cure period is mutually extended in writing by the Parties, or unless the breach cannot reasonably be cured within such thirty (30) day cure period and BQHC or Caritas has begun effectuating a cure within such thirty (30) days and uses commercially reasonable efforts to complete the cure. For the avoidance of doubt, BQHC's obligation under this Amendment to provide the University with a minimum of one hundred thirty five (135) core clerkship slots shall constitute a "material obligation" of BQHC.

The third paragraph of Exhibit B, including the table, shall be deleted and replaced with the following:

"BQHC guarantees that the Hospitals shall provide the University with a minimum of one hundred thirty five (135) core clerkship slots, beginning March 3, 2008, allocated as follows:

| Surgery | 46 |
|---|---|
| Medicine | 44 |
| OB/GYN | 17 |
| Family Medicine | 18 |
| Psychiatry | 10 |

Desirous of being able to provide the entire one hundred thirty five (135) core clerkship slots listed above and recognizing the Hospitals temporary limited capacity to provide all one hundred thirty five (135) core clerkship slots, BQHC guarantees that, during the period of time the Hospitals are unable to deliver all one hundred thirty five (135) core clerkship slots due to capacity limitations at the Hospitals (the "Interim Period"), on March 3, 2008, (a) the Hospitals shall provide the University with the following one hundred (100) core clerkship slots, allocated as follows:

| Surgery (on-going) | 20 |
|---|---|
| Medicine (on-going) | 20 |
| OB/GYN (new) | 20 |
| Family Medicine (new) | 20 |
| Psychiatry (new) | 20 |

and (b) pursuant to the terms of that certain letter agreement, dated as of the date hereof, by and between BQHC and the University, BQHC shall deliver thirty five (35) core clerkship slots at Wyckoff Heights Medical Center ("Wyckoff") to replace the remaining core clerkship slots the Hospitals are unable to deliver at such time. Following the expiration of the Interim Period, but not later than the commencement of the first clinical

2

51985423
4471/20937-004 Current/10820242v2

Received Time Feb. 28. 4:17PM

CONFIDENTIAL

BQHC 42912

7185581818   Administration                                                   17:58:21   02-28-2008   4/10

rotations scheduled immediately following the expiration of the Interim Period, BQHC will, through the Hospitals, deliver one hundred thirty five (135) core clerkship slots to Ross as set forth in the first allocation listed above.

BQHC represents that, to the best of its knowledge, and except as set forth in the paragraph below entitled "Litigation," there are no impediments or obstacles that would inhibit its ability to deliver on March 3, 2008 the one hundred thirty five (135) core clerkship slots as provided in this Amendment.

The fourth paragraph of Exhibit B shall be deleted and replaced with the following: "In addition, BQHC further guarantees that the Hospitals shall provide the University with a minimum of one hundred thirty five (135) elective clerkship slots during the term of the Agreement, as amended, and the term of the three year option period, to the extent the Option is exercised by the University, in each case to be allocated in accordance with the mutual agreement of the Parties."

The fifth paragraph of Exhibit B shall be deleted and replaced with the following: "The clerkship rate under this Agreement shall be a fixed $325 per student per week for the first year of the term of this Agreement, commencing March 3, 2008. The clerkship rate shall be increased each year thereafter (commencing on March 1, 2009) by a half of the percentage increase, if any, in the "CPI" (as defined below) from the first day of the immediately preceding year to the first day of the year in which the clerkship rate is being increased; The "CPI" means the Consumer Price Index for All Urban Consumers (CPI-U) in the then most recently ended federal fiscal year, as determined by the Bureau or Labor Statistics of the United States Department of Labor. The Parties agree that the University shall pay the clerkship rate for all guaranteed clerkships, whether or not the University fills such clerkships."

The seventh paragraph of Exhibit B is hereby amended whereby the annual secretarial support of $36,000 will increase to $60,000, effective on the earlier of March 3, 2008 or when the Hospitals shall have delivered to Ross all one hundred thirty five (135) core clerkship slots as provided herein.

In the event that BQHC enters into bankruptcy proceedings or receivership, the Hospitals will make every effort to continue to provide all contracted services during this period. Once a financial settlement has been made with all creditors (including the University), the weekly clerkship rate shall be reduced by the same percentage as the debts to other creditors have been reduced. As an example, if the bankruptcy court settlement is determined to be $0.50 on a $1.00, the weekly clerkship fee will be reduced from $325/week to $162.50/week for the remainder of the contract term.

LITIGATION

The Parties acknowledge that American University of the Caribbean ("AUC") has commenced a lawsuit against Caritas and BQHC, in the United States District Court for the Southern District of Florida, entitled, *American University of the Caribbean, et al. v. Caritas Healthcare, Inc., et al.* (Case No. 08-20374), seeking to enjoin Caritas from terminating its relationship with AUC. Caritas and BQHC deny the material allegations of the complaint in that action. The Parties agree that if the court in that matter, or any other court of competent jurisdiction, enjoins Caritas from terminating its relationship with AUC or enters any other order that results in Caritas and/or BQHC not performing the transactions contemplated by this Amendment, and if as a result of such injunction or other court order BQHC is unable to provide one hundred thirty five (135) core

3

5198542.3
4471/20937-004 Current/10820242v2

Received Time Feb. 28. 4:17PM

CONFIDENTIAL                                                                                   BQHC 42913

7185581818   Administration                                     17:58:44   02-28-2008   5/10

clerkship slots to Ross as guaranteed hereunder, then (a) Caritas or BQHC, as appropriate, shall promptly (but in no event later than seven (7) days following the entry of such injunction or order) return to the University all Pre-payment funds from the first amendment and second amendment on a pro rated basis, based upon the actual number of core rotations provided, and (b) if BQHC is unable to provide more than one hundred ten (110) core clerkship spots, this Amendment shall automatically terminate and be of no further force and effect, except with respect to the following indemnification provision.

For example, if it is determined that the University:

1. will go back to its original 50 core clerkship spots pursuant to the Agreement, then all funds paid to BQHC pursuant to the first amendment to the Agreement, dated December 5, 2007, ($4 million) and this Amendment ($3 million +$1 million) must be returned to the University within seven (7) days;

2. will have 100 core clerkship spots, then a pro rating of funds for the first amendment to the Agreement, dated December 5, 2007, will be:

   (50 new/60 contracted new) = 0.833 proportion of cores spots actually provided

   0.833 times $4 million = $3.332 million pro rated adjustment

   $4 million less $3.332 million = $668,000 refund to the University along with all monies from this Amendment ($4 million) within seven (7) days;

3. will have 120 core clerkship spots, then a pro rating of the funds for this Amendment will be:

   (10 new/25 contracted new) = 0.40 proportion of cores spots actually provided

   0.4 times 4 million = $1.6 million

   $4 million less $1.6 million = $2.4 million refund to the University within seven (7) days.

### INDEMNIFICATION

BQHC (and its affiliates, successors and assigns, as applicable) agrees to indemnify and hold harmless the University, its affiliates and any agents, servants, officers, directors and employees of the University or its affiliates (collectively, the "Indemnified Parties") from and against any and all liability, claim, allegation, administrative action, cause of action, suit, damages, losses, costs and expenses (including, but not limited to, any costs and expenses of investigation and settlement and reasonable attorneys' fees and expenses) (collectively, "Claims") that arise out of any claim, action or suit brought against any of the Indemnified Parties by AUC (or any of its students or affiliates) based upon or in connection with the transactions contemplated under the Agreement, as amended, or this Amendment. This indemnity provision shall survive the termination, cancellation or expiration of the Agreement, as amended, and this Amendment. The University agrees to give BQHC prompt written notice of any Claims or the discovery of a fact upon which any of the Indemnified Parties intends to base a request for indemnification under this paragraph. The Indemnified Parties shall furnish to BQHC copies of all papers and official documents received in respect of any Claims. BQHC shall have the sole right to control the

4

51985423
4471/20937-004 Current/10820242v2

Received Time Feb. 28.   4:17PM

CONFIDENTIAL                                                                                       BQHC 42914

7185581818    Administration                                    17:59:03   02-28-2008   6/10

defense, settlement and/or trial of all Claims, provided that (a) BQHC uses counsel acceptable to the University in its reasonable discretion; (b) BQHC shall not settle any Claims without the prior written consent of the Indemnified Parties, which consent shall not be unreasonably withheld; and (c) the Indemnified Parties shall have the right to reasonably participate in any such defense at their sole cost and expense. The parties agree that if the Indemnified Parties withhold their consent to a monetary settlement recommended by BQHC (the "Rejected Settlement") and the Claim results in a settlement or judgment that is for an amount greater than the Rejected Settlement, then the Indemnified Parties shall be responsible for the amount by which such settlement or judgment exceeds the amount of the Rejected Settlement, as well as all costs of defending the Claim arising from and after the date of the Rejected Settlement. The parties further agree that the University has no objection to the law firm of Proskauer Rose LLP being used by BQHC to defend an Indemnifiable Claim hereunder, and BQHC has no objection to using the law firm of Mayer Brown LLP if Proskauer Rose LLP is unable to defend an Indemnifiable Claim due to a conflict.

THIS AMENDMENT IS SIGNED AND DATED AS FOLLOWS:

| For Brooklyn Queens Health Care, Inc. | For Ross University School of Medicine School of Veterinary Medicine Limited |
|---|---|
| Julius Romero, <br> AVP Medical Education <br> Date: | Nancy Perri, MD, <br> Vice President Academic Affairs <br> Date: |
| Thomas W. Singleton <br> Chief Executive Officer <br> Date: | John T. St. James <br> Vice President, Chief Financial Officer <br> Date: 2/28/2008 |

5198542.3
4471/20937-004 Current/10820242v2

5

Received Time Feb. 28.   4:17PM

CONFIDENTIAL                                                                    BQHC 42915

7185581818  Administration    17 59:16   02-28-2008    7/10



St. John's Queens Hospital
90-02 Queens Boulevard
Elmhurst, NY 11373
(718) 558-1000

Mary Immaculate Hospital
152-11 89th Avenue
Jamaica, NY 11432
(718) 558-2000

February 28, 2008

Ross University School of Medicine, School
of Veterinary Medicine, Limited
499 Thornall Street-10th Floor
Edison, NJ 08837

Attention: Thomas Shepherd, D.H.A.

Dear Dr. Shepherd:

I am writing to confirm that Brooklyn Queens Health Care, Inc. ("BQHC"), Wyckoff Heights Medical Center ("Wyckoff") and Ross University School of Medicine, School of Veterinary Medicine, Limited ("Ross") have agreed to the following:

1. Pursuant to the terms and conditions of that certain Second Amendment (the "Amendment"), dated as of the date hereof, to Affiliation Agreement (the "Agreement") between Ross and BQHC, BQHC guarantees that Mary Immaculate Hospital and Saint John's Queens Hospital in New York (the "Hospitals"), each of which is owned and operated through its BQHC's affiliate, Caritas Health Care, Inc., shall provide the University with a minimum of 135 core clerkship slots beginning March 3, 2008.

2. If BQHC is unable to provide a minimum of 135 core clerkship slots to Ross at the Hospitals beginning March 3, 2008, BQHC shall deliver to Ross on March 3, 2008, subject to the terms and conditions of the Agreement, as amended, and the Amendment, (a) 100 core clerkship slots at the Hospitals and (b) 35 core clerkship slots at Wyckoff, allocated as follows:

**At the Hospitals:**
| | |
|---|---|
| Surgery (on-going) | 20 |
| Medicine (on-going) | 20 |
| OB/GYN (new) | 20 |
| Family Medicine (new) | 20 |
| Psychiatry (new) | 20 |

**At Wyckoff:**
| | |
|---|---|
| Surgery (new-additional) | 14 |
| Medicine (new-additional) | 14 |
| OB/GYN (new-additional) | 1 |
| Family Medicine (new-additional) | 1 |
| Pediatrics (new-additional) | 5 |

51985465

*Member*
Brooklyn-Queens Health Care

Received Time Feb. 29. 4:17PM

CONFIDENTIAL    BQHC 42916

7185581818     Administration     17:59:30    02-28-2008    8/10

3. The core clerkship slots at Wyckoff (a) shall be made available to Ross until BQHC is able to provide Ross with a minimum of 135 core clerkship slots at the Hospitals in accordance with the terms and conditions of the Agreement, as amended, and the Amendment and (b) are in addition to and are not in any way to be counted against Ross's currently contracted clerkship slots at Wyckoff.

4. If Wyckoff makes such core clerkship slots available, Ross shall pay to Wyckoff $325 per student per week for all 35 slots, whether or not they are used by Ross; provided, that Ross shall not be obligated to pay Wyckoff for any such clerkship slots that are not used as a result of the availability of additional clerkship slots at the Hospitals and which availability results in Ross no longer requiring the use of the clerkship slots at Wyckoff to offset the unavailability of those slots at the Hospitals.

5. BQHC and Wyckoff shall have no obligations under this letter agreement if the Amendment is terminated pursuant to the section therein entitled "Litigation."

Please sign a copy of this letter agreement where indicated below, acknowledging the agreement of Ross to the foregoing, and return it to me at your convenience. Thank you.

Very truly yours,

*[signature]*

Thomas W. Singleton
Chief Executive Officer

Agreed to this 28th day of February, 2008
Ross University School of Medicine, School of Veterinary Medicine, Limited

By: *[signature]*
Name: Joseph T. Jr. James.
Title: V.P. Chief Financial Officer

Agreed to this ___ day of _____, 2008
Wyckoff Heights Medical Center

By: *[signature]*
Name:
Title: Chief Executive Officer

51985465

Received Time Feb. 23. 4:17PM

CONFIDENTIAL

BQHC 42917