# Exhibit 48

# WYCKOFF HEIGHTS MEDICAL CENTER

## BOARD OF TRUSTEES MEETING

## MINUTES

## NOVEMBER 1, 2007

| **PRESENT:** | **ABSENT/EXCUSED:** |
|---|---|
| Emil Rucigay, Esq. | Emilio Carrillo, M.D. |
| Vincent Arcuri | Congressman Edolphus Towns |
| Andrew Boisselle | Larry Berger |
| John H. Cook, Jr., Esq. | Gladys Rodriguez |
| Vito J. D'Alessandro, M.D. | |
| Dominick J. Gio | |
| Fred T. Haller, III Esq. | |
| Frederick T. Haller, Esq. | |
| Harold McDonald | |
| Edmondo Modica, M.D. | |
| Wah-chung Hsu | |
| John D. Rucigay, Esq. | |
| Adam Figueroa | |
| Herman Hochberg | |
| A.C. Rao, M.D. | |

**ADMINISTRATIVE STAFF:**

Tom Singleton – Chief Restructuring Officer
Paul Goldberg – CFO – B.Q.H.C.
William Thelmo, M.D. – Medical Board President
Nirmal Mattoo, M.D. – Sr. V.P. Medical Affairs-Medical Director
David Hoffman, Esq. – General Counsel
Renee Mauriello, R.N. – V.P. – Nursing
Karen Carey – V.P. Regulatory Services

**INVITED GUESTS:**

Pam Kaplan – Kelley Drye & Warren, LLP

Mr. Rucigay called the meeting to order at 4 p.m.

BQHC 03873

Board of Trustees Meeting – November 1, 2007
Page 2

**ACTION/RECOMMENDATION: ON A MOTION PROPERLY MADE BY MR. FIGUEROA, SECONDED BY MR. HALLER, ALL IN FAVOR, THE MINUTES OF THE PREVIOUS MEETING OF OCTOBER 11, 2007 WERE APPROVED BY THE BOARD OF TRUSTEES.**

**CREDENTIALS REPORT:**

Dr. Thelmo presented the Credentials Committee report of October 10, 2007 for Board of Trustees approval. The minutes are a part of the Board packages.

**ACTION/RECOMMENDATION: ON A MOTION DULY MADE BY MR. HALLER, SECONDED BY MR. BOISSELLE, ALL IN FAVOR THE MINUTES WERE APPROVED BY THE BOARD OF TRUSTEES.**

Mr. Rucigay stated that at the last Board Meeting there was much discussion regarding the issue of Wyckoff's finances. As a result of that discussion, the Board of Trustees of BQHC met to discuss the issue of shared services and its negative impact on Wyckoff. The permissive amount of $10 million dollars voted on by the Wyckoff Board of Trustees has been exceeded and this was a concern of the Board Members. Following that meeting, the BQHC Board Members determined that a letter should be sent to Commissioner Daines by Mr. Rucigay and the letter should focus on the issue of the excessive payments ($800,000 per month) being made by Wyckoff, cessation of the same, plus refund of the overage.

Mr. Rucigay advised the Board Members that the letter was drafted and prepared in several forms. Mr. Rucigay was directed that prior to mailing, it be shared with Mr. Singleton. Upon review, Mr. Singleton informed Mr. Rucigay that the context of that letter was included in his report to the State. Mr. Rucigay read the report prepared by Mr. Singleton and since the presentation encompasses all of the concerns that were discussed, he refrained from mailing the letter to Commissioner Daines. Mr. Rucigay asked Mr. Singleton to get back to him concerning the State's response to this particular issue. He then invited Mr. Singleton to comment on this matter.

Mr. Singleton reported that a 10 a.m. conference call was scheduled with the State this morning. Unfortunately, it was cancelled at 10:05 a.m. Mr. Singleton promptly advised the State that it is critical that the call be re-scheduled, not only to resolve this issue, but others as well. He commented that Caritas will experience a very significant cash flow

Board of Trustees Meeting – November 1, 2007
Page 3

problem in the next week or two if the Department of Health does not make additional funds available. He went on to say that he was very disappointed that the call was cancelled. The contact person, Neil Benjamin was unavailable, therefore, Mr. Singleton stated he has nothing to report at this time.

Mr. Gio inquired as to whether or not we have back-up plans. Mr. Singleton replied that we do. He stated that a meeting will be scheduled with the Local 1199 of the SEIU to see if they will allow us to move the employees from Wyckoff payroll to Caritas payroll. He commented that the Union was reluctant to do that two weeks ago, however, he had discussion with them last Thursday and they seemed more willing to discuss the move. He stated that if the Union agrees, those employees will be moved to the Caritas payroll.

Dr. Thelmo inquired as to payment for Laboratory services. Mr. Singleton stated that those invoices will be paid as they are submitted. The first invoice was received this month and Mr. Singleton has not yet had the opportunity to review it.

Mr. Rucigay asked Mr. Singleton if he has any idea as to how the Department of Health will report to his requests. He replied that he requested a total of $50 million dollars between now and June 30th. Wyckoff was a part of that and part of which will fund operations. Caritas has a negative operating statement every month. He stated that he expects is that they should fund the operations and the Wyckoff piece as requested. The capital piece and the other items requested will probably be longer in coming. Mr. Rucigay stated that when Mr. Singleton receives a response from the State he will share it with the Board of Trustees.

Mr. Gio stated that initially the State had a concern regarding the shortage of acute care beds in Queens. He asked Mr. Singleton if he thought that the Department of Health still believes there is a need for the Mary Immaculate acute care beds. Mr. Singleton replied that he believes that the State feels the beds are needed and would want them to remain open. He further stated that they are also looking at the cost of keeping those hospitals open. Mr. Gio explained the reason for that question is that he noticed a recent article in the Pulse indicating that the State allocated $15 million dollars to Queens Hospital Center, which is less than a year old, to add forty beds. He stated that Queens Hospital Center is in close proximity to Mary Immaculate Hospital. Mr. Singleton replied that it is his understanding that according to the Berger report that forty beds are needed in Queens and they are doing that.

BQHC 03875

Board of Trustees Meeting – November 1, 2007
Page 4

**PENSION PLAN:**

Mr. Singleton stated that the major issue with the existing Wyckoff pension plan is that it was also implemented at Caritas, which will create a problem. The Board of Trustees voted to approve this pension plan in June of this year making it retroactive to January 1, 2007. The pension plan for Wyckoff and Caritas for 2007 will remain the way Wyckoff has been for the past few years. He reminded the Board Members that in September 2007 a $3.2 million dollar funding contribution was made to the Wyckoff Plan. He explained that the problem now is that since Caritas has joined the Wyckoff pension plan, the IRS deems that they must be considered jointly since they are under common control. Next September a $3.2 million dollar contribution will have to be made for Wyckoff and a similar payment will have to be made for Caritas. Mr. Singleton advised the Board Members that there is no way to reverse this. While nothing can be done for year 2007, something can be done about the plan going forward. Mr. Singleton stated that going forward, Caritas cannot afford to fund this pension plan.

Mr. Singleton stated that he first looked at changing the Caritas pension program. At the present time both Wyckoff and Caritas have a *Money Purchase Plan* with which there is no flexibility. He explained that in a bad year, the same money has to be contributed as in a good year. Mr. Singleton proposed that we move to a "profit sharing plan" and explained that what that does is allow the Board to set the amount of contributions made to the plan based on the performance of the company that year. The change would be made at the end of 2008 whereby the Board would review the results of that year and determine what they can afford to make to the plan. There are discrimination tests that would have to be done and those tests will have to be met when the two institutions are combined.

Mr. Singleton introduced Ms. Pam Kaplan of Kelley Drye and Warren who presented a comparison of the current plan and the proposed plan.. He advised the Board that we have to give 45 days notice of a change. He suggested that a decision be made today so that the new plan would be effective January 1, 2008.

Ms. Kaplan explained that Wyckoff currently has a Money Purchase Plan and the key characteristic of that plan is that it requires a specified percentage of compensation be contributed each year. Wyckoff currently has four contribution levels broken down by employment classifications; a group of people who are classified as Sr. Management receive 18% contribution each year, other management employees receive 9% and non-management personnel receive 5% and the Security Union Group receives 2.1%. Mr. Singleton reminded the Board Members that this is a non union plan except for the

BQHC 03876

Case 1:09-cv-01410-KAM-RLM Document 97-49 Filed 01/24/12 Page 6 of 8 PageID #: 2317

Board of Trustees Meeting – November 1, 2007
Page 5

Security Guards. Mr. Gio explained that the Special Officers union did not offer a pension, therefore, we added them to our pension plan. He clarified that this is not part of a collective bargaining agreement. Mr. Hsu advised the Board Members that there is a cap on the 18% contribution which is $220,000.

Ms. Kaplan advised the Board Members that the name of the profit sharing plan may be misleading due to the fact that the company does not have to have a profit. If the company wishes to maintain tiered compensation levels, this must be specified in the document. Contributions do not have to be made each year, however, according to the IRS they must be "recurring and substantial".

Ms. Kaplan explained that "non discrimination testing" which now applies to the Money Purchase Plan will also apply to the Profit Sharing. She clarified that individuals earning $100,000 or more per year are considered highly compensated employees.

Ms. Kaplan went on to say that the key differences in the plans are that contributions to the Money Purchase plan are a set amount to be paid each year, and the contributions to the Profit Sharing plan can be done on a discretionary basis. The allocation formula has to be set forth in the plan. She also mentioned that testing must be done early in the year so that adjustments can be made.

Mr. Gio advised the Board Members that in looking at the overall compensation of the employees at Wyckoff we are below industry average in the Metropolitan N.Y. area. Deloitte did their assessment and they also came to the conclusion that on the national average we are below industry average. He went on to say that if we paid Chairmen and Directors what is being paid at other institutions, it would be equivalent to $8 million dollars a year, therefore, a decision was made to give the employees a better pension. He mentioned that other hospitals were offering nurses a a $10,000 sign on bonus. We never had that money at Wyckoff, therefore, it was felt that one pension contribution due at time specific would be a lot less draining on the hospital than to pay the equivalent of a hospital payroll at the rate other hospitals are paying. Mr. Gio assured the Board Members that nothing was done for personal gain and pointed out that his salary is less than competitive. In addition, he mentioned that he gained nothing more than the average employee from the pension plan. He informed the Board Members that whatever decision is made, he fully understands why it must be made. He stated that he is in support of Mr. Singleton's proposal.

BQHC 03877

Case 1:09-cv-01410-KAM-RLM   Document 97-49   Filed 01/24/12   Page 7 of 8 PageID #: 2318

Board of Trustees Meeting – November 1, 2007
Page 6

Much discussion ensued among the Board members regarding the presentation. The ramifications of instituting a new plan was discussed. Ms. Mauriello informed the Board of Trustees that a specific group of nurse supervisors received employment agreement letters and to breach this may result in walk-outs. Dr. Mattoo stated that this move could lead to physician recruitment problems. Mr. Gio advised the Board that all of this must be taken into consideration.

Mr. Singleton stated that it is prudent for the Board to give itself flexibility. He further stated that this will not stop the Board from contributing the amount that was contributed this year.

Following discussion, Mr. Rucigay advised the Board of Trustees that we need to move in the direction of a flexible plan. Mr. Arcuri suggested that the plan should not be presented as a "profit sharing plan" and recommended that it be presented with a different name. The Board Members concurred with Mr. Arcuri's recommendation.

**THE FOLLOWING NON SALARIED BOARD MEMBERS VOTED TO ADOPT THE FLEXIBLE PLAN WITH REVISED TERMINOLOGY:**

John Cook, Jr., Esq.
Vincent Arcuri
Edmondo Modica, M.D.
Vito J. D'Alessandro, M.D.
Herman Hochberg
Andrew Boisselle
John D. Rucigay, Esq.
Frederick T. Haller, Esq.
Fred T. Haller, Esq.
Adam Figueroa

Mr. Rucigay thanked Mr. Singleton and Ms. Kaplan for the presentation.

In the interest of time, Ms. Carey's report on the Prospective Payment System was postponed for a future meeting.

BQHC 03878

Board of Trustees Meeting – November 1, 2007
Page 7

**FINANCIAL REPORT:**

Mr. Hsu reviewed the Financial Statements for Wyckoff Heights Medical Center. As of September 30, 2007, the Balance Sheet shows operating cash continues to be tight and vendor payables improved from December 2006. Net Accounts Receivable was affected by the reclass of Medicare PIP liability from Patient Accounts Receivable to Other Current Liabilities on the balance sheet.

The Statement of Operations for Year-to-Date September 2007 shows a loss from operations of ($5,843,143) versus a budgeted gain of $132,145. Patient Service Revenue shows a favorable variance due to stronger than budgeted patient acuity despite the inpatient volume budget shortfall of 970 discharges. Bad debt expense is being calculated monthly based on monthly valuation of accounts receivable.

Financial Ratios and Volume Statistics were also reviewed.

The Board of Trustees unanimously approved the Financial Statements.

The draft budget for 2008 was distributed and Mr. Hsu reviewed assumptions that were the basis for the revenue and expenses in the budget. The bottom-line shortfall is currently $5.0 million. Management will be working to close this gap and to present a break-even budget in December for the Board's approval.

**ADJOURNMENT:**

**THERE BEING NO FURTHER BUSINESS TO DISCUSS, ON A MOTION PROPERLY MADE BY MR. HALLER, SECONDED BY MR. HOCHBERG, ALL IN FAVOR, THE MEETING ADJOURNED AT 5:40 P.M.**

RESPECTFULLY SUBMITTED:

PATRICIA MILLSPAUGH
EXECUTIVE SECRETARY

APPROVED BY:

EMIL RUCIGAY, ESQ.
CHAIRMAN
BOARD OF TRUSTEES

BQHC 03879