# Exhibit 50

```
From: Dominick Gio(/O=WYCKOFF HEIGHTS MEDICAL CENTER/OU=FIRST ADMINISTRATIVE
GROUP/CN=RECIPIENTS/CN=DGIO)
Date Sent: 3/2/2007 3:11:45 PM
To: 'Neil P. Benjamin'; Edward Dowling
CC: DHoffman; dsb10@health.state.ny.us; dvw01@health.state.ny.us; Harold
Mcdonald; Lefebvre, Lora; mvg01@health.state.ny.us; rsarli@bqchny.org; Zall,
Richard J.; Wah-chung Hsu
Subject: RE: Wyckoff/Caritas - Conference Call Friday
```

Please allow this letter to serve as report on the event's that precipitated our current financial difficulties and led up to the termination of our Chief Financial Officer on February 20th 2007. Attached you will find all of the information request.

I first became aware that Wyckoff was experiencing more than its usual financial difficulties on November 3, 2006, when Wyckoff's Chief Financial Officer advised me that we did not have the necessary funds to make a required health benefits payment. In order to avoid a default under the hospitals contractual obligations I wrote a personal check to the hospital for $400,000.00 (subsequently repaid prior to the end of 2006). I instituted a thorough review of the hospital's cash management practices and revenue projections. I also asked that updated financial statements be produced immediately. I was informed that due to our recent conversion from the New York Presbyterian Healthcare System Eagle accounts receivable and Lawson financial IT systems, to our stand alone Meditech-based system, we were unable to produce a current report. I directed my I.T. staff to investigate the problems reported regarding production of a current financial statement. I scheduled weekly "cash flow meetings", to be led by me, and attended by my entire senior financial management team, to more closely monitor the hospitals finances, with a particular focus on maintaining open lines of communication with our vendors and creditors. At that point I believed, based on the information provided to me that the problem was a cash flow issue precipitated by a temporary drop off in weekly receipts. Those meetings have occurred on a weekly basis since November. The timing of this revelation could not have been more unfortunate. We had just gotten approval of the P.H.C. Establishment Committee for the Caritas rescue of St. Johns and Mary Immaculate Hospitals, and were preparing for the meeting of the full Public Health Council, and then the closing. At that point I had full confidence in my CFO and accepted his reports to me as reliable.

Since I took over management of Wyckoff in 1995 it has been our practice to have the Chief Financial Officer, who is also the Treasurer of the Corporation and a member of the board, give a financial report to the Board of Trustees at least four times per year and provide an update on any significant financial developments, on a weekly basis, at the Wednesday morning meetings of my Senior Cabinet. The quarterly, or business reporting sessions, of the Board of Trustees are generally held on the first Thursday during the months of March, June, September and December. At the last quarterly meeting of the Board of Trustees my Chief Financial Officer reported to the Board on his financial statements for the seven months ending July 31, 2006. A copy of those financial statements, which we currently judged to be less than entirely reliable, are attached to this letter. He explained that more current financials were not available due to problems with the Meditech system which had "gone live" in August. Between November 3, when I learned of our extraordinary cash flow difficulties, and our next scheduled quarterly meeting of the Board of Trustees on December 14, 2006 I held weekly meetings with the

**CONFIDENTIAL**

BQHC 04072

Chief Financial Officer and other members of my management team to monitor our cash situation. I was consistently advised that our cash flow difficulties were temporary and related to the aforementioned drop off in weekly receipts, including an unanticipated drop-off in our PIP payments. My CFO informed me that the drop-off in payments could be anticipated to reverse in coming months and that we were facing no unusual, cash challenges.

At our December 14, 2006 quarterly Board of Trustees meeting my Chief Financial Officer gave a report to the Board on the financial statements for the eight months ended August 31, 2006. He informed the Board and me, that he did not have the financial statements for October, which would have been the norm, due to ongoing difficulties with the Meditech financial management systems. A copy of those financial statements is attached as well. At that point we were deep into the preparations for the closing of the Caritas acquisition. The groundwork for the closing on the St. John's and Mary Immaculate purchase went down to the wire, with the last filings with the Secretary of State occurring only the day before the deadline for the closing, imposed by St. Vincent's Catholic Medical Centers and our lenders, of December 28, 2006.

During his presentation to the Board on December 14, 2006 my Chief Financial Officer gave no indication that we were experiencing any extraordinary financial problems and importantly did not disclose to the Board, or me, that he had made late payments of state and federal withholding taxes in the months of October, November and December. We only discovered that tax payments had been made late after his termination. This detemination was made when my Chief Operating Officer, Caritas Chief Financial Officer and new Wyckoff Chief Financial Officer began their review of our financial condition, which literally included going through piles of mail on our former Chief Financial Officer's desk. That discovery occurred on Friday, February 23, and was immediately reported to the New York State Department of Health, Dormitory Authority and the executive committees of Wyckoff, Caritas and Brooklyn Queens Healthcare Inc. It was the discovery of the notices of delinquency from the IRS that led us to investigate, and ultimately uncover, the failure of my former Chief Financial Officer to make any tax withholding payments whatsoever, for Wyckoff for the first three payrolls and Caritas, for the third payroll of 2007.

At our January 11, 2007 Wyckoff Board of Trustee's, workshop training session, which was also the day of the first meeting of the Caritas Board of Trustees since the closing, my former Chief Financial Officer again failed to disclose to the Board that he had received notices from taxing authorities indicating that we were delinquent on certain tax withholding payments and that we owed the government interest and penalties on those delinquencies. Equally disturbingly, he failed to disclose to the Board that, in the days following the Caritas closing, he had transferred funds from Caritas Health Care Inc. to Wyckoff Heights Medical Center. This was done in amounts that exceeded the dollar totals necessary to repay the authorized loan made to Caritas by Wyckoff pursuant to a Board resolution dated October 5, 2006. On the basis of our review, which is currently ongoing, my former Chief Financial Officer transferred funds from Caritas to Wyckoff, without authorization, in an amount exceeding $6 million net.

At no time did I, or any member of my staff, apart from my former Chief Financial Officer, have any knowledge that he was moving funds between organizations in an attempt to conceal prior, inaccurate reporting. On the basis of our review to date, it does not appear as if any of this conduct was undertaken for personal gain or that any funds, of either hospital entity or

**CONFIDENTIAL**

BQHC 04073

its parent organization, have been diverted to third parties.

The events of the last several months, which have been unearthed in the last several weeks, mark a low point in my 25 year career as a Healthcare administrator and my 12 year tenure as the Chief Executive Officer of Wyckoff Heights Medical Center. Wyckoff has always been proud of its ability to provide quality health care to our primarily disadvantaged population with lean, but highly motivated, and dedicated, administrative staff. We have received commendation from the Joint Commission, CAP certification for our laboratories and high marks for our initiatives in asthma and stroke prevention, all while making multimillion dollar capital investments in state of the art facilities and equipment . We have a fully robotic clinical laboratory, digital radiology system, MRI, 64 slice C.T.scanner and state of the art linear accelerator.

The last few weeks have been extremely trying for the clinical and administrative staff, and for me. However I believe with the assistance of the Department of Health, and the New York State Dormitory Authority, and our Labor partners both Wyckoff and Caritas can emerge from this experience as stronger and wiser institutions.


Very truly yours,

Dominick J Gio


-----Original Message-----
From: Neil P. Benjamin [mailto:npb03@health.state.ny.us]
Sent: Friday, March 02, 2007 8:53 AM
To: Edward Dowling
Cc: Dominick Gio; DHoffman; dsb10@health.state.ny.us; dvw01@health.state.ny.us; Harold Mcdonald; Lefebvre, Lora; mvg01@health.state.ny.us; npb03@health.state.ny.us; rsarli@bqchny.org; Zall, Richard J.; Wah-chung Hsu
Subject: RE: Wyckoff/Caritas - Conference Call Friday


Buzz - when will we get the material?


|  |  |  |
|---|---|---|
| "Edward Dowling" <EDowling@BQHCNY.ORG> | | To |
| 03/02/2007 08:37 AM | | "Zall, Richard J." <rzall@proskauer.com>, "Lefebvre, Lora" <LLefebvr@dasny.org>, <mvg01@health.state.ny.us>, <npb03@health.state.ny.us> |
| | | cc |
| | | "Dominick Gio" <DGio@BQHCNY.ORG>, "Harold Mcdonald" <HMcDonald@BQHCNY.ORG>, <rsarli@bqchny.org>, "DHoffman" <DHoffman@BQHCNY.ORG>, <dvw01@health.state.ny.us>, <dsb10@health.state.ny.us>, |

**CONFIDENTIAL**

BQHC 04074

```
                                        "Wah-chung Hsu" <whsu@BQHCNY.ORG>
                                                                   Subject
                                        RE: Wyckoff/Caritas - Conference
                                        Call Friday
```

Last night it was clear that Caritas cannot make payroll next Thursday without some external source of funds.

With or without seeking protection, we will need to quickly consider whether available resources, ie partial payroll, can continue one site. If it is possible to quickly close MIH, projected cashflow from Jan and Feb activity may produce sufficient funds to operate StJ for a period in which corrective actions already in place can take effect. As long as HFG has tied up all the underlying physical and revenue assets of Caritas, we will have little flexibility in raising more working capital. For example, their attorney has advised us that given covenants not being met, the garages financing we have been pursuing cannot be undertaken without their approval. Having a vacant MIH site for sale/development may be a means to get out from under HFG in the relatively short term.

A second bankruptcy would appear to require liquidation. The short term cash shortage is such that we would not be in a position to both pay staff and critical vendors while seeking DIP financing and developing a reorganization plan. The impact on staff, physicians and vendors may likely make a reorganization plan difficult even in an attempt to retain StJ.

With some outside assistance, it may be possible to manage a services and cost restructuring without filing for protection. The value of properties and A/R in the pipeline still exceeds all liabilities.

Buzz Dowling

Edward J Dowling Jr
Sr. Vice-President, Brooklyn Queens Health Care, Inc
95-25 Queens Boulevard, 3rd Floor
Rego Park, New York 11374
(646) 573-6996
edowling@bqhcny.org


From: Zall, Richard J. [mailto:rzall@proskauer.com]
Sent: Friday, March 02, 2007 7:18 AM
To: Lefebvre, Lora; mvg01@health.state.ny.us; npb03@health.state.ny.us
Cc: Dominick Gio; Harold Mcdonald; Edward Dowling; rsarli@bqchny.org; DHoffman; dvw01@health.state.ny.us; dsb10@health.state.ny.us; Wah-chung Hsu
Subject: Wyckoff/Caritas - Conference Call Friday

**CONFIDENTIAL**

BQHC 04075

Lora, Mark and Neil:

I understand that, early this morning, the Wyckoff/Caritas team will be emailing you much of the additional information you requested earlier in the week.

It is quite important that we schedule a conference call for sometime this afternoon to answer any remaining questions you may have, and to determine the nature, extent and timing of the financial assistance the State can provide.

I would appreciate it if you would let us know your availability for such a conference call. Thanks.

Rick

Richard J. Zall | PROSKAUER ROSE LLP
Member of the Firm
1585 Broadway | New York, NY 10036-8299
V: 212.969.3945 | F: 212.969.2900
rzall@proskauer.com | www.proskauer.com

************************************************************
To ensure compliance with requirements imposed by U.S. Treasury Regulations, Proskauer Rose LLP informs you that any U.S. tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

************************************************************
This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure. If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.

==============================================================
This electronic message is intended to be for the use only of the named recipient, and may contain information that is confidential or privileged. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the contents of this message is strictly prohibited. If you have received this message in error or are not the named recipient, please notify us immediately by contacting the sender at the electronic mail address noted above, and delete and destroy all copies of this message. Thank you.

Attachment(s):
BQHC T of O FINAL.pdf
WHMC financials (as presented 9-06 and 12-06).pdf
Cash Flow Notes.doc

**CONFIDENTIAL**

BQHC 04076

```
AP Trend Jan07.xls
AR Aging Jan07.xls
TRUSTEE LIST- 20070201.doc
UnionsOutstanding.xls
Weekly Cash Flow DOH.xls
FS_2006_11 interim.xls
CBO Internal Review DOH.doc
Caritas Weekly Cash Flow DOH.xls
```

**CONFIDENTIAL**

BQHC 04077