```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROSS UNIVERSITY SCHOOL OF MEDICINE, LTD.,

                        Plaintiff,

           - against -                              09 Civ. 1410 (KAM) (RLM)

BROOKLYN-QUEENS HEALTH CARE, INC. and
WYCKOFF HEIGHTS MEDICAL CENTER,

                        Defendants.
-----------------------------------------------------------------X
```

## DECLARATION OF DAVID N. HOFFMAN, ESQ., IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

I, DAVID N. HOFFMAN, Esq., pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the General Counsel of Wyckoff Heights Medical Center ("Wyckoff"), a Defendant in the above-captioned action.

2. I respectfully submit this declaration based on my personal knowledge in support of Defendants' motion for partial summary judgment dismissing two of the principal theories of liability alleged by Plaintiff Ross University School of Medicine, Ltd. ("Ross").

**Background Information**

3. I have served as Wyckoff's General Counsel from June 2003 to December 2007 and from November 2008 to the present.

4. From January 2007 to December 2007, I also served as General Counsel of Brooklyn-Queens Health Care, Inc. ("BQHC") and Caritas Health Care Planning, Inc., later renamed Caritas Health Care, Inc. ("Caritas"), a separate entity formed in 2006 to complete

the acquisition of St. John's Queens and Mary Immaculate Hospitals ("St. John's Queens" and "Mary Immaculate," respectively) from St. Vincent's Catholic Medical Centers.

5. Wyckoff is a New York not-for-profit corporation that owns a hospital located in Brooklyn, New York and is licensed to operate that hospital pursuant to Article 28 of New York's Public Health Law. Wyckoff is, and has been throughout my tenure as General Counsel, a secular institution that is not subject to the ethical or religious directives of any religious body.

6. Among the statutory and regulatory requirements that Wyckoff must follow, and that Caritas was obligated to follow until it declared bankruptcy in February 2009, are those set forth in Article 28 of New York's Public Health Law ("Article 28").

7. Brooklyn-Queens Health Care, Inc. ("BQHC") is a New York not-for-profit corporation that is the passive parent and sole corporate member of both Wyckoff and Caritas. BQHC was formed to effectuate Caritas's acquisition of St. John's Queens and Mary Immaculate and to preserve the separate identities of Wyckoff, a secular institution, and Caritas, an institution that had agreed to abide by the ethical and religious directives of the Conference of Catholic Bishops as a part of its acquisition. BQHC has been the passive parent and sole corporate member of both Wyckoff and Caritas since 2006.

8. BQHC has separate Bylaws from Wyckoff and Caritas, which provide that BQHC's corporate purpose is to:

> [F]urther, support or benefit Wyckoff [] and Caritas [], which [] operate, or will operate upon receiving requisite regulatory approvals, the hospitals in Kings and Queens Counties, respectively known as Wyckoff Heights Medical Center, St. John's Queens Hospital and Mary Immaculate Hospital . . . for the purpose of serving as a holding corporation . . . .

*See* Declaration of Justin H. Roeber, Esq., sworn to on December 2, 2011 ("Roeber Dec."), submitted herewith, Exh. 12, at BQHC 00443.

9. Caritas is a New York not-for-profit corporation that was created to acquire St. John's Queens and Mary Immaculate and to operate those hospitals pursuant to Article 28.

10. In order to operate the hospitals pursuant to Article 28, Caritas needed to obtain the approval of the New York State Department of Health ("DOH"). One of the conditions to DOH's approval of Caritas's Article 28 license was that Caritas and Wyckoff be and remain separate operating entities. *Cf.* Roeber Dec., Exh. 16, at BQHC 00535 (DOH approval, attached to Caritas' certificate of incorporation, acknowledging that certain "contingencies" had been fulfilled).

11. Caritas declared bankruptcy and closed operations at St. John's Queens and Mary Immaculate in February/March 2009.

**Article 28 of New York's Public Health Law**

12. As General Counsel of Wyckoff, and while General Counsel of Caritas and BQHC, I have been responsible for ensuring that Wyckoff's and Caritas's hospitals were operated in accordance with applicable law. I am thus personally familiar with the laws governing the operation of hospitals in New York State.

13. The principal law governing the operation of hospitals in New York State – including Wyckoff's and Caritas's hospitals – is Article 28 of New York's Public Health Law. A true and accurate copy of the relevant portions of Article 28 of New York's Public Health Law, as well as the New York Department of Health's relevant implementing regulations for Article 28, found in Title 10 of New York Codes, Rules and Regulations ("NYCRR"), are attached hereto as Exhibit 1.

**Wyckoff Heights Medical Center**

14. In accordance with Article 28's statutory provisions, New York's Public Health Council (now known as the Public Health and Health Planning Council) "established" Wyckoff, and Wyckoff maintains an "operating certificate" from New York's Commissioner of Health that permits Wyckoff to operate a hospital in New York State. A true and accurate copy of Wyckoff's current operating certificate, in effect on June 5, 2009, is attached hereto as Exhibit 2.

15. Wyckoff's corporate Bylaws provide that Wyckoff's corporate purpose is:

> [T]o establish[,] maintain, and operate, on a not-for-profit basis, a Medical Center facility for the prevention, diagnosis, treatment and/or rehabilitation of inpatients, ambulatory service patients and out-patients who visit, live and work in the community and strengthen quality programs of clinical, education and preventive medicine and to provide skillful and compassionate medical care, health services and clinical research to meet the needs of these patients.

*See* Roeber Dec., Exh. 1, at BQHC 00344.

16. Further, in accordance with Article 28's implementing regulations, Wyckoff's Bylaws provide that Wyckoff is governed by a Board of Trustees that is tasked with, among other things:

    a. Ensuring compliance with federal, state, and local laws;

    b. Appointing Wyckoff's officers, including its President/CEO; and

    c. Appointing Wyckoff's medical staff, including its medical director.

*Id.* at BQHC 00345-00349.

17. Finally, and as also required by Article 28's implementing regulations, Wyckoff's Bylaws grant Wyckoff's President/CEO "the general powers . . . necessary to

operate [Wyckoff] and all of its activities," including the responsibility "to maintain [Wyckoff]'s compliance with statutory and regulatory requirements." *Id.* at BQHC 00350.

18. As Wyckoff's General Counsel, I have been responsible for ensuring compliance with these statutory and regulatory provisions. To the best of my knowledge, Wyckoff's Board and corporate officers have abided by the requirements of Article 28, its implementing regulations, and New York's Public Health Law generally since those statutes and regulations went into effect. *See also* Declaration of A.C. Rao, sworn to on November 14, 2011 ("Rao Dec."), submitted herewith, ¶ 14. In particular, Wyckoff's Board and corporate officers have strictly adhered to Article 28's requirement that only an entity licensed under Article 28 may operate a hospital located in New York State, and Wyckoff's Board has never permitted any affiliate entity to operate Wyckoff's hospital facilities. *See also* Rao Dec., ¶ 15.

19. Wyckoff has filed its own tax returns, and maintained its own corporate books and records, separately from those of BQHC and Caritas, throughout my tenure as Wyckoff's General Counsel. A true and accurate copy of Wyckoff's 2007 Form 990 federal tax return is attached hereto as Exhibit 3.

20. At no time during my tenure as Wyckoff's General Counsel has Wyckoff attempted to dominate BQHC or control its activities.

**Brooklyn-Queens Healthcare, Inc.**

21. Consistent with its limited purpose as the passive parent and sole corporate member of Wyckoff and Caritas, BQHC's Bylaws specify that BQHC's powers are limited to two functions with respect to Wyckoff and Caritas:

- Electing and removing members of Wyckoff's and Caritas's Boards; and

- Authorizing certain discrete corporate acts by Caritas and/or Wyckoff, specifically, the amendment and restatement of their certificates of incorporation, their merger or consolidation with another entity, the disposition of their assets, and/or their voluntary dissolution.

See Roeber Dec., Exh. 12, at BQHC 00443-00444.

22. In accordance with these Bylaws, BQHC has never been licensed to operate a hospital under Article 28 of New York's Public Health Law, and during my tenure as Wyckoff's General Counsel, BQHC has never operated Wyckoff's hospital, Caritas's hospitals, or any other hospital. Indeed, BQHC's Certificate of Incorporation expressly provides that:

> Nothing contained in this certificate of incorporation shall authorize [BQHC] to establish, operate, construct, lease or maintain a hospital or to provide hospital service or health related service . . . as defined in and covered by Articles 28, 36, 40 and 44, respectively, of [New York's] Public Health Law.

See Roeber Dec., Exh. 11, at BQHC 00467-00468.

23. Further, given its limited role as a "passive parent" corporation of Wyckoff and Caritas, BQHC has had no salaried employees, operating revenues, cash flow, or bank accounts during the course of my tenure as Wyckoff's General Counsel.

24. BQHC has filed its own, separate tax returns, and maintained its own corporate books and records, throughout my tenure as Wyckoff's General Counsel. A true and accurate copy of BQHC's 2007 Form 990 federal tax return is attached hereto as Exhibit 4.

**Caritas Health Care, Inc.**

25. From January 2007 until February 2009, Caritas operated St. John's Queens and Mary Immaculate in accordance with its Article 28 operating certificate. A true and accurate copy of that certificate is attached hereto as Exhibit 5.

26. From January 2007 until February 2009, Wyckoff and Caritas operated their respective hospitals separately in all matters of corporate governance, in accordance with Article 28 of the Public Health Law.

27. From January 2007 until February 2009, Wyckoff and Caritas operated their respective hospitals cooperatively in terms of shared services and purchasing. In my experience, this is a common arrangement for health care systems in the state of New York.

28. Throughout my tenure as Wyckoff's General Counsel, the Caritas Board of Trustees in fact included two members nominated by the Bishop of the Roman Catholic Diocese of Brooklyn. These two members, Reverend Patrick Frawley and Mark Lane, did not serve on the Board of Trustees of either Wyckoff or BQHC.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: November 30 2011
New York, New York

David N. Hoffman, Esq.