# Exhibit 1



▷

**Effective: August 17, 2011**

Mckinney's Consolidated Laws of New York Annotated Currentness
  Public Health Law (Refs & Annos)
    Chapter 45. Of the Consolidated Laws (Refs & Annos)
      Article 28. Hospitals (Refs & Annos)
        �map�map **§ 2801-a. Establishment or incorporation of hospitals**

1. No hospital, as defined in this article, shall be established except with the written approval of the public health and health planning council. No certificate of incorporation of a business membership or not-for-profit corporation shall hereafter be filed which includes among its corporate purposes or powers the establishment or operation of any hospital, as defined in this article, or the solicitation of contributions for any such purpose, or two or more of such purposes, except with the written approval of the public health and health planning council, and when otherwise required by law of a justice of the supreme court, endorsed on or annexed to the certificate of incorporation. No articles of organization of a limited liability company established pursuant to the New York limited liability company law which includes among its powers or purposes the establishment or operation of any hospital as defined in this article, shall be filed with the department of state except upon the approval of the public health and health planning council.

2. With respect to the incorporation or establishment of any hospital, as defined in this article, the public health and health planning council shall give written approval after all of the following requirements have been met. An application for approval of the proposed certificate of incorporation, articles of organization or establishment shall be filed with the public health and health planning council together with such other forms and information as shall be prescribed by, or acceptable to, the public health and health planning council. Thereafter, the public health and health planning council shall forward a copy of the proposed certificate or application for establishment, and accompanying documents, to the health systems agency, if any, having geographical jurisdiction of the area where the proposed institution is to be located. The public health and health planning council shall act upon such application after the health systems agency has had a reasonable time to submit their recommendations. At the time members of the public health and health planning council are notified that an application is scheduled for consideration, the applicant and the health systems agency shall be so notified in writing. The public health and health planning council shall afford the applicant an opportunity to present information in person concerning the application to a committee designated by the council. The public health and health planning council shall not take any action contrary to the advice of the health systems agency until it affords to the health systems agency an opportunity to request a public hearing and, if so requested, a public hearing shall be held. If the public health and health planning council proposes to disapprove the application it shall afford the applicant an opportunity to request a public hearing. The public health and health planning council may hold a public hearing on the application on its own motion. Any public hearing held pursuant to this subdivision may be conducted by the public health and health planning council, or by any individual designated by the public health and health planning council. Beginning on January first, nineteen hundred ninety-four, and each year thereafter, a complete application received between January first and June thirtieth of each year shall be reviewed by the appropriate health systems agency and the department and presented to the public health and health planning council for its consideration prior to June thirtieth of the following year and a complete application received between July first and December thirty-first of each year shall be reviewed by the appropriate health systems agency and the department presented to the public health and health planning council for consideration prior to December thirty-first of the following year.

2-a. (a) Notwithstanding any provision of law to the contrary, the commissioner is authorized to approve a certificate of incorporation or articles of organization for establishment of a hospital, provided that: (i) the certificate of incorporation or arti-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

cles of organization reflects solely a change in the form of the business organization of an existing entity which had been approved by the public health and health planning council or its predecessor; and (ii) every incorporator, stockholder, member, director and sponsor of the new entity shall have been an owner, partner, incorporator, stockholder, member, director or sponsor of the existing entity; and (iii) the distribution of ownership, interests and voting rights in the new entity shall be the same as in the existing entity; and (iv) there shall be no change in the operator of a hospital other than the form of its business organization, as a result of the approval of such certificate of incorporation or articles of organization. Any approval by the public health and health planning council of a person as an owner, incorporator, stockholder, member, director or sponsor in the existing entity shall be deemed to be approval for the same degree of participation in the new entity. If the proposal is acceptable to the commissioner an amended operating certificate shall be issued. In the event the commissioner determines that the proposed transfer is not approvable the application shall be referred to the public health and health planning council for its review and action. If the public health and health planning council proposes to disapprove the application, it shall afford the applicant an opportunity to request a public hearing and, if so requested, a public hearing shall be held. Any public hearing held pursuant to this subdivision may be conducted by the public health and health planning council, or by any individual designated by the public health and health planning council.

3. The public health and health planning council shall not approve a certificate of incorporation, articles of organization or application for establishment unless it is satisfied, insofar as applicable, as to (a) the public need for the existence of the institution at the time and place and under the circumstances proposed, provided, however, that in the case of an institution proposed to be established or operated by an organization defined in subdivision one of section one hundred seventy-two-a of the executive law, the needs of the members of the religious denomination concerned, for care or treatment in accordance with their religious or ethical convictions, shall be deemed to be public need; (b) the character, competence, and standing in the community, of the proposed incorporators, directors, sponsors, stockholders, members or operators; with respect to any proposed incorporator, director, sponsor, stockholder, member or operator who is already or within the past ten years has been an incorporator, director, sponsor, member, principal stockholder, principal member, or operator of any hospital, private proprietary home for adults, residence for adults, or non-profit home for the aged or blind which has been issued an operating certificate by the state department of social services, or a halfway house, hostel or other residential facility or institution for the care, custody or treatment of the mentally disabled which is subject to approval by the department of mental hygiene, no approval shall be granted unless the public health and health planning council, having afforded an adequate opportunity to members of health systems agencies, if any, having geographical jurisdiction of the area where the institution is to be located to be heard, shall affirmatively find by substantial evidence as to each such incorporator, director, sponsor, principal stockholder or operator that a substantially consistent high level of care is being or was being rendered in each such hospital, home, residence, halfway house, hostel, or other residential facility or institution with which such person is or was affiliated; for the purposes of this paragraph, the public health and health planning council shall adopt rules and regulations, subject to the approval of the commissioner, to establish the criteria to be used to determine whether a substantially consistent high level of care has been rendered, provided, however, that there shall not be a finding that a substantially consistent high level of care has been rendered where there have been violations of the state hospital code, or other applicable rules and regulations, that (i) threatened to directly affect the health, safety or welfare of any patient or resident, and (ii) were recurrent or were not promptly corrected; (c) the financial resources of the proposed institution and its sources of future revenues; and (d) such other matters as it shall deem pertinent.

3-a. Notwithstanding any other provisions of this chapter, the public health council is hereby empowered to approve the establishment, for demonstration purposes, of not more than one existing hospital within the geographical jurisdiction of each health systems agency established under the provisions of subdivision (c) of section twenty-nine hundred four of this chapter. The purposes of such hospitals shall be to offer and provide nursing home services, board and lodging to persons requiring such services within one hospital. The public health council may approve the establishment of such hospitals without regard to the requirement of public need as set forth in subdivision three of this section.

4. (a) Any change in the person who is the operator of a hospital shall be approved by the public health and health planning council in accordance with the provisions of subdivisions two and three of this section. Notwithstanding any inconsistent provision of this paragraph, any change by a natural person who is the operator of a hospital seeking to transfer part of his or her interest in such hospital to another person or persons so as to create a partnership shall be approved in accordance with

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

McKinney's Public Health Law § 2801-a                                    Page 3

the provisions of paragraph (b) of this subdivision.

(b)(i) Any transfer, assignment or other disposition of ten percent or more of an interest or voting rights in a partnership or limited liability company, which is the operator of a hospital to a new partner or member, shall be approved by the public health and health planning council, in accordance with the provisions of subdivisions two and three of this section, except that: (A) any such change shall be subject to the approval by the public health and health planning council in accordance with paragraph (b) of subdivision three of this section only with respect to the new partner or member, and any remaining partners or members who have not been previously approved for that facility in accordance with such paragraph, and (B) such change shall not be subject to paragraph (a) of subdivision three of this section.

(ii) With respect to a transfer, assignment or disposition involving less than ten percent of an interest or voting rights in such partnership or limited liability company to a new partner or member, no prior approval of the public health and health planning council shall be required. However, no such transaction shall be effective unless at least ninety days prior to the intended effective date thereof, the partnership or limited liability company fully completes and files with the public health and health planning council notice on a form, to be developed by the public health and health planning council, which shall disclose such information as may reasonably be necessary for the public health and health planning council to determine whether it should bar the transaction for any of the reasons set forth in item (A), (B), (C) or (D) below. Within ninety days from the date of receipt of such notice, the public health and health planning council may bar any transaction under this subparagraph: (A) if the equity position of the partnership or limited liability company, determined in accordance with generally accepted accounting principles, would be reduced as a result of the transfer, assignment or disposition; (B) if the transaction would result in the ownership of a partnership or membership interest by any persons who have been convicted of a felony described in subdivision five of section twenty-eight hundred six of this article; (C) if there are reasonable grounds to believe that the proposed transaction does not satisfy the character and competence criteria set forth in subdivision three of this section; or (D) if the transaction, together with all transactions under this subparagraph for the partnership, or successor, during any five year period would, in the aggregate, involve twenty-five percent or more of the interest in the partnership. The public health and health planning council shall state specific reasons for barring any transaction under this subparagraph and shall so notify each party to the proposed transaction.

(iii) With respect to a transfer, assignment or disposition of an interest or voting rights in such partnership or limited liability company to any remaining partner or member, which transaction involves the withdrawal of the transferor from the partnership or limited liability company, no prior approval of the public health and health planning council shall be required. However, no such transaction shall be effective unless at least ninety days prior to the intended effective date thereof, the partnership or limited liability company fully completes and files with the public health and health planning council notice on a form, to be developed by the public health and health planning council, which shall disclose such information as may reasonably be necessary for the public health and health planning council to determine whether it should bar the transaction for the reason set forth below. Within ninety days from the date of receipt of such notice, the public health and health planning council may bar any transaction under this subparagraph if the equity position of the partnership or limited liability company, determined in accordance with generally accepted accounting principles, would be reduced as a result of the transfer, assignment or disposition. The public health and health planning council shall state specific reasons for barring any transaction under this subparagraph and shall so notify each party to the proposed transaction.

(c) Any transfer, assignment or other disposition of ten percent or more of the stock or voting rights thereunder of a corporation which is the operator of a hospital or which is a member of a limited liability company which is the operator of a hospital to a new stockholder, or any transfer, assignment or other disposition of the stock or voting rights thereunder of such a corporation which results in the ownership or control of more than ten percent of the stock or voting rights thereunder of such corporation by any person not previously approved by the public health and health planning council, or its predecessor, for that corporation shall be subject to approval by the public health and health planning council, in accordance with the provisions of subdivisions two and three of this section and rules and regulations pursuant thereto; except that: any such transaction shall be subject to the approval by the public health and health planning council in accordance with paragraph (b) of subdivision three of this section only with respect to a new stockholder or a new principal stockholder; and shall not be subject to paragraph (a) of subdivision three of this section. In the absence of such approval, the operating certificate of such hospital shall

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

be subject to revocation or suspension. No prior approval of the public health and health planning council shall be required with respect to a transfer, assignment or disposition of ten percent or more of the stock or voting rights thereunder of a corporation which is the operator of a hospital or which is a member of a limited liability company which is the owner of a hospital to any person previously approved by the public health and health planning council, or its predecessor, for that corporation. However, no such transaction shall be effective unless at least ninety days prior to the intended effective date thereof, the stockholder completes and files with the public health and health planning council notice on forms to be developed by the public health and health planning council, which shall disclose such information as may reasonably be necessary for the public health and health planning council to determine whether it should bar the transaction. Such transaction will be final as of the intended effective date unless, prior thereto, the public health and health planning council shall state specific reasons for barring such transactions under this paragraph and shall notify each party to the proposed transaction. Nothing in this paragraph shall be construed as permitting a person not previously approved by the public health and health planning council for that corporation to become the owner of ten percent or more of the stock of a corporation which is the operator of a hospital or which is a member of a limited liability company which is the owner of a hospital without first obtaining the approval of the public health and health planning council.

(d) No hospital shall be approved for establishment which would be operated by a limited partnership, or by a partnership any of the members of which are not natural persons.

(e) No hospital shall be approved for establishment which would be operated by a corporation any of the stock of which is owned by another corporation or a limited liability company if any of its corporate members' stock is owned by another corporation.

(f) No corporation shall be a member of a limited liability company authorized to operate a hospital unless its proposed incorporators, directors, stockholders or principal stockholders shall have been approved in accordance with the provisions of subdivision three of this section applicable to the approval of the proposed incorporators, directors or stockholders of any other corporation requiring approval for establishment.

(g) A natural person appointed as trustee of an express testamentary trust, created by a deceased sole proprietor, partner or shareholder in the operation of a hospital for the benefit of a person of less than twenty-five years of age, may, as the trustee, apply pursuant to subdivision two of this section for approval to operate or participate in the operation of a facility or interest therein which is included in the corpus of such trust until such time as all beneficiaries attain the age of twenty-five, unless the trust instrument provides for earlier termination, or such beneficiaries receive establishment approval in their own right, or until a transfer of the trust corpus is approved by the public health and health planning council, in accordance with this subdivision and subdivisions two and three of this section, whichever first occurs. The public health and health planning council shall not approve any such application unless it is satisfied as to:

(i) the character, competence and standing in the community of each proposed trustee operator pursuant to the provisions of paragraph (b) of subdivision three of this section; and

(ii) the ability of the trustee under the terms of the trust instrument to operate or participate in the operation of the hospital in a manner consistent with this chapter and regulations promulgated pursuant thereto.

(h) A natural person appointed conservator pursuant to article eighty-one of the mental hygiene law, or a natural person appointed committee of the property of an incompetent pursuant to article eighty-one of the mental hygiene law or a sole proprietor, partner or shareholder of a hospital, may apply pursuant to subdivision two of this section for approval to operate a hospital owned by the conservatee or incompetent for a period not exceeding two years or until a transfer of the hospital is approved by the public health and health planning council in accordance with subdivisions two and three of this section, whichever occurs first. The public health and health planning council shall not approve any such application unless it is satisfied as to:

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(i) the character, competence and standing in the community of the proposed conservator operator or committee operator pursuant to the provisions of paragraph (b) of subdivision three of this section; and

(ii) the ability of the conservator or committee under the terms of the court order to operate the hospital in a manner consistent with this chapter and regulations promulgated pursuant thereto.

5. Except as otherwise hereinafter provided, no county, city, town, village or other governmental subdivision shall establish or create any agency concerned with the establishment of any hospital as defined in this article without securing the written approval of the public health and health planning council in accordance with the requirements and procedures of subdivisions two and three of this section with respect to certificates of incorporation, articles of organization and establishment, except that the requirements relating to the proposed incorporators, directors and sponsors shall not apply. The preceding shall not apply to the establishment of state hospitals by the state of New York or to the establishment of municipal hospitals by the city of New York.

6. No corporation having power to solicit contributions for charitable purposes shall be deemed to have authority to solicit contributions for any purpose for which the approval of the public health and health planning council is required, unless the certificate of incorporation specifically makes provision therefor, and the written approval of the public health and health planning council, or its predecessor is endorsed on or annexed to such certificate.

7. Where such approval has not been obtained the public health and health planning council may institute and maintain an action in the supreme court through the attorney general to procure a judgment dissolving and vacating or annulling the certificate of incorporation of

(a) any such corporation, or

(b) any corporation hereafter incorporated, the name, purposes, objects or the activities of which in any manner may lead to the belief that the corporation possesses or may exercise any of such purposes.

8. No corporation heretofore formed, having among its powers the power to solicit contributions for charitable purposes, may solicit or continue to solicit contributions for a purpose for which the approval of the public health and health planning council is required without the written approval of the public health and health planning council, except: (a) a corporation which, prior to June first, nineteen hundred seventy, had received the approval of the state board of social welfare of a certificate of incorporation containing such power; or (b) a corporation, which prior to December first, two thousand ten, had received the approval of the public health council of a certificate of incorporation containing such power. If such approval is not obtained and the corporation continues to solicit or to receive contributions for such purpose or advertises that it has obtained such approval, the public health and health planning council may institute and maintain an action in the supreme court through the attorney general to procure a judgment dissolving and vacating or annulling the certificate of incorporation of any such corporation.

9. Only a natural person, a partnership or limited liability company may hereafter undertake to engage in the business of operating or conducting a hospital, as defined in this article, for profit, except that: (a) a person, partnership or corporation which owned and was operating a hospital on April fourth, nineteen hundred fifty-six, may continue to own and operate such hospital; (b) a business corporation may, with the approval of the public health council, and in accordance with the provisions of subdivisions two and three of this section, undertake to engage in the business of operating or conducting a hospital, as defined in this article for profit, provided that such corporation shall not discriminate because of race, color, creed, national origin or sponsor in admission or retention of patients; (c) a business corporation owning and operating a nursing home on May twenty-second, nineteen hundred sixty-nine, in accordance with applicable provisions of law, may continue to own and operate such nursing home; (d) a person who, or a partnership which, is operating a private proprietary nursing home in accordance with applicable provisions of law may, with the approval of the public health and health planning council, and in accordance with the provisions of subdivision three of this section and any rules and regulations thereunder form a business

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

corporation to engage in the business of operating or conducting such nursing home, provided, however, that such corporation shall not discriminate because of race, color, creed, national origin or sponsor in admission or retention of patients; (e) a business corporation operating a nursing home, which corporation was formed with the approval of the state board of social welfare, may continue to own and operate such nursing home.

10. (a) The public health and health planning council, by a majority vote of its members, shall adopt and amend rules and regulations, to effectuate the provisions and purposes of this section, and to provide for the revocation, limitation or annulment of approvals of establishment.

(b)(i) No approval of establishment shall be revoked, limited or annulled without first offering the person who received such approval the opportunity of requesting a public hearing. (ii) The commissioner, at the request of the public health and health planning council, shall fix a time and place for any such hearing requested. (iii) Notice of the time and place of the hearing shall be served in person or mailed by registered mail to the person who has received establishment approval at least twenty-one days before the date fixed for the hearing. (iv) Such person shall file with the department, not less than eight days prior to the hearing, a written answer. (v) All orders or determinations hereunder shall be subject to review as provided in article seventy-eight of the civil practice law and rules. Application for such review must be made within sixty days after service in person or by registered mail of a copy of such order or determination.

11. Any person filing a proposed certificate of incorporation, articles of organization or an application for establishment of a residential health care facility for approval of the public health and health planning council shall file with the commissioner such information on the ownership of the property interests in such facility as shall be prescribed by regulation, including the following:

(a) The name and address and a description of the interest held by each of the following persons:

(i) any person, who directly or indirectly, beneficially owns any interest in the land on which the facility is located;

(ii) any person who, directly or indirectly, beneficially owns any interest in the building in which the facility is located;

(iii) any person who, directly or indirectly, beneficially owns any interest in any mortgage, note, deed of trust or other obligation secured in whole or in part by the land on which or building in which the facility is located; and

(iv) any person who, directly or indirectly, has any interest as lessor or lessee in any lease or sub-lease of the land on which or the building in which the facility is located.

(b) If any person named in response to paragraph (a) of this subdivision is a partnership or limited liability company, then the name and address of each partner or member.

(c) If any person named in response to paragraph (a) of this subdivision is a corporation, other than a corporation whose shares are traded on a national securities exchange or are regularly quoted in an over-the-counter market or which is a commercial bank, savings bank or savings and loan association, then the name and address of each officer, director, stockholder and, if known, each principal stockholder and controlling person of such corporation.

(d) If any corporation named in response to paragraph (a) of this subdivision is a corporation whose shares are traded on a national securities exchange or are regularly quoted in an over-the-counter market or which is a commercial bank, savings bank or savings and loan association, then the name and address of the principal executive officers and each director and, if known, each principal stockholder of such corporation.

12. The following definitions shall be applicable to this section:

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

(a) "Controlling person" of any corporation, partnership, limited liability company or other entity means any person who by reason of a direct or indirect ownership interest (whether of record or beneficial) has the ability, acting either alone or in concert with others with ownership or membership interests, to direct or cause the direction of the management or policies of said corporation, partnership, limited liability company or other entity. Neither the commissioner nor any employee of the department nor any member of a local legislative body of a county or municipality, nor any county or municipal official except when acting as the administrator of a residential health care facility, shall, by reason of his or her official position, be deemed a controlling person of any corporation, partnership, limited liability company or other entity, nor shall any person who serves as an officer, administrator or other employee of any corporation, partnership, limited liability company or other entity or as a member of a board of directors or trustees of any corporation be deemed to be a controlling person of such corporation, partnership, limited liability company or other entity as a result of such position or his or her official actions in such position.

(b) "Principal stockholder" of a corporation means any person who beneficially owns, holds or has the power to vote, ten percent or more of any class of securities issued by said corporation.

(c) "Principal member" of a limited liability company means any person who beneficially owns, holds or has the power to vote, ten percent or more interest determined by such member's share in the current profits of the limited liability company.

13. Any person who operates a hospital without the written approval of the public health and health planning council shall be liable to the people of the state for a civil penalty not to exceed ten thousand dollars for every such violation.

14. (a) The public health and health planning council may approve the establishment of not-for-profit rural health networks as defined in article twenty-nine-A of this chapter, pursuant to the provisions of subdivisions two and three of this section, except that the public health and health planning council shall not consider the public need for and financial resources and sources of future revenues of such networks which do not seek approval to operate a hospital. In addition to character and competence, the public health and health planning council may take into consideration available network plans.

(b) The board of directors or trustees of a not-for-profit rural health network shall be comprised of a representative or representatives of participating providers and members of the general public residing in the area served by such network.

(a) Diagnostic or treatment centers established exclusively to provide end stage renal disease services may be operated by corporations and limited liability companies formed under the laws of New York whose stockholders or members, as applicable, are not natural persons if such corporations and limited liability companies and its principal stockholders and members, as applicable, and controlling persons comply with all applicable requirements of this section and demonstrate, to the satisfaction of the public health and health planning council, sufficient experience and expertise in delivering high quality end stage renal disease care. For purposes of this subdivision, the public health and health planning council shall adopt and amend rules and regulations, notwithstanding any inconsistent provision of this section, to address any matter it deems pertinent to the establishment and operation of diagnostic or treatment centers pursuant to this subdivision; provided that such rules and regulations shall include, but not be limited to provisions governing or relating to: (i) any direct or indirect changes or transfers of ownership interests or voting rights in such corporations and limited liability companies or their stockholders or members, as applicable, and provide for public health and health planning council approval of any change in controlling interests, principal stockholders, principal members, controlling persons, parent company or sponsors; (ii) oversight of the operator and its stockholders or members, as applicable, including local governance of the diagnostic or treatment centers; and (iii) relating to the character and competence and qualifications of, and changes relating to, the directors, managers and officers of the operator and its principal stockholders, principal members, controlling persons, parent company or sponsors.

(b) The following provisions of this section shall not apply to diagnostic or treatment centers operated pursuant to this subdivision: (i) paragraph (b) of subdivision three of this section, relating to stockholders and members; (ii) paragraph (c) of subdivision four of this section, relating to the disposition of stock or voting rights; and (iii) paragraph (e) of subdivision four of

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

this section, relating to the ownership of stock or membership.

16. (a) The commissioner shall charge to applicants for the establishment of hospitals the following application fee:

| | |
|---|---|
| (i) For general hospitals: | $3,000 |
| (ii) For nursing homes: | $3,000 |
| (iii) For safety net diagnostic and treatment centers | |
| as defined in paragraph (c) of this subdivision: | $1,000 |
| (iv) For all other diagnostic and treatment centers: | $2,000 |

(b) An applicant for both establishment and construction of a hospital shall not be subject to this subdivision and shall be subject to fees and charges as set forth in section twenty-eight hundred two of this article.

(c) The commissioner may designate a diagnostic and treatment center or proposed diagnostic and treatment center as a "safety net diagnostic and treatment center" if it is operated or proposes to be operated by a not-for-profit corporation or local health department; participates or intends to participate in the medical assistance program; demonstrates or projects that a significant percentage of its visits, as determined by the commissioner, were by uninsured individuals; and principally provides primary care services as defined by the commissioner.

(d) The fees and charges paid by an applicant pursuant to this subdivision for any application for establishment of a hospital approved in accordance with this section shall be deemed allowable capital costs in the determination of reimbursement rates established pursuant to this article. The cost of such fees and charges shall not be subject to reimbursement ceiling or other penalties used by the commissioner for the purpose of establishing reimbursement rates pursuant to this article. All fees pursuant to this section shall be payable to the department of health for deposit into the special revenue funds--other, miscellaneous special revenue fund -339, certificate of need account.

CREDIT(S)

(Added L.1970, c. 617, § 1. Amended L.1971, c. 722, § 1; L.1971, c. 736, § 1; L.1972, c. 376, § 1; L.1975, c. 649, §§ 1, 2, 5; L.1975, c. 656, §§ 1, 2; L.1976, c. 470, §§ 1, 2; L.1976, c. 472, § 2; L.1977, c. 769, § 2; L.1978, c. 555, § 67; L.1980, c. 433, § 1; L.1981, c. 410, § 1; L.1984, c. 969, §§ 1 to 4; L.1989, c. 129, § 1; L.1991, c. 728, § 1; L.1992, c. 70, § 1; L.1993, c. 557, § 1; L.1993, c. 635, § 1; L.1993, c. 731, §§ 8, 23 to 26; L.1996, c. 639, § 120-a; L.1997, c. 667, § 1, eff. Sept. 24, 1997; L.1998, c. 538, § 1, eff. Aug. 4, 1998; L.1998, c. 588, § 1, eff. Aug. 5, 1998; L.2007, c. 315, § 1, eff. Jan. 14, 2008; L.2009, c. 58, pt. C, § 86, eff. April 7, 2009, deemed eff. April 1, 2009; L.2010, c. 58, pt. A, § 57, eff. Dec. 1, 2010; L.2011, c. 492, § 1, eff. Aug. 17, 2011.)

Current through L.2011, chapters 1 to 54, 57 to 521, 523 to 524, 526, 528 to 533, 536, 537, 539 to 548, 551 to 559, 561 to 564, 565, and 567 to 569.

© 2011 Thomson Reuters

END OF DOCUMENT

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.1

▷

Compilation of Codes, Rules and Regulations of the State of New York Currentness
   Title 10. Department of Health
      Chapter V. Medical Facilities
         Subchapter A. Medical Facilities--Minimum Standards
            Article 2. Hospitals
               ▥ Part 405. Hospitals--Minimum Standards (Refs & Annos)
                  → → **Section 405.1. Introduction**

(a) General hospitals, hereinafter referred to as hospitals, shall comply with all of the requirements of this Part:

    (1) hospitals shall comply with construction standards contained in Article 2 of Subchapter C of this Chapter (Medical Facility Construction); and

    (2) hospitals shall notify the commissioner in writing within seven days after receipt of notice of the accreditation decision or notification of a tentative nonaccreditation by the Joint Commission on Accreditation of Healthcare Organizations or the American Osteopathic Association.

(b) The provisions of Parts 700, except for paragraphs (a)(21)-(22), (b)(25) and (c)(7), (35)-(41) of section 700.2; 702; 703, except for section 703.6; 706; and 707 of Article 1 of this Chapter shall not apply to general hospitals.

(c) Any person, partnership, stockholder, corporation or other entity with the authority to operate a hospital must be approved for establishment by the Public Health Council unless otherwise permitted to operate by the Public Health Law or as provided for by section 405.3 of this Part. For the purposes of this Part, a person, partnership, stockholder, corporation or other entity is an operator of a hospital if it has the decision-making authority over any of the following:

    (1) appointment or dismissal of hospital management-level employees and medical staff, except the election or removal of corporate officers by the members of a not-for-profit corporation;

    (2) approval of hospital operating and capital budgets;

    (3) adoption or approval of hospital operating policies and procedures;

    (4) approval of certificate of need applications filed by or on behalf of the hospital;

    (5) approval of hospital debt necessary to finance the cost of compliance with operational or physical plant standards required by law;

    (6) approval of hospital contracts for management or for clinical services; and

    (7) approval of settlements of administrative proceedings or litigation to which the hospital is party, except approval by the members of a not-for-profit corporation of settlements of litigation that exceed insurance coverage

10 NYCRR 405.1

Page 2

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.1

or any applicable self-insurance fund.

(d) Nothing in subdivision (c) of this section shall require the establishment of any member of a not-for-profit corporation, which operates a hospital, based upon such member's reservation and exercise of the power to require that the hospital operate in conformance with the mission and philosophy of the hospital corporation.

Sec. filed July 25, 1977; repealed, new filed Aug. 11, 1988 eff. Jan. 1, 1989

10 NYCRR 405.1, 10 NY ADC 405.1

Current through amendments included in the New York State Register, Volume XXXIII, Issue 42, dated October 19, 2011.

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:09-cv-01410-KAM-RLM Document 97-61 Filed 01/24/12 Page 14 of 27 PageID #: 2506

Westlaw.

10 NYCRR 405.2                                                                                     Page 1

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.2

**c**

Compilation of Codes, Rules and Regulations of the State of New York <u>Currentness</u>
  Title 10. Department of Health
    Chapter V. Medical Facilities
      Subchapter A. Medical Facilities--Minimum Standards
        Article 2. Hospitals
          <u>Part 405.</u> Hospitals--Minimum Standards <u>(Refs & Annos)</u>
            →→ **Section 405.2. Governing body**

(a) The established operator shall be legally responsible for the quality of patient care services, for the conduct and obligations of the hospital as an institution and for ensuring compliance with all Federal, State and local laws.

(b) *Organization and operation.*

  (1) The hospital shall have a governing body legally responsible for directing the operation of the hospital in accordance with its mission. If a hospital does not have an organized governing body, then the person or persons legally responsible for the conduct of the hospital shall carry out the functions specified in this Part that pertain to the governing body. Hospitals operated by governmental organizations, with the exception of those sponsored by the Federal government, shall provide written notification to the commissioner of their designated governing bodies and the legal authority establishing these designations. No contracts/arrangements or other agreements may limit or diminish the responsibility of the governing body in any way.

  (2) The governing body, in order to achieve and maintain generally accepted standards of professional practice and patient care services in the hospital, shall establish, cause to implement, maintain and, as necessary, revise its practices, policies and procedures for the ongoing evaluation of the services operated or delivered by the hospital and for the identification, assessment and resolution of problems that may develop in the conduct of the hospital.

  (3) All officers, directors, trustees, partners, or sole proprietors of the governing body shall participate in orientation and continuing education programs addressing the mission of the institution, their roles and responsibilities, patients' rights, and the organization, goals and operation of the hospital's quality assurance program.

  (4) The governing body shall adopt written bylaws reflecting its legal responsibility and accountability to the patients and its obligation to the community it was established to serve. The bylaws shall specify at least the following:

    (i) the role and purpose of the hospital;

    (ii) the duties and responsibilities of the governing body;

    (iii) the responsibilities of any governing body committees including the requirement that minutes reflect all business conducted, including findings, conclusions and recommendations;

    (iv) the relationships and responsibilities of the governing body, hospital administration, and the medical

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.2

staff, and the mechanism established by the governing body for holding such parties accountable;

(v) the mechanisms for adopting, reviewing and revising governing body bylaws; and

(vi) the mechanisms for formal approval of the organization, bylaws, rules and regulations of the medical staff and its departments in the hospital.

(5) Meetings of the governing body shall be held in order for the governing body to evaluate the conduct of the hospital, including the care and treatment of patients as well as its own performance. Based on these evaluations, the governing body shall take necessary actions sufficient to correct noted problems. A record of all governing body proceedings which reflects all business conducted, including findings, conclusions and recommendations, shall be maintained for review and analysis.

(6) The governing body shall establish and maintain a coordinated program which integrates the review activities of all hospital services for the purpose of enhancing the quality of patient care and identifying and preventing malpractice.

(c) *Compliance with Federal, State and local laws.*

(1) The hospital shall comply with all applicable Federal, State and local laws, including the New York State Public Health Law, Mental Hygiene Law, and the Education Law.

(2) The governing body shall take all appropriate and necessary actions to monitor and restore compliance when deficiencies in the hospital's compliance with statutory and/or regulatory requirements are identified, including but not limited to monitoring the chief executive officer's submission and implementation of all plans of correction.

(d) *Chief executive officer.*The governing body shall appoint a chief executive officer who is responsible to the governing body for the management of the hospital. This function shall not be delegated to or shared with any organization except under a management authority contract approved by the commissioner pursuant to section 405.3 of this Part.

(1) The chief executive officer shall be qualified for his/her responsibilities through education and experience.

(2) The governing body shall assure the chief executive officer's effective performance through ongoing documented monitoring and evaluation of that performance against written criteria developed for the position. Such criteria shall include the hospital's compliance with statutory and regulatory requirements, the corrective actions required and taken to achieve such compliance, and the maintenance of corrective actions to achieve continued compliance in previously deficient areas.

(e) *Medical staff.*The governing body shall:

(1) determine, in accordance with State law, which categories of health care practitioners are eligible candidates for appointment to the medical staff;

(2) appoint a physician, referred to in this Part as the medical director, who is qualified for membership on the medical staff and who shall be responsible for directing the medical staff organization in accordance with provisions of section 405.4 of this Part. Such appointment shall be made after consultation with the medical staff. In making such appointment the governing body may consider an individual who is a clinical department chairper-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.2

son, an elected president of the medical staff, a medical staff committee chairperson, or any other person who meets the requirements for appointment set forth in this paragraph. The medical director may carry out his or her duties on either a full or part-time basis and on a salaried or nonsalaried basis as determined by the governing body and may report to the governing body directly, or to the governing body through the chief executive officer or through another route as determined by the governing body;

(3) ensure the implementation of written criteria for selection, appointment and reappointment of medical staff members and for the delineation of their medical privileges. Such criteria shall include standards for individual character, competence, training, experience, judgment, and physical and mental capabilities;

(4) ensure that staff membership or professional privileges in the hospital are not dependent solely upon certification, fellowship, or membership in a speciality body or society;

(5) appoint members of the medical staff after considering the recommendations of the existing members of the medical staff in accordance with written procedures, as established by hospital and medical staff bylaws;

(6) ensure that actions taken on applications for medical staff appointments and reappointments including the delineation of privileges are put in writing;

(7) ensure that the medical staff has written bylaws;

(8) approve medical staff bylaws and any other medical staff rules and regulations;

(9) require that members of the medical staff abide by the rules, regulations and bylaws of the hospital;

(10) ensure that the medical staff is accountable to the governing body for the quality of care provided to patients; and

(11) require that members of the medical staff practice only within the scope of privileges granted by the governing body.

(f) *Care of patients.*The governing body shall require that the following patient care practices are implemented, shall monitor the hospital's compliance with these patient care practices, and shall take corrective action as necessary to attain compliance:

(1) every patient of the hospital, whether an inpatient, emergency service patient, or outpatient, shall be provided care that meets generally acceptable standards of professional practice;

(2) every patient is under the care of a health care practitioner who is a member of the medical staff;

(3) patients are admitted to the hospital only on the recommendation of a licensed practitioner permitted to admit patients to a hospital;

(4) a physician, or a registered physician's assistant under the general supervision of a physician, or a nurse practitioner in collaboration with a physician, is on duty at all times in the hospital except that the commissioner may approve substitute coverage, for all or part of each day, by each patient's attending physician when these physicians are immediately available to the hospital by telephone, and available in person within 20 minutes as needed, upon a hospital demonstrating to the commissioner that:

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.2

(i) all patients are medically stable and patients who become medically unstable are promptly transferred to an appropriate receiving hospital in accordance with section 400.9 of this Title;

(ii) the hospital does not operate an emergency service; and

(iii) the entire hospital has less than 25 approved beds;

(5) a physician shall be responsible for the care of each patient with respect to any medical or psychiatric problem that is present on admission or develops during hospitalization;

(6) hospitals which conduct, or propose to conduct, or otherwise authorize human research on patients or other human subjects shall adopt and implement policies and procedures pursuant to the provisions of Public Health Law, article 24-A for the protection of human subjects; and

(7) hospitals shall have available at all times personnel sufficient to meet patient care needs.

(g) *Physical plant.* The governing body is responsible for providing a physical plant equipped and staffed to maintain the needed facilities and services for patients in compliance with construction standards contained in Article 2 of Subchapter C of this Chapter (Medical Facility Construction), and for correcting deficiencies cited by regulatory agencies.

(h) *Hospital service contracts.* The governing body shall be responsible for services furnished in the hospital whether or not they are furnished by outside entities under contracts. The governing body shall ensure that a contractor of services (including one for shared services and joint ventures) furnishes services that permit the hospital to comply with all applicable codes, rules and regulations.

(1) The governing body shall ensure that the services performed under a contract are provided in a safe and effective manner, in accordance with the requirements of section 400.4 of this Subchapter.

(2) The hospital shall maintain a list of all contracted services, including the scope and nature of the services provided.

(i) As used in this Part to describe the duties or obligations of the governing body of a hospital, the words "assure" or "ensure" shall not affect the standard of liability in damages of a hospital corporation's board of directors, or the board's individual members, beyond the standard set forth in statutory and/or case law applicable in this State.

Sec. filed July 25, 1977; amds. filed: Oct. 27, 1977; May 25, 1978; April 29, 1982; July 7, 1982; July 7, 1983; Aug. 30, 1984; Oct. 15, 1985; Sept. 11, 1986; Feb. 10, 1987; Oct. 20, 1987 as emergency measure, expired 60 days after filing; Jan. 12, 1988 as emergency measure, expired 60 days after filing; April 7, 1988; repealed, new filed Aug. 11, 1988; amds. filed: Aug. 25, 1989; Mar. 5, 1992 eff. Mar. 25, 1992. Amended (f)(3)-(4).

10 NYCRR 405.2, 10 NY ADC 405.2

Current through amendments included in the New York State Register, Volume XXXIII, Issue 42, dated October 19, 2011.

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.2

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

10 NYCRR 405.3                                                                    Page 1

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.3

**c**

Compilation of Codes, Rules and Regulations of the State of New York Currentness
   Title 10. Department of Health
     Chapter V. Medical Facilities
       Subchapter A. Medical Facilities--Minimum Standards
         Article 2. Hospitals
           Part 405. Hospitals--Minimum Standards (Refs & Annos)
             →→ **Section 405.3. Administration**

The hospital shall be managed effectively and efficiently in accordance with hospital bylaws and policies and procedures. The daily management and operational affairs of the hospital shall be the responsibility of the chief executive officer.

(a) The chief executive officer shall be responsible for the development, submission and implementation of all plans to correct operational deficiencies identified by regulatory agencies on a timely basis and shall report to the governing body progress in developing and carrying out plans of correction.

(b) *Personnel.* The chief executive officer develops and implements personnel policies and practices with regard to at least the following:

    (1) the employment of personnel, without regard to sex, race, creed, sexual orientation, disability, or national origin, whose qualifications are commensurate with anticipated job responsibilities;

    (2) the identification of all hospital personnel, including students and volunteers, through the use of identification name tags which are clearly visible and are worn at all times;

    (3) the orientation of all new employees to the hospital and to hospital and personnel policies;

    (4) the development and implementation of a written plan for inservice training, including orientation and training for the governing body;

    (5) effective July 1, 1989, the provision, at all times, of intravenous services, phlebotomy services, messenger services, transporter services, nurse aides, housekeeping services and other ancillary support services in a manner sufficient to meet patient care needs and to prevent adverse impact on the delivery of medical and nursing care;

    (6) the maintenance of an accurate, current, and complete personnel record for each hospital employee;

    (7) the verification of all applicable current licensure/certification;

    (8) a periodic performance evaluation, based on a written job description, of each employee;

    (9) the provision of employee health services, in consultation with the medical staff; and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.3

(10) the provision for a physical examination and recorded medical history for all personnel including all employees, members of the medical staff, contract staff, students, and volunteers, whose activities are such that a health impairment would pose a potential risk to patients. The examination shall be of sufficient scope to ensure that no person shall assume his/her duties unless he/she is free from a health impairment which is of potential risk to the patient or which might interfere with the performance of his/her duties, including the habituation or addiction to depressants, stimulants, narcotics, alcohol or other drugs or substances which may alter the individual's behavior. The hospital is required to provide such examination without cost for all employees who are required to have such examination. For personnel whose activities are such that a health impairment would neither pose a risk to patients nor interfere with the performance of his/her duties, the hospital shall conduct a health status assessment in order to determine that the health and well-being of patients are not jeopardized by the condition of such individuals. The hospital shall require the following of all personnel, with the exception of those physicians who are practicing medicine from a remote location outside of New York State, as a condition of employment or affiliation:

(i) a certificate of immunization against rubella which means:

(a) a document prepared by a physician, physician's assistant, specialist's assistant, nurse practitioner, licensed midwife or a laboratory possessing a laboratory permit issued pursuant to Part 58 of this Title, demonstrating serologic evidence of rubella antibodies; or

(b) a document indicating one dose of live virus rubella vaccine was administered on or after the age of 12 months, showing the product administered and the date of administration, and prepared by the health practitioner who administered the immunization; or

(c) a copy of a document described in clause (a) or (b) of this subparagraph which comes from a previous employer or the school which the employee attended as a student; and

(ii) a certificate of immunization against measles for all personnel born on or after January 1, 1957, which means:

(a) a document prepared by a physician, physician's assistant, specialist's assistant, nurse practitioner, licensed midwife or a laboratory possessing a laboratory permit issued pursuant to Part 58 of this Title, demonstrating serologic evidence of measles antibodies; or

(b) a document indicating two doses of live virus measles vaccine were administered on or after the age of 12 months and the second dose administered more than 30 days after the first dose but after 15 months of age showing the product administered and the date of administration, and prepared by the health practitioner who administered the immunization; or

(c) a document, indicating a diagnosis of the employee as having had measles disease prepared by the physician, physician's assistant, specialist's assistant, licensed midwife or nurse practitioner who diagnosed the employee's measles; or

(d) a copy of a document described in clause (a), (b) or (c) of this subparagraph which comes from a previous employer or the school which the employee attended as a student;

(iii) if any licensed physician, physician's assistant, specialist's assistant, licensed midwife or nurse practitioner certifies that immunization with measles and/or rubella vaccine may be detrimental to the employee's health, the requirements of subparagraph (i) and/or (ii) of this paragraph relating to measles and/or rubella immunization

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.3

shall be inapplicable until such immunization is found no longer to be detrimental to such employee's health. The nature and duration of the medical exemption must be stated in the employee's employment medical record and must be in accordance with generally accepted medical standards, (see, for example, the recommendations of the American Academy of Pediatrics and the Immunization Practices Advisory Committee of the U.S. Department of Health and Human Services); and

(iv) for all personnel prior to employment or affiliation, except for personnel with no clinical or patient contact responsibilities who are located in a building or site with no patient care services, either tuberculin skin test or Food and Drug Administration (FDA) approved blood assay for the detection of latent tuberculosis infection, prior to employment or affiliation and no less than every year thereafter for negative findings. Positive findings shall require appropriate clinical follow-up but no repeat tuberculin skin test or blood assay. The medical staff shall develop and implement policies regarding positive outcomes;

(11) the reassessment of the health status of all personnel as frequently as necessary, but no less than annually, to ensure that personnel are free from health impairments which pose potential risk to patients or personnel or which may interfere with the performance of duties;

(12) the provision for emergency health care for all personnel;

(13) the maintenance of medical records for all personnel including the dates, extent and results of all health assessments and physical examinations; the results of laboratory tests and X-ray reports; and records of immunizations, illnesses or injuries;

(14) the requirement that all personnel report immediately to their supervisor any signs or symptoms of personal illness. All personnel making such report shall be referred to an appropriate health care professional for assessment of the potential risk to patients and personnel. Based on this assessment, the hospital shall authorize appropriate measures to be taken, including but not limited to removal, reassignment or return to duty;

(15) the safety and protection of all personnel and advice to personnel concerning the nature of toxic substances which they may encounter in the workplace in the course of their employment or affiliation, in accordance with article 28 of the New York State Labor Law; and

(16) a policy that no hospital employee or member of a hospital medical staff shall be required by the hospital or a member of the hospital staff to participate in an induced termination of pregnancy who has informed the hospital of his or her decision not to participate in such act or acts;

(c) The hospital shall have a written agreement which defines the respective roles and responsibilities of the hospital and any educational program which utilizes the clinical facilities of the hospital for the education of students. Such agreement shall recognize the responsibility of the hospital for activities of the educational program and students which affect the care of patients.

(d) *Records and reports.*Any information, records or documents provided to the department shall be subject to the applicable provisions of the Public Health Law, Mental Hygiene Law, Education Law, and the Public Officers Law in relation to disclosure. The hospital shall maintain and furnish to the Department of Health, immediately upon written request, copies of all documents, including but not limited to:

(1) all records related to patient care and services;

(2) the certificate of incorporation or the partnership agreement and, the certificate of conducting business

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.3

under an assumed name as required by General Business Law, section 130;

(3) the reports of hospital inspections and surveys of outside agencies with statements attached specifying the steps taken to correct any hazards or deficiencies or to carry out the recommendations contained therein;

(4) all contracts, leases and other agreements entered into by the governing authority pertaining to the ownership of the land, building, fixtures and equipment used in connection with the operation of the hospital;

(5) all licenses, permits and certificates required by law for the operation of the hospital and also for those departments and staff members, where required;

(6) operating procedure manuals for all services or units of the hospital organization. These manuals shall be reviewed at least biennially by the hospital or more frequently as determined appropriate by each service or unit and be made available to all services and units of the hospital;

(7) all bylaws, rules and regulations of the hospital and all amendments thereto; a listing of the names and addresses and titles of offices held for all members of the governing authority and revisions thereof; a copy of the bylaws, rules and regulations of the medical staff and all amendments of the medical staff and revisions thereof; a copy of the current annual report and financial statements of the hospital;

(8) copies of complaints received regarding patient care and documentation of the follow-up actions taken as a result of the investigation of these complaints;

(9) copies of all incident reports completed pursuant to section 405.8 of this Part;

(10) a listing of the names and titles of the members of each committee of the hospital;

(11) written minutes of each committee's proceedings. These minutes shall include at least the following:

(i) attendance;

(ii) date and duration of the meeting;

(iii) synopsis of issues discussed and actions or recommendations made; and

(12) any record required to be kept by the provisions of this Part.

(e) *Other reporting requirements.*

(1) The hospital shall report in writing to the Office of Professional Medical Conduct with a copy to the appropriate area administrator of the department's Office of Health Systems Management within 30 days of the occurrence of denial, suspension, restriction, termination or curtailment of training, employment, association or professional privileges or the denial of certification of completion of training of any physician, registered physician's assistant or registered specialist's assistant licensed/registered by the New York State Department of Education for reasons related in any way to any of the following:

(i) alleged mental or physical impairment, incompetence, malpractice, misconduct or endangerment of patient safety or welfare;

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.3

(ii) voluntary or involuntary resignation or withdrawal of association or of privileges with the hospital to avoid the imposition of disciplinary measures;

(iii) the receipt of information concerning a conviction of a misdemeanor or felony. The report shall contain:

(a) the name and address of the individual;

(b) the profession and license number;

(c) the date of the hospital's action;

(d) a description of the action taken; and

(e) the reason for the hospital's action or the nature of the action or conduct which lead to the resignation or withdrawal and the date thereof; and

(iv) the hospital shall establish policies and implement procedures to ensure compliance with these reporting requirements.

(2) The hospital shall furnish to the Department of Education within 30 days of occurrence, a written report of any denial, withholding, curtailment, restriction, suspension or termination of any membership or professional privileges in, employment by, or any type of association with a hospital relating to an individual who is a health profession student serving in a clinical clerkship, an unlicensed health professional serving in a clinical fellowship or residency, or an unlicensed health professional practicing under a limited permit or a state licensee, such as an audiologist, certified social worker, dental hygienist, dentist, nurse, occupational therapist, ophthalmic dispenser, optometrist, pharmacist, physical therapist, podiatrist, psychologist, or speech-language pathologist for reasons related in any way to any of the following reasons:

(i) alleged mental or physical impairment, incompetence, malpractice, misconduct or endangerment of patient safety or welfare;

(ii) voluntary or involuntary resignation or withdrawal of association, employment or privileges with the hospital to avoid imposition of disciplinary measures; or

(iii) the receipt of information concerning a conviction of a misdemeanor or felony. The report shall contain:

(a) the name and address of the individual;

(b) the profession and license number;

(c) the date of the hospitals action;

(d) a description of the action taken; and

(e) the reason for the hospital's action or the nature or the action or conduct which lead to the resignation or withdrawal and the date thereof.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.3

(3) At the time that a physician on a hospital's staff is granted admitting privileges or before or at the time the physician admits his or her first patient, each hospital shall furnish to such physician the following notice, which each physician on the hospital staff must sign and date. The signed notices shall be kept on file by the hospital. The notice to physicians shall state:

"Notice to physicians. Payment to hospitals for inpatient services is based in part on each patient's principal and secondary diagnoses and the major procedures performed on the patient, and for neonates, upon birthweight or admission weight as well. This data must be documented by the patient's medical record. Anyone who misrepresents, falsifies, or conceals this information may be subject to fine, imprisonment, or civil penalty under applicable Federal and New York State laws."

(4) At the time of discharge, for categories of patients determined by the commissioner, the chief executive officer shall provide the department information in a manner and on a form specified by the department.

(f) *Hospital management contracts.*

(1) For the purposes of this Part, a management contract is an agreement between a hospital governing body and a contracting entity for the contracting entity to assume the primary responsibility for managing the day-to-day operations of an entire facility or a defined patient care unit of the facility. A management contract shall not include:

(i) a contract solely for the provision of professional clinical services;

(ii) an employment contract; or

(iii) a contract for the provision of administrative services to a defined patient care unit of a facility where all of the following factors are present:

(*a*) the hospital retains responsibility for the day-to-day operations of the defined patient care unit;

(*b*) the contracting entity has no authority to hire or fire any hospital employee;

(*c*) the contracting entity does not maintain and control the books and records of the defined patient care unit;

(*d*) the contracting entity has no authority to incur any liability on behalf of the facility; and

(*e*) the contracting entity has no authority to adopt or enforce policies regarding the operation of the defined patient care unit.

(2) Management contracts shall be effective only with the prior written consent of the commissioner and shall include the following:

(i) a description of the proposed roles of the governing body during the period of the proposed management contract. The description shall clearly reflect retention by the governing authority of ongoing responsibility for statutory and regulatory compliance;

(ii) a provision that clearly recognizes that the responsibilities of the facility's governing body are in no way obviated by entering into a management contract and that any powers not specifically delegated to the con-

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.3

tracting entity through the provisions of the contract remain with the governing body; and

(iii) a plan for assuring maintenance of the fiscal stability, the level of services provided and the quality of care rendered by the facility during the term of the management contract.

(3) The governing body shall retain sufficient authority and control to discharge its responsibility under this Part. The following elements of control shall not be delegated to a managing authority:

(i) direct independent authority to appoint and discharge the chief executive officer or other key management employees;

(ii) independent control of the books and records;

(iii) authority over the disposition of assets and the authority to incur on behalf of the facility liabilities not normally associated with the day-to-day operation of a facility; and

(iv) independent adoption of policies affecting the delivery of health care services.

(4) A governing body wishing to enter into a management contract shall submit a proposed written contract to the department, at lest 60 days prior to the intended effective date, unless a shorter period is approved in writing by the commissioner, due to extraordinary circumstances. In addition, the governing body shall also submit, within the same time frame, the following:

(i) documentation demonstrating that the proposed managing authority holds all necessary approvals to do business in New York State;

(ii) documentation of the goals and objectives of the management contract including a mechanism for periodic evaluation by the governing body of the effectiveness of the arrangement in meeting those goals and objectives;

(iii) evidence of the managing authority's financial stability;

(iv) information necessary to determine that the character and competence of the proposed managing authority, and its principals, officers and directors, is satisfactory, including evidence that all facilities it has managed in New York State have provided a substantially consistent high level of care in accordance with section 600.2 of this Title, during the term of their management contract or operating certificate; and

(v) evidence that it is financially feasible for the facility to enter into the proposed management contract for the term of the contract and for a period of one year following expiration, recognizing that the costs of the contract are subject to all applicable provisions of Part 86 of this Title. To demonstrate evidence of financial feasibility, the facility shall submit projected operating and capital budgets for the required periods. Such budgets shall be consistent with previous certified financial statements and be subject to future audits.

(5) During the period between a facility's submission of a request for initial approval of a management contract and disposition of that request, a facility may not enter into any arrangement for management contract services other than a written interim consultative agreement with the proposed managing authority. Any interim agreement shall be consistent with the provisions of this section and shall be submitted to the department no later than five days after its effective date.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

N.Y. Comp. Codes R. & Regs. tit. 10, § 405.3

(6) The term of a management contract shall be limited to three years and may be renewed for additional periods not to exceed three years only when authorized by the commissioner. The commissioner shall approve an application for renewal provided that compliance with this section and the following provisions can be demonstrated:

(i) that the goals and objectives of the contract have been met within specified time frames;

(ii) that the quality of care provided by the facility during the term of the contract has been maintained or has improved; and

(iii) that the level of service to meet community needs and patient access to care and services has been maintained or improved.

(7) A contract for which an application for renewal has been submitted on a timely basis to the commissioner may be extended on an interim basis until the commissioner approves or disapproves the application for renewal.

(8) A facility's governing body shall, within the terms of the contract, retain the authority to discharge the managing authority and its employees from their positions at the facility with or without cause on not more than 90 days' notice. In such event, the facility shall notify the department in writing at the time the managing authority is notified. The facility's governing body shall provide a plan for the operation of the facility subsequent to the discharge to be submitted with the notification to the department.

Sec. filed July 25, 1977; amd. filed Feb. 18, 1988; repealed, new filed Aug. 11, 1988; amds. filed: Sept. 7, 1988; Dec. 9, 1988; June 28, 1991 as emergency measure; Sept. 10, 1991 as emergency measure, expired 60 days after filing; Dec. 10, 1991; Aug. 20, 1993; Aug. 29, 1994; Sept. 27, 1994; June 18, 1997; Jan. 3, 2002 eff. Jan. 23, 2002. Amended (b)(10)(i)-(iii); emergency rulemaking eff. Aug. 13, 2009 expired Nov. 10, 2009; amds. filed May 13, 2010 eff. June 2, 2010.

10 NYCRR 405.3, 10 NY ADC 405.3

Current through amendments included in the New York State Register, Volume XXXIII, Issue 42, dated October 19, 2011.

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.