UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                 :

ROSS UNIVERSITY SCHOOL OF MEDICINE, LTD.,   :

                Plaintiff,        :

                               :

       - against -            :    09 Civ. 1410 (KAM) (RLM)

                               :

BROOKLYN-QUEENS HEALTH CARE, INC. and    :
WYCKOFF HEIGHTS MEDICAL CENTER,    :

                Defendants.    :

                               :

-------------------------------------------------------------------X

## DECLARATION OF JOHN H. COOK, JR. IN SUPPORT OF
## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

I, John H. Cook, Jr., pursuant to 28 U.S.C. § 1746, hereby declare as follows:

    1.      I am a member of the Boards of Trustees of: (a) Brooklyn-Queens Health Care, Inc. ("BQHC"); and (b) Wyckoff Heights Medical Center ("Wyckoff"), Defendants in the above-captioned action. I respectfully submit this declaration based on my personal knowledge in support of Defendants' motion for partial summary judgment dismissing two of the principal theories of liability alleged by Plaintiff Ross University School of Medicine, Ltd. ("Ross").

    2.      I have served as a member of BQHC's Board of Trustees since 2006.

    3.      I have served as a member of Wyckoff's Board of Trustees since 1967.

    4.      As a member of the Boards of both BQHC and Wyckoff, I have personal knowledge of how both entities function and the interactions between them.

**Background Facts**

5.      Wyckoff is a New York not-for-profit corporation that owns a hospital located in Brooklyn, New York and is licensed to operate that hospital pursuant to Article 28 of New York's Public Health Law.

6.      Wyckoff's corporate Bylaws, which are attached as Exhibit 1 to the Declaration of Justin H. Roeber ("Roeber Dec."), filed herewith, provide that Wyckoff's corporate purpose is:

> [T]o establish and maintain, and operate, on a not-for-profit basis, a Medical Center facility for the prevention, diagnosis, treatment and/or rehabilitation of inpatients, ambulatory service patients and out-patients who visit, live and work in the community and strengthen quality programs of clinical, education and preventive medicine and to provide skillful and compassionate medical care, health services and clinical research to meet the needs of these patients.

Roeber Dec., Exh. 1, at BQHC 00344.

7.      BQHC is a New York not-for-profit corporation that is the passive parent and sole corporate member of Wyckoff.  BQHC is also the passive parent and sole corporate member of Caritas Health Care, Inc. ("Caritas"), an entity formed in 2006 to complete the acquisition of St. John's Queens Hospital and Mary Immaculate Hospital from the St. Vincents Catholic Medical Centers.  BQHC was designed to effectuate that acquisition and to preserve the separate identities of Wyckoff, a secular institution, and Caritas, an institution that had agreed to abide by the religious and ethical directives of the Conference of Catholic Bishops as a part of that acquisition.  BQHC has been the passive parent and sole corporate member of both Wyckoff and Caritas since 2006.

8.     Accordingly, BQHC has separate Bylaws, attached as Exhibit 12 to the Roeber Declaration, which, unlike Wyckoff's Bylaws, provide that BQHC's corporate purpose is to:

> [F]urther, support or benefit Wyckoff [] and Caritas [], which [] operate, or will operate upon receiving requisite regulatory approvals, the hospitals in Kings and Queens Counties, respectively known as Wyckoff Heights Medical Center, St. John's Queens Hospital and Mary Immaculate Hospital . . . for the purpose of serving as a holding corporation . . . .

Roeber Dec., Exh. 12, at BQHC 00443.

## I.     My Experience as a Member of BQHC's Board of Trustees

9.     As noted, I have been a member of BQHC's Board of Trustees since its formation in 2006.  Throughout my time on BQHC's Board of Trustees, I have also served separately and independently as a member of Wyckoff's Board of Trustees.

10.     Consistent with its limited purpose as the passive parent and sole corporate member of both Wyckoff and Caritas, BQHC's powers over Wyckoff and Caritas are strictly limited to only two functions:

- Electing and removing members of Wyckoff's and Caritas's Boards of Trustees; and

- Authorizing certain discrete corporate acts by Caritas and/or Wyckoff, specifically, the amendment and restatement of their certificates of incorporation and bylaws, their merger or consolidation with another entity, the disposition of their assets, and/or their voluntary dissolution.

*See* Roeber Dec., Exh. 12, at BQHC 00443-00444.

11.     In accordance with these Bylaws, BQHC does not operate Wyckoff, Caritas, or any of Wyckoff's or Caritas's hospital facilities on a day-to-day basis, nor has BQHC ever done so.  Indeed, BQHC's Certificate of Incorporation expressly forbids it from doing so, providing that:

> Nothing contained in this certificate of incorporation shall authorize [BQHC] to establish, operate, construct, lease or maintain a hospital or to provide hospital service or health related service . . . as defined in and covered by Articles 28, 36, 40 and 44, respectively, of [New York's] Public Health Law.

*See* Roeber Dec., Exh. 11, at BQHC 00467-00468.

12.     Thus, BQHC has never been licensed to operate a hospital under Article 28 of New York's Public Health Law, and during my tenure as a member of BQHC's Board of Trustees, BQHC has never operated a hospital or tried to do so.

13.     Further, given its limited role as a "passive parent" corporation of Wyckoff and Caritas, BQHC has had no salaried employees, revenues, cash flow, or bank accounts during the course of my tenure as a member of BQHC's Board of Trustees.

14.     That said, BQHC has filed its own, separate tax returns, and maintained its own corporate books and records, throughout my tenure as a member of BQHC's Board of Trustees.  *See* Declaration of David N. Hoffman, Esq., sworn to on November 30, 2011 ("Hoffman Dec."), submitted herewith, Exh. 4 (BQHC's 2007 Form 990 federal tax return).

15.     During the period of time relevant to this litigation, which I understand to be 2006 through the spring of 2009, BQHC's Board of Trustees met separately from the Boards of Wyckoff and Caritas to conduct business,[1] and at all times those Boards acted independently of one another, with each Board making its own decisions as appropriate for its specific corporation.

16.     At no time during my tenure as a member of BQHC's Board of Trustees has Wyckoff attempted to control BQHC's activities, nor has any member of Wyckoff's Board of

---

[1]     On March 12, 2007, the Boards of both Wyckoff and Caritas met jointly in a "Special Board of Trustees Meeting" that was called on an emergency basis.  *See* Roeber Dec., Exh. 44, at BQHC 03811– 03818.

Trustees (or any other Wyckoff employee) ever told me to take any particular action in my role as a member of BQHC's Board.

17.    In my capacity as a member of BQHC's Board of Trustees, I do not have, and have never had, the authority to exercise any of the powers listed in Paragraph 21 below, which are expressly granted to Wyckoff's Board of Trustees alone pursuant to Wyckoff's Bylaws, and which I understand may only be exercised by Wyckoff's Board in order for Wyckoff to remain licensed to operate a hospital under Article 28 of New York's Public Health Law.

18.    Accordingly, in my capacity as a member of BQHC's Board of Trustees, I have never had the authority to, among other things, direct or influence the clinical medical education programs run by Wyckoff.

19.    Indeed, at all times relevant to this litigation, which I understand to be 2006 through 2009, BQHC's Board of Trustees has been comprised of fewer than half the number of members of Wyckoff's Board of Trustees.  Currently, BQHC's Board of Trustees is comprised of 10 members (all of whom are also members of Wyckoff's Board), while Wyckoff's Board of Trustees is comprised of 22 members.  Therefore, even if all of the members of BQHC's Board of Trustees wanted to cause Wyckoff to take a particular action, they would not have enough votes to force Wyckoff to do so without the support of additional members of Wyckoff's Board of Trustees who do not also serve on BQHC's Board of Trustees.

## II.    My Experience as a Member of Wyckoff's Board of Trustees

20.    As noted, I have been a member of Wyckoff's Board of Trustees since 1967. Since BQHC was established in late 2006, I have been elected to Wyckoff's Board by BQHC's Board of Trustees, on which I also sit as a member.

21.     Wyckoff's Bylaws provide that Wyckoff's affairs "are to be managed under the direction of the Board of Trustees."  The specific powers of Wyckoff's Board of Trustees are defined to include the following:

- Ensuring compliance with federal, state, and local laws and regulations;

- Appointing Wyckoff's chief executive officer and monitoring his or her performance annually;

- Establishing Wyckoff's medical staff, including a medical director;

- Ensuring that patient care practices are implemented, monitored, and enforced; and

- Maintaining responsibility for services furnished at Wyckoff's medical facilities, whether or not they were provided by Wyckoff or outside entities under contracts.

*See* Roeber Dec., Exh. 1, at BQHC 00345-00349.  Throughout my time on Wyckoff's Board, I have exercised these powers on Wyckoff's behalf.

22.     During the period of time relevant to this litigation, which I understand to be 2006 through the spring of 2009, Wyckoff's Board of Trustees met separately from the Boards of BQHC and Caritas on all but one occasion,[2] and at all times those Boards acted independently of one another, with each Board making its own decisions as appropriate for its specific corporation.

23.     In my years of experience as a member of Wyckoff's Board of Trustees, Wyckoff's Board has focused on making decisions consistent with its duties and responsibilities to Wyckoff, and Wyckoff's Board has not sought to make decisions for BQHC or Caritas.

24.     In my capacity as a member of Wyckoff's Board of Trustees since late 2006, I have never had the authority to control BQHC's affairs or decision making in any way.  Nor

---

[2]     *See supra*, n. 1.

have I ever had the authority to cause BQHC to take any particular action in my capacity as a member of Wyckoff's Board of Trustees.   Indeed, I am not aware of any member of Wyckoff's Board who in his or her capacity as such has ever attempted to control BQHC or to cause BQHC to take any particular action.

25.     Additionally, Wyckoff has filed its own, separate tax returns, and maintained its own corporate books and records, throughout my tenure as a member of Wyckoff's Board of Trustees. *See* Hoffman Dec., Exh. 3 (Wyckoff's 2007 Form 990 federal tax return).

26.     Finally, Wyckoff has policies in place to ensure its compliance with applicable laws and regulations, including Article 28 of New York's Public Health Law.   To the best of my knowledge, Wyckoff has complied with all such laws and regulations, including Article 28.

27.     From the time when BQHC was formed in 2006 as the passive parent and sole corporate member of both Wyckoff and Caritas, through the time when Caritas declared bankruptcy in 2009, I always explicitly understood that BQHC lacked the power to bind Wyckoff to the debts and liabilities of Caritas.

28.     In my years of experience as a member of Wyckoff's Board of Trustees, neither BQHC nor its Board of Trustees has directed, or sought to direct, Wyckoff's hospital or medical student clerkship operations in any way.

29.     In my capacity as a member of Wyckoff's Board of Trustees, I did not consent at any time to Wyckoff taking on any liability or responsibility with respect to a contract between Ross and BQHC for clinical clerkships at St. John's Queens and Mary Immaculate hospitals.   At no time did Wyckoff's Board of Trustees advocate for or consent to such liability.   By contrast, in December 2006, Wyckoff's Board of Trustees was presented with,

- 7 -

and consented to, the signing of a promissory note with a different medical school (American University of the Caribbean) in which Wyckoff explicitly guaranteed Caritas's obligation to repay an advance of funds if clerkships were not provided by Caritas.

I declare under penalty of perjury that the foregoing is true and correct.

Executed:    November _16th_, 2011
             New York, New York

John H. Cook, Jr.