UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ROSS UNIVERSITY SCHOOL OF MEDICINE, LTD.,

                    Plaintiff,

        - against -                                  09 Civ. 1410 (KAM) (RLM)

BROOKLYN-QUEENS HEALTH CARE, INC. and
WYCKOFF HEIGHTS MEDICAL CENTER,

                    Defendants.
------------------------------------------------------------------X

## DECLARATION OF A.C. RAO, M.D., IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

I, A.C. Rao, M.D., pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a member of the Board of Trustees of Wyckoff Heights Medical Center ("Wyckoff"), a Defendant in the above-captioned action. I am also the Chairman of Wyckoff's Department of Surgery and a full-time Wyckoff employee.[1] As such, I am closely involved with the day-to-day management of Wyckoff's clinical clerkship program for medical students. I respectfully submit this declaration based on my personal knowledge in support of Defendants' motion for partial summary judgment dismissing two of the principal theories of liability alleged by Plaintiff Ross University School of Medicine, Ltd. ("Ross").

**Background Facts**

2. Wyckoff is a New York not-for-profit corporation that owns a hospital located in Brooklyn, New York and is licensed to operate that hospital pursuant to Article 28 of New York's Public Health Law.

---

[1] Board membership is not automatically conferred on the Chairman of the Department of Surgery.

3. Wyckoff's corporate Bylaws, attached as Exhibit 1 to the Declaration of Justin H. Roeber ("Roeber Dec."), filed herewith, provide that Wyckoff's corporate purpose is:

> [T]o establish and maintain, and operate, on a not-for-profit basis, a Medical Center facility for the prevention, diagnosis, treatment and/or rehabilitation of inpatients, ambulatory service patients and out-patients who visit, live and work in the community and strengthen quality programs of clinical, education and preventive medicine and to provide skillful and compassionate medical care, health services and clinical research to meet the needs of these patients.

Roeber Dec., Exh. 1, at BQHC 00344.

4. Wyckoff's Bylaws further provide that Wyckoff's affairs "are to be managed under the direction of the Board of Trustees." The specific powers of Wyckoff's Board of Trustees are defined to include the following:

- Ensuring compliance with federal, state, and local laws and regulations;
- Appointing Wyckoff's chief executive officer and monitoring his or her performance annually;
- Establishing Wyckoff's medical staff, including a medical director;
- Ensuring that patient care practices are implemented, monitored, and enforced; and
- Maintaining responsibility for services furnished at Wyckoff's medical facilities, whether or not they were provided by Wyckoff or outside entities under contracts.

*See id.* at BQHC 00345-00349.

5. I have served as a member of Wyckoff's Board of Trustees since 1998. Throughout my time on Wyckoff's Board, I have exercised the powers listed above on Wyckoff's behalf.

## Wyckoff's Relationship With BQHC

6. Prior to late 2006, I was elected to Wyckoff's Board of Trustees by others

already on Wyckoff's Board. Since late 2006, I have been elected to Wyckoff's Board by the Board of Trustees of Defendant Brooklyn-Queens Health Care, Inc. ("BQHC").

7. I understand BQHC to be the passive parent and sole corporate member of both Wyckoff and Caritas Health Care, Inc. ("Caritas"), an entity formed in 2006 to complete the acquisition of St. John's Queens Hospital and Mary Immaculate Hospital from the St. Vincents Catholic Medical Center. I understand BQHC was designed to effectuate that acquisition and to preserve the separate identities of Wyckoff, a secular institution, and Caritas, an institution that had agreed to abide by the religious and ethical directives of the Conference of Catholic Bishops as a part of that acquisition. BQHC has been the passive parent and sole corporate member of both Wyckoff and Caritas since 2006.

8. From the time when BQHC was formed in 2006 as the passive parent and sole corporate member of both Wyckoff and Caritas, through the time when Caritas declared bankruptcy in 2009, I never believed that BQHC had the power to bind Wyckoff to the debts and liabilities of Caritas.

9. In particular, I did not consent at any time to Wyckoff taking on any liability or responsibility with respect to a contract between Ross and BQHC for clinical clerkships at St. John's Queens and Mary Immaculate hospitals. At no time did Wyckoff's Board of Trustees advocate for or consent to such liability. By contrast, in December 2006, Wyckoff's Board of Trustees was presented with, and consented to, the signing of a promissory note with a different medical school (American University of the Caribbean) in which Wyckoff explicitly guaranteed Caritas's obligation to repay an advance of funds if clerkships were not provided by Caritas.

10. During the period of time relevant to this litigation, which I understand to be 2006 through the spring of 2009, Wyckoff's Board of Trustees met separately from the Boards of BQHC and Caritas on all but one occasion,[2] and at all times those Boards acted independently of one another, with each Board making its own decisions as appropriate for its specific corporation.

11. Additionally, Wyckoff has filed its own tax returns, and maintained its own corporate books and records, separately from those of BQHC and Caritas throughout my tenure as a member of Wyckoff's Board of Trustees. *See* Declaration of David N. Hoffman, Esq., sworn to on November 30, 2011 ("Hoffman Dec."), submitted herewith, Exh. 3.

12. In my years of experience as a member of Wyckoff's Board of Trustees, Wyckoff's Board has focused on making decisions consistent with its duties and responsibilities to Wyckoff, and Wyckoff's Board has not sought to make decisions for BQHC or Caritas.

13. In my capacity as a member of Wyckoff's Board of Trustees since Fall 2006, I have never had the authority to control BQHC's affairs or decision making in any way. Nor have I ever had the authority to cause BQHC to take any particular action in my capacity as a member of Wyckoff's Board of Trustees. Indeed, I am not aware of any member of Wyckoff's Board who in his or her capacity as such has ever attempted to control BQHC or to cause BQHC to take any particular action.

14. Finally, Wyckoff has policies in place to ensure its compliance with applicable laws and regulations, including Article 28 of New York's Public Health Law. To

---

[2] On March 12, 2007, the Boards of both Wyckoff and Caritas met jointly in a "Special Board of Trustees Meeting" that was called on an emergency basis. *See* Roeber Dec., Exh. 44, at BQHC 03811–03818.

- 4 -

the best of my knowledge, Wyckoff has complied with all such laws and regulations, including Article 28.

15. In my years of experience as a member of Wyckoff's Board of Trustees, neither BQHC nor its Board of Trustees has directed, or sought to direct, Wyckoff's hospital or medical student clerkship operations in any way.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: November 14, 2011
New York, New York

_____
A.C. Rao, M.D.