# APPENDIX G

UNITED STATES DISTRICT COURT

EASTERN DISTRICT
--------------------------------------X

ROSS UNIVERSITY MEDICAL SCHOOL

       Plaintiff,

          Index No. 09CV01410

    -against-

BROOKLYN-QUEENS HEALTH CARE AND
WYCKOFF HEIGHTS MEDICAL CENTER,

       Defendants.

--------------------------------------X

   374 Stockholm Street
   Brooklyn, New York 11237

   July 5, 2011
   10:00 a.m.

      EXAMINATION BEFORE TRIAL

of EMIL RUCIGAY, a Defendant, by

George J. Tzanetopoulos, pursuant

to Article 31 of the Civil Practice

Law & Rules of Testimony, and

Notice, held at the above-mentioned

time and place, before Paul

Goldstein, a shorthand reporter and

Notary Public in and for the State

of New York.

2

```
 1
 2        A P P E A R A N C E S :
 3
 4
 5
 6    BAKER HOSTETLER, LLP
          Attorneys for the Plaintiff
 7        191 North Wacker Drive
          Chicago, IL 60606
 8        BY: GEORGE J. TZANETOPOULOS
 9    K&L GATES, LLP
          Attorneys for the Defendants
10        599 Lexington Avenue
          New York, New York 10022
11        BY: WALTER P. LOUGHLIN
12    WYCKOFF HEIGHTS MEDICAL CENTER
          Office of General Counsel
13        374 Stockholm Street
          Brooklyn, New York 11237
14        BY: DAVID N. HOFFMAN
15
16
17
18
19
20
21
22
23
24
25
```

3

```
 1
 2        S T I P U L A T I O N S :
 3
 4        IT IS HEREBY STIPULATED AND AGREED by and
 5    Between the attorneys for the respective
 6    parties Herein, and in compliance with Rule
 7    221 of the Uniform Rules for the Trial
 8    Courts:
 9        THAT the parties recognize the provision
10    of Rule 3115 subdivisions (b), (c) and/or
11    (d). All Objections made at a deposition
12    shall be noted by The officer before whom the
13    deposition is taken, And the answer shall be
14    given and the deposition Shall proceed
15    subject to the objections and to the Right of
16    a person to apply for appropriate relief,
17    Pursuant to Article 31 of the CPLR.
18        THAT every objection raised during a
19    Deposition shall be stated succinctly and
20    framed so as not to suggest an answer to the
21    deponent and, at The request of the
22    questioning attorney, shall Include a clear
23    statement as to any defect in form Or other
24    basis of error or irregularity. Except to The
25    extent permitted by CPLR Rule 3115 or by this
```

4

```
 1
 2    Rule, during the course of the examination
 3    persons In attendance shall not make
 4    statements or comments That interfere with
 5    the questioning.
 6        THAT a deponent shall answer all
 7    questions at A deposition, except (i) to
 8    preserve a privilege or Right of
 9    confidentiality, (ii) to enforce 'a
10    Limitation set forth in an order of a court,
11    Or (iii) when the question is plainly
12    improper And would, if answered, cause
13    significant Prejudice to any person. An
14    attorney shall Not direct a deponent not to
15    answer except as Provided in CPLR Rule 3115
16    or this Subdivision. Any refusal to answer or
17    Direction not to answer shall be accompanied
18    By a succinct and clear statement of the
19    basis Therefore. If the deponent does not
20    answer a Question, the examining party shall
21    have the Right to complete the remainder of
22    the Deposition.
23        THAT an attorney shall not interrupt the
24    Deposition for the purpose of communicating
25    With the deponent unless all parties consent
```

5

```
 1
 2    Or the communication is made for the purpose
 3    Of determining whether the question should
 4    not Be answered on the grounds set forth in
 5    Section 221.2 of these rules and, in such
 6    Event, the reason for the communication shall
 7    be stated for the record succinctly and
 8    Clearly.
 9        THAT failure to object to any question or
10    To move to strike any testimony at this 5J
11    Examination shall not be a bar or waiver to
12    Make such objection or motion at the time of
13    the trial of this action, and is hereby
14    Reserved; and
15        THAT this examination may be signed and
16    Sworn to by the witness examined herein
17    before any Notary Public, but failure to do
18    so or to Return the original of the
19    examination to the Attorney on whose behalf
20    the examination is Taken shall not be deemed
21    a waiver of the rights provided by Rules 3116
22    and 3117 of the CPLR, and shall be controlled
23    thereby, and THAT certification and filing of
24    the Original of this examination are waived;
25    and
```

2  (Pages 2 to 5)

6

1
2          THAT the questioning attorney shall
3     Provide counsel for the witness examined
4     Herein with a copy of this examination at no
5     charge.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

7

1                      RUCIGAY
2          The Witness herein, having been first
3     duly sworn by Paul Goldstein, a Notary Public
4     in and for the State of New York, was
5     examined and testified as follows:
6     EXAMINATION BY
7     MR. TZANETOPOULOS:
8          Q. This is the continued deposition of
9     Emil Rucigay.
10         Mr. Rucigay, I am asking questions
11    this morning.
12         If there's anything you don't hear or
13    don't understand, please let me know, and
14    I'll repeat it or rephrase it.
15         When we were together for the first
16    session of your deposition, we talked about
17    folks from FTI serving as a restructuring
18    consultant.
19         Do you recall that?
20    A. Yes, sir.
21         Q. At some point, did any of BQHC, or
22    its related entities, take steps to terminate
23    FTI?
24    A. Did who, do what?
25         Q. Did Brooklyn Queens Health Care, or

8

1                      RUCIGAY
2     any of its affiliated entities take steps to
3     terminate FTI?
4          A. Yes, we did.
5          Q. What was done?
6          A. We had Singleton replaced -- I don't
7     know the date and so forth, but his services
8     were terminated.
9          Q. Who made the decision to terminate
10    FTI?
11         A. I am not certain, but it was the
12    consensus, I believe, of the Executive
13    Committee and the Board.
14         Q. Before FTI was terminated, did any of
15    your hospital entities confer with any
16    government authorities?
17         A. I believe I may have spoken with
18    Commissioner Daines.
19         Q. Why is it that the hospital entities
20    decided to terminate FTI?
21         A. I cannot give you specifics, but I
22    believe the finances were not improving, and
23    that was the basis for it.
24         Q. Let's go back and talk about your
25    conversation with Commissioner Daines.

9

1                      RUCIGAY
2          In substance, who said what to whom
3     in that conversation?
4          A. In essence, I mentioned to him that
5     the finances were not improving at Wyckoff or
6     Caritas, and that Singleton's services should
7     be terminated.
8          Q. What was the Commissioner's response?
9          A. He said "Okay, but don't make a
10    mistake."
11         Q. What did you take him to be referring
12    to, when he said not to make a mistake?
13         A. By getting a proper replacement.
14         Q. With whom did you replace FTI?
15         A. Eventually, we got John Lavan and his
16    firm involved.
17         Q. And, at any time after FTI was
18    terminated, did anyone on behalf of Brooklyn
19    Queens Health Care, or any of its affiliated
20    entities, contact Ross to inform Ross, that
21    the contract signed by Mr. Singleton, or
22    Mr. Goldberg, were unauthorized?
23         A. I have no idea.
24         Q. Did you do so?
25         A. I don't believe I did.

3 (Pages 6 to 9)

10

RUCIGAY

1    Q. Did you ask anybody else to do so?
2
3    A. I don't believe so.
4    Q. At any time after FTI was terminated,
5    did Brooklyn Queens Health Care, or anyone on
6    behalf of Brooklyn Queens Health Care or its
7    affiliates, offer to return money that Ross
8    had paid under those same contracts?
9    A. No, sir.  Not to my knowledge.
10   Q. Did any of the affiliated entities
11   suffer any negative consequences from a
12   governmental agency, as a result of
13   terminating FTI?
14       MR. LOUGHLIN:  Objection, form.  Can
15   you be more specific?
16       MR. TZANETOPOULOS:  Sure.  Let me try
17   again.
18   Q. Did any state agency do anything
19   negative to the hospitals, or any of the
20   affiliated entities, as a consequence of
21   terminating FTI?
22   A. I have no idea.
23   Q. Mr. Rucigay, have you ever had
24   communications with anybody at Ross?
25   A. No.

11

RUCIGAY

1
2       MR. TZANETOPOULOS:  Pat, can I have
3    you put the documents that I mailed to you,
4    in front of Mr. Rucigay?
5       MR. LOUGHLIN:  Sure.  Maybe we should
6    have them marked (handing.).
7       (Whereupon, a group of documents were
8    marked for identification as Plaintiff's
9    Exhibits 17 through 26.)
10   Q. Mr. Rucigay, let me direct your
11   attention to a document that the court
12   reporter has marked as Exhibit 17.
13       It's titled, "Brooklyn Queens
14   Healthcare Inc., Wyckoff Heights Medical
15   Center, Caritas Health Care, Inc., Joint
16   Meeting of the Boards of Trustees/Directors."
17       It has been marked with
18   Identification Numbers BQHC-53390 through
19   53393.
20   A. Okay.
21   Q. Mr. Rucigay, are these, in fact, a
22   copy of the minutes?
23   A. I believe so.
24   Q. And, again, you can look at that
25   document as much as you'd like.

12

RUCIGAY

1
2       I just have a very brief question on
3    Page 3.
4    A. Go ahead.
5    Q. Under Section 6, headed, "Executive
6    Session," there's reference to a discussion
7    about concerns -- concerning the performance
8    of FTI Cambio.
9       Is this the meeting, at which, the
10   Boards decided to terminate FTI?
11   A. I have no idea.  I don't know.
12   Q. You'll see referenced in that same
13   section of the minutes to the resolution
14   annexed hereto as Exhibit A.
15   A. Yes, go ahead.
16   Q. Are Exhibits 18 and 19, those
17   resolutions?
18   A. Apparently.
19   Q. Mr. Rucigay, let me direct your
20   attention to a document that the court
21   reporter has marked as Exhibit 20, please.
22   A. Yes.
23   Q. That document looks like a draft
24   letter to James Clyne, stamped with
25   Identification Numbers BQHC-12639 and 12640.

13

RUCIGAY

1
2    A. Yes.
3    Q. Did you, in fact, send a letter like
4    this to Mr. Clyne?
5    A. Yes.
6    Q. Is there a final version of that
7    letter somewhere in the hospitals?
8    A. I don't know.
9    Q. Did you receive a response from
10   Mr. Clyne?
11   A. I don't know, but I presume I did.  I
12   don't know.
13   Q. Mr. Rucigay, let me direct your
14   attention, please, to the document that the
15   court reporter has marked as Exhibit Number
16   21.
17   A. Yes.
18   Q. It has been stamped with
19   Identification Numbers BQHC-12483 through
20   12485.
21   A. Yes.
22   Q. If I may direct your attention to the
23   last page where the signature blocks are.
24   A. Yes.
25   Q. This one is not signed.

4  (Pages 10 to 13)

**14**

RUCIGAY

1
2       Did, in fact, the hospitals enter
3 into an extension similar to Exhibit 21?
4     A. I'm sorry.  I don't follow that.
5     Q. The copy I have is not executed.
6       Is there a signed version of this
7 contract?
8     A. I have no idea.
9     Q. Let me direct your attention to
10 Exhibit 22.
11     A. Yes.
12     Q. Exhibit 22 has been marked with
13 Identification Numbers BQHC-12618 through
14 12638.
15     A. Yes.
16     Q. Again, on the last page, you'll see
17 that this version is unsigned.
18     A. That is correct.
19     Q. Did Brooklyn Queens Health Care
20 /Caritas Health Care and Wyckoff Heights
21 Medical Center, enter into a written contract
22 with JL Consulting, LLC?
23     A. I believe we did.  I'm not a hundred
24 percent sure.
25     Q. Do you believe that the hospitals

**15**

RUCIGAY

1
2 have a signed copy of this contract?
3     A. If one was signed, they should have
4 one.
5     (Whereupon, an off-the-record discussion
6 was held.)
7     Q. Let me direct your attention to
8 Exhibit 23.
9     A. Yes.
10     (Whereupon, an off-the-record discussion
11 was held.)
12     Q. Mr. Rucigay, let me direct your
13 attention to Exhibit 23, please.
14     It is a letter directed to you, dated
15 October 31 2008, bearing Identification
16 Numbers BQHC-14867 through 14872.
17     The second page of the exhibit marked
18 BQHC-14868 -- is that your signature on
19 behalf of Brooklyn Queens Health Care and
20 Wyckoff Heights Medical Center and Caritas
21 Health Care?
22     A. Yes.
23     Q. On the last page of the exhibit --
24     A. It's a photocopy of my signature.
25     Q. Yes.

**16**

RUCIGAY

1
2     A. Go ahead.
3     Q. On the last page of the exhibit,
4 BQHC-14872, is that a photocopy of your
5 signature, on behalf of Brooklyn Queens
6 Health Care Inc. and Wyckoff Heights Medical
7 Center and Caritas Health Care?
8     A. Yes.
9     Q. Mr. Rucigay, if I may direction your
10 attention to Exhibits 25 and 26.
11     A. Yes.  I have them here.
12     (BREAK FOR JURAT.)

**17**

RUCIGAY

1
2     Q. Are those copies of Board Meeting
3 minutes for the entities, and the dates
4 listed on the first page of each exhibit?
5     A. Yes.
6     Q. Those are all the questions I have
7 for Mr. Rucigay.
8     (Whereupon, the deposition of Emil
9 Rucigay was concluded at 10:43 a.m.)
10         -o0o-
11     I have read the foregoing record of
12 my testimony taken at the time and place
13 noted in the above heading hereof, and I do
14 hereby acknowledge it to be a true and
15 correct transcript of the same.
16
17     _____
18     EMIL RUCIGAY
19     Signed and subscribed to before me
20 this \_\_\_\_\_ day of_____, 20\_\_
21
22     _____
23     NOTARY PUBLIC
24
25

5 (Pages 14 to 17)

18

```
 1
 2          EXHIBIT INDEX
 3
    Plaintiff's Exhibit           Page
 4
    17 Minutes, Board Meeting 9/24/08    11
 5
    18 Resolutions, Wyckoff Board 9/24/08   12
 6
    19 Resolutions, Caritas Board 9/24/08   12
 7
    20 Letter, Rucigay to Clyne 9/25/08   12
 8
    21 Letter, FTI to Rucigay 9/30/08   13
 9
    22 Administrative Services Agreement   14
10
    23 Letter, FTI to Rucigay 10/31/08   15
11
    25 BQHC Board Minutes 1/8/09     16
12
    26 BQHC Redacted Board Minutes 3/5/09   16
13
14
15
16
17
18
19
20
21
22
23
24
25
```

20

```
 1
 2             E R R A T A   S H E E T
 3
 4
 5    CORRECTION        PAGE   LINE
 6
 7    _____
 8    _____
 9    _____
10    _____
11    _____
12    _____
13    _____
14    _____
15    _____
16    _____
17    _____
18    _____
19    _____
20    _____
21    _____
22    _____
23    _____
24    _____
25
```

19

```
 1
 2        C E R T I F I C A T I O N
 3
 4        I, PAUL GOLDSTEIN, a shorthand
 5   reporter and Notary Public within and for the
 6   State of New York, do hereby certify:
 7        That the witness(es) whose
 8   testimony is herein before set forth was duly
 9   sworn or affirmed by me, and the foregoing
10   transcript is a true record of the testimony
11   given by such witness(es).
12        I further certify that I am not
13   related to any of the parties to this action
14   by blood or marriage, and that I am in no way
15   interested in the outcome of this matter.
16
17   ------------------
18   PAUL GOLDSTEIN
19
20
21
22
23
24
25
```

**www.uslegalsupport.com**