# APPENDIX 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 08-20374-CIV-JORDAN/TORRES

AMERICAN UNIVERSITY OF THE
CARIBBEAN, N.V., a Netherlands Antilles
company, ROBERT BERNAUER, a citizen of
Louisiana, JODIE GWIN, a citizen of Hawaii,
AMIT MISRA, a citizen of California, CALIN
NEAGOE, a citizen of Massachusetts and
VIKRAM SHAKER, a citizen of California,

       Plaintiffs,

vs.

CARITAS HEALTHCARE, INC., f/k/a
CARITAS HEALTHCARE PLANNING,
INC., a New York corporation, WYCKOFF
HEIGHTS MEDICAL CENTER, a New York
corporation, and BROOKLYN QUEENS
HEALTHCARE, INC., a New York corporation,

       Defendants.

_____/

## NOTICE OF FILING SUPPLEMENTAL DECLARATION OF JULIUS ROMERO

    Defendants Caritas Health Care, Inc., Wyckoff Heights Medical Center, and Brooklyn

Queens Health Care, Inc. (collectively, "Defendants"), by and through their undersigned counsel,

hereby give notice of filing the Supplemental Declaration of Julius Romero.



PLAINTIFF'S EXHIBIT
Ronco 9
July 1, 2011
B. Shrestha

This 4th day of April, 2008.

                                    PROSKAUER ROSE LLP
                                    *Attorneys for Defendants*
                                    2255 Glades Road, Suite 340 West
                                    Boca Raton, Florida 33431-7360
                                    Telephone:    (561) 241-7400
                                    Facsimile:    (561) 241-7145


                                    By:  s/Ronald J. Tomassi, Jr.
                                         Matthew Triggs
                                         Florida Bar No. 0865745
                                         mtriggs@proskauer.com
                                         Jonathan Galler
                                         Florida Bar No. 0037489
                                         jgaller@proskauer.com
                                         Ronald J. Tomassi, Jr.
                                         Florida Bar No. 0029751
                                         rtomassi@proskauer.com


## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 4th day of April, 2008, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                              s/ Ronald J. Tomassi, Jr.
                              Ronald J. Tomassi, Jr.

## Service List

**Case No. 08-20374-CIV-JORDAN/TORRES**
**United States District Court, Southern District of Florida**

**Hendrik G. Milne**
**Craig P. Kalil**
hmilne@aballi.com
ckalil@aballi.com
Aballi, Milne, Kalil & Escagedo, P.A.
2250 SunTrust International Center
One Southeast Third Avenue
Miami, FL 33131
Telephone:  (305) 373-6600
Facsimile:  (305) 373-7929
Attorneys for the American University of the Caribbean, N.V.
Service via CM/ECF Notice of Electronic Filing

**Dirk Lorenzen**
DL@caruanalaw.com
Lorenzen Law, P.A.
396 Alhambra Circle, Suite 548
Coral Gables, FL 33134
Telephone:  (305) 447-1203
Facsimile:  (305) 447-1272
Attorney for the Student Plaintiffs
Service via CM/ECF Notice of Electronic Filing

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 08-20374-CIV-JORDAN/TORRES

AMERICAN UNIVERSITY OF THE
CARIBBEAN, N.V., a Netherlands Antilles
company, ROBERT BERNAUER, a citizen of
Louisiana, JODIE GWIN, a citizen of Hawaii,
AMIT MISRA, a citizen of California, CALIN
NEAGOE, a citizen of Massachusetts and
VIKRAM SHAKER, a citizen of California,

       Plaintiffs,

vs.

CARITAS HEALTHCARE, INC., f/k/a
CARITAS HEALTHCARE PLANNING,
INC., a New York corporation, WYCKOFF
HEIGHTS MEDICAL CENTER, a New York
corporation, and BROOKLYN QUEENS
HEALTHCARE, INC., a New York corporation,

       Defendants.

_____/

## SUPPLEMENTAL DECLARATION OF JULIUS ROMERO

JULIUS ROMERO, upon penalty of perjury, deposes and says that:

    1.     My name is Julius Romero. I am *sui juris* and make this declaration based upon my own personal knowledge.

    2.     I am the Assistant Vice President for Medical Education for Defendant Brooklyn Queens Healthcare, Inc. ("BQHC"), a New York not-for-profit corporation.

    3.     Defendant BQHC is the sole member of Defendants Caritas Health Care, Inc. ("Caritas") and Wyckoff Height Medical Center ("Wyckoff") both of which are New York not-for-profit corporations.

4.      Defendant Caritas operates two hospitals: Mary Immaculate Hospital and St. John's Queens Hospital.

5.      In my capacity as Assistant Vice President for Medical Education for BQHC, I oversee the clinical clerkship programs at Caritas' two hospitals and at Wyckoff.

6.      As I stated in my original Declaration, I was directly involved in the negotiations that led to the execution of the December 01, 2006 Promissory Note Agreement between Defendant Caritas and Plaintiff American University of the Caribbean ("AUC") that is at issue in this litigation.

7.      It is typical for teaching hospitals in the United States, such as Mary Immaculate Hospital, St. John's Queens Hospital, and Wyckoff, to sell clinical clerkships to medical schools to offer to their students.  The types of clinical clerkships offered fall into two categories: core and elective.  Core clerkships are not necessarily prerequisites for elective clerkships.

8.      Core clerkships are either six or twelve weeks in duration, depending on the particular discipline.

9.      Pursuant to the terms of the Promissory Note Agreement, Caritas is permitted to offer for sale a total of 100 core clerkships for each clerkship period, but AUC has the right to half of those core clerkships.  (*See* Section 4, ¶ 3.)

10.      From the inception of the AUC-Caritas relationship, in December 2006, until the commencement of the March 2008 clerkship period, Caritas offered all 100 core clerkships contemplated by the Promissory Note Agreement during each clerkship period.  Pursuant to the Promissory Note Agreement, 50 of those were always set aside for AUC.  The remaining 50 were consistently filled in their entirety by students from another Caribbean school called Ross University School of Medicine ("Ross").

11.     On average, AUC consistently sought to use only 25 to 35 of its core clerkships for each clerkship period.

12.     By June 2007, Caritas had added a psychiatry program to its hospitals, and, beginning in that month, Caritas began offering an additional 16 core clerkships in that discipline.  Half were set aside for AUC, but AUC filled only 5 of those slots.  The remaining 8 were sold to and filled by Ross.

13.     AUC has never sought to actually use all of its allocated slots.

14.     Typically, AUC sends a notice to my attention anywhere from 2 weeks to 1 day before the start of a clerkship period informing me of the number and names of the students who will occupy core clerkships from AUC at Caritas that period.  Only since January 31, 2008 (in anticipation of the litigation that AUC commenced two weeks later) has AUC been providing me with notice a full 30 days in advance of clerkship start dates.

15.     It has always been AUC's position that Caritas is not permitted under the Promissory Note agreement to offer to another medical school *any* of AUC's 50 core clerkship slots *even* if some portion of those 50 slots is not occupied by AUC students during any given clerkship period.

16.     In fact, towards the end of 2007, the parties began discussions aimed at amending the Promissory Note Agreement, and one of the modifications specifically at issue involved AUC agreeing to allow Caritas to sell any of AUC's unused slots to other medical schools.  (*See* "Promissory Note Modification" attached hereto as **Exhibit A.**)

17.     AUC's tendency to "tie up" or hold all of their slots without actually using all of them, combined with AUC's position that Caritas could not sell off the unused slots to other medical schools and AUC's refusal to reduce the number of slots reserved for AUC in the first

place, was a driving force behind Caritas' decision to pay off the Note in cash, plus accrued interest, rather than to continue paying off the Note via setoffs.

18.     As I stated in my original Declaration, Caritas intended to reserve the right to pay off the Note in cash, plus accrued interest, in the event that it became dissatisfied with the clinical clerkship arrangement with AUC. Because AUC does not regularly use all of its slots, and refuses to cooperate with Caritas in allowing students from other schools to fill those unused slots, Caritas has, in fact, become dissatisfied.

19.     Because AUC is using only a fraction of its allocated core clerkship slots in any given clerkship period, Caritas cannot pay down its debt via setoffs expeditiously.

20.     Caritas' calculation of the current balance remaining on the Note, for purposes of paying off the Note and terminating the relationship, was premised on set-offs of only those clerkships actually filled by AUC. On that basis, Caritas informed AUC that it holds a check in the amount of approximately $2.87 Million that it is prepared to pay in order to effectuate a termination of the Promissory Note Agreement and Affiliation Agreement. However, if AUC had been consistently filling all of its slots, significantly more of the debt would have been paid off and the remaining balance would be much smaller.

21.     AUC has only recently taken the position that Caritas is permitted to set off all 50 of AUC's core clerkships, even when AUC uses only a portion of those clerkships. AUC had not taken this position in our past discussions. Indeed, as expressed in the Promissory Note Modification, in Paragraph F on page 2: "In addition, the parties disagree as to whether AUC is liable for the value of any unscheduled Core Rotations offered by Caritas and if it is, to what extent."

22.    However, in light of AUC's more recent representation, if the Court denies Plaintiffs' motion for an emergency injunction and permits Caritas to exercise its right to terminate the Note by paying the balance in cash, the Court should order that the balance owed should be re-calculated using set-offs of 50 clerkships per clerkship period (regardless of how many slots were actually filled by AUC), and the value of the check presented should be much lower than the value of the check currently being held by counsel.

23.    Even setting aside Caritas' inability to pay down the Note as expeditiously as it would like, AUC's ability to tie up at least 50 slots every clerkship period, whether it uses them or not, is itself reason enough for Caritas to exercise its right to terminate the agreement by paying the balance of the Note.

24.    There are hundreds of students in other Caribbean medical schools who are trying to find core clerkships.  As AUC has itself pointed out, competition among Caribbean medical schools is high, and AUC's hold on its unused slots is AUC's way of preventing another school from gaining a competitive edge.    Indeed, the following medical schools expressed interest in acquiring core clerkships in 2007:  American University of Antigua, St. Matthews University (Grand Cayman), University of Medicine and Health Sciences (St Kitts), Saba University (Saba), Medical University of the Americas (Nevis), Spartan University (St. Lucia), International American University (St. Lucia), and Ross University.

25.    Caritas views its right to terminate the agreement by paying the balance of the Note as its best option for putting an end to the burdens created by AUC's "hold" on its unused slots.

26.    I understand that, at the April 2nd Court hearing, counsel for AUC represented to the Court that Caritas *does* have the right to offer to another medical school any portion of

AUC's core clerkship slots that are not filled by AUC students during any given clerkship period. This has never previously been AUC's position. Indeed, on numerous occasions, Caritas has sought to sell the unused slots and was told by AUC that the slots are exclusively AUC's regardless of whether or not AUC uses them.

27.     I note that under the proposed Promissory Note Modification, AUC would have apparently been willing to change its position on this issue. Specifically, on page 3, the Promissory Note Modification provides that: "Caritas may subsequently schedule students from other medical schools for the Core Rotations unscheduled by AUC provided that the Program Requirements and student census standards set out above are maintained for the AUC Service."[1]

28.     AUC's recent change in position does not help Caritas at this late date. Months ago, Caritas thought it had negotiated the essential terms of a modification of its agreement with AUC that would have reduced AUC to 25 core clerkships. Based on that understanding, Caritas proceeded to enter into an agreement with Ross which provided for a total of 135 core clerkships, thus essentially giving AUC's slots to Ross. When it became apparent to Caritas that AUC was backing away from that verbal agreement to modify their relationship, Caritas was left with no alternative but to terminate the relationship by paying off the Note as is its right under the agreement.

29.     The next rotations at Caritas begin on April 14, 2008. Attached hereto as **Exhibit B** is a copy of my correspondence to Cynthia Holden of AUC regarding this subject.

FURTHER DECLARANT SAYETH NAUGHT.

---

[1] I also note that Paragraph 3 on page 4 of the proposed Promissory Note Modification provides that "The Borrower acknowledges receipt of a Form W-8BEN executed by the Lender [AUC] certifying that it [AUC] is a foreign corporation not engaged in trade or business in the United States." A copy of that Form is attached to the Promissory Note Modification and was already signed under penalty of perjury by the Chief Operating Officer of AUC.

Dated: April 4, 2008

_____
Julius Romero

# EXHIBIT A

# PROMISSORY NOTE

## MODIFICATION

CARITAS HEALTH CARE INC.

AMERICAN UNIVERSITY OF THE CARIBBEAN, N.V.

Promissory Note Modification

Dated this                    day of October 2007.

## PARTIES

CARITAS HEALTH CARE INC., formerly known as Caritas Healthcare Planning, Inc., a company incorporated in New York with offices located at 374 Stockholm Street, Brooklyn, New York 11237, and a wholly owned subsidiary of Brooklyn Queens Healthcare, Inc. (Brooklyn Queens),

("Caritas or the Borrower")

and

AMERICAN UNIVERSITY OF THE CARIBBEAN N.V., a company incorporated in the Netherlands Antilles with offices located at #1 University Drive at Jordan Road, Cupecoy, St. Maarten, Netherlands Antilles,

("AUC or the Lender")

## BACKGROUND

A.    The Parties entered into a Promissory Note Agreement ("Note" or "Note Agreement") on or about 1 December 2006 in which Caritas borrowed the principal amount of $3,500,000 ("Principal or Principal Amount") from AUC for the purpose of funding the completion of its acquisition of Mary Immaculate Hospital ("MIH") and St. John's Queens Hospital ("SJQH").

B.    The Note provided that interest would accrue on the Principal at the rate of Three-Month LIBOR plus 1.00% per annum, payable within five days following the end of each calendar quarter during the term of the Note Agreement.

C.    An essential term of said Note Agreement was that the Principal together with accrued Interest was repayable on demand, but that so long as the Borrower was not in default, repayment of the Principal of could be effected in the form of a setoff for the equivalent value of medical student education services rendered to AUC for Core and Elective

h:\cy\cf\affiliation\caritas\addendum to note.doc

Page 1

Promissory Note Modification

Rotations ("Rotations") conducted at MIH and SJQH in accordance with certain academic standards.

D.    The Note specified the following academic standards for the Core Rotations:

    i.    The teaching faculty to student ratio for AUC medical students at MIH and SJQH shall not be less than one teaching faculty member to four AUC students per Core Discipline.

    ii.    Caritas agreed to provide no more than 100 Core Rotations for all medical students receiving training at MIH or SJQC at any one time: (50 at each hospital) and that AUC "shall have the right to schedule students to 50% of any such core clerkships offered (the "AUC Service")." The student census limits for the AUC Service were further clarified for the following Core Rotations:

        a.    Surgery: a minimum of six students and maximum of eighteen;

        b.    Internal Medicine: a minimum of ten students and maximum of twenty;

        c.    Obstetrics & Gynecology: a minimum of three students and maximum of six; and

        d.    Family Medicine: a minimum of one student and maximum of six.

E.    As of the date of this Modification, Caritas has made no quarterly interest payments as required by the Note Agreement.

F.    In addition, the Parties disagree as to whether AUC is liable for the value of any unscheduled Core Rotations offered by Caritas and if it is, to what extent.

G.    Lastly, Caritas wishes to offer more Core Rotations at MIH and SJQH than allowed under the academic standards set out in the Note.

H.    Therefore, the Parties wish to resolve their differences by entering into a written Modification of the Note Agreement with the terms and conditions set out below.

Promissory Note Modification

## AGREEMENT

1.     Rotation Fees and Academic Standards

Section 4 clause 3 shall be amended as follows (changes indicated in bold):

3.     The parties acknowledge and agree that the quality of the medical student clinical educational experience is an important consideration with respect to the terms and conditions set forth in this Note Agreement. Therefore, Brooklyn Queens, Caritas, MIH and SJQH (individually and collectively) agree to provide no more than the following number of total Core Rotations for all medical students receiving training at MIH or SJQH at any one time:

(a) MIH: 50 Student Core Rotation Maximum
(b) SJQH: 50 Student Core Rotation Maximum

**PROVIDED THAT** Caritas may increase the maximum student census by 20% for each hospital **SO LONG AS** the Program Requirements and teaching faculty to student ratio set out in Section 4, clauses 1 and 2 above are maintained **AND** that the site reports rendered pursuant to visits by AUC's Chief Academic Officer ("CAO"), Clinical Dean, Clinical Department Chairs are satisfactory overall for each Core Rotation. If an unsatisfactory site visit report is rendered, Caritas will have the length of the Rotation identified as unsatisfactory (12, 6 or 4 weeks, depending on the Rotation) from the date it receives written notice of an identified deficiency to correct the problem to the satisfaction of AUC's CAO. If an identified deficiency is not corrected within the applicable time period, then Caritas must reduce the student census to the total maximum stated above (100) until the identified problem is corrected to the satisfaction of AUC's CAO.

AUC shall have the first right to schedule students to 50% of any such Core Rotations offered (the "AUC Service") by Caritas from time to time; if AUC notifies Caritas of the number of Core Rotation slots it has scheduled no less than twenty-nine days prior to the applicable intake date, then AUC will not be charged fees for any offered Core Rotations which are unscheduled for the particular intake date.

Caritas may subsequently schedule students from other medical schools for the Core Rotations unscheduled by AUC PROVIDED THAT the Program Requirements and student census standards set out above are maintained for the AUC Service.

Caritas shall revoke any invoices previously issued for unscheduled Core Rotations and these shall be considered null and void.

During the term of the Note Agreement, authorized representatives of Caritas, MIH and SJQH agree to provide periodic written confirmation of the number of total Core Rotations for all medical students receiving training at MIH or SJQH, to the AUC CAO.

Promissory Note Modification

2.     Invoicing of Fees, Compounding of Interest and Reconciliation of Account

The following paragraphs shall be added to the end of Section 1:

Consistent with the Affiliation Agreement executed between the Parties contemporaneously with the Note Agreement, Caritas will provide AUC with quarterly invoices setting out the fees for completed Core and Elective Rotations together with a completed student evaluation form for each rotation invoiced. AUC shall setoff from the Principal balance the rotations fees effective from the end quarter date that they are properly invoiced, not effective from the date that the Rotation was completed.

Interest accrued under the Promissory Note each quarter will be added to the outstanding Principal, and interest for the next quarter will be calculated on the compounded balance. Any accrued interest unpaid as of the date of this Addendum will be compounded with principal as of 9/30/07.

The Parties agree that the statement of account attached hereto as Appendix "A" constitutes an accurate and agreed upon statement of the Principal balance due under the Note as of 9/30/07 in accordance with the Modifications contained herein.

3.     Portfolio Interest Obligation

The following is hereby inserted into the Note Agreement as a new clause 20 in Section 4:

Borrower's obligation to repay the Promissory Note to the Lender is intended to be an obligation in "registered form" within the meaning of Section 871 of the Internal Revenue Code of 1986, as amended, the regulations issued thereunder and current applicable authorities of United States federal tax law (such Code, regulations and authorities being hereinafter referred to as the "Tax Law") expressly for the purpose of qualifying interest on the debt evidenced hereby as "portfolio interest" under Section 871 of the Tax Law. Accordingly, payment of the principal of and/or interest on Loan will only be made to the Lender and assignment or transfer of the Lender's rights to receive payment may be effected only by cancellation of this Agreement and the making of a new agreement with new payee. The Borrower acknowledges receipt of a Form W-8BEN executed by the Lender certifying that it is a foreign corporation not engaged in trade or business in the United States. The Borrower agrees to complete any and all statements and such other forms required to be obtained or filed pursuant to regulations of the Department of the Treasury of the United States of America and otherwise to comply with all requirements in order to enable it to properly claim an exemption from withholding on interest under Section 1441 of the Tax Law, including without limitation thereto, the timely filing of Forms 1042 and 1042S and any and all information returns required under the Tax Law.

(a) Payment of principal of and/or interest on the Promissory Note shall be made without deduction of any withholding or any other taxes, imposts, charges and levies of any kind ("withholdings"), any and all of which are for the account of the Lender;

Promissory Note Modification

(b) In the event that the United States Internal Revenue Service or any court of competent jurisdiction determines, or the Tax Law is amended to provide, that interest on the debt evidenced hereby is subject to withholding tax at source and the law does not permit payment of the same amount of interest now paid to the Lender or any subsequent payee on a gross basis as required by the preceding paragraph, then Borrower agrees to renegotiate the terms of this Promissory Note in order to put the Lender or subsequent payee in the same or substantially equivalent position as was originally intended hereunder.

## SIGNATURES

on behalf of CARITAS HEALTH CARE INC.:

_____         _____
Thomas Singleton,                 Date
Chief Reconstruction Officer

_____         _____
Chris Mastromano                  Date
Administrator – Mary Immaculate Hospital

_____         _____
Annette Hastings                  Date
Administrator – Saint John's Queens Hospital

on behalf of the AMERICAN UNIVERSITY OF THE CARIBBEAN, N.V.:

_____         _____
PAUL T. SCHNATZ, M.D.             Date
Chief Academic Officer

_____         _____
YIFE TIEN                         Date
Chief Operating Officer

h:\cr\cf\affiliation\caritas\addendum to note.doc

Page 5

APPENDIX "A"

# American University of the Caribbean
### C/O Medical Education Administrative Services
901 Ponce De Leon Boulevard
Suite 700
Coral Gables, FL 33134

Caritas Healthcare Planning, Inc.
374 Stockholm Street
Brooklyn, NY 11237

October 23, 2007
Invoice 2007003

Interest capitalized quarterly in accordance with $3,500,000 Promissory Note dated December 1, 2006 and subsequent revision.  Interest Billing through September 30, 2007. Please see attached detail.

| | |
|---|---|
| Q/E 12-31-06 | $ 19,168.63 |
| Q/E 3-31-07 | $ 55,143.37 |
| Q/E 6-30-07 | $ 54,925.17 |
| Q/E 9-30-07 | $ 54,983.54 |
| Total to Date | $184,220.71 |

# THANK YOU

## Caritas Rotations Detail
## as Invoiced by Caritas

| Last Name | First Name | Rotation | Date Start | Date End | Total Weeks | Hospital | |
|---|---|---|---|---|---|---|---|
| Weprin | Justin | Cardiology | 1/29/2007 39111 | 2/9/2007 39122 | 2 | | |
| Narala | Kartheik | Radiology | 2/5/2007 39118 | 2/16/2007 39129 | 2 | | |
| Sandhu | Prabhjot | Pathology | 2/12/2007 39125 | 2/23/2007 39136 | 2 | MI | |
| Weprin | Justin | ER | 2/12/2007 39125 | 2/23/2007 39136 | 2 | MI | |
| Desai | Dhaval | OB | 2/19/2007 39132 | 3/30/2007 39171 | 6 | MI | |
| Govan | Preeya | OB | 2/19/2007 39132 | 3/30/2007 39171 | 6 | MI | |
| Maysoun | Zaril | OB | 2/19/2007 39132 | 3/30/2007 39171 | 6 | MI | |
| Narala | Kartheik | Surgery | 2/19/2007 39132 | 3/30/2007 39171 | 6 | MI | |
| Pinto | Peter | Surgery | 2/19/2007 39132 | 3/30/2007 39171 | 6 | MI | |
| Swartzentrub | Gary | Surgery | 2/19/2007 39132 | 3/30/2007 39171 | 6 | MI | |
| Rooplal | Natasha | FP | 2/19/2007 39132 | 3/30/2007 39171 | 6 | MI | |
| Choudry | Farhana | FP | 2/19/2007 39132 | 3/30/2007 39171 | 6 | MI | |
| Wilson | Lisa | FP | 2/19/2007 39132 | 3/30/2007 39171 | 6 | MI | 62 |
| | | | | | | | |
| Dhoerty | Meaghan | Surgery | 2/19/2007 39132 | 3/30/2007 39171 | 6 | SJ | |
| Maynard | Shawn | Surgery | 2/19/2007 39132 | 3/30/2007 39171 | 6 | SJ | 12 |
| **Total 1Q 2007** | | | | | | | 74 |
| Bukhari | Muhammad | FP | 4/2/2007 39174 | 5/11/2007 39213 | 6 | | 6 |
| Adewole | Anthonia | Med | 2/19/2007 39132 | 5/11/2007 39213 | 12 | MI | |
| Ismail | Abrar | FP | 4/2/2007 39174 | 5/11/2007 39213 | 6 | MI | |
| Jodhka | Felicia | FP | 4/2/2007 39174 | 5/11/2007 39213 | 6 | MI | |
| Epstein | Michael | Psych | 5/14/2007 39216 | 6/22/2007 39255 | 6 | MI | |
| Gadea-Lopez | Mercedes | Med | 2/19/2007 39132 | 5/11/2007 39213 | 12 | MI | |
| Gomez-Castro | Pamela | Psych | 5/14/2007 39216 | 6/22/2007 39255 | 6 | MI | |
| Hammonds | Benjamin | GI | 4/23/2007 39195 | 5/11/2007 39213 | 3 | MI | |
| Husta | Bryan | Psych | 5/14/2007 39216 | 6/22/2007 39255 | 6 | MI | |
| Kuhn | David | Rad | 4/16/2007 39188 | 4/27/2007 39199 | 2 | MI | |
| Kuhn | David | Rad | 5/7/2007 39209 | 5/18/2007 39220 | 2 | MI | |
| Lee | Kevin | FP | 5/14/2007 39216 | 6/22/2007 39255 | 6 | MI | |
| Maynard | Shawn | Surgery | 4/2/2007 39174 | 5/11/2007 39213 | 6 | MI | |
| Schulman | Rebecca | Psych | 5/14/2007 39216 | 6/22/2007 39255 | 6 | MI | 79 |
| Alaan | Kristina | OB | 4/2/2007 39174 | 5/11/2007 39213 | 6 | SJ | |
| Casten | Lesli | OB | 4/2/2007 39174 | 5/11/2007 39213 | 6 | SJ | |
| Chen | Kevin | OB | 5/7/2007 39209 | 6/1/2007 39234 | 4 | SJ | |
| Chen | Kevin | Rad | 6/4/2007 39237 | 6/29/2007 39262 | 4 | SJ | |
| Chen | Roger | OB | 5/14/2007 39216 | 6/22/2007 39255 | 6 | SJ | |
| Christianson | Leif | Neuro | 4/2/2007 39174 | 5/11/2007 39213 | 6 | SJ | |
| Deluca | Terry | Surgery | 4/2/2007 39174 | 5/11/2007 39213 | 6 | SJ | |
| Deluca | Terry | OB | 5/14/2007 39216 | 6/22/2007 39255 | 6 | SJ | |
| Desai | Dhaval | Neuro | 5/21/2007 39223 | 6/15/2007 39248 | 4 | SJ | |
| Easter | Laurie | Neuro | 5/21/2007 39223 | 6/15/2007 39248 | 4 | SJ | |
| Gizaw | Gabriel | Surgery | 4/16/2007 39188 | 5/11/2007 39213 | 4 | SJ | |
| Gizaw | Gabriel | Rad | 5/14/2007 39216 | 5/25/2007 39227 | 2 | SJ | |
| Gomez-Castro | Pamela | OB | 4/2/2007 39174 | 5/11/2007 39213 | 6 | SJ | |
| Jodhka | Felicia | OB | 5/14/2007 39216 | 6/22/2007 39255 | 6 | SJ | |
| Kim | Brian | OB | 4/2/2007 39174 | 5/11/2007 39213 | 6 | SJ | |
| Lee | Kevin | OB | 4/2/2007 39174 | 5/11/2007 39213 | 6 | SJ | |
| Maynard | Shawn | OB | 5/14/2007 39216 | 6/22/2007 39255 | 6 | SJ | |
| Narala | Kartheik | Surgery | 4/2/2007 39174 | 5/11/2007 39213 | 6 | SJ | |
| Narala | Kartheik | OB | 5/14/2007 39216 | 6/22/2007 39255 | 6 | SJ | |
| Patel | Purvi | OB | 4/2/2007 39174 | 5/11/2007 39213 | 6 | SJ | |
| Pinto | Peter | Surgery | 4/2/2007 39174 | 5/11/2007 39213 | 6 | SJ | |
| Pinto | Peter | OB | 5/14/2007 39216 | 6/22/2007 39255 | 6 | SJ | |
| Salim | Sarah | OB | 4/2/2007 39174 | 5/11/2007 39213 | 6 | SJ | |
| Swahtzentrub | Gary | Surgery | 4/2/2007 39174 | 5/11/2007 39213 | 6 | SJ | |
| Swahtzentrub | Gary | OB | 5/14/2007 39216 | 6/22/2007 39255 | 6 | SJ | |
| Trinh | Catherine | OB | 4/2/2007 39174 | 5/11/2007 39213 | 6 | SJ | 142 |
| **Total 2Q 2007** | | | | | | | 227 |
| **Total to Date** | | | | | | | 301 |

## Caritas Rotations Detail
### as Invoiced by Caritas

| Last Name | First Name | Rotation | Date Start | | Date End | | Total Weeks | Hospital |
|---|---|---|---|---|---|---|---|---|
| Avila | Veronica | Rad | 7/16/2007 | 39279 | 7/27/2007 | 39290 | 2 | MI |
| Dhir | Ragu | FP | 6/25/2007 | 39258 | 8/3/2007 | 39297 | 6 | MI |
| Doherty | Meaghan | FP | 6/25/2007 | 39258 | 8/3/2007 | 39297 | 6 | MI |
| Doyle | Rose | Neuro | 7/1/2007 | 39264 | 7/27/2007 | 39290 | 4 | MI |
| Hammonds | Benjamin | Cardio | 7/9/2007 | 39272 | 8/3/2007 | 39297 | 4 | MI |
| Hammonds | Benjamin | Neuro | 5/14/2007 | 39216 | 6/8/2007 | 39241 | 4 | MI |
| Lopez | Jose | Rad | 7/16/2007 | 39279 | 8/3/2007 | 39297 | 3 | MI |
| Zafil | Maysoun | Rad | 2/9/2007 | 39122 | 2/26/2007 | 39139 | 2 | MI |
| Alyesh | Michael | Neuro | 6/18/2007 | 39251 | 7/13/2007 | 39276 | 4 | SJ |
| Branche | Angela | Pulmonary | 7/2/2007 | 39265 | 7/27/2007 | 39290 | 4 | SJ |
| Dadivas, Jr. | Jesus | Anesthesia | 7/9/2007 | 39272 | 8/3/2007 | 39297 | 4 | SJ |
| Gomez-Castro | Pamela | Anesthesia | 6/25/2007 | 39258 | 7/6/2007 | 39269 | 2 | SJ |
| Hammonds | Benjamin | ER | 6/11/2007 | 39244 | 6/22/2007 | 39255 | 2 | SJ |
| Yashar | Behzab | Neuro | 6/18/2007 | 39251 | 7/13/2007 | 39276 | 4 | SJ |

Total 3Q 2007   51   51

Total to Date   352

## Caritas Slots Billed

|  | # Slots Billed | Total Weeks | Contract Rate | Total |
|---|---|---|---|---|
| Mar-07 | 74.00 | 74.00 | 341.25 | 25,252.50 |
| Jun-07 | 227.00 | 227.00 | 341.25 | 77,463.75 |
| Sep-07 | 51.00 | 51.00 | 341.25 | 17,403.75 |
| Dec-07 | | - | 341.25 | - |
| | 352.00 | 352.00 | | 120,120.00 |

## Caritas Loan Interest Calculations

| | 3-month llbor | Rate Adjust per Note | Total Interest Rate | # Days Accrual | Weeks/Slots Billed (Principal Reduction) | Principal Balance | Interest Billed | Balance Due |
|---|---|---|---|---|---|---|---|---|
| advance 12-1-06 | | | | | | 3,500,000.00 | | |
| 12/31/2006 | 5.36010% | 1.0000% | 6.3601% | 31 | | 3,500,000.00 | 19,168.63 | 3,519,168.63 |
| 3/31/2007 | 5.34790% | 1.0000% | 6.3479% | 90 | 25,252.50 | 3,493,916.13 | 55,143.37 | 3,549,059.51 |
| 6/30/2007 | 5.36000% | 1.0000% | 6.3600% | 91 | 77,463.75 | 3,471,595.76 | 54,925.17 | 3,526,520.93 |
| 9/30/2007 | 5.22875% | 1.0000% | 6.2288% | 92 | 17,403.75 | 3,509,117.18 | 54,983.54 | 3,564,100.72 |
| 12/31/2007 | | 1.0000% | 1.0000% | | - | 3,564,100.72 | - | 3,564,100.72 |
| | | | | | 120,120.00 | | 184,220.72 | |

Form **W-8BEN**
(Rev. February 2006)
Department of the Treasury
Internal Revenue Service

## Certificate of Foreign Status of Beneficial Owner
## for United States Tax Withholding

► Section references are to the Internal Revenue Code.   ► See separate instructions.
► Give this form to the withholding agent or payer. Do not send to the IRS.

OMB No. 1545-1621

**Do not use this form for:**

| | Instead, use Form: |
|---|---|
| • A U.S. citizen or other U.S. person, including a resident alien individual . . . . . . . . . . . . . . . | W-9 |
| • A person claiming that income is effectively connected with the conduct of a trade or business in the United States . . . . . . . . . . . . . . . . . . . . | W-8ECI |
| • A foreign partnership, a foreign simple trust, or a foreign grantor trust (see instructions for exceptions) . . . . | W-8ECI or W-8IMY |
| • A foreign government, international organization, foreign central bank of issue, foreign tax-exempt organization, foreign private foundation, or government of a U.S. possession that received effectively connected income or that is claiming the applicability of section(s) 115(2), 501(c), 892, 895, or 1443(b) (see instructions) . . . . . . . | W-8ECI or W-8EXP |

Note: *These entities should use Form W-8BEN if they are claiming treaty benefits or are providing the form only to claim they are a foreign person exempt from backup withholding.*

| | |
|---|---|
| • A person acting as an intermediary . . . . . . . . . . . . . . . . . . . . . . | W-8IMY |

Note: *See instructions for additional exceptions.*

### Part I   Identification of Beneficial Owner (See instructions.)

| 1  Name of individual or organization that is the beneficial owner | 2  Country of incorporation or organization |
|---|---|
| American University of the Caribbean, NV | St. Maarten, Netherlands Antilles |

3  Type of beneficial owner: ☐ Individual  ☑ Corporation  ☐ Disregarded entity  ☐ Partnership  ☐ Simple trust
☐ Grantor trust  ☐ Complex trust  ☐ Estate  ☐ Government  ☐ International organization
☐ Central bank of issue  ☐ Tax-exempt organization  ☐ Private foundation

4  Permanent residence address (street, apt. or suite no., or rural route). Do not use a P.O. box or in-care-of address.

**1 University Drive at Jordan Road, Cupecoy**

| City or town, state or province. Include postal code where appropriate. | Country (do not abbreviate) |
|---|---|
| Cupecoy, St. Maarten | Netherlands Antilles |

5  Mailing address (if different from above)

| City or town, state or province. Include postal code where appropriate. | Country (do not abbreviate) |
|---|---|
| | |

| 6  U.S. taxpayer identification number, if required (see instructions) ☐ SSN or ITIN  ☐ EIN | 7  Foreign tax identifying number, if any (optional) |
|---|---|

8  Reference number(s) (see instructions)

### Part II   Claim of Tax Treaty Benefits (if applicable)

9  I certify that (check all that apply):

a ☐ The beneficial owner is a resident of ................................ within the meaning of the income tax treaty between the United States and that country.

b ☐ If required, the U.S. taxpayer identification number is stated on line 6 (see instructions).

c ☐ The beneficial owner is not an individual, derives the item (or items) of income for which the treaty benefits are claimed, and, if applicable, meets the requirements of the treaty provision dealing with limitation on benefits (see instructions).

d ☐ The beneficial owner is not an individual, is claiming treaty benefits for dividends received from a foreign corporation or interest from a U.S. trade or business of a foreign corporation, and meets qualified resident status (see instructions).

e ☐ The beneficial owner is related to the person obligated to pay the income within the meaning of section 267(b) or 707(b), and will file Form 8833 if the amount subject to withholding received during a calendar year exceeds, in the aggregate, $500,000.

10  Special rates and conditions (if applicable—see instructions): The beneficial owner is claiming the provisions of Article ............... of the treaty identified on line 9a above to claim a ............... % rate of withholding on (specify type of income): ...................................
Explain the reasons the beneficial owner meets the terms of the treaty article: ...................................

### Part III   Notional Principal Contracts

11 ☐ I have provided or will provide a statement that identifies those notional principal contracts from which the income is not effectively connected with the conduct of a trade or business in the United States. I agree to update this statement as required.

### Part IV   Certification

Under penalties of perjury, I declare that I have examined the information on this form and to the best of my knowledge and belief it is true, correct, and complete. I further certify under penalties of perjury that:
1 I am the beneficial owner (or am authorized to sign for the beneficial owner) of all the income to which this form relates,
2 The beneficial owner is not a U.S. person,
3 The income to which this form relates is (a) not effectively connected with the conduct of a trade or business in the United States, (b) effectively connected but is not subject to tax under an income tax treaty, or (c) the partner's share of a partnership's effectively connected income, and
4 For broker transactions or barter exchanges, the beneficial owner is an exempt foreign person as defined in the instructions.
Furthermore, I authorize this form to be provided to any withholding agent that has control, receipt, or custody of the income of which I am the beneficial owner or any withholding agent that can disburse or make payments of the income of which I am the beneficial owner.

**Sign Here** ►

| Signature of beneficial owner (or individual authorized to sign for beneficial owner) | Date (MM-DD-YYYY) | Capacity in which acting |
|---|---|---|
| | 10/23/07 | COO |

For Paperwork Reduction Act Notice, see separate instructions.         Cat. No. 25047Z         Form **W-8BEN** (Rev. 2-2006)

# EXHIBIT B



April 1, 2008
Via Facsimile and Mail

Cynthia A. Holden, J.D.
Authorized House Counsel
American University of the Caribbean
School of Medicine
901 Ponce De Leon Blvd., Ste. 401
Coral Gables, FL 33134

Re:    American University of the Caribbean ("AUC") Student Clerkship Schedule

Dear Ms. Holden:

I am writing in response to your letter of March 14, 2008, purporting to advise me that certain AUC students are scheduled for clinical clerkships to commence April 14, 2008 at Wyckoff Heights Medical Center ("Wyckoff") and the Caritas Health Care ("Caritas") hospitals, and that AUC expects that these students will be allowed to commence the clerkships pursuant to the agreements between the parties.

As you are aware, AUC has been on notice since January 30, 2008, that as a result of AUC's refusal to cooperate with Caritas, Caritas decided to terminate its relationship with AUC by paying the entire principal amount and all accrued interest under the Promissory Note Agreement.  Caritas' right to so terminate its relationship with AUC is expressly permitted under the terms of that agreement.

Your letter is similar to the correspondence sent to Caritas by Natallia Chong of AUC at the end of January.  As you know, Ms. Chong's purported notice was rejected by Caritas because of the imminent termination of the parties' relationship.

For the same reason it rejected the notice from Ms. Chong, Caritas is rejecting the notice from you.

AUC has been on notice for more than two months that Caritas was intending to terminate the parties' relationship and that it would be rejecting any purported notice of student lists.  AUC has had ample time to secure clinical clerkships for its students at other hospitals.

Nevertheless, without prejudice to any of the legal claims or defenses of Caritas or the other defendants named in the litigation currently pending against AUC, in an effort to accommodate those students that AUC wishes to send to the Caritas hospitals to begin clinical clerkships on April 14, 2008, Caritas and Wyckoff are willing to provide those students with



An Academic Affiliate of
New York Medical College

Executive Offices
374 Stockholm Street
Brooklyn, NY 11237
(718) 963-7101

Mary Immaculate
Hospital
152-11 89th Avenue
Jamaica, NY 11432
(718) 558-2000

St. John's Queens
Hospital
90-02 Queens Boulevard
Elmhurst, NY 11373
558-1000

Monsignor Fitzpatrick
Skilled Nursing Pavilion
152-11 89th Avenue
Jamaica, NY 11432
(718) 558-2870

Finance Offices
95-25 Queens Boulevard
Rego Park, NY 11374
(718) 830-2711

1

"elective" clerkship positions for the rotation commencing on April 14, 2008, at either the Caritas hospitals or at Wyckoff, as determined by Caritas and Wyckoff, at the rate of $341.25 per student per week.

Please let me know by April 7, 2008 whether AUC wishes to avail itself of this opportunity.

Sincerely,

Julius A.C. Romero
Assistant Vice President,
Medical Education
(718) 963-7529