# APPENDIX 39



AFFILIATE SUBORDINATION AGREEMENT, dated as of January 1, 2007 (as it may be amended, modified or supplemented from time to time, this *"Agreement"*), by and among HFG HEALTHCO-4 LLC, a Delaware limited liability company (in the capacities described below, together its successors and assigns, *"HF-4"*), HFG HEALTHCO-5 LLC, a Delaware limited liability company (in the capacity described below, together its successors and assigns, *"HF-5"*), HEALTHCARE FINANCE GROUP INC. (in the capacities described below, together its successors and assigns, *"HFG"* ; and collectively, with HF-4 and HF-5 with the respect to the subordination rights set forth herein, the *"Senior Creditor"*), BROOKLYN-QUEENS HEALTH CARE, INC., a New York not-for-profit corporation (together its successors and assigns, *"BQHC"*), WYCKOFF HEIGHTS MEDICAL CENTER, a New York not-for-profit corporation (together its successors and assigns, *"Wyckoff"* collectively, with BQHC with the respect to the subordination set forth herein, each a *"Junior Creditor"* and collectively, the *"Junior Creditors"*), and CARITAS HEALTH CARE, INC., a New York not-for-profit corporation (the *"Company"*).

The Company and BQHC have entered into that certain Administrative Services Agreement, dated as August 21, 2006 (as it may amended modified or supplemented from time to time in a manner permitted hereunder, the *"Services Agreement"*), and (ii) BQHC and Wyckoff have entered into that certain Administrative Services Subcontract, dated as of August 21, 2006 (as it may amended modified or supplemented from time to time in a manner permitted hereunder, the *"Services Subcontract"*; together with the Services Agreement, the *"Administrative Services Agreements"*). The "Service Fee" under the Administrative Services Agreements and the "Subcontract Service Fee" under the Services Subcontract are herein referred to as *"Admin Payments"*.

BQHC has loaned to the Borrower  $1,000,000 in cash (the *"BQHC Obligation"*), and Wyckoff has entered into lease obligations for equipment provided to the Borrower with a fair value of not less than $3,200,000 (the *"Wyckoff Obligation"*; together with the BQHC Obligation, are herein referred to as the *"Affiliate Obligations"*; the Affiliate Obligations together with the Admin Payments, are herein referred to as the *"Junior Payments"*). The BQHC Obligation is not documented between BQHC and the Borrower and the Wyckoff Obligation is not documented between Wyckoff and the Borrower.

The Company has entered into that certain Revolving and Term Loan and Security Agreement, dated as of January 1, 2007 (such agreement, as it may be amended, modified or supplemented from time to time, together with all instruments, and other related Documents (as defined therein), and together with any agreements in connection with the replacement, refunding or refinancing the same, the *"Senior Loan Agreement"*), among HF-4 as a Revolving Lender and as agent for the Revolving Lenders (in such capacity, together with its successors and assigns, the *"Revolving Agent"*), HF-5 as the *"Term Loan Lender"*, and together with the Revolving Lenders, collectively, the *"Senior Creditors"*), HFG, in its capacity as administrative agent for the Senior Creditors (in such capacity, the *"Administrative Agent"*) and in its capacity as collateral agent for the Senior Creditors, (in such capacity, the *"Collateral Agent"*). Terms not otherwise defined herein shall have the meanings set forth in the Senior Loan Agreement.

The fundings under the Senior Loan Agreement constitute a direct and significant benefit to the Junior Creditors. In connection with the consummation of the Senior Loan Agreement,

31387413.WPD

the Senior Creditor requires that the Junior Creditors subordinate, to the extent and in the manner hereinafter set forth, the Junior Payments to the Senior Obligations.

Accordingly, in consideration of the foregoing premises and the covenants contained herein, the parties hereto agree as follows:

Section 1.    <u>Definitions</u>.

As used in this Agreement, the terms defined above shall have their respective meanings set forth above and the following terms shall have the following meanings:

1.1.    *"**Business Day**"* shall mean any day on which banks are not authorized or required to close in New York City, New York.

1.2.    *"**Senior Default**"* shall mean any Default or Event of Default under the Senior Loan Agreement.

1.3.    *"**Senior Obligations**"* shall have the meaning of "Lender Debt" under the the Senior Loan Agreement.

Section 2.    <u>Subordination; Acknowledgment of Senior Liens</u>.

2.1.    <u>Subordination</u>.  So long as any Senior Obligations are outstanding, the Junior Creditors agree that the Junior Payments are and shall be expressly subordinate and junior in right of payment and satisfaction to the payment in full of all Senior Obligations on the terms set forth herein.

The expression *"**payment in full**"* or *"**paid in full**"* or any similar term or phrase when used in this Agreement shall mean the final and indefeasible payment in full in cash of all such Senior Obligations, which payment shall have been retained by the Senior Creditor for a period of time in excess of all applicable preference or other similar periods under applicable bankruptcy, insolvency or creditors' rights laws.

2.2.    <u>Special Representation</u>.  The Junior Creditors represent and warrant that (i) the Junior Payments represent the only payment obligations, contractual or otherwise, owing or to be owing by the Company to the Junior Creditors, and (ii) the transactions relating to the Wyckoff Obligation, including the related payment obligations, are no less favorable to the Borrower than would be obtained in a comparable arm's-length transaction with a third party who is not an Affiliate.

2.3.    <u>Acknowledgment of Senior Lien</u>.  The Junior Creditor hereby agrees and acknowledges that (i) the Senior Creditor has been granted a Lien upon the Collateral, and (ii) the Junior Creditors have no Lien on the Collateral or on any other assets of the Company.

31387413.WPD                              2

2.4.    No Challenge. Each Junior Creditor hereby agrees that it shall not challenge, contest or seek to avoid the rights of the Senior Creditor under the Senior Loan Agreement, including without limitation, the Lien of the Senior Creditor thereunder.

2.5.    Permitted Payments.

(a)    The Junior Creditors hereby acknowledge and agree that the Senior Creditor is an intended third party beneficiary of the contractual provisions containing limitations to the making of the Admin Payments set forth under Section 4.2 of the Services Agreement and under Section 6 of the Services Subcontract (the *"Payment Limitation Provisions"*). Accordingly, the Borrower and each Junior Creditor each covenants and agrees that, without the prior written consent of the Senior Creditor, (i) the Borrower will not pay, and no Junior Creditor will receive or retain any direct or indirect payment of Admin Payments in violation of the Payment Limitation Provisions, or (ii) amend, modify or waive the Payment Limitation Provisions in any manner. Each Junior Creditor covenants and agrees that, without the prior written consent of the Senior Creditor, it will not commence any action or proceeding against the Company to enforce payment on all or any part of the Admin Payments.

(b)    The Senior Creditor agrees that the Junior Creditor may receive and retain any direct or indirect payments of Admin Payments that are not in violation of the Payment Limitation Provisions.

(c)    The Borrower and each Junior Creditor each covenants and agrees that, without the prior written consent of the Senior Creditor, the Borrower will not pay, and no Junior Creditor will receive or retain any direct or indirect payment on account of the BQHC Obligation (i) prior to January 1, 2008, (ii) in an amount in any month in excess of $83,333, or (iii) at any time that a Senior Default exists is continuing or would occur as a result of such payment. Each Junior Creditor covenants and agrees that, without the prior written consent of the Senior Creditor, it will not commence any action or proceeding against the Company to enforce payment on all or any part of the BQHC Obligation.

(d)    The Senior Creditor agrees that BQHC may receive and retain any direct or indirect payments pertaining to the BQHC Obligation that are not in violation of this Agreement, including Section 2.5(c).

(e)    The Borrower and each Junior Creditor each covenants and agrees that, without the prior written consent of the Senior Creditor, (i) the Borrower will not pay, and no Junior Creditor will receive or retain any direct or indirect payment on account of the Wyckoff Obligation (i) prior to March 15, 2007, (ii) in an amount in any month in excess of $320,000, or (iii) at any time that a Senior Default exists is continuing or would occur as a result of such payment. Each Junior Creditor covenants and agrees that, without the prior written consent of the Senior Creditor, it will not commence any action or proceeding against the Company to enforce payment on all or any part of the Wyckoff Obligation.

31387413.WPD

3

BQHC 00432

(f)     The Senior Creditor agrees that Wyckoff may receive and retain any direct or indirect payments pertaining to the Wyckoff Obligation that are not in violation of this Agreement, including Section 2.5(e).

2.6.    Insolvency, Etc.

(a)     In the event of any insolvency, bankruptcy, receivership, liquidation, reorganization or other similar proceedings, relative to the Company or to its property, or in the event of any proceedings for voluntary liquidation, dissolution or other winding up of the Company, whether or not involving insolvency or bankruptcy, so long as any Senior Obligations are outstanding, the holders of Senior Obligations shall be entitled in any such proceedings to receive payment in full of all Senior Obligations before the Junior Creditors are entitled in such proceedings to receive any payment on account of the Junior Payments, and to that end in any such proceedings, so long as any Senior Obligations remain outstanding, any payment or distribution of any kind or character, whether in cash or in other property, to which the Junior Creditors would be entitled but for the provisions hereof shall be delivered to the holders of Senior Obligations to the extent necessary to make payment in full of all Senior Obligations remaining unpaid, after giving effect to any concurrent payment or distribution to or for the holders of Senior Obligations in respect thereof.

2.7.    Turnover of Payments Received.   Should any Junior Creditor receive a payment, distribution, security or instrument with respect to the Junior Payments in violation of the provisions of Section 2.5 of this Agreement, such Junior Creditor shall receive and hold the same in trust, as trustee, for the benefit of the Senior Creditor, segregated from other funds and property of such Junior Creditor, and shall be paid over promptly (and in any event within two Business Days) to the Senior Creditor for application to the Senior Obligations remaining due and payable until the same shall have been paid in full.  The Borrower shall adjusts its books and records to indicate that such the amount reflected in such Junior Payment remains due and owing.

If it is later determined (for example, following the delivery of the Borrower's financial statements) that a Junior Payment was made during a period in which a Senior Default existed, the Junior Creditor that was recipient of such Junior Payment shall receive and hold the same in trust, as trustee, for the benefit of the Senior Creditor, segregated from other funds and property of such Junior Creditor, and such amount shall be paid over promptly (and in any event within two Business Days) to the Senior Creditor for application to the Senior Obligations remaining due and payable until the same shall have been paid in full. The Borrower shall adjusts its books and records to indicate that such the amount reflected in such Junior Payment remains due and owing.

2.8.    Subordination Not Affected.   Without the necessity of any reservation of rights against or any notice to or further assent by any Junior Creditor, any demand for payment of any Senior Obligations made by any holder of Senior Obligations may be rescinded in whole or in part by such holder and any Senior Obligations may be continued, the holders of Senior Obligations may exercise or refrain from exercising any rights and remedies against the Company and others, the Senior Obligations, or any collateral security therefor or right of offset with respect thereto, may be extended, modified, accelerated, compromised, waived, surrendered or released by the holders of

BQHC 00433

the Senior Obligations, and any agreement or instrument evidencing, securing or otherwise relating to the Senior Obligations may be amended or modified, all without impairing, abridging, releasing or affecting the subordination provided for herein. The Junior Creditors waive any and all notice (except notices specifically provided for herein) of the creation or modification of any Senior Obligations and notice of or proof of reliance by the Senior Creditor upon the subordination provided for herein. The Senior Obligations shall conclusively be deemed to have been created, contracted or incurred in reliance upon the provisions of this Agreement.

        2.9.   No Limitations. The agreements with respect to the Junior Obligations set forth in this Section 2 are not intended and shall not be construed as a limitation in any manner of the rights and remedies granted to the Senior Creditor under the Senior Loan Agreement.

      Section 3.   Miscellaneous.

        3.1.   Modifications. No amendment, modification, termination or waiver of any provision of this Agreement, or consent to any departure therefrom, shall in any event be effective without the written concurrence of the Senior Creditor and the Junior Creditors.

        3.2.   Termination. This Agreement shall remain in full force and effect until payment in full of all Senior Obligations, *provided* that this Agreement shall continue to be effective or be reinstated (as the case may be) if at any time payment of any of the Senior Obligations is refunded or must otherwise be returned by the Senior Creditor upon any bankruptcy, arrangement, reorganization or similar proceeding for relief of debtors under state or federal law, all as though such payment had not been made.

        3.3.   Third Party Rights. This Agreement is solely for the benefit of the Senior Creditor and the Junior Creditors, and no other person shall have any right, benefit, priority or other interest under, or because of the existence of, this Agreement.

        3.4.   Counterparts. This Agreement and any amendments, waivers, consents, or supplements may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all such counterparts together shall constitute but one and the same instrument.

        3.5.   No Proceedings. The Junior Creditors hereby agree that it will not institute a bankruptcy or insolvency proceeding against HF-4 or HF-5 so long as any senior indebtedness issued by HF-4 shall be outstanding or there shall not have elapsed one year plus one day since the last day on which any such senior indebtedness shall have been outstanding.

        3.6.   Governing Law. This Agreement shall be governed by, and shall be construed and enforced in accordance with, the internal laws of the State of New York, without regard to conflicts of laws principles.

        3.7.   Waiver. No waiver by any party hereto of any breach hereof shall operate or be construed as a waiver of any subsequent breach hereof.

31387413.WPD

BQHC 00434

3.8.   Descriptive Headings.   The descriptive headings of this Agreement are for convenience only and shall have no legal effect.

31387413.WPD

6

BQHC 00435

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**SENIOR CREDITOR:**

HFG HEALTHCO-4 LLC
By: HFG Healthco-4, Inc., a member
as Revolving Agent and a Revolving Lender

By _Mary L. Brady_
  Name:    MARY L. BRADY
  Title:     VICE PRESIDENT

HFG HEALTHCO-5 LLC
By: HFG Healthco-5, Inc., a member
as Term Lender

By _Mary L. Brady_
  Name:    MARY L. BRADY
  Title:     VICE PRESIDENT

HEALTHCARE FINANCE GROUP INC.
as Administrative Agent, as Term Loan
Collateral Agent, Revolving Loan Collateral
Agent and Collateral Agent

By _____
  Name (Printed):
  Title:

Notice Address:
199 Water Street
New York, New York 10038
Attention: Chief Credit Officer
Fax: (212) 785-8512

With a Copy to:
Terry D. Novetsky, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, New York 10022
Fax: (212) 836-6490

**JUNIOR CREDITORS:**

BROOKLYN-QUEENS HEALTH CARE, INC.

By: _____
  Name:
  Title:

Notice Address:

WYCKOFF HEIGHTS MEDICAL CENTER

By: _____
  Name:
  Title:

Notice Address:

With a Copy to:

31387413.WPD

7

BQHC 00436

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

| | |
|---|---|
| **SENIOR CREDITOR:** | **JUNIOR CREDITORS:** |

**HFG HEALTHCO-4 LLC**
By: HFG Healthco-4, Inc., a member
as Revolving Agent and a Revolving Lender

By _Mary L. Brady_
   Name:   MARY L. BRADY
   Title:     VICE PRESIDENT

**HFG HEALTHCO-5 LLC**
By: HFG Healthco-5, Inc., a member
as Term Lender

By _Mary L. Brady_
   Name:   MARY L. BRADY
   Title:     VICE PRESIDENT

**HEALTHCARE FINANCE GROUP INC.**
as Administrative Agent, as Term Loan
Collateral Agent, Revolving Loan Collateral
Agent and Collateral Agent

By_____
   Name (Printed):
   Title:

Notice Address:
199 Water Street
New York, New York 10038
Attention: Chief Credit Officer
Fax: (212) 785-8512

With a Copy to:
Terry D. Novetsky, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, New York 10022
Fax: (212) 836-6490

**BROOKLYN-QUEENS HEALTH CARE, INC.**

By:_____
   Name:
   Title:

Notice Address:

**WYCKOFF HEIGHTS MEDICAL CENTER**

By:_____
   Name:
   Title:

Notice Address:

With a Copy to:

31387413.WPD

7

BQHC 00437

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**SENIOR CREDITOR:**

HFG HEALTHCO-4 LLC
By: HFG Healthco-4, Inc., a member
as Revolving Agent and a Revolving Lender

By_____
  Name:
  Title:

HFG HEALTHCO-5 LLC
By: HFG Healthco-5, Inc., a member
as Term Lender

By_____
  Name:
  Title:

HEALTHCARE FINANCE GROUP INC.
as Administrative Agent, as Term Loan
Collateral Agent, Revolving Loan Collateral
Agent and Collateral Agent

By _____
  Name (Printed): Robert O/Lynch
  Title: C.a.o.

Notice Address:
199 Water Street
New York, New York 10038
Attention: Chief Credit Officer
Fax: (212) 785-8512

With a Copy to:
Terry D. Novetsky, Esq.
Kaye Scholer LLP
425 Park Avenue
New York, New York 10022
Fax: (212) 836-6490

**JUNIOR CREDITORS:**

BROOKLYN-QUEENS HEALTH CARE, INC.

By:_____
  Name:
  Title:

Notice Address:

WYCKOFF HEIGHTS MEDICAL CENTER

By:_____
  Name:
  Title:

Notice Address:

With a Copy to:

31387413.WPD

7

BQHC 00438

The Company, by its execution of this Agreement, hereby acknowledges and agrees to the foregoing provisions of this Agreement.

CARITAS HEALTH CARE, INC.,

By: _____

Name:

Title:

Notice Address:

31387413.WPD

BQHC 00439