# APPENDIX 50

## ADMINISTRATIVE SERVICES AGREEMENT

**THIS ADMINISTRATIVE SERVICES AGREEMENT** (this "**Agreement**") is made and entered into as of October 1, 2008 ("**Effective Date**"), by and among Brooklyn-Queens Health Care, Inc. ("**BQHC**"), a New York not-for-profit corporation, Wyckoff Heights Medical Center, a New York not-for-profit corporation ("**WYCKOFF**"), Caritas Health Care, Inc., a New York not-for-profit corporation ("**CARITAS**"), and JL Consulting, LLC, a New York limited liability company.

**WHEREAS**, BQHC is the sole member of WYCKOFF and CARITAS; and,

**WHEREAS**, CARITAS controls and operates two general acute-care hospitals (Mary Immaculate Hospital and St. John's Queens Hospital), and WYCKOFF controls and operates one general acute-care hospital (collectively, the "**Hospitals**"); and,

**WHEREAS**, JL Consulting, LLC is a limited liability company with the capability to provide administrative services to BQHC, CARITAS and WYCKOFF; and

**WHEREAS**, BQHC, CARITAS and WYCKOFF desire to engage JL Consulting, LLC to provide certain administrative services and JL Consulting, LLC is willing to provide such services, on the terms set forth below.

**NOW, THEREFORE,** in consideration of the mutual covenants set out in this Agreement and other forms of consideration, the adequacy and receipt of which are forever acknowledged, the parties, intending to be legally bound, agree as follows:

### Article I
### AUTHORITY AND RELATIONSHIP OF THE PARTIES

**1.1    Retention of Authority.** WYCKOFF and CARITAS, through their respective governing bodies (each, the "**Board**"), shall exercise, throughout the Term (as defined in **Section 8.1**), ultimate authority, supervision, direction, and control over the business, policies, operation, personnel, and assets of its Hospital(s), and shall retain the ultimate authority and responsibility regarding the powers, duties, and responsibilities vested in WYCKOFF and CARITAS by applicable law and regulations. The Board shall retain the full responsibility for compliance by the Hospitals with all applicable federal, state, and local laws, including, without limitation, compliance with federal and state laws relating to "fraud and abuse" by healthcare providers and compliance with the federal Stark Law, 42 U.S.C. § 1395nn et seq., as amended. Nothing in this Agreement is intended to delegate to JL Consulting, LLC any of the powers, duties or responsibilities vested exclusively in the Board by law. Notwithstanding anything to the contrary contained in this Agreement and in addition to the limitations set forth in **Section 2.3**, with respect to each of the Hospitals:

    (a)    the Board shall retain responsibility for the day-to-day operations;

4471/20937-001 Current/12178443v5



CONFIDENTIAL

BQHC 12618

(b)    JL Consulting, LLC shall have no authority to hire or fire any Hospital employee without the approval of the Board;

(c)    JL Consulting, LLC shall not maintain or control the books and records of the Hospital;

(d)    JL Consulting, LLC shall have no authority to incur any liability on behalf of the Hospital; and

(e)    JL Consulting, LLC shall have no authority to adopt, or without approval of the Board enforce, policies regarding the operation of the Hospital;

(f)    JL Consulting, LLC may recommend but not have the authority to engage other consultants and contractors, including counsel without approval by the Board.

**1.2**    **Relationship of the Parties.**  It is understood and agreed that each party is at all times acting as an independent contractor and that neither has any express or implied authority to assume or create any obligation or responsibility on behalf of or in the name of the other party. Nothing in this Agreement shall be construed to establish a relationship of agents, partners, joint venturers or employer/employee between the parties.  JL Consulting, LLC has no right or obligation to direct WYCKOFF or CARITAS's employees in the performance of their professional medical judgments or duties.

**1.2.1**  No relationship of employer and employee is created by this Agreement, it being understood that JL Consulting, LLC shall act hereunder as an independent contractor; that JL Consulting, LLC, its officers and employees do not become employees of either WYCKOFF or CARITAS and shall not have any claim under this Agreement or otherwise against WYCKOFF or CARITAS for seniority, vacation time, vacation pay, sick leave, personal time off, overtime, health insurance, medical care, hospital care, retirement benefits, Social Security, Workers' Compensation, disability or unemployment insurance benefits, or other employee benefits of any kind.  JL Consulting, LLC shall be solely liable for and obligated to pay directly all applicable taxes, including, but not limited to, federal and state income taxes and Social Security taxes, and, in connection therewith, JL Consulting, LLC shall indemnify and hold WYCKOFF and CARITAS harmless from any and all liability which either may incur because of JL Consulting, LLC's failure to pay such taxes.

**1.3**    **Representations and Warranties.**  Each party hereto represents the following to be true:

**1.3.1**  This Agreement has been duly authorized, executed, and delivered by such party and represents the legal, valid, and binding agreement of such party and is enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency or other laws of general applicability affecting creditors'

4471/20937-001 Current/12178443v5

CONFIDENTIAL

BQHC 12619

rights and by general principles of equity that may limit the specific performance of particular provisions.

1.3.2   The execution, delivery, and performance of this Agreement by such party, and consummation by it of the transactions contemplated hereby do not: (a) require any consent, waiver, approval, license, or authorization of any person or public authority which has not been obtained and is not presently in effect; (b) violate any provision of law applicable to it; (c) conflict with or result in a default under any agreement or instrument; (d) create any lien upon any of the property or assets of such party pursuant to any agreement or instrument; or (e) violate any judicial or administrative decree, regulation, or any other restriction of any kind or character to which it is a party or by which it or any of its assets may be bound.

## Article II
## JL CONSULTING, LLC EMPLOYEES

2.1   **Employees.**   JL Consulting, LLC shall provide BQHC with the on-site services of individuals to serve in the following positions:

Chief Restructuring Officer ("**CRO**") - 25 hours per week, beginning October 20, 2008. The CRO will be John Lavan, who will assume oversight responsibilities on October 1, 2008, and be regularly on-site beginning October 20, 2008.

A Senior Manager, Maria Arciero, who will assist the CRO in crafting and implementing "Corrective Action Plans." Maria will be assigned to these tasks 25 – 30 hours per week.

A Managed Care Consultant, Corinne Lavan who will be assigned 25 hours per week to assist in renegotiating 30 to 40 payer contracts for the Hospitals.

Under no circumstances will any of the JL Consulting, LLC employees be replaced by other individuals without the express written consent of the BQHC, which consent may be withheld in its sole discretion.   Any JL Consulting, LLC employee with respect to whose performance the Board is not satisfied, shall cease providing services hereunder upon the request of the Board.

2.2   **Duties of the JL Consulting Employees.**

2.2.1   **CRO.**   The CRO, under the guidance and direction of each Board, shall be responsible for the design and implementation of restructuring initiatives that are directed toward achieving the following "organizational objectives": improving the management, financial stability, and clinical performance of WYCKOFF and CARITAS, and taking steps to provide, in the most effective manner possible, high quality health care services in the communities they serve. The CRO shall function with the highest possible levels of integrity and ethical standards, in furtherance of the core mission and goals of the Hospitals.   Subject to **Section 1.1** above, the CRO is hereby vested with authority by the Boards of BQHC, WYCKOFF, and CARITAS to allow him to formulate and implement actions that will achieve these organizational objectives.

4471/20937-001 Current/12178443v5

CONFIDENTIAL

BQHC 12620

This authority shall be vested by the Board directly to the CRO so as to avoid management interference. Without limiting the scope of the foregoing, at a minimum, the CRO is authorized, with respect to WYCKOFF and CARITAS, to and shall:

(a)   Direct and hold accountable all senior management in day to day and long range activities, including everything deemed necessary to achieve the organizational objectives described above;

(b)   Review the performance of management (including the executive management team) and recommend to the Boards any changes deemed necessary;

(c)   Develop and deliver to the Boards periodic updates on key restructuring initiatives and their impact on achieving the organizational objectives described above, to the extent deemed advisable. Any periodic updates shall be presented to the Boards in executive summary format at a time mutually agreed on by the parties, as well as to designated representatives of the State of New York;

(d)   Evaluate governance issues and the relationship of WYCKOFF and CARITAS with key stakeholders, and develop proposed changes to Board membership, governance procedures, structure, and protocols necessary for implementation of the overall restructuring plan (subject to Board approval, to be binding upon such approval);

(e)   Implement revisions to the performance expectations of senior management, including but not limited to overhauling lines of reporting, revision of internal control , fiscal management and auditing procedures where necessary, and other actions as deemed appropriate by the CRO (subject to Board approval as needed);

(f)   Develop and implement responsible systems of checks and balances between and among management staff and the Board, so that authority is properly placed and equally distributed;

(g)   Oversee the development of new/updated clinical delivery models and annual budgeting processes in furtherance of revised governance objectives, continuous quality improvement, and improved employee morale;

(h)   Evaluate, report and make recommendations to the Board concerning all viable options to achieve the organizational

4471/20937-001 Current/12178443v5

CONFIDENTIAL

BQHC 12621

objectives described above, including consideration of sale, closure, joint venture, or seeking of creditor protection for the hospitals. The Board is committed to working with a partner and will make that choice independent of the CRO's involvement;

(i)     Report orally to designated representatives of the State of New York on a monthly basis on the activities and progress of JL Consulting, LLC under this Agreement, having access to such designated representatives and such designated representatives having access to the CRO on an as-needed basis;

(j)     Towards the end of the Term, the CRO shall develop an exit strategy that assures continuous operations that are consistent with the highest standards and protocols of the restructured organization, and shall make final recommendations for the ongoing management and configuration of the Hospitals, including additional changes to management, board composition, and structure.

**2.2.2    Senior Manager.**    Maria Arciero will work directly for the CRO and provide analytical support for restructuring plans, including:

a)     Providing revenue analytical support on monthly closing activities;

(b)     Report assembly to provide analytical information in order to support Accounts Receivable valuation;

(c)     Develop program P&L's in order to support restructuring activities; and

(d)     Participating in Special Projects as directed by the CRO;

**2.2.3    Project Consultant.**    Corinne Lavan will assist the Hospitals in renegotiating managed care contracts, essentially supporting an activity recently begun by FTI CAMBIO, through a contract employee, who will be continuing on the transition team. This will leverage the ability to have more payer negotiations proceeding simultaneously as the Hospitals navigate the contracting process.

**2.2.4    Attendance at Board Meetings.**    The CRO shall be regarded as a temporary member of WYCKOFF and CARITAS' senior management team. The CRO shall attend Board, Finance and other committee meetings.

4471/20937-001 Current/12178443v5

CONFIDENTIAL                                                                BQHC 12622

**2.3** <u>Limitation of Duties of JL Consulting, LLC Employees.</u>  In addition to the limitations set forth in **Section 1.1**, JL Consulting, LLC employees shall not have the authority, without Board approval, to:

**2.3.1** Enter into or terminate contracts with physicians on behalf of WYCKOFF and CARITAS, but the CRO shall have the authority on behalf of the hospitals to negotiate and administer such contracts.

**2.3.2** Enter into or terminate contracts with outside consultants on behalf of WYCKOFF and CARITAS, but the JL Consulting, LLC Employees shall have the authority on behalf of the hospitals to negotiate and administer such contracts, including third party payer contracts.

**2.3.3** Purchase capital assets on behalf of WYCKOFF and CARITAS.

**2.3.4** Enter into any leases on behalf of WYCKOFF and CARITAS.

**2.3.5** Negotiate or enter into collective bargaining agreements covering or purporting to cover employees of WYCKOFF and CARITAS.

**2.3.6** Manage any of the clinical operations of WYCKOFF and CARITAS.

**2.3.7** Prepare or supervise the preparation of Medicare and Medicaid cost reports and sign any such cost reports.

**2.3.8** Contract with third party payors.

**2.4** <u>Covenant Not to Hire.</u>  The parties agree that neither party will, directly or indirectly, through an affiliate or separate employee leasing or staffing company or otherwise, employ or solicit for employment any employee of the other party providing services related to this engagement until one (1) year following the termination or expiration of this Agreement unless (i) such employee or consultant was an employee of the other party immediately prior to their becoming a JL Consulting, LLC, or WYCKOFF or CARITAS employee or consultant; or (ii) each party gives its written consent thereto.  The parties recognize and agree that monetary damages are not an adequate remedy for a breach by the other party of this covenant not to hire. The parties agree that irreparable damage will result to a party and its business from a breach of this covenant, and that, in the event of a breach or a threatened breach of this covenant, in addition to monetary damages, the non-breaching party shall be entitled to an injunction enjoining the other party from violating this covenant.

4471/20937-001 Current/12178443v5

CONFIDENTIAL

BQHC 12623

## Article III
## IMPLEMENTATION SUPPORT SERVICES

**3.1** <u>**General Responsibilities and Services.**</u>  JL Consulting, LLC shall perform those services set forth in **Section 2.2**, subject to the supervision and direction of each Board, the policies and directives dictated by each Board, the financial resources available to WYCKOFF and CARITAS, the competitive marketplace in which the hospitals are located, and Medicare reimbursement and other laws.  JL Consulting, LLC shall abide by all policies and procedures reasonably established by WYCKOFF and CARITAS. JL Consulting, LLC may rely on the recommendations of the medical staff of the hospitals (and their respective designated committees and department chairmen) (collectively, the "**Medical Staff**") relative to the quality of professional services provided by individuals with clinical privileges, and on the Board and the Medical Staff, or any jointly appointed or Board appointed committee or representative, as to the adequacy and proper state of repair of all medical equipment and the professional competency, training, and requisite supervision of nurses, medical technicians, and other allied health professionals and Medical Staff.

**3.2** <u>**Additional Services.**</u>  If additional assistance is requested by WYCKOFF and CARITAS in areas outside of the scope identified in this Agreement, it will be necessary to amend the scope of services and terms of this Agreement with terms and conditions agreeable to all parties.  JL Consulting, LLC may identify areas that would benefit from assessment and/or concurrent implementation.  If JL Consulting, LLC identifies such areas, it will bring its recommendations to the applicable Board for consideration and action.  The parties acknowledge that it is likely that the JL Consulting, LLC Employees will require specialists in areas such as supply chain, productivity, clinical operations, and other areas to support the development of detailed management action plans suitable for implementation.  JL Consulting, LLC shall recommend the use of any such specialists to the applicable Board for prior approval, which approval and the terms thereof shall be in the sole discretion of the Board.  The parties acknowledge that the JL Consulting, LLC Employees do not have the expertise and experience themselves to develop specialized management action plans in these areas, as these areas are beyond the scope of expertise and experience reasonably expected in the industry of persons holding the positions held by the JL Consulting, LLC Employees.  If the Board approves the retention of any specialists, such specialists will, upon the mutual agreement of the parties, either be retained directly by BQHC, WYCKOFF or CARITAS, or retained by JL Consulting, LLC.  If any specialists are retained by JL Consulting, LLC as non-employee subcontractors, the cost charged by those specialist sub-contractors, without any mark-up, will be paid by BQHC (and allocated to WYCKOFF and CARITAS pursuant to Section 5.1.3 hereof).

**3.3** <u>**Limitations on JL Consulting, LLC's Duties.**</u>  JL Consulting, LLC's duties are limited to those expressly set forth in this Agreement.  Absent a specific written agreement to the contrary, JL Consulting, LLC's services shall not include such items as the functions of a certified public accounting firm; legal services; audit services; expert witness services; cost report preparation services; data processing or information technology services; architectural services; engineering services; MSO development or management services; facility planning

4471/20937-001 Current/12178443v5

CONFIDENTIAL

BQHC 12624

services; feasibility studies or certificate of need applications related to major capital projects; development or management of a home health agency, an emergency medical or ambulance service, a nursing home or a rehabilitation unit; and similar services.

**3.4**   **Standard of Performance.**   JL Consulting, LLC's shall provide the services hereunder in compliance with all applicable laws, rules and regulations.   In addition, JL Consulting, LLC shall (a) provide the services hereunder with a reasonable degree of responsiveness, organization, and quality, (b) respond in a timely fashion to all communications and reasonable requests presented by BQHC, WYCKOFF, or CARITAS to JL Consulting, LLC in connection with this Agreement, and reasonably cooperate with BQHC, WYCKOFF, and CARITAS in facilitating the performance by BQHC, WYCKOFF and CARITAS of their duties and obligations hereunder, and (c) respond in a timely fashion to all communication and reasonable requests presented by designated representatives of the State of New York.

**Article IV**
**BQHC, WYCKOFF and CARITAS RESPONSIBILITIES**

**4.1**   **JL Consulting, LLC's Reliance on BQHC, WYCKOFF and CARITAS'S Policies.**   Each Board shall communicate all policies and directives to JL Consulting, LLC, and JL Consulting, LLC shall be entitled to rely on and assume the validity of communications from the Board and its designees.   JL Consulting, LLC shall not be held responsible for any such policies and directives of which it has not been advised.   WYCKOFF or CARITAS, as the case may be, shall provide JL Consulting, LLC with true and correct copies of any compliance programs, privacy policies and procedures, Corporate Integrity Agreements or similar programs, policies, or agreements binding upon the hospitals.   JL Consulting, LLC agrees to comply with the requirements of such programs, policies, and agreements as are provided to JL Consulting, LLC in writing (whether now implemented or adopted later), in carrying out its duties under this Agreement.   JL Consulting, LLC will bring items of potential noncompliance to the attention of WYCKOFF or CARITAS, as the case may be when discovered by JL Consulting, LLC and, at the direction of the applicable hospital, take corrective action prescribed by such hospital once any item of noncompliance is identified; provided that all costs (including, without limitation, legal and consulting fees and expenses incurred in undertaking any corrective action) required to take approved corrective actions shall be the responsibility of such hospital.

**4.2**   **Medical Staff; Medical and Professional Matters.**   The Medical Staff shall be organized and function according to its bylaws and the laws and regulations of the State of New York, as they may be amended from time to time.   All matters requiring professional medical judgments shall remain the responsibility of the applicable Board and the Medical Staff and allied health professionals.   JL Consulting, LLC shall have no responsibility whatsoever for such medical judgments.

**4.3**   **Records.**   WYCKOFF and CARITAS will make available to JL Consulting, LLC such business records as JL Consulting, LLC may reasonably request, including all relevant inspection and accreditation reports, patient or medical staff complaints or incident reports,

8 of 21

4471/20937-001 Current/12178443v5

CONFIDENTIAL

BQHC 12625

insurance and governmental inspection reports, and all files relative to current, pending, or threatened litigation, as necessary for the rendition by JL Consulting, LLC of its services hereunder, subject however, to the requirements of applicable laws, rules, regulations and accreditation standards.

4.4 **WYCKOFF and CARITAS Responsibility for Costs.** WYCKOFF and CARITAS shall be responsible for all costs and expenses incurred to operate the hospitals. Nothing contained herein shall obligate JL Consulting, LLC to make any payments from its own funds or resources, incur any costs, or assume any liabilities, either primarily or as guarantor, on behalf of the hospitals, or to advance any monies to the hospitals.

4.5 **Licenses and Permits.** WYCKOFF and CARITAS shall be responsible for obtaining and maintaining all licenses, permits, and approvals required for the operation of their respective hospitals and shall at all times during the Term operate in compliance with all applicable material federal, state, and local laws and regulations. JL Consulting, LLC shall take such actions that are reasonable and necessary to assist the hospitals in obtaining and maintaining all such licenses, permits, and approvals and shall provide all services hereunder in compliance with all applicable material federal, state, and local laws and regulations. WYCKOFF and CARITAS warrants that, as of the date hereof, it has received and, during the Term, shall use its best efforts to retain, accreditation for the hospitals by the Joint Commission on the Accreditation of Healthcare Organizations or other similar accrediting bodies.

**Article V**
**COMPENSATION FOR SERVICES**

5.1 **The Fee.** JL Consulting, LLC shall bill hourly for its services hereunder at the following rates:

|  | Hourly | Estimated Hours per Week | Estimated Weekly Fee |
|---|---|---|---|
| CRO (John Lavan) | $585 | 25 | $14,625 |
| Senior Manager (Maria Arciero) | $260 | 25 | $ 6,500 |
| Project Consultant (Corinne Lavan) | $130 | 25 | $ 3,250 |
| **Estimated Weekly Costs** |  |  | **$22,875** |

The hourly charges billed to BQHC are referred to herein as the "**Fee**." BQHC shall pay the Fee in the manner set forth in **Section 5.3.1** below.

5.2 **Reimbursement of Expenses.** In addition to the payment of the Fee, BQHC will reimburse JL Consulting, LLC reasonable costs for all local travel and, to the extent approved by the Board, other out-of-pocket expenses, incurred by JL Consulting, LLC personnel in the course of providing services to WYCKOFF and CARITAS. JL Consulting, LLC will furnish reasonable documentation supporting all reimbursement requests and use all reasonable efforts to control expenses.

4471/20937-001 Current/12178443v5

CONFIDENTIAL

BQHC 12626

**5.3**   **Manner of Payment.**

     **5.3.1**   **The Fee.**   The Fee is payable by BQHC weekly in advance.  On the first work day of each week during the Term, BQHC shall pay to JL Consulting, LLC an amount based on JL Consulting, LLC's estimate of the number of hours to be worked by each of the JL Consulting, LLC employees that week.  The amount so paid will be reconciled with the actual amount of hours worked on the first work day of the following week.  Estimated and actual amounts for the last week when services are provided hereunder shall be reconciled within one week after such services have been provided.

     **5.3.2**   **Reimbursable Expenses.**   JL Consulting, LLC shall invoice BQHC weekly, in arrears, for costs that are reimbursable pursuant to **Section 5.2**.  Such invoices shall be paid by BQHC within one business day after its receipt thereof.

    **5.4**   **Allocation.**   As among BQHC, WYCKOFF and CARITAS, all amounts payable by BQHC to JL Consulting, LLC will be allocated equally between WYCKOFF and CARITAS. Notwithstanding the foregoing, BQHC, WYCKOFF and CARITAS shall be jointly and severally liable for all payments due to JL Consulting, LLC hereunder.

**Article VI**
**CONFIDENTIALITY**

    **6.1**   **Confidential Information of BQHC, WYCKOFF and CARITAS.**   JL Consulting, LLC acknowledges and agrees that during the term hereof it will have access to Confidential Information (as defined below) of BQHC, WYCKOFF and CARITAS relating to the operation of hospital programs and JL Consulting, LLC shall not, nor shall its employees and agents, except as may be required by any lawful subpoena, court order or legal process, at any time without BQHC, WYCKOFF, or CARITAS, as the case may be, prior written consent:  (i) disclose any such Confidential Information to any third party, or (ii) reproduce or utilize any such Confidential Information in furtherance of any other business venture.  If JL Consulting, LLC is required by lawful subpoena, court order or legal process, or, in the opinion of legal counsel for BQHC, WYCKOFF, or CARITAS, as the case may be, JL Consulting, LLC is otherwise required by law, to disclose any Confidential Information of BQHC, WYCKOFF and CARITAS, then JL Consulting, LLC may disclose such Confidential Information; *provided, however*, that it uses best efforts to provide sufficient notice thereof to the hospitals to enable them to seek a protective order or other appropriate legal or equitable remedy to prevent such disclosure, and in such event BQHC, WYCKOFF or CARITAS, as the case may be, shall be authorized to represent JL Consulting, LLC, utilizing counsel selected by BQHC, WYCKOFF or CARITAS, in connection with any such application.  Notwithstanding anything to the contrary contained herein, all information received by JL Consulting, LLC from the BQHC, WYCKOFF, or CARITAS's attorneys shall be considered privileged and confidential.  However, nothing contained in this paragraph 6.1 shall prevent JL Consulting, LLC from sharing such information with designated representatives of the State of New York.

10 of 21

CONFIDENTIAL

BQHC 12627

**6.2** **Confidential Information of JL Consulting, LLC.** BQHC, WYCKOFF and CARITAS hereby acknowledge that during the term hereof they will have access to Confidential Information of JL Consulting, LLC. BQHC, WYCKOFF and CARITAS shall not, nor shall its employees or agents, except pursuant to this Agreement or as may be required by any lawful subpoena, court order or other legal process, at any time without JL Consulting, LLC's prior written consent: (i) disclose any such Confidential Information to any third party, or (ii) reproduce or utilize any such Confidential Information in furtherance of any other business venture. If BQHC, WYCKOFF or CARITAS is required by lawful subpoena, court order or legal process, or, in the opinion of their legal counsel, they are otherwise required by law, to disclose any Confidential Information of JL Consulting, LLC, then they may disclose such Confidential Information; *provided, however*, that it uses best efforts to provide sufficient notice thereof to JL Consulting, LLC to enable JL Consulting, LLC to seek a protective order or other appropriate legal or equitable remedy to prevent such disclosure, and in such event JL Consulting, LLC shall be authorized to represent BQHC, WYCKOFF, or CARITAS, utilizing counsel selected by JL Consulting, LLC, in connection with any such application.

**6.3** **Definition of Confidential Information.** For purposes of this **Article VI**, the term "**Confidential Information**" means the non-public information of a party or its affiliates that should be reasonably understood by the receiving party, because of legends or other markings, the circumstances of disclosure, or the nature of the information itself, to be proprietary or confidential to the first party or its affiliates, and includes, without limitation, information relating to such party's (or its affiliates') business (including, without limitation, patient specific or patient identifiable information, proposals, business plans, financial information or personnel information), properties, methods of operation, software (including, without limitation, source code, specifications, data, works in process, alpha and beta versions, design documents and documentation), trade secrets, inventions, discoveries, know-how and other intellectual property. "**Confidential Information**" also includes the types of information described above that were disclosed by a party to the other party prior to the date hereof, as well as such information currently provided and to be provided during the term of this Agreement, whether disclosed in written or other tangible form (including on magnetic or optical media) or by electronic, oral, visual or other means.

**6.4** **Non-Applicability of Confidentiality.** Notwithstanding the foregoing, the restrictions of this Agreement on the use and disclosure of Confidential Information shall not apply to information that the party receiving such information can prove: (a) was publicly known at the time of communication thereof to the receiving party; (b) becomes publicly known through no fault of the receiving party subsequent to the time of communication thereof to such receiving party; (c) was rightfully obtained by the receiving party from third parties authorized to make such disclosure without restriction; or (d) is identified by the party from whom such information is received as no longer proprietary or confidential.

**6.5** **Protected Health Information.** Prior to the commencement of the Term, JL Consulting, LLC shall enter into a Business Associate Agreement with each of CARITAS and WYCKOFF in a form reasonably acceptable to each of them.

4471/20937-001 Current/12178443v5

CONFIDENTIAL

BQHC 12628

6.6     **Injunctive Relief.**     The parties agree that violations of this **Article VI** would result in irreparable harm and that, in addition to any other rights and remedies provided by law, a party shall be entitled to injunctive relief to enforce the other party's obligations under this **Article VI.**

6.7     **Survival.**  The provisions of this **Article VI** will survive the termination of this Agreement.

## Article VII
## LIMITATION OF LIABILITY; INSURANCE

7.1     **Indemnification by BQHC, WYCKOFF, and CARITAS.**    Subject to the provisions of this **Article VII**, BQHC, WYCKOFF and CARITAS shall indemnify, defend, save and hold harmless JL Consulting, LLC, its members, directors, officers, employees, and agents (**"JL Consulting, LLC Indemnified Parties"**) from and against any and all judgments, losses, claims, damages, liabilities, costs, and expenses (including reasonable attorneys' fees and expenses paid or incurred by a JL Consulting, LLC Indemnified Party), joint or several, which may be asserted by a third party against any JL Consulting, LLC Indemnified Party arising out of the activities or operations of WYCKOFF or CARITAS, as the case may be, or from past or future actions or omissions by any JL Consulting, LLC Indemnified Party in connection with the exercise of, or performance by a JL Consulting, LLC Indemnified Party, of the authority granted or obligations assumed under this Agreement (**"JL Consulting, LLC Claim"**).  It is the intent of the parties that this indemnification shall include, without limitation, JL Consulting, LLC Claims arising directly or indirectly out of (i) any pending or threatened medical malpractice or other tort claims asserted against any JL Consulting, LLC Indemnified Party; (ii) any action against any JL Consulting, LLC Indemnified Party brought by any of WYCKOFF or CARITAS's current or former employees or members; (iii) any act or omission by any WYCKOFF or CARITAS employee, medical staff member, or other personnel; (iv) any pending or threatened investigation by any state, federal, or local governmental agency; and (v) any violation of any requirement applicable to WYCKOFF or CARITAS under any federal, state, or local law or regulation.  It is the intent of the parties that this indemnification shall not include JL Consulting, LLC Claims arising directly or indirectly out of the negligence or willful misconduct of any JL Consulting, LLC Indemnified Party.

7.2     **Indemnification by JL Consulting, LLC.**  Subject to the provisions of this **Article VII**, JL Consulting, LLC shall indemnify, defend, save and hold harmless BQHC, WYCKOFF and CARITAS and its members, directors, officers, trustees, employees, and agents (collectively, **"BQHC Indemnified Parties"**) from and against all judgments, losses, claims, damages, liabilities, costs, and expenses (including reasonable attorneys' fees and expenses paid or incurred by the BQHC Indemnified Party), joint or several, which may be asserted against any BQHC Indemnified Party (**"BQHC Claim"**), as a result of (i) any action brought against any BQHC Indemnified Party by a JL Consulting, LLC employee relating to any acts performed by such  employee within the scope of his or her employment by JL Consulting, LLC; or (ii) any action brought by a third party against any BQHC Indemnified Party arising out of the

12 of 21

4471/20937-001 Current/12178443v5

CONFIDENTIAL

BQHC 12629

negligence or willful misconduct of JL Consulting, LLC.  It is the intent of the parties that this indemnification shall not include BQHC Claims arising directly or indirectly out of the negligence or willful misconduct of any BQHC Indemnified Party.

**7.3** **Conditions on Indemnification.**   The obligations of an indemnifying party ("**Indemnitor**"), as set forth in **Sections 7.1** and **7.2** above, are conditioned upon (i) the indemnified party ("**Indemnitee**") promptly notifying the Indemnitor of any claim, demand, or action, or any incident of which the Indemnitee has actual or constructive knowledge, which may reasonably result in a claim, demand, or action, and for which the Indemnitee will look to Indemnitor for indemnification under **Section 7.1** or **7.2** above (provided that the obligation of Indemnitor to indemnify Indemnitee shall not be affected if a delay in the delivery of such notice does not materially compromise or prejudice any right of Indemnitor); (ii) Indemnitee, its directors, officers, employees, and agents, cooperating fully with Indemnitor in Indemnitor's investigation and review of any such claim, demand, action, or incident; and, (iii) Indemnitee not entering into any admissions, agreements, or settlements which may affect the rights of Indemnitee or Indemnitor without the prior written consent and approval of Indemnitor.

**7.4** **Defense Costs.**   The Indemnitor shall have the obligation to assume the defense of Indemnitee, with counsel reasonably satisfactory to Indemnitee and its insurer, if applicable, in any claim, action, or proceeding that is subject to indemnification hereunder.  The Indemnitee shall have the right to employ separate counsel reasonably acceptable to Indemnitor in any such action and to participate in the defense thereof, but the fees and expenses of such separate counsel shall be at the expense of Indemnitee.  Provided that Indemnitor has met its obligations under this Section 7.4, the Indemnitor shall not be liable for any settlement of any such action effected by the Indemnitee without the Indemnitor's consent, but, if settled with the consent of the Indemnitor or if there shall be a final judgment for the plaintiff in such action against the Indemnitee or the Indemnitor with or without the consent of the Indemnitor, the Indemnitor agrees to indemnify and hold harmless the Indemnitee to the extent provided herein.

**7.5** **Limitation of Liability.**   Neither party hereto, nor its employees, agents, and representatives, shall have any liability to the other party for any indirect, consequential, incidental, exemplary, special, or punitive damages or costs including, without limitation, lost profits or loss of goodwill, even if such other party has been advised, knew, or should have known of the possibility thereof.  The cumulative liability of JL Consulting, LLC, for any and all claims, regardless of the form of action, arising out of or relating in any way to this Agreement, shall not exceed the total of all Fees paid by BQHC, WYCKOFF and CARITAS to JL Consulting, LLC during the three (3) month period immediately preceding the date on which such claim arose; provided, however, that such limitation shall not apply in the event that JL Consulting, LLC or its representatives or agents is deemed to have engaged in willful or wanton or intentional misconduct in performing its obligations hereunder.  The cumulative liability of BQHC, WYCKOFF and CARITAS, its employees, agents, and representatives to JL Consulting, LLC for any and all claims, regardless of the form of action, arising out of or relating in any way to this Agreement, shall not exceed the total of all Fees then due and owing; *provided, however,* that such limitation shall not apply in the event that BQHC, WYCKOFF or CARITAS or its

4471/20937-001 Current/12178443v5

CONFIDENTIAL

BQHC 12630

representatives or agents is deemed to have engaged in willful or wanton or intentional misconduct in performing its obligations hereunder.

    7.6   **Insurance.** Each party (other than BQHC) has and shall maintain at its own cost and expense throughout the Term the following insurance coverages:

| | | |
|---|---|---|
| General Liability | - Each Occurrence | $1,000,000 |
| | - Damage to Rented Space | $ 300,000 |
| | - Medical Expense (Any One Person) | $ 10,000 |
| | - Personal Injury | $1,000,000 |
| | - General Aggregate | $2,000,000 |
| | - Products (Aggregate) | $2,000,000 |
| | | |
| Excess Umbrella | - Each Occurrence | $1,000,000 |
| | - Aggregate | $1,000,000 |
| | | |
| Worker's Comp and Disability | | Statutory |
| Professional Liability (the Hospitals may self-insure) | | $1,000,000 |

WYCKOFF and CARITAS agree that, the JL Consulting, LLC employees assigned to BQHC shall be named as an additional insured under WYCKOFF or CARITAS' directors' and officers' and employment practice policies. The rights of all such parties to invoke the protection of such policies shall be severable from and independent of their respective rights, and each party shall use reasonable commercial efforts to require that these policies shall not be terminable or non-renewable except upon ten (10) days prior written notice to the other party. If such coverage is written on a claims-made basis, following termination or expiration of this Agreement, WYCKOFF and CARITAS shall (i) continue such coverage to survive with respect to the JL Consulting, LLC employees as additional insureds for a period of five (5) years or (ii) shall provide an extended reporting endorsement (tail coverage) covering the JL Consulting, LLC employees for claims arising during the Term but not reported until after the termination or expiration of this Agreement. Should either party change insurance companies during the Term, it shall maintain coverage that includes claims incurred but not reported under the prior coverage (prior acts coverage). In addition, WYCKOFF and CARITAS shall use reasonable commercial efforts to cause the JL Consulting, LLC Employee to be named as an individual covered by their fidelity bond, unless doing so will increase the cost thereof. Promptly upon the execution of this Agreement and thirty (30) days following the end of each policy year, WYCKOFF and CARITAS shall give to JL Consulting, LLC a copy of the endorsements naming the JL Consulting employees as additional insureds. It is the intention of the parties that such insurance and bond shall protect both WYCKOFF and CARITAS, and the JL Consulting, LLC employees, and will be the primary insurance for both parties for any and all losses covered thereby, notwithstanding any insurance which may be maintained by JL Consulting, LLC covering any such loss.

4471/20937-001 Current/12178443v5

CONFIDENTIAL

BQHC 12631

## Article VIII
## TERM AND TERMINATION

**8.1**   **Term.** The term of this Agreement shall commence on the Effective Date and terminate on January 31, 2009 ("**Term**"). The Term may be extended upon the mutual written agreement of JL Consulting, LLC and BQHC.

**8.2**   **Termination for Cause.**

**8.2.1**   **Bankruptcy.**   Any party may terminate this Agreement immediately in the event another party: files a petition commencing a voluntary case under the U.S. Bankruptcy Code; makes a general assignment for the benefit of its creditors; becomes insolvent; becomes unable to pay its debts as they become due; files a petition or answer in any proceeding seeking for itself or consenting to, or acquiescing in, any insolvency, receivership, composition, readjustment, liquidation, dissolution, or similar relief under any present or future statute, law, or regulation, or files an answer or other pleading admitting or failing to deny or to contest the material allegations of the petition filed against it in any such proceeding; seeks or consents to, or acquiesces in, the appointment of any trustee, receiver of it or any material part of its property; or, has commenced against it any involuntary case under the U.S. Bankruptcy Code, or a proceeding under any receivership, composition, readjustment, liquidation, insolvency, dissolution, or like law or statute, which case or proceeding is not dismissed or vacated within sixty (60) days from commencement.

**8.2.2**   **Default.**   JL Consulting, LLC may terminate this Agreement at any time in the event of a breach by WYCKOFF or CARITAS of a material obligation hereunder and BQHC, WYCKOFF or CARITAS may terminate this Agreement at any time in the event of a breach by JL Consulting, LLC of a material obligation hereunder; *provided, however*, that if the breach is susceptible to being cured, the defaulting party has failed to cure such breach within ten (10) days (or within a reasonable time thereafter in the event the breach is of a type that cannot reasonably be cured within ten days, provided the defaulting party, within such ten days, has commenced taking steps to effectuate a cure, and thereafter takes reasonable steps to complete the cure and cure is effected within twenty days) of its receipt of the non-defaulting party's notice of such breach, describing the alleged breach with specificity.   Notwithstanding the foregoing, BQHC, WYCKOFF or CARITAS may terminate this Agreement immediately if JL Consulting, LLC does not, within seven (7) days, cure a failure by it to comply with a material pertinent provision of any federal, state or local statute, rule or regulation in carrying out its responsibilities hereunder; *provided, however*, that (a) if such failure poses a material risk of imminent harm to a patient at any of the Hospitals, the aforementioned cure period shall be reduced to twenty-four (24) hours, during which time the obligations of BQHC, WYCKOFF and CARITAS to JL Consulting, LLC under this Agreement shall be suspended, or (b) if such failure does not pose a material risk of imminent harm to a patient at any of the Hospitals and reasonably cannot be cured within seven days, the aforementioned cure period shall be extended for a reasonable period of time, provided JL Consulting, LLC, within such seven-day period, has

4471/20937-001 Current/12178443v5

CONFIDENTIAL

BQHC 12632

commenced taking steps to effectuate a cure, and thereafter takes reasonable steps to complete the cure.

**8.2.3  Nonpayment.**  If BQHC fails to make any payment to JL Consulting, LLC hereunder within ten (10) days following JL Consulting, LLC's notice to BQHC of nonpayment, JL Consulting, LLC, among other rights and remedies pursuant to this Agreement or otherwise available at law or in equity, shall have the right to terminate this Agreement immediately upon written notice of such termination to BQHC.

**8.2.4  Licenses.**  JL Consulting, LLC shall have the right to terminate this Agreement immediately in the event any material license or certification required by WYCKOFF or CARITAS to operate cannot be obtained, or is suspended, terminated, or revoked, or if WYCKOFF or CARITAS is excluded from participation in the Medicare or Medicaid programs.

**8.2.5  Representations.**  JL Consulting, LLC may terminate this Agreement upon ten (10) days' written notice in the event any representation made by WYCKOFF or CARITAS in this Agreement is found to be untrue in any material respect; and BQHC, WYCKOFF or CARITAS may terminate this Agreement upon ten (10) days' written notice in the event any representation made by JL Consulting, LLC in this Agreement is found to be untrue in any material respect.

**8.3  Termination Without Cause.**  BQHC, WYCKOFF or CARITAS may terminate this Agreement without cause on thirty (30) days prior written notice to JL Consulting, LLC.

**8.4  Rights Upon Termination.**  In the event of the termination of this Agreement, (a) JL Consulting, LLC shall immediately be paid all fees and payments earned and reimbursed for all expenses incurred (for which reimbursement is required hereunder) through the effective date of the termination, and (b) if this Agreement is terminated before the end of a week, BQHC shall immediately be reimbursed for any portion of the Fees paid for hours not worked.  The right to terminate this Agreement and to receive payment of any amounts owing as of the effective date of termination shall be in addition to any other remedy available at law or in equity.  The termination of this Agreement for any reason shall be without prejudice to any payments or obligations which may have accrued or become due hereunder prior to the date of termination or which may become due after such termination.

**Article IX**
**ALTERNATIVE DISPUTE RESOLUTION**

**9.1  Agreement to Arbitrate.**  Any controversy or claim arising out of or relating to this Agreement, or the breach, termination or validity thereof, shall be determined by arbitration in the City, State and County of New York, in accordance with the provisions of this **Article IX** and the arbitration rules of the American Health Lawyers Association Dispute Resolution Service ("**AHLADRS**") in effect on the date of this Agreement by a single arbitrator who (i) has the qualifications and experience set forth in **Section 9.2** below and (ii) is selected as provided in

4471/20937-001 Current/12178443v5

CONFIDENTIAL

BQHC 12633

**Section 9.3** below.  The arbitrator shall base the award on this Agreement and applicable law and judicial precedent and shall accompany the award with a written explanation of the reasons for the award.  The substantive laws of the State of New York applicable to contracts made and to be performed therein shall govern the arbitration.   Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

  **9.2**  **Qualifications of Arbitrator.**  Every person nominated or recommended to serve as an arbitrator hereunder shall be a lawyer with excellent academic and professional credentials who has had experience as an arbitrator and at least fifteen (15) years experience as a practicing attorney who actively practices in the substantive subject matter area involved in the dispute.

  **9.3**  **Selection of Arbitrator.**  The arbitrator shall be selected as provided in this Article IX and otherwise in accordance with the rules of the AHLADRS in effect on the date of this Agreement, except that each party shall be entitled to strike on a peremptory basis any or all names of potential arbitrators on the list submitted by the AHLADRS as not being qualified in accordance with the criteria set forth in Section 9.2 above.

  **9.4**  **Discovery; Arbitration Hearing.**  Rule 4.02 of the arbitration rules of the AHLADRS is hereby modified to provide that discovery shall be limited to (i) the production, by all parties to the arbitration, to the other parties thereto of all documents and electronic or computer records relevant or pertaining to any of the matters at issue; and (ii) allow each party to the arbitration to take five (5) depositions, none of which may last more than four (4) hours (exclusive of breaks and adjournments).  These limits may be relaxed only upon the express agreement of each of the parties to the arbitration and the arbitrator.   Rule 4.04 of the AHLADRS arbitration rules is hereby modified to provide that once the evidentiary hearing commences, it shall continue day to day until completed, with the exception of Saturdays, Sundays, and legal holidays.  Otherwise, the evidentiary hearing can only be adjourned by agreement of all of the parties and of the arbitrator for a period of time agreed upon by all of them.

### Article X
### MISCELLANEOUS

  **10.1** **Duty to Cooperate.**  Each party agrees to cooperate with the other fully in formulating and implementing the goals and objectives that are in WYCKOFF and CARITAS' best interest.  All parties also understand and agree that flexibility regarding scheduling and use of JL Consulting, LLC resources will especially be required at the initial part of the engagement and thereafter on an ongoing basis.

  **10.2** **Further Documents.**  The parties hereby covenant and agree that they and their successors and assigns will execute any and all instruments, releases, assignments, and consents which may reasonably be required of them in order to carry out the provisions of this Agreement.

4471/20937-001 Current/12178443v5

CONFIDENTIAL

BQHC 12634

**10.3** **Effect on Successors; Survival; Third Party Beneficiaries.** This Agreement shall be binding upon, enforceable by, and inure to the benefit of, the parties and their successors and assigns. Notwithstanding anything herein to the contrary, the provisions of **Articles VI, VII and IX**, as well as the provisions of this **Section 10.3**, shall survive the expiration or earlier termination of this Agreement. There shall be no third party beneficiaries to this Agreement.

**10.4** **Entire Agreement.** This Agreement contains the entire agreement among the parties relating to the subject matter of this Agreement and supersedes any prior or contemporaneous written or oral understanding or agreement, including, without limitation, understandings or agreements with respect to certain other services previously provided by JL Consulting, LLC.

**10.5** **Governing Law.** This Agreement shall be governed by and construed, interpreted, and enforced pursuant to the laws of the State of New York, excluding its conflict of laws provisions.

**10.6** **Notices.** All notices under this Agreement by any party to the other shall be in writing. All notices, demands, and requests shall be deemed given when mailed, postage prepaid, registered or certified mail, return receipt requested, or sent by prepaid express delivery service:

| | |
|---|---|
| **To JL Consulting, LLC:** | JL Consulting, LLC<br>149 Windsor Avenue<br>Rockville Centre, NY  11570 |
| **To BQHC, WYCKOFF, or CARITAS:** | Brooklyn-Queens Health Care, Inc.<br>374 Stockholm Street<br>Brooklyn, NY 11237-4099<br>Attention: Emil Rucigay |
| with a copy to: | Richard J. Zall, Esq.<br>Proskauer Rose LLP<br>1585 Broadway<br>New York, NY 10036 |

Any Party may change the address to which notice is to be it.

**10.7** **No Waiver.** The failure of any party to exercise any right or enforce any remedy contained in this Agreement shall not operate as or be construed to be a waiver or relinquishment of the exercise of such right or remedy, or of any other right or remedy herein contained.

4471/20937-001 Current/12178443v5

CONFIDENTIAL

BQHC 12635

**10.8   Enforceability; Severability.**  The invalidity or unenforceability of any term or provision of this Agreement shall not, unless otherwise specified, affect the validity or enforceability of any other term or provision, which shall remain in full force and effect.

**10.9   Confidentiality.**  Each party hereto covenants and agrees that it shall not disclose the terms of this Agreement or any agreement supplementing this Agreement to third parties, except to designated representatives of the State of New York, without the consent of the other party, except to the extent disclosure is required by court or administrative order or by applicable law or regulation, or required for the performance of its obligations hereunder or under related agreements, or as necessary or appropriate in dealing with the accountants, attorneys, and other representatives of the respective parties.  This provision shall survive any termination of this Agreement.

**10.10   Headings; Gender; Interpretation.**  The headings and other captions contained in this Agreement are for convenience of reference only and shall not be used in interpreting, construing or enforcing any of the provisions of this Agreement.  Whenever the context requires, the gender of all words used herein shall include the masculine, feminine and neuter, and the number of all words shall include the singular and plural.  This Agreement has been prepared through the efforts of all the parties hereto and shall not be construed against any party as the draftsman.

**10.11   Access to Books and Records.**

**10.11.1   Access to the Contractor's Books and Records.**  To the extent that the cost or value of the services provided by JL Consulting, LLC hereunder exceed or would exceed ten thousand dollars ($10,000.00) for a twelve (12) month period, until expiration of a period of four (4) years following the last date JL Consulting, LLC furnishes services pursuant to this Agreement, JL Consulting, LLC shall make available, upon written request by the Secretary of United States Department of Health and Human Services ("**HHS**"), the Comptroller General of the United States or any of their duly authorized representatives, all contracts, books, documents and other records of JL Consulting, LLC which are necessary to verify the nature and extent of the costs of JL Consulting, LLC's services hereunder.  JL Consulting, LLC shall notify BQHC within ten (10) days of receipt of such a request.

**10.11.2   Access to Subcontractor's Books and Records.**  If JL Consulting, LLC carries out any of its duties under this Agreement through a subcontract with a related organization involving a value or cost of ten thousand dollars ($10,000.00) or more over a twelve (12) month period, JL Consulting, LLC will cause the subcontract to contain a clause to the effect that, until expiration of four (4) years after the furnishing of any service pursuant to the subcontract, the related organization shall make available, upon written request by the Secretary of HHS, the Comptroller General of the United States or any of their duly authorized representatives, the subcontract and the books,

4471/20937-001 Current/12178443v5

CONFIDENTIAL                                                                                     BQHC 12636

documents and other records of the organization which are necessary to verify the nature and extent of the costs of the related organization's services.

        **10.11.3**     <u>**Purpose of Access Clauses**</u>. It is understood and agreed that this **Section 10.11** is designed to implement Section 1861(v)(1)(I) of the Social Security Act, as amended, and the regulations promulgated thereunder. If such statutory provision and regulations shall be deemed inapplicable hereto, then the access provisions of this **Section 10.11** shall be deemed inoperative and without force and effect.

        **10.12**  <u>**Counterpart Signature**</u>. This Agreement may be executed in one or more counterparts (facsimile transmission or otherwise), each of which shall be deemed an original agreement and all of which shall constitute but one agreement.

        **10.13**  <u>**Consents, Authorizations, etc.**</u> Any consents, authorizations, or approvals required to be obtained from BQHC, WYCKOFF or CARITAS under the terms of this Agreement, shall, unless otherwise provided herein, be in writing and signed by the Chairman of BQHC.

        **10.14**  <u>**Time of Essence**</u>. Time is of the essence in each and all the provisions of this Agreement.

        **10.15**  <u>**Absence of Sanctions**</u>. JL Consulting, LLC represents that neither JL Consulting, LLC nor any of its employees, owners, or agents have been sanctioned by or excluded from participation in any federal or state health care program, including Medicare and Medicaid. JL Consulting, LLC agrees that if it or any such individual associated with it should be sanctioned by or excluded from participation in any federal or state health care program, including Medicare and Medicaid, it shall immediately notify WYCKOFF or CARITAS, as the case may be, of such event.

{Signatures Follow}

4471/20937-001 Current/12178443v5

CONFIDENTIAL

BQHC 12637

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

**BROOKLYN-QUEENS HEALTH CARE, INC.**

_____
Emil Rucigay
Chairman


**CARITAS HEALTH CARE, INC.**

_____
Emil Rucigay
Chairman


**WYCKOFF HEIGHTS MEDICAL CENTER**

_____
Emil Rucigay
Chairman


**JL CONSULTING, LLC**

_____
John Lavan
President and CEO

4471/20937-001 Current/12178443v5

CONFIDENTIAL

BQHC 12638