# APPENDIX 51

OCT 31 2007 16:17 FR NURSING 718 558 1662 TO 912124312594 P.02/14

## TEMPORARY STAFFING AGREEMENT

### BROOKLYN-QUEENS HEALTH CARE, INC.
### CARITAS

ST. JOHN'S QUEENS HOSPITAL
MARY IMMACULATE HOSPITAL
MONSIGNOR FITZPATRICK SKILLED NURSING FACILITY
WYCOFF MEDICAL CENTER

AND

T.P.F. NURSING REGISTRY, INC.

This Staffing Agreement (hereinafter "AGREEMENT") is made this 8th day of August 2007 into by and between T.P.F. Nursing Registry, Inc. (hereinafter "AGENCY") with an address at 121 West 11th Street, Ground Floor, New York, NY 10011 and Brooklyn-Queens Health Care, Inc..Caritas with an address at 95-25 Queens Boulevard, Elmhurst, NY 11373 (hereinafter "FACILITY").

WHEREAS, AGENCY is in the business of recruiting qualified HEALTHCARE PROFESSIONALS, who provide clinical services and NON-HEALTHCARE PROFESSIONALS, who provide non-clinical services, for temporary employment on a per diem basis and/or 13 week assignment throughout the United States; and

WHEREAS, AGENCY represents that they have and can obtain such qualified HEALTHCARE PROFESSIONALS and NON-HEALTHCARE PROFESSIONALS desiring temporary employment; and

WHEREAS, FACILITY desires to retain the services of AGENCY to act on the FACILITY'S behalf in contracting with HEALTHCARE PROFESSIONALS and NON-HEALTHCARE PROFESSIONALS; and

WHEREAS, AGENCY desires to undertake the responsibility of arranging for HEALTHCARE PROFESSIONALS and NON-HEALTHCARE PROFESSIONALS to perform services ("Services") at the FACILITY as hereinafter set forth; and

WHEREAS, for the purpose of this AGREEMENT, HEALTHCARE PROFESSIONAL, NON-HEALTHCARE PROFESSIONAL, and Services are defined in Appendix "A", attached hereto and incorporated herein by reference. .

NOW, THEREFORE, in consideration of the mutual covenants contained herein, AGENCY and FACILITY do hereby agree as follows:

CONFIDENTIAL

1

A. **Responsibilities of AGENCY**

1. AGENCY agrees to recruit and present qualified HEALTHCARE PROFESSIONALS and NON-HEALTHCARE PROFESSIGNALS who, if a HEALTHCARE PROFESSIONAL, are duly licensed to fill specific positions on a temporary per diem basis and, or 13 week assignment as requested by FACILITY, or if a NON-HEALTHCARE PROFESSIONAL, are duly qualified to perform the Services as requested.

2. AGENCY will conduct background information checks on each HEALTHCARE PROFESSIONAL and NON-HEALTHCARE PROFESSIONAL and make available to FACILITY background information as requested. Background information shall include, but not be limited to, the following:

   i) Completed application that lists education, training, skills, specialties, assignment preferences and work history;

   ii) Criminal Background check for at least 7 years based on home address and social security number;

   iii) Two (2) recent Professional References;

   iv) Any other reasonable documentation requested by FACILITY including but not limited to a copy of the current New York State licensure, certification, CPR certification, BCLS. ACLS, BLS and a yearly review of infection control principles, patient safety and fire safety;

   v) Where applicable, completed fingerprint cards;

   vi) Verification that the HEALTHCARE PROFESSIONAL does not appear on the Department of Health and Human Services Office of Inspector General List of Excluded Providers or on the Medicaid excluded provider list;

   vii) Results of Urine Drug toxicology test for drugs of abuse within the last six months (FACILITY is a drug free workplace);

   viii) ALL other information in accordance with City, State, or Federal law or regulation;

   ix) Compliance with Occupational and Health Administration (OSHA) requirements regarding blood borne pathogens, a; set forth in federal law;

   x) Complete an annual physical with a statement of good health, issued within the last twelve months indicating that the HEALTHCARE OR NON-HEALTHCARE PROFESSIONAL is in good health and free from communicable disease, including test results of PPD, MMR, Varicella and Hepatitis B, which will remain valid through the term of the assignment, as

2

**CONFIDENTIAL**                                                          BQHC 56128

    required by 10 NYCRR Part 4U5.3(a)(10);

 xi) Completed 1-9 form with copies of supporting documentation as required by federal law;

The Following Requirement is for Perdiems and, or 13 week assignments Who Have Regular and Substantial Contact with Children Who are working in Mental Health Facilities:

 xii) Verification that a background check on the Professional has been performed, including a review of the Child Abuse Registry, as required by the New, York Social Services Law §424-a(1)(b)(i) and a representation that such individual has been cleared.

At all times, FACILITY reserves the right to verify any of the above required training and any AGENCY protocols or plans that are required by federal, state or local law.

**FOR NURSES ONLY:** In addition to the above requirements, AGENCY must require all nurses to comply with, and AGENCY agrees to verify compliance with, the requirements set forth on Appendix A1, attached hereto and herein incorporated by reference.

3. AGENCY shall provide to FACILITY any information not delineated in section 2, which is requested in advance on each HEALTHCARE PROFESSIONAL.

4. AGENCY shall recruit and present qualified NON-PROFESSIONALs who are duly licensed to fill specific positions on a temporary perdiem basis, or an 13 week assignment as requested by FACILITY.

5. AGENCY shall assign a representative to FACILITY to maintain ongoing communication throughout the terms of the AGREEMENT.

6. AGENCY represents and warrants that it is an equal opportunity employer and does not discriminate against any applicant or employee on the basis of race, color, religion, sex, sexual orientation, ages national origin or disability or any other classification protected by federal, state and local laws.

7. AGENCY shall comply will all applicable provisions of the Federal Immigration Reform and Control Act, the Federal Illegal Immigration Reform and Immigrant Responsibility Act of 1996, the Federal and State Civil Rights Act (Title VII of the Civil Rights Act of 1964 and Section 504 of the Rehabilitation Act of 1913) and Occupational Safety and Health Administration regulations and will hold FACILITY harmless from any liability deriving therefrom.

8. AGENCY shall have the direct responsibility for payment of wages and other compensation, reimbursement of expenses and compliance with Federal, State and Local tax withholding requirements, pertaining to Worker's Compensation, Social Security, and Unemployment and other insurance requirements and obligations imposed on the AGENCY

3

**CONFIDENTIAL**  BQHC 56129

Case 1:09-cv-01410-KAM-RLM Document 107-12 Filed 01/24/12 Page 5 of 11 PageID #: 3561

for personnel who are employees of the AGENCY, FACILITY shall have no responsibility for any of the incidents of employment. Healthcare Professional/Non-Professional shall b~ employees of agency.

9. FACILITY is not obligated to accept any HEALTHCARE PROFESSIONAL or NON-PROFESSIONAL it determines to be unqualified, If FACILITY rejects for any reason a HEALTHCARE PROFESSIONAL or a NON-PROFESSIONAL, AGENCY shall use its best efforts to submit a new candidate. After FACILITY, supplies written acceptance of the HEALTHCARE PROFESSIONAL or NON-PROFESSIONAL, AGENCY shall use its best efforts to place the HEALTHCARE PROFESSIONAL or NON-PROFESSIONAL, with FACILITY as per terms of this Agreement.

10. In the event that HEALTHCARE PROFESSIONAL or NON-PROFESSIONAL cancels an assignment for any reason, AGENCY shall use its best efforts to immediately locate a replacement HEALTHCARE PROFESSIONAL or NONPROFESSIONALS. HEALTHCARE PROFESSIONAL or NON-PROFESSIONAL must cancel a minimum of two (2) hours prior to the scheduled start time. If FACILITY cancels a request for Services two (2) hours or more before the commencement of the shift, no payment will be due to AGENCY. However, if facility cancels less than two hours to the commencement of shift than facility is required to pay travel time of two hours.

11. Upon FACILITY request, AGENCY will terminate HEALTHCARE PROFESSIONAL or NON-PROFESSIONAL assigned to FACILITY if FACILITY determines, in its sole discretion, That a HEALTHCARE PROFESSIONAL or NONPROFESSIONAL is incapable of performing the duties of the position, commits acts of professional negligence, is absent from the position without FACILITY'S permission during scheduled times, is insubordinate, engages in substance abuse, violates FACILITY'S policies and procedures, engages in unprofessional conduct or other breach or neglect of duty, or whose performance is otherwise unacceptable to FACILITY. FACILITY will provide to AGENCY written notice of such determination. FACILITY shall have no financial obligation for the services of auth HEALTHCARE PROFESSIONAL or NON-PROFESSIONAL, other than for the hours worked up to the date of termination. Notwithstanding the foregoing, AGENCY shall immediately terminate any HEALTHCARE PROFESSIONAL or NON-PROFESSIONAL upon verbal notice by FACILITY that such individual poses a danger or threat to FACILITY'S patients.

12. AGENCY shall submit invoices to FACILITY within five (5) calendar days of rendering Services.

14. AGENCY shall not increase rates set forth on Appendix C, nor add new job titles and rates not yet defined without prior written approval of Facility's Senior Vice President of Human Resources,

15. No Perdiem or 13 week assignment Healthcare Professional or Non-Healthcare Professional will be authorized to work in excess of 40 hours per work week.

16. Premium pay will be available to healthcare professionals assigned to work on the day of

4

**CONFIDENTIAL**  BQHC 56130

the following holidays: New Years Day, Christmas Day, Memorial Day, July 4rth, Labor Day, Thanksgiving Day, and Presidents Day.

B.   **Responsibilities of FACILITY**

1. The hourly rates to be charged by AGENCY and paid by FACILITY are attached hereto as **Appendix C**

2. FACILITY shall assign an authorized representative to verify all hours worked by HEALTHCARE PROFESSIONAL on a weekly basis. FACILITY will verify and sign each HEALTHCARE PROFESSIONALs and NON-PROFESSIONALs timesheet which must be Faxed to 212 431-2594 on Mondays through the Facility Vendor Management platform.

3. FACILITY shall notify AGENCY of its acceptance of HEALTHCARE PROFESSIONAL or NON-PROFESSIONAL.

4. FACILITY shall submit any and all objections to AGENCY invoices within a reasonable timeframe. FACILITY shall not be responsible for payment of any disputed invoice until both parties resolve FACILITY's objections.

5. FACILITY may conduct clinical record and utilization review audits to identify trends, potential or actual poor outcome and recommend corrective action. FACILITY may conduct audits of the HEALTHCARE PROFESSIONALs. FACILITY may track and review complaints and quality of care issues and make recommendations for needed interventions, FACILITY retains the right to audit timesheets and other records of AGENCY.

6. FACILITY remains ultimately responsible for the adequacy, coordination, supervision, control and evaluation of all services rendered pursuant to the Agreement.

7. FACILITY must provide orientation to HEALTHCARE PROFESSIONALs and NON-PROFESSIONALs at the time designated by Facility. Orientation shall include review of policies and procedures of the FACILITY. FACILITY is responsible for half the cost of the orientation only after HEALTHCARE PROFESSIONAL and NON-PROFESSIONAL completes forty hours of work at Caritas Facility. FACILITY will provide in-service education and continuing programs that are necessary to provide services pursuant to the Agreement.

8. FACILITY shall, without penalty or fee, retain the right to hire any HEALTHCARE PROESSIONAL or NON-PROFESSIONAL who has worked six months.

9. FACILITY shall submit payment on invoices within sixty days (60).

C.   **Responsibilities of HEALTHCARE PROFESSIONALS.**

5

**CONFIDENTIAL**                                            BQHC 56131

To the extent applicable, AGENCY shall require that each HEALTHCARE PROFESSIONAL be licensed to practice in the State of New York, meet all the qualifications for clinical privileges to practice at the FACILITY, and agree to perform all Professional Services in accordance with (I) accepted standards of practice in the community where the professional services are performed; (II) all policies, rules, regulations and bylaws of the FACILITY (except for those that are applicable to employees only); (III) all applicable provisions of law and other rules and regulations of any and all governmental authorities; (IV) ERDS and (V) all standards of the Joint Commission on Accreditation of Healthcare Organizations. AGENCY shall also require each HEALTHCARE PROFESSIONAL to agree to serve all patients/residents regardless of sex, race, sexual preference, age, creed, national origin, handicap or ability to pay or other protected classification. AGENCY is not engaged in the performance of Professional Services and has no ability to direct or control the manner or methods by which the HEALTHCARE PROFESSIONALS perform Professional Services.

### D. General Provisions

1. **Term and Termination.** Either Party may terminate this Agreement without cause effective at any time by giving the other Party written notice at least thirty (30) days prior to the effective date of termination. Either Party may terminate this Agreement immediately at any time by giving written notice of termination to the other Party if the other Party materially breaches this Agreement and fails to cure such breach within fourteen (14) days of the giving of written notice by the Party claiming breach specifying the nature of the breach in reasonable detail. Notwithstanding the foregoing, FACILITY may immediately terminate an HEALTHCARE PROFESSIONAL providing Professional Services pursuant to this Agreement for conduct or behavior that is detrimental to the operation of FACILITY and/or patient care which includes but is not limited to the instances set forth in Section A (II) herein. FACILITY shall have a financial obligation for hours worked upon termination of rendered services. This AGREEMENT will automatically renew on an annual basis unless otherwise terminated.

    a) In the event that either party shall have its accreditation, operating certificate or licensure limited, suspended or revoked, it shall immediately notify the other party of that fact in writing and the Agreement shall terminate immediately upon such event.

2. **Insurance and Indemnification**

    a) AGENCY at all times during this agreement, shall maintain professional liability, directors and officer's and workers' compensation coverage. The professional liability coverage shall afford protection to all AGENCY employees while working within their scope of duties as defined jointly by the AGENCY and the FACILITY. The minimum professional liability coverage required for each employee is $1,000,000 per occurrence and $3,000,000 in the aggregate. The AGENCY shall maintain directors and officer's liability coverage for limits not less than $3,000,000 per occurrence. The AGENCY shall maintain workers' compensation coverage for their employees in

6

BQHC 56132

**CONFIDENTIAL**

OCT 31 2007 16:19 FR NURSING 718 558 1662 TO 912124312594 P.08/14

accordance with New York State statutory requirements. All insurance coverage shall be underwritten by a New York State admitted carrier, and 30 days written notice shall be provided to the FACILITY prior to any material change in coverage or policy cancellation.

b) FACILITY shall not be liable for any act or omission of AGENCY or of its officers, employees or agents, and AGENCY shall indemnify and hold harmless FACILITY from any and all losses, damages, costs and expenses (including reasonable attorney's fees) that are directly or indirectly caused by or arise out of any omission, fault, negligence or other misconduct by AGENCY its officers, employees, agents, independent contractors or volunteers in connection with this Agreement.

AGENCY shall not be liable for any act or omission of FACILITY or of its officers, employees or agents, and FACILITY shall indemnify and hold harmless AGENCY from any and all losses, damages, costs and expenses (including reasonable attorney's fees) that are directly or indirectly caused by or arise out of any omission, fault, negligence or other misconduct by FACILITY its officers, employees, agents, independent contractors or volunteers in connection with this Agreement

3. **Independent Contractor**

All HEALTHCARE PROFESSIONALs and NON-PROFESSIONALs provided by AGENCY are employed by the AGENCY. The AGENCY is deemed an independent contractor of the FACILITY. Nothing contained in the Agreement shall be construed to create any relationship between the parties other than that of independent contracting entities. Neither of the parties, nor any of their respective representatives, shall be construed to be the agent, employer or representatives of the other party.

4. **Confidential Information.**

For purposes of this Agreement, the term "Confidential Information" shall include any information pertaining to the business of the FACILITY or AGENCY or any parent, subsidiary, or affiliate of the FACILITY or AGENCY that is not readily available through the public domain, including this Agreement and all exhibits, documents and information related to this Agreement. AGENCY and the FACILITY agree and acknowledge that Confidential Information is or may be disclosed to them and that it constitutes valuable business information developed by the FACILITY and/or AGENCY at great expenditure of time, effort and money. AGENCY and the FACILITY shall not, either during the term of this Agreement or thereafter, use Confidential Information for any purpose other than the performance of duties under this Agreement. AGENCY and the HEALTHCARE PROFESSIONALS further agree to keep strictly confidential and hold in trust, all Confidential Information.

Both parties agree not to disclose or reveal such information to any third party without the express prior written consent of the party to which the information relates, provided that they may release such information (I) to their legal and financial advisors if they agree to keep such information confidential, (II) to enforce the performance of the Agreement or to defend any

7

CONFIDENTIAL BQHC 56133

claim relating to the Agreement and (III) to the extent required by law.

5. **Confidentiality of Patient Information.**

AGENCY shall and will require HEALTHCARE PROFESSIONALs and NON-PROFESSIONALs to maintain the confidentiality of all patient and resident records and personally identifiable "health information" (as such term is defined by 45 C.F.R. 160.102) relating to any patients, residents or employees of the FACILITY, in accordance with all legal requirements of federal, state, and local law and regulations, including HIPAA, and shall refrain from disclosing any such information except as required or permitted by applicable law.

Both parties agree to execute, simultaneous to this AGREEMENT, a Business Associate Agreement, incorporated herein by reference and attached hereto as **Appendix D**, as required by the privacy regulations promulgated pursuant to HIPAA.

6. **Medicare Access to Books and Reports**

A)   As and if required by 42 U.S.C. Section 1395x(v)(1)(I) and any Regulations promulgated thereunder, each party shall, upon written request, make available, until the expiration of four (4) years from the termination of this Agreement, to the Secretary of Health and Human Services of the United States and to the Comptroller of the United States, or to any of their duly authorized representatives, this Agreement and any books, documents and records of such part that are necessary to certify the nature and extent of such Party's costs under this Agreement.

   B)   If either party carries out any of the duties under this agreement through a subcontract with a related organization having a value cost of $10,000 or more over a twelve month period, such party agrees that such subcontract shall contain a clause to the effect that until the expiration of four (4) years from the termination of such subcontract, the related organization shall make available to the parties upon the terms specified in the preceding subparagraph, the subcontract and any books, documents and records of such organization that are necessary to verify the nature and the extent of such organization's costs under the subcontract.

7. **Governing Law.**

This agreement shall be construed and enforced pursuant to the laws of the State of New York.

8. **Amendment**

No Modification of any of the terms and conditions of this AGREEMENT shall be effective unless it is in writing and signed by each of the parties.

9. **Waiver**

No waiver of any term, provision or condition of this Agreement, whether by conduct or otherwise, shall be deemed to be construed as a further and continuing waiver of any such term, provision or condition or any other term, provision or condition.

10. Notices

Notices or other communications required under this Agreement shall be in writing, personally delivered, and sent to the address listed herein, via United States certified mail, return receipt requested or sent via nationally recognized overnight carrier with delivery confirmation.

Notice shall be sent to:

T.P.F. Nursing Registry, Inc.
Att. Timothy P. Ferguson
121 West 11th Street, Ground Fl.
New York, New York 10011

Brooklyn Queens Caritas
Att. Renee Mauriello
95-25 Queens Boulevard
Elmhurst, New York 11373

11. Assignment.

Neither this Agreement nor any interest herein may be assigned or otherwise transferred by either party to third parties other than their respective affiliates or to a successor in interest, without the prior written consent of the other party (which shall not be unreasonably withheld). This Agreement shall be binding upon and inure to the benefit of the successors and permitted assigns of the parties hereto.

12. Severability.

If any term or provision of this Agreement shall be found by a court of competent jurisdiction to lie invalid, illegal or otherwise unenforceable, such finding shall not invalidate the whole Agreement. Such term or provision shall be deemed modified only to the extent necessary by adjudication to render such term or provision valid, legal and enforceable.

13. Enforceability.

If any provision of this Agreement or the application of such provision to any person or circumstance shall be found by a court of competent jurisdiction or administrative agency to be illegal or in conflict with applicable law, the same shall either be conformed to comply with applicable law or stricken if not so conformable, so as not to affect the validity or enforceability of the remainder of this Agreement, which shall be enforceable in accordance with its terms.

**CONFIDENTIAL**

BQHC 56135

9

OCT 31 2007 16:20 FR NURSING          718 558 1662 TO 912124312594         P.11/14

14. **Non-Exclusivity.**

Nothing in the Agreement shall prohibit either party from affiliating or contracting with any other entity for any purpose whatsoever.

15. **Directives of the United States Conference of Catholic Bishops.**

Nothing in this Agreement shall be construed as requiring either Party to provide any services that would be contrary to the Ethical and Religious Directives for Catholic Health Care Services issued by the United States Conference of Catholic Bishops.

16. **Entire Agreement**

The Agreement constitutes the entire agreement of the parties relating to the subject matter hereof and supersedes all prior agreements or understandings. The Agreement may only be amended in writing, signed by duly authorized representatives of both parties.

IN WITNESS WHEREOF, the Agreement has been duly executed by T.P.F. Nursing Registry, Inc. and Brooklyn-Queens Health Care, Inc. Caritas on the date set forth below.

T.P.F. Nursing Registry, Inc.
Signed _____

By: _____Timothy P Fish_____

Title ____President_____

Date ____10/25/07_____

Brooklyn-Queens Health Care, Inc.
Caritas
Signed ____Renee mauriello____

By ____Renee mauriello_____

Title ____V-P Nursing_____

Date ____10/25/07_____

**CONFIDENTIAL**

10

BQHC 56136