UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
ROSS UNIVERSITY SCHOOL OF
MEDICINE, LTD.,                                                      09 Civ. 1410 (KAM) (RLM)

Plaintiff,

– against –

BROOKLYN-QUEENS HEALTH CARE,
INC. and WYCKOFF HEIGHTS MEDICAL
CENTER,

Defendants.
--------------------------------------------------X

## PLAINTIFF ROSS UNIVERSITY'S
## MOTION TO STRIKE PORTIONS OF
## DEFENDANTS' 56.1 STATEMENT OF UNDISPUTED FACTS

**BAKER & HOSTETLER LLP**

George Tzanetopoulos
191 North Wacker Drive, Suite 3100
Chicago, Illinois, 60606
Tel: (312) 416-6200
Fax: (312) 416-6201
gtzanetopoulos@bakerlaw.com

Sammi Malek
45 Rockefeller Plaza, 11th Floor
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201
smalek@bakerlaw.com

*Counsel for Plaintiff Ross University School
of Medicine, Ltd.*

In support of their motion for summary judgment, defendants Brooklyn-Queens Health Care, Inc. ("BQHC") and Wyckoff Heights Medical Center ("Wyckoff") have submitted a Rule 56.1 Statement of Undisputed Facts that is rife with argument and supported by inadmissible material. For the following reasons, plaintiff Ross University School of Medicine, Ltd. ("Ross") respectfully requests that this Court strike the portions of defendants' Rule 56.1 Statement identified below.

## APPLICABLE LEGAL STANDARDS

"The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2nd Cir. 2001). "Each statement of material fact [in a Rule 56.1 Statement] must be followed by a 'citation to evidence which would be admissible, set forth as required by the Federal Rule of Civil Procedure 56(e).'" *Faulkner v. Arista Records LLC*, 797 F. Supp. 2d 299, 305 (S.D.N.Y. 2011) (*quoting* L.R. 56.1).

A Rule 56.1 Statement may be subject to a motion to strike if it contains improper legal argument rather than facts. *See LaPine v. Seinfeld*, No. 08-128, 2009 WL 2902584, *4 (S.D.N.Y. Sept. 10, 2009). "[A] motion to strike is [also] appropriate if documents submitted in support of a motion for summary judgment contain inadmissible hearsay or conclusory statements, are incomplete, or have not been properly authenticated." *In re Indesco Intern., Inc.*, 451 B.R. 274, 307 (Bankr. S.D.N.Y. 2011).

### A.    Argumentative and Conclusory Facts

It is well established that a Rule 56.1 Statement should not contain legal argument or conclusory statements. *See Amalgamated Lithographers of Am. v. Unz & Co. Inc.*, 670 F. Supp. 2d 217 (S.D.N.Y. 2009) (striking *sua sponte* Rule 56.1 statement where "[v]ery little of it is

2

statements of fact; for the most part, it is legal argument"); *LaPine v. Seinfeld*, No. 08-128, 2009 WL 2902584 at \*4 (striking portions of Rule 56.1 Statement "that constitute legal argument rather than facts"); *U.S. Info. Sys., Inc. v. Int'l Bhd. of Elec. Workers Local Union No. 3*, No. 00-4763, 2006 WL 2136249, \*3 (S.D.N.Y. Aug. 1, 2006) ("*Rule 56.1 statements are not argument. They should contain factual assertions with citation to the record.  They should not contain conclusions.*") (emphasis in original); *Rowe Entertainment, Inc. v. William Morris Agency, Inc.*, No. 98-8272, 2005 WL 22833, \*1 n.1 (S.D.N.Y. Jan. 5, 2005) (striking "portions of the Plaintiffs' Rule 56.1 Statements and supporting affidavits that constitute argument and conclusory statements not shown to be made on an affiant's personal knowledge").  Defendants' Rule 56.1 Statement repeatedly violates this principle.

First, the entire section titled "The New York Public Health Law" should be stricken as improper legal argument.  Each paragraph in this section merely quotes from or attempts to summarize New York law.  *See* Defs.' 56.1 Stmt. ¶¶3-11.  Indeed, the very "evidence" used to support these purported facts is nothing more than a copy of New York's Public Health Law attached as an exhibit to an affidavit submitted by Wyckoff's general counsel.  *See* Defs.' Ex. 3, Declaration of David Hoffman ¶13, Ex. 1.  Further, many paragraphs in this section simply argue the law as applied to the facts of this case; for example:

> 11.     Wyckoff's Board and corporate officers have abided by the requirements of Article 28 [of New York's Public Health Law], its implementing regulations, and New York's Public Health Law generally since those statutes and regulations went into effect.  In particular, Wyckoff's Board and corporate officers have strictly adhered to Article 28's requirement that only an entity licensed under Article 28 may operate a hospital located in New York State.

Defs.' L.R. 56.1 Stmt. ¶11.

Defendants make similar self-serving arguments in describing the corporate relationship between Wyckoff and BQHC.  It is clear that the following "facts" are all thinly-veiled legal argument in support of defendants' attempts to defeat Ross' veil piercing claim:

> 48.    After Caritas acquired Mary Immaculate and St. John's Queens, Wyckoff and Caritas operated their respective hospitals in accordance with applicable laws and regulations, including Article 28.

> 49.    Despite having certain overlapping Board members since January 2008, the Boards of Wyckoff, Caritas, and BQHC at all times acted independently of one another, with each Board making its own decisions as appropriate for its specific corporation.  Wyckoff and Caritas operated their respective hospitals cooperatively in terms of shared services and purchasing, which is common for health care systems in New York.

> 50.    Since BQHC's creation as a "passive parent," Wyckoff's Board of Trustees has not sought to make decisions for BQHC or to influence or control BQHC's decision making in any way.

> 51.    Since its creation as a "passive parent," BQHC's Board has not sought to make decisions for Wyckoff or to influence or control Wyckoff's operational decision making in any way, including with respect to clinical clerkship programs.

> 55.    Further, each of Wyckoff and Caritas kept detailed records of any financial obligations due to or from the other entity from January 2007 forward.

> 56.    Wyckoff and Caritas maintained separate payrolls to ensure that one entity was not assuming the financial obligations of the other.

> 62.    From January 2007 until February 2009, Caritas operated St. John's Queens and Mary Immaculate in accordance with its Article 28 license to do so.

Defs.' L.R. 56.1 Stmt. ¶¶48-51, 55-56, 62.

Further, paragraphs 48, 49, 50, and 51 are each based only on conclusory affidavits filed by a handful of BQHC and Wyckoff board members.  None the Board members have established (or could establish) the evidentiary foundation required to testify to the broad conclusions set forth above, such as "Wyckoff and Caritas operated their respective hospitals in accordance with applicable laws and regulations, including Article 28," ¶48, "the Boards of Wyckoff, Caritas, and

BQHC at all times acted independently of one another," ¶49, or that the respective boards of Wyckoff and BQHC—despite substantial overlap between the two—"[have] not sought to make decisions for [the other board] or to influence or control [the other's] operational decision making in any way," ¶¶50-51.  Therefore, these paragraphs should be stricken for the additional reason that they are not supported by admissible evidence.

Finally, many paragraphs simply incorporate improper argument into otherwise factual statements.  For example:

> 26.    Because it was created as a "nonclinical" entity, BQHC is not licensed to operate a hospital under Article 28 of New York's Public Health Law. *Indeed, BQHC's certificate of incorporation expressly states . . . .*

> 27.    *Accordingly*, BQHC has separate Bylaws, *which, unlike Wyckoff s Bylaws*, provide that BQHC's corporate purpose is to . . . .

> 28.    *Consistent with its role as a "nonclinical passive parent" of both Caritas and Wyckoff*, BQHC has no substantial assets, salaried employees, revenues, or bank accounts of its own.

> 57.    *Indeed*, Wyckoff terminated its Chief Financial Officer ("CFO") in early 2007, upon discovering that he had transferred funds from Caritas to Wyckoff without authorization.  The unauthorized transfers were *promptly* reported to DOH.

> 65.    Wyckoff's own *substantial investment in the rescue* of St. John's Queens and Mary immaculate was lost.

Defs.' L.R. 56.1 Stmt. ¶¶26-28, 57, 65 (emphasis added in each).

These types of legal arguments and conclusory statements are inappropriate in a Rule 56.1 Statement.  Therefore, Ross respectfully requests that this Court strike Paragraphs 3-11, 48-51, 55-57, 62, and 65 of defendants' Rule 56.1 Statement of Undisputed Facts.

**B.      Facts Supported by Inadmissible Material**

In addition, Paragraph 18 should be stricken because it cites to inadmissible hearsay.  In this paragraph, defendants cite a series of newspaper articles for the proposition that "Due to the

increasing trend of consolidation among hospitals throughout the country, many hospitals and hospital systems have undergone changes in their corporate structure when secular hospitals merged with, or acquired, Catholic hospitals." Defs.' L.R. 56.1 Stmt. ¶18. But these newspaper articles are inadmissible hearsay and may not be considered. *See Century Pacific, Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 217 (S.D.N.Y. 2007) ("Newspaper articles offered for the truth of the matter asserted are inadmissible hearsay."). Therefore, Ross respectfully requests that this Court strike Paragraph 18.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, plaintiff Ross University School of Medicine, Ltd. respectfully requests that this Court strike Paragraphs 3-11, 18, 48-51, 55-57, 62, and 65 of defendants Brooklyn-Queens Health Care, Inc.'s and Wyckoff Heights Medical Center's Rule 56.1 Statement of Material Facts.

Respectfully submitted,

**BAKER & HOSTETLER LLP**

    / s/ George Tzanetopoulos

Sammi Malek
45 Rockefeller Plaza, 11th Floor
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201
smalek@bakerlaw.com

George Tzanetopoulos
191 North Wacker Drive, Suite 3100
Chicago, Illinois, 60606
Tel: (312) 416-6200
Fax: (312) 416-6201
gtzanetopoulos@bakerlaw.com

*Counsel for Plaintiff Ross University School of Medicine, Ltd.*