Walter P. Loughlin
Brian D. Koosed
Justin H. Roeber
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 536-3900
Facsimile: (212) 536-3901

*Attorneys for Defendants Brooklyn-Queens Health Care, Inc. and Wyckoff Heights Medical Center*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ROSS UNIVERSITY SCHOOL OF MEDICINE, LTD.,

      Plaintiff,

  - against -            09 Civ. 1410 (KAM) (RLM)

BROOKLYN-QUEENS HEALTH CARE, INC. and
WYCKOFF HEIGHTS MEDICAL CENTER,

      Defendants.

------------------------------------------------------------------X


**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO PRECLUDE DEFENDANTS' EXPERT WITNESS**

# **TABLE OF CONTENTS**

|  | Page |
|---|---|
| BACKGROUND | 1 |
| ARGUMENT | 4 |
| I. Ross's Motion To Preclude Mr. Duffy's Testimony As "Cumulative" Should Be Denied | 4 |
|     A. Ross's request to preclude Mr. Duffy's allegedly cumulative expert testimony is premature | 5 |
|     B. Ross's motion rests on a faulty premise because Mr. Duffy's expert testimony is not "cumulative" | 6 |
| II. Mr. Duffy Is Fully Qualified To Offer An Expert Opinion Critiquing Ms. Davis's Calculation Of The Clerkship Cost Growth Rate And Ross's Alleged Damages | 7 |
| CONCLUSION | 11 |

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adams v. Cooper Industries, Inc.*, No. 03-476-JBC, 2006 U.S. Dist. LEXIS 75565
 (E.D. Ky. Oct. 17, 2006) ................................................................................................ 5

*Arista Records LLC v. Lime Group LLC*, No. 06 Civ. 5936, 2011 WL 1674796
 (S.D.N.Y. May 2, 2011) ............................................................................................ 8, 9

*Clarke v. LR Systems*, 219 F. Supp. 2d 323 (E.D.N.Y. 2002) ............................................ 10

*Peerless Insurance Co. v. Marley Engineered Products, LLC*, 2008 U.S. Dist.
 LEXIS 112298 (E.D.N.Y. June 12, 2008) ...................................................................... 8

*United States v. Jamil*, 707 F.2d 638 (2d Cir. 1983) ........................................................... 5

*United States v. Mermelstein*, 487 F. Supp. 2d 242 (E.D.N.Y. 2007) ................................. 5

## FEDERAL RULES

Federal Rule of Evidence 403 ............................................................................................. 5

Federal Rule of Evidence 702 ............................................................................................. 8

Defendants Brooklyn-Queens Health Care, Inc. ("BQHC") and Wyckoff Heights Medical Center ("Wyckoff") (together, "Defendants") respectfully submit this memorandum of law in opposition to the motion filed by Plaintiff Ross University School of Medicine, Ltd. ("Ross") to preclude the testimony of Defendants' expert witness, Anthony G. Duffy. Ross seeks to preclude Mr. Duffy's testimony on the grounds that he lacks the relevant expertise and that his testimony would be cumulative. As set forth below, Ross's motion is both premature and baseless. Procedurally, a motion to preclude cumulative expert testimony is more appropriately the subject of a trial motion or, at the earliest, an *in limine* motion, and Ross's motion should be denied on this ground alone. Even if this Court chose to overlook the premature nature of Ross's motion, however, it nonetheless fails on the merits because Mr. Duffy is undeniably qualified as an expert in the field of valuation, which is the only subject on which he opines.

## BACKGROUND

On August 31, 2011, Ross served the "Expert Report of Elizabeth Kroger Davis" on Defendants. *See* Declaration of Justin H. Roeber, Esq., dated January 10, 2012 and submitted herewith ("Roeber Opp. Dec."), Exh. 5 (the "Davis Report"). In her Report, Ms. Davis – a Certified Public Accountant and the Managing Director of a financial and economic consulting firm – purported to quantify the costs that have been, and will be, incurred by Ross as a result of BQHC's alleged breach of the parties' December 28, 2006 contract for medical student clerkships at the now-closed St. John's Queens and Mary Immaculate Hospitals (the "Affiliation Agreement"). *See* Davis Report, p. 1.

Under the Affiliation Agreement, Ross made a lump sum "prepayment" to BQHC's affiliate, Caritas Health Care Planning, Inc., later converted to Caritas Health Care, Inc. ("Caritas"), the entity that operated St. John's Queens and Mary Immaculate. *See* Defendants'

56.1 Statement in Support of Their Motion for Partial Summary Judgment, dated December 2, 2011 ("Def'ts' 56.1 Statement"), ¶ 39. In exchange for this prepayment, Ross was to receive clerkship slots over the duration of the contract for its medical students at St. John's Queens and Mary Immaculate. *Id.* at ¶¶ 38-39. When Caritas filed for bankruptcy in February 2009, St. John's Queens and Mary Immaculate closed and the clerkships intended to be provided under the Affiliation Agreement were no longer available. *Id.* at ¶¶ 63, 67-68.

The Davis Report divides Ross's alleged damages from BQHC's purported breach of the Affiliation Agreement into three components:

1. The "balance of Ross's prepayment" to Caritas under the Affiliation Agreement that went "unearned" and remains outstanding because Caritas filed for bankruptcy before all of the clerkships anticipated by Ross were fulfilled. *See* Davis Report, p. 7.

2. The "incremental costs incurred by Ross to replace clerkships through June 30, 2011," which accounts for Ross's alleged cost of placing its medical students – who would have clerked at St. John's Queens or Mary Immaculate if not for Caritas's bankruptcy – into clerkships at other hospitals. *Id.* at pp. 8-12.

3. The present value of the predicted "future incremental costs to be incurred by Ross on replacement clerkships" from July 1, 2011 through 2018. *Id.* at p. 12. This accounts for Ross's expected cost of placing its medical students in clerkships at other hospitals through 2018, based on the estimated rate at which Ms. Davis predicts clerkship costs will increase in the market between now and 2018 (the "Clerkship Cost Growth Rate"). *Id.* at pp. 13-16.

On October 10, 2011, Defendants served the "Rebuttal Expert Report of Anthony G. Duffy" on Ross. *See* Ross's Local Rule 56.1 Statement in Support of its Motion for Partial Summary Judgment, dated December 2, 2011 (the "Ross 56.1 Statement"), Appendix K (the "Duffy Report"). Like Ms. Davis, Mr. Duffy is a Certified Public Accountant and a Partner with a financial and economic consulting firm, as well as the Director of that firm's valuation subsidiary. *Id.* at 1. Mr. Duffy holds a number of business valuation designations and has spent years working on hundreds of engagements focused on predictive cash flows and business

valuation. *Id.*; *see also* Roeber Opp. Dec., Exh. 8 (Deposition Transcript of Anthony G. Duffy) ("Duffy Tr."), pp. 16:12-17:3. The scope of Mr. Duffy's engagement in this matter was simple: to opine on only the third component of Ms. Davis's Report – the estimated present value of Ross's predicted future costs for replacing clerkships – and the Clerkship Cost Growth Rate on which that estimate was based. Duffy Report, pp. 2-3. Mr. Duffy specifically did "not assess[] the reasonableness" of the first two components of alleged damages reflected in the Davis Report, namely the outstanding balance of Ross's prepayments under the Affiliation Agreement and Ross's costs of obtaining replacement clerkships through June 30, 2011. *Id.*

On October 25, 2011, Plaintiff served on Defendants a revised Expert Report of Elizabeth Kroger Davis. *See* Appendix I to Ross's 56.1 Statement (the "Revised Davis Report"). According to Ross's counsel, the Revised Davis Report corrected a "data entry error" that had caused the original Davis Report to overestimate the third component of Ross' alleged damages – the future cost of replacing Ross's clerkships under the Affiliation Agreement – by more than $1.5 million. *See* Roeber Opp. Dec., Exh. 6.

On November 1, 2011, Defendants took Ms. Davis's deposition. *See* Roeber Opp. Dec., Exh. 9 (Deposition Transcript of Elizabeth K. Davis) ("Davis Tr."). During her deposition, Ms. Davis conceded that none of her past work dealt with medical school clerkships in any way. *See* Davis Tr., p. 13:9-11. Furthermore, Ms. Davis admitted that in order to calculate the Clerkship Cost Growth Rate, she used only Ross's records of historical clerkship costs and did not use any historical clerkship costs from other medical schools. *Id.* at p. 66:13-20.

On November 3, 2011, Ross took Mr. Duffy's deposition. *See* Duffy Tr. Among other things, Mr. Duffy testified that he took no position as to the accuracy or reliability of Ms. Davis's calculations as to the first two components of Ross's alleged damages – the outstanding balance

of Ross's prepayments under the Affiliation Agreement and Ross's costs of obtaining replacement clerkships through June 30, 2011 – because they were outside the scope of his analysis and retention. *Id.* at pp. 44:19-46:8. Instead, Mr. Duffy testified that the focus of his Report was a critique of Ms. Davis's Clerkship Cost Growth Rate, which he opined was not indicative of the market for medical student clerkships because Ms. Davis only used Ross's historical payment records to calculate that Rate and ignored other market-based evidence. *See* Duffy Tr., p. 79:7-13. In other words, Mr. Duffy testified that Ms. Davis's methodology was flawed, which resulted in an overstated calculation for Ross's Clerkship Cost Growth Rate and, therefore, an inaccurate quantification of Ross's total alleged damages.

## ARGUMENT

Ross seeks to preclude Mr. Duffy from testifying because, Ross argues: (i) the portions of the Duffy Report concerning Ross's outstanding prepayment balance under the Affiliation Agreement and Ross's prior costs for finding replacement clerkships are "identical" to the Davis Report and are therefore "cumulative" of Ms. Davis's testimony; and (ii) Mr. Duffy has supposedly conceded a "lack of expertise" concerning clerkship rates and therefore is "unqualified" to opine on the reasonableness of Ms. Davis's calculations. *See* Plaintiff Ross University's Memorandum of Law in Support of its Motion to Preclude Defendants' Expert Witness ("Ross Mem."), pp. 3-6. As set forth below, Ross's motion to preclude is procedurally improper, factually inaccurate, and logically unsound.

### I. Ross's Motion To Preclude Mr. Duffy's Testimony As "Cumulative" Should Be Denied

In its motion, Ross argues that Mr. Duffy calculated Ross's damages with respect to the first two categories of alleged losses – the outstanding prepayment balance and the costs of obtaining replacement clerkships through June 30, 2011 – in a "nearly-identical manner" to

- 4 -

Ross's expert, Ms. Davis. Thus, Ross contends, Mr. Duffy's testimony should be precluded as "cumulative" under Federal Rule of Evidence 403. *See* Ross Mem., p. 3. Ross's arguments fail because they are both premature and factually inaccurate.

> A. Ross's request to preclude Mr. Duffy's allegedly cumulative expert testimony is premature

To the extent it argues that Mr. Duffy's testimony is cumulative of Ms. Davis's, Ross's motion should be denied as premature because it seeks to exclude expert testimony well before the time when such motions should be considered and decided. The overwhelming weight of authority in this Circuit and elsewhere is that the exclusion of allegedly cumulative evidence should occur at or on the eve of trial, not months before. As the Second Circuit explained in *United States v. Jamil*, 707 F.2d 638 (2d Cir. 1983):

> . . . [I]t is improper at this juncture to exclude [evidence] based on the possibility that it may be found to be cumulative during the upcoming trial. At this stage of the litigation, when the trial has not yet commenced and no evidence has yet been put before a jury, ***it is premature to conclude that this evidence is cumulative.***

*Id.* at 643 (emphasis added) (reversing lower court's pre-trial exclusion of evidence under Federal Rule of Evidence 403 as an abuse of discretion).

District courts in this Circuit and elsewhere have reached the same result with respect to expert testimony in particular. *See, e.g., United States v. Mermelstein*, 487 F. Supp. 2d 242, 266 (E.D.N.Y. 2007) (denying pre-trial motion to preclude allegedly cumulative expert testimony because that decision should not be made until trial, at which time the court will be in a position to prevent repetitive testimony); *Adams v. Cooper Indus., Inc.*, No. 03-476-JBC, 2006 U.S. Dist. LEXIS 75565, at *31 (E.D. Ky. Oct. 17, 2006) (denying motion to exclude allegedly cumulative expert testimony as "premature" because trial was three months away and "[i]n the meantime, the defendants may decide not to present certain experts, . . . their experts' testimony may be

limited or excluded by other evidentiary rulings; or some of the experts' testimony may be rendered unnecessary by future substantive orders of this court or by compromises between the parties").

No pre-trial conference has been scheduled in this case. Nor has a trial date been set. The parties have not completed briefing summary judgment motions, let alone had the benefit of the Court's rulings on summary judgment, which may narrow the issues to be litigated at trial. At this stage in the proceedings, then, Ross's request for an order precluding Mr. Duffy's testimony as allegedly cumulative of Ms. Davis's should be denied as premature, as the authorities cited above demonstrate.

### B. Ross's motion rests on a faulty premise because Mr. Duffy's expert testimony is not "cumulative"

In addition to being premature, Ross's argument that Mr. Duffy's testimony would be cumulative of Ms. Davis's fails because Ross's argument rests on a faulty premise – that Mr. Duffy "calculated Ross's damages" in a "nearly-identical manner" as Ms. Davis. This is a flagrant mischaracterization of Mr. Duffy's opinion. Mr. Duffy was crystal clear in his Report that he did *not* evaluate, let alone adopt, the reasonableness of Ms. Davis's calculations as to the first two components of Ross's alleged damages. *See* Duffy Report, pp. 2-3 (stating, as to each of the first two components of Ms. Davis's calculation of Ross's total alleged damages, that "I have not assessed the reasonableness of this computation").

Mr. Duffy further confirmed this point at his deposition, testifying that any assessment of the first two components of the Davis Report was outside the scope of his retention:

> Q. Do you agree with her conclusion . . . [a]s to the calculation of the outstanding pre-payment balance as of June 30, 2011?
>
> A. ***I don't know if I agree with it.*** I haven't really done enough work to disagree or agree with it.
>
> * * *

- 6 -

> Q. Did you do any work in connection with calculating the incremental replacement costs through June 30, 2011?
>
> A. Just [a] very cursory basis. . . .
>
> Q. *And so are we in the same place where you don't agree or disagree with her conclusions?*
>
> A. *Correct.*

Duffy Tr., pp. 44:19-46:8 (emphasis added). Accordingly, Ross's contention – that Mr. Duffy's "opinion concerning the amount of the first two categories of damages . . . is identical" to that of Ms. Davis – is simply false. Mr. Duffy expressed no opinion at all as to Ms. Davis's calculations of those components of Ross's alleged damages, and certainly did not "adopt" Ms. Davis's calculations as his own. *Compare* Duffy Report, pp. 2-3, *with* Ross's Memorandum of Law in Support of its Motion for Partial Summary Judgment, dated December 2, 2011, p. 7. As a result, Mr. Duffy's testimony will not be "cumulative" of Ms. Davis's presumed testimony at trial.

Furthermore, the notion that the testimony of one party's expert should be precluded because it is cumulative of *the opposing* party's expert opinion is illogical. If Mr. Duffy did, in fact, agree with Ms. Davis, Ross would hardly be seeking to suppress his testimony. To the contrary, Ross would likely seek to highlight the fact that Defendants' expert agrees with its own expert.

For all these reasons, Ross's contention that Mr. Duffy's expert testimony is cumulative of that of Ms. Davis should be rejected and Ross's motion to preclude should be denied.

## II. Mr. Duffy Is Fully Qualified To Offer An Expert Opinion Critiquing Ms. Davis's Calculation Of The Clerkship Cost Growth Rate And Ross's Alleged Damages

Ross's argument that Mr. Duffy is not qualified to provide his expert opinion also fails. Ross contends that Mr. Duffy "conceded his lack of expertise" on the subject of the cost of clinical clerkship rotations in his deposition, and that he is therefore not competent to opine on the methodology that Ms. Davis used to calculate the Clerkship Cost Growth Rate, which forms

- 7 -

the basis for her projection of the third component of Ross's alleged damages. Ross Mem., pp. 1, 4-6. Ross is wrong on both the law and the facts.

As even the cases Ross cites acknowledge, "an expert should not be required to satisfy an overly narrow test of his own qualifications" under Federal Rule of Evidence 702; rather, "[i]f the expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony" even if the expert "lacks expertise in the specialized areas that are directly pertinent" to the litigation. *Arista Records LLC v. Lime Group LLC*, No. 06 Civ. 5936, 2011 WL 1674796, at *2-*3 (S.D.N.Y. May 2, 2011) (internal citations omitted) (reaffirming that "Courts within the Second Circuit have liberally construed expert qualification requirements . . ."); *see also Peerless Ins. Co. v. Marley Engineered Prods., LLC*, 2008 U.S. Dist. LEXIS 112298, at *7, *20 (E.D.N.Y. June 12, 2008) (denying motion to preclude expert under the Second Circuit's "liberal standard for qualifying an expert").

Applying these settled standards, Mr. Duffy is clearly qualified to provide his expert opinion. Mr. Duffy's opinion critiques the valuation methodology that Ms. Davis used to calculate the Clerkship Cost Growth Rate, which forms the core of her estimate of Ross's future costs in obtaining clerkships and makes up the bulk of Ross's damage claim. Duffy Report, pp. 7-8. Specifically, Mr. Duffy opines that it was unreasonable for Ms. Davis to calculate her projected Clerkship Cost Growth Rate using only Ross's historical clerkship pricing data because that Ross-specific information necessarily reflects only Ross's particular business circumstances and is therefore unreliable for predicting future market-wide trends. *See* Duffy Tr., p. 79:7-13. Put differently, Mr. Duffy opines that Ms. Davis's use of only Ross's information to calculate the

Clerkship Cost Growth Rate is too limited and ignores other, more appropriate measures for determining future growth rates for the costs of clinical medical clerkships. *Id.*

This type of valuation analysis and critique is Mr. Duffy's precise area of expertise. In addition to being a Partner with Bonadio & Co., LLP (a financial consulting firm) and the director of ValuQuest, LLC (Bonadio's valuation and litigation support subsidiary), Mr. Duffy is a Certified Public Accountant and holds the business valuation designations of: (1) Accredited Business Valuator (ABV) through the American Institute of Certified Public Accountants; and (2) Certified Valuation Analyst (CVA) through the National Association of Certified Valuation Analysts. *See* Duffy Report, p. 1. Further, Mr. Duffy has extensive experience working on hundreds of engagements related to predictive cash flows and business valuation, exactly the type of valuation analysis that he offers in his Report. *See* Duffy Tr., pp. 16:12-17:3.[1]

In its motion to preclude, Ross focuses on Mr. Duffy's testimony that he does not consider himself "an expert about the pricing of clerkship rotations provided by hospitals to medical schools," and argues on that basis that Mr. Duffy is not qualified to testify at trial because the replacement costs that are the subject of the parties' competing expert opinions specifically relate to medical school clerkships. Ross Mem., pp. 1, 4-6. But this argument cannot be squared with the case law, noted above, holding that an expert will not be disqualified simply because he lacks expertise in the narrow or technical "specialized areas" at issue in the litigation. *Arista Records LLC*, 2011 WL 1674796, at *3. Mr. Duffy is undoubtedly a qualified valuation expert, and his opinion here is a critique of valuation methodology. *See supra*, pp. 2-4, 6-7. That is all the law requires for his testimony to be admissible. *See Arista Records LLC*, 2011 WL 1674796, at *3.

---

[1] Mr. Duffy's full curriculum vitae is attached to his expert report and lists the extent of his ample qualifications to provide valuation analysis. *See* Duffy Report, Appendix A.

Indeed, Ross's own expert, Ms. Davis, could not pass the test that Ross proposes for admitting Mr. Duffy's testimony. At her deposition, Ms. Davis testified that she, too, lacks any expertise or experience with respect to medical school clerkships specifically:

> Q. Has any of your work in the past dealt with medical school clerkships in any way?
> A. No.

Davis Tr., p. 13:9-11. Under Ross's theory, then, even its own expert would not be qualified to testify at trial about the predicted future costs of replacement clerkships.

In its moving papers, Ross points to the fact that Ms. Davis and her staff reviewed Ross's business records regarding its historical clerkship costs. Ross Mem., pp. 4-5. Ms. Davis then used Ross's clerkship cost history, and nothing else, to calculate the Clerkship Cost Growth Rate in the market generally. *See* Davis Tr., pp. 66:13-20. To the extent Ross's motion papers imply that Ms. Davis's use of Ross's clerkship pricing history imbues her testimony with some level of expertise that Mr. Duffy does not possess, Ross misses the mark. It was precisely Ms. Davis's use of Ross-specific pricing data to predict future pricing trends in the clinical clerkship market – as opposed to the more general, market-based Consumer Price Index rate used by Mr. Duffy – that is the target of Mr. Duffy's critique. As Mr. Duffy explained at his deposition:

> [Ms. Davis's Clerkship Cost Growth Rate] is based upon one particular set of circumstances that occurred between 2008 and 2011 . . . that are ***not necessarily indicative of the marketplace*** or indicative of the circumstances and terms . . . of future contracts."

Duffy Tr. at 79:7-13 (emphasis added).

Ross may disagree with Mr. Duffy's opinion stated above, but that disagreement does not disqualify him as a competent and qualified expert. *See, e.g., Clarke v. LR Systems*, 219 F. Supp. 2d 323, 333 (E.D.N.Y. 2002) ("Disputes about the strength of an expert's credentials [or] faults in an expert's decision to use a particular methodology . . . go to the weight, not the

admissibility, of his testimony."). Ross's motion to preclude Mr. Duffy's testimony should therefore be denied.

## CONCLUSION

Ross's motion to preclude Mr. Duffy's expert testimony should be denied and the Court should award Defendants such other and further relief as the Court deems just and proper.

Dated: New York, New York
       January 10, 2012

                         Respectfully submitted,

                         K&L GATES LLP

                         By: _____

                         Walter P. Loughlin
                         (Walter.Loughlin@klgates.com)
                         Brian D. Koosed
                         (Brian.Koosed@klgates.com)
                         Justin H. Roeber
                         (Justin.Roeber@klgates.com)

                         599 Lexington Avenue
                         New York, New York 10022
                         Telephone: (212) 536-3900
                         Facsimile: (212) 536-3901

                         *Attorneys for Defendants Brooklyn-Queens Health Care, Inc. and Wyckoff Heights Medical Center*