Walter P. Loughlin
Brian D. Koosed
Justin H. Roeber
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 536-3900
Facsimile:  (212) 536-3901

*Attorneys for Defendants Brooklyn-Queens Health
Care, Inc. and Wyckoff Heights Medical Center*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                                    :

ROSS UNIVERSITY SCHOOL OF MEDICINE, LTD.,    :

                     Plaintiff,           :

                                 :

         - against -           :     09 Civ. 1410 (KAM) (RLM)

                                 :

BROOKLYN-QUEENS HEALTH CARE, INC. and    :
WYCKOFF HEIGHTS MEDICAL CENTER,      :

                   Defendants.      :

                                 :

-------------------------------------------------------------------X

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT
<u>DISMISSING TWO OF PLAINTIFF'S PRINCIPAL THEORIES OF LIABILITY</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT...............................................................................................................................2

I.  Ross's Opposition Cannot Salvage Its Defective Veil Piercing Claim ............................2

    A.  Ross blatantly mischaracterizes New York law on veil piercing ...........................2

    B.  Ross relies on irrelevant and immaterial facts that cannot create a
genuine factual issue as to either element of Ross's Veil Piercing Claim,
and which Ross further misstates ...........................................................................4

II.  Ross's Request For Specific Performance Is Prohibited By New York's Public
Health Law...................................................................................................................7

    A.  The majority of Ross's opposition to Defendants' Article 28 argument is
irrelevant ...............................................................................................................7

    B.  Ross's legal arguments regarding Article 28 also fail ............................................8

CONCLUSION............................................................................................................................10

## TABLE OF AUTHORITIES

### FEDERAL CASES

*In re Adelphia Commc'ns Corp.*, 322 B.R. 509 (Bankr. S.D.N.Y. 2005).....................................4, 5

*American Fuel Corp. v. Utah Energy Development Co.*, 122 F.3d 130 (2d Cir. 1997) ..............2, 3

*Barkley v. Olympia Mortg. Co.*, No. 04-CV-875 (RJD) (KAM), 2007 WL 656250
    (E.D.N.Y. Feb. 27, 2007) ....................................................................................................3

*Fletcher v. Atex, Inc.*, 68 F.3d 1451 (2d Cir. 1995)...................................................................6 n.2

*Tetra Tech., Inc. v. Harter*, 823 F. Supp. 1116 (S.D.N.Y. 1993) .............................................9 n.4

*Thrift Drug, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95 (2d Cir. 1997)...........................3

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*,
    933 F.2d 131 (2d Cir. 1991) ................................................................................................3

### STATE CASES

*Charlebois v. J.M. Weller Associates, Inc.*, 72 N.Y.2d 587, 535 N.Y.S.2d 356 (1988)............9 n.4

*Healthnet Systems Consulting, Inc. v. Brooklyn-Queens Healthcare, Inc.*,
    2009 N.Y. Misc. LEXIS 4239 (Sup. Ct. Queens Co. July 27, 2009) ...........................9, 10

*Morris v. New York State Department of Taxation and Finance*,
    82 N.Y.2d 135, 603 N.Y.S.2d 807 (1993) ..........................................................................3

### FEDERAL STATUTES

Fed. R. Civ. P. 56.........................................................................................................................1

### STATE STATUTES

N.Y. Pub. Health Law § 2801-a ...............................................................................................9, 10

Defendants BQHC and Wyckoff respectfully submit this reply memorandum of law in further support of their motion, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, for partial summary judgment dismissing two of Ross's principal theories of liability.[1]

## PRELIMINARY STATEMENT

In their moving papers, Defendants demonstrated their entitlement to summary judgment dismissing Ross's two principal theories for imputing BQHC's alleged liability under the Affiliation Agreement to Wyckoff.  Specifically, Defendants showed that:  (i) Ross could not disregard BQHC's corporate form and seek money damages from Wyckoff because Ross's Veil Piercing Claim failed to meet New York's high bar for piercing the corporate veil; and (ii) Ross's Specific Performance Claim is barred by New York law because it would force BQHC, an entity not licensed to operate a hospital under New York's Public Health Law, to direct Wyckoff's clinical operations. *See* Motion, pp. 14-27.

In opposition, Ross largely ignores the merits of Defendants' arguments, instead focusing on a litany of irrelevant facts – most of which have nothing to do with the merits of Ross's Claims – in the hope that the mere appearance of disputed issues will result in the denial of Defendants' motion.  As set forth below, Ross's kitchen sink approach – reciting all of the parties' factual disputes, regardless of their relevance to Defendants' motion – is unavailing.  No level of obfuscation can change the fact that BQHC and Wyckoff are, and always have been, separate corporate entities, and that BQHC has no legal authority to direct Wyckoff's operations. Accordingly, Defendants are entitled to partial summary judgment dismissing Ross's Veil Piercing and Specific Performance Claims seeking to impute BQHC's liability to Wyckoff, and this case should proceed to trial as to Ross's remaining claims against BQHC.

---

[1]     Capitalized terms not defined herein shall have the meaning ascribed to them in Defendants' Memorandum of Law in Support of Their Motion for Partial Summary Judgment Dismissing Two of Plaintiff's Principal Theories of Liability, dated December 2, 2011 (the "Motion").

## ARGUMENT

I.    **Ross's Opposition Cannot Salvage Its Defective Veil Piercing Claim**

In their opening papers, Defendants established that Ross's Veil Piercing Claim fails because no genuine issue of material fact exists as to either of the two elements that must be shown to pierce the corporate veil under New York law.  In particular, Defendants showed that Wyckoff did not "exercise[] complete domination" over BQHC with respect to the Affiliation Agreement because BQHC and Wyckoff retained their separate corporate identities throughout the negotiation of that Agreement, and otherwise observed separate corporate formalities.  *See* Motion, pp. 15-19.  Defendants further demonstrated that, even if one assumes that Ross could somehow show that Wyckoff had dominated BQHC with respect to the Affiliation Agreement, there is still no evidence of the other pre-requisite for veil piercing – that BQHC was used to perpetrate a fraud or wrong on Ross with respect to the Affiliation Agreement – particularly because it was Ross alone who demanded, at the behest of its counsel, that BQHC sign the Affiliation Agreement instead of Caritas.  *Id.* at pp. 19-23.

In response, Ross engages in a scattershot approach designed to mimic the appearance of material factual issues and thus save its Veil Piercing Claim.  Because Ross's tactics misstate both the law and the facts, that defective Claim cannot be salvaged.

A.    Ross blatantly mischaracterizes New York law on veil piercing

In their opening papers, Defendants cited black-letter New York law establishing that a "party seeking to pierce a corporate veil [must] make a two-part showing:  (i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; *and* (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to

pierce the veil." *See* Motion, p. 14 (citing *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)) (emphasis added).

In response, Ross attempts to disregard this well-established precedent for a more lenient standard, contending that, "if the jury concludes that defendants engaged in fraud in connection with the Affiliation Agreement, ***Ross need not show domination by Wyckoff*** to prevail on its [V]eil-[P]iercing [C]laim." Ross Opp., p. 30 (emphasis added) (citing *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 138 (2d Cir. 1991)). But this standard is simply no longer the law of New York, as both the Second Circuit and the New York Court of Appeals have confirmed:

> In [prior cases], we held that New York law permits plaintiffs to pierce the corporate veil either 'to prevent fraud or other wrong, *or* where a parent dominates and controls a subsidiary . . . . [W]e have [since] interpreted [those cases] to require, in order to pierce the corporate veil, '(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; *and* (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil. . . . **This test comports with the law of corporate veil piercing as stated most recently by the New York Court of Appeals.** *See Morris v. New York State Dep't of Taxation and Finance*, 82 N.Y.2d 135, 603 N.Y.S.2d 807 (1993).

*Thrift Drug, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95, 97 (2d Cir. 1997) (italics and underline in original; bold emphasis added); *see also Barkley v. Olympia Mortg. Co.*, No. 04-CV-875 (RJD) (KAM), 2007 WL 656250, at *6 (E.D.N.Y. Feb. 27, 2007) ("'While complete domination of the corporation is the key to piercing the corporate veil, such domination, standing alone, is not enough; some showing of a wrongful or unjust act . . . is required.'").

Contrary to its claims, then, Ross cannot succeed here merely by demonstrating that factual issues exist as to one or the other element of its Veil Piercing Claim; rather, it must set forth sufficient proof to create an issue of material fact as to ***both*** elements of that Claim. This

- 3 -

Ross cannot do, because its opposition focuses almost exclusively on the first element of its Veil Piercing Claim (whether Wyckoff completely dominated BQHC with respect to the Affiliation Agreement), gives short shrift to the second, equally essential element (whether BQHC was used to perpetrate a fraud or wrong on Ross with respect to the Affiliation Agreement), and in the end fails to raise a genuine issue of material fact as to either element of Ross's Claim.

      B.    <u>Ross relies on irrelevant and immaterial facts that cannot create a genuine factual issue as to either element of Ross's Veil Piercing Claim, and which Ross further misstates</u>

As wrong as it is on the law, Ross is equally wrong on the facts of its Veil Piercing Claim. In their opening papers, Defendants showed that: (1) Wyckoff at no time "completely dominated" BQHC, either with respect to the Affiliation Agreement or otherwise; and (2) BQHC was not used to perpetrate a fraud or to otherwise harm Ross with respect to that Agreement. *See* Motion, pp. 15-23. In response, Ross attempts to rebut Defendants' showing using a scattershot approach – first emphasizing random and immaterial facts, and then mischaracterizing those facts, all the while ignoring critical evidence. Ross's approach fails for several reasons.

*First*, the vast majority of Ross's supposed factual issues are immaterial to the issues at bar. For example, Ross contends that a number of facts – listed as (a) through (k) on page 26 of its opposition – create a factual issue as to the first element of its Veil Piercing Claim, whether Wyckoff dominated BQHC with respect to the Affiliation Agreement. *See* Ross Opp., p. 26. But supposed factual issues (e) - (k) have nothing to do with the Affiliation Agreement and thus cannot, as a matter of law, create a genuine issue of material fact as to that Claim. *See, e.g., In re Adelphia Commc'ns Corp.*, 322 B.R. 509, 524 (Bankr. S.D.N.Y. 2005) (". . . New York law requires that domination and control be exercised *with respect to the transactions that caused the harm*.") (emphasis added). Indeed, Ross's supposed factual issue (g) – contending that "[c]ontracts were signed by the same person for both Wyckoff and BQHC" – is simply irrelevant

to the Affiliation Agreement, which was signed on BQHC's behalf by two different individuals, and was not signed by Wyckoff at all. *Compare Ross Opp.*, p. 26, *with* Declaration of Justin H. Roeber, Esq., in Support of Defendants' Motion for Partial Summary Judgment, dated December 2, 2011 ("Roeber Orig. Dec."), Exh. 40, at Ross 0066 (showing two individuals signed the Affiliation Agreement on BQHC's behalf).

Moreover, the bulk of the evidence that Ross cites as to the first element of its Veil Piercing Claim actually relates to Wyckoff and Caritas – not Wyckoff and BQHC – and thus cannot create a factual issue as to Wyckoff's alleged domination of BQHC. *See, e.g., Ross Opp.*, pp. 19-20, 23 (discussing alleged transfers between Wyckoff and Caritas). Similarly, Ross devotes substantial time and effort to describing BQHC's various contractual arrangements with its corporate officers. *See id.* at pp. 21-23. But, even if true, this evidence does nothing to support Ross's contention that Wyckoff completely dominated BQHC, and is utterly irrelevant to whether Wyckoff dominated BQHC *with respect to the Affiliation Agreement*. *See In re Adelphia*, 322 B.R. at 524.

*Second*, Ross's defense of its Veil Piercing Claim fails because it ignores critical evidence as to the Claim's second element, namely Ross's own decision, at the behest of its counsel, to make BQHC the contracting party to the Affiliation Agreement instead of Caritas. *See generally Ross Opp.*, pp. 17-30. Ross admits in its opposition that it alone demanded that BQHC sign the Affiliation Agreement. *See id.* at p. 6. And, as set forth in Defendants' opening papers, this undisputed fact justifies dismissing Ross's Veil Piercing Claim because it establishes that any "injury" that Ross allegedly suffered from BQHC signing the Affiliation Agreement was solely attributable to Ross's own actions, not Defendants'. *See* Motion, pp. 19-20. Tellingly, Ross nowhere addresses the impact of this evidence in its defense of its Veil Piercing Claim. In

fact, Ross barely addresses the second element of that Claim at all, instead merely arguing that it suffered "injury" here because BQHC has no assets, even though, as Defendants have established, this is insufficient as a matter of law to satisfy the second element of veil piercing under New York law. *Compare* Ross Opp., pp. 29-30, *with* Motion, pp. 22-23. Because it leaves this critical evidence unrebutted, Ross cannot raise a genuine factual issue as to the second element of its Veil Piercing Claim. That Claim should therefore be dismissed.

*Third*, Ross flatly mischaracterizes the modicum of evidence that it cites that is arguably material to its Veil Piercing Claim. Consider:

- Ross contends that Defendants "improper[ly] commingl[ed ] corporate funds," but the only evidence that Ross relies upon – the testimony of Wyckoff's Chief Operating Officer, Harold McDonald – supports the opposite conclusion, because Mr. McDonald expressly stated that any transfer of funds between Wyckoff and Caritas "wasn't authorized." *Compare* Ross Opp., pp. 19-20, 26-27 *and* Ross Additional Disputed Fact, ¶ 99 (citing McDonald testimony), *with* Motion, pp. 11-12 *and* Roeber Orig. Dec., Exh. 25, pp. 64-65, 69 (explaining that Wyckoff "terminate[d]" its former CFO, Hal McNeil, due to these unauthorized transfers).[2]

- Ross contends that BQHC was not formed for "ecclesiastical purposes," but to achieve certain "efficiencies," which, according to Ross, undermines the validity of BQHC's corporate purpose. Ross Opp., p. 28; *see also* Ross 56.1 Response, ¶¶ 19, 25. But, even accepting Ross's assumption that achieving "efficiencies" is not a valid corporate purpose (and it is), Ross's only evidence – the minutes from a February 2006 meeting of Wyckoff's Board of Trustees – is dated six months *before* BQHC was formed and thus can hardly support Ross's contentions about the reasons for BQHC's formation. *See* Ross Appx. 37, at BQHC 03721.

Simply put, the evidence that Ross relies upon in its opposition does not support the conclusions that Ross draws. Instead, the cited evidence is irrelevant at best and

---

[2]        Similarly, Ross contends that the existence of "an intercompany receivable" from Caritas on Wyckoff's books demonstrates that factual issues exist as to the first element of its Veil Piercing Claim. Ross Opp., p. 23. Setting aside that it is unclear how this fact, even if true, demonstrates Wyckoff's domination of *BQHC* (as opposed to Caritas), the legal conclusion that Ross draws from this evidence is simply wrong. *See, e.g., Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1459 (2d Cir. 1995) (affirming summary judgment dismissing veil piercing claim under Delaware law, finding that a parent company's "centralized cash management system . . . where the accounting records always reflect the indebtedness of one entity to another, is not the equivalent of intermingling funds and is insufficient to justify disregarding the corporate form") (internal citations omitted).

mischaracterized at worst.  Either way, it is insufficient to raise a genuine issue of material fact as to Ross's Veil Piercing Claim.  That Claim should be dismissed, and the parties should proceed to trial on Ross's remaining claims against BQHC.

## II.     Ross's Request For Specific Performance Is Prohibited By New York's Public Health Law

In opposition to Defendants' motion for summary judgment on Ross's Specific Performance Claim, Ross continues its focus on unnecessary and irrelevant factual discussions. But despite Ross's effort to throw everything at the wall in the hopes that some tangential factual dispute will stick, Ross cannot avoid Defendants' straightforward ground for summary judgment on Ross's Specific Performance Claim:  the relief Ross seeks is barred by Article 28 of New York's Public Health Law.

### A.     The majority of Ross's opposition to Defendants' Article 28 argument is irrelevant

Ross goes to great lengths to oppose Defendants' Article 28 argument by describing all of the disputed issues of material fact allegedly related to that claim.  *See* Ross Opp., pp. 4-13.  The allegedly disputed facts that Ross emphasizes, however, are entirely divorced from the merits of Defendants' argument.  For example, Ross describes in detail in its opposition factual disputes relating to:

- The parties' intentions when drafting and negotiating the Affiliation Agreement, *see* Ross Opp., pp. 4-6;

- Whether the Affiliation Agreement should be interpreted to include or exclude Wyckoff, *see id.* at pp. 7-8;

- Whether Defendants' consultant – whose consulting agreement precluded him and his firm from incurring any liabilities on Defendants' behalf – had the authority to amend the Affiliation Agreement, *see id.* at pp. 8-10; and

- Whether prepaid clerkship agreements such as the Affiliation Agreement were presented to Wyckoff's Board of Trustees for approval. *Id.* at pp. 10-11.

While Ross may be correct that disputed issues of material fact exist with respect to these points,[3] Ross fails to explain how these issues relate to the only question at hand – whether Ross's requested order of specific performance is barred by Article 28.  The simple answer is that they have no relation at all to that issue:  factual disputes regarding the formation and interpretation of the Affiliation Agreement and the amendments thereto are entirely irrelevant to the fact that Ross's requested relief would violate New York's Public Health Law here.

Equally irrelevant is Ross's argument that Defendants' motion for summary judgment dismissing the Specific Performance Claim is premature because it cannot be decided until Ross's Veil Piercing Claim is decided.  *See* Ross Opp., p. 13.  As explained above, Defendants are entitled to summary judgment dismissing Ross's Veil Piercing Claim as a matter of law, thereby eliminating any purported procedural obstacle to dismissing the Specific Performance Claim now. *See supra*, pp. 2-7.

B.      Ross's legal arguments regarding Article 28 also fail

The limited opposition that Ross puts forth on the merits of Defendants' Article 28 argument amounts to nothing more than factual misstatements and conclusory legal assertions. Initially, Ross argues that, "even if BQHC lacks the proper credentials to 'operate' a hospital, it is clear that BQHC controls Wyckoff's board," and that BQHC therefore sits in the same position as any "holding company that enters into contracts to cause controlled subsidiaries to fulfill contractual obligations."  Ross Opp., p. 14.  Ross's analogy is inapposite for multiple reasons.  First, the evidence unambiguously shows that BQHC's authority to elect and remove

---

[3]        Indeed, Defendants agree that disputed factual issues exist with respect to the question of whether the Affiliation Agreement was intended to include or exclude Wyckoff. This is precisely why Ross's motion for partial summary judgment as to BQHC's liability should be denied. *See* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment, dated January 10, 2012, pp. 10-17.

Wyckoff's Board members does *not* give BQHC control over Wyckoff's hospital operations. *See* Defendants' Local Rule 56.1 Statement of Undisputed Facts in Support of Their Motion for Partial Summary Judgment, dated December 2, 2011 ("Def'ts' 56.1 Statement"), ¶ 26 (BQHC's Certificate of Incorporation, stating: "Nothing contained in this certificate of incorporation shall authorize [BQHC] to establish, operate . . . or maintain a hospital . . . ."); Declaration of Adam Figueroa in Support of Defendants' Motion for Partial Summary Judgment, sworn to on November 29, 2011, ¶ 11 (stating that "BQHC does not operate Wyckoff, Caritas, or any of Wyckoff's or Caritas's hospital facilities . . . ."). Second, the cases that Ross relies upon miss the mark because, unlike those cases, BQHC does not dispute the validity of the Affiliation Agreement here.[4]  Rather, Defendants' argument is far more straightforward:  the specific performance relief that Ross requests simply cannot be granted because it would cause BQHC and Wyckoff to violate Article 28. *See* Motion, pp. 23-27.

With respect to Article 28's strict limitations and requirements for operating a hospital in New York, Ross responds only with the conclusory assertion that "[D]efendants' 'Article 28 argument' is simply unfounded" and the inaccurate allegation that Defendants mischaracterized the holding in *Healthnet Systems Consulting, Inc. v. Brooklyn-Queens Healthcare, Inc.*, 2009 N.Y. Misc. LEXIS 4239 (Sup. Ct. Queens Co. July 27, 2009). Ross Opp., pp. 15-16. Ross's position again ignores both the facts and the law.

Ross cannot, and does not, deny that BQHC was not "established" as a clinical hospital by New York's Public Health and Health Planning Council and that BQHC therefore cannot operate a hospital under New York law. *See* Def'ts' 56.1 Statement, ¶ 26, N.Y. Pub. Health Law

---

[4]     *See* Ross Opp., p. 14, *citing Tetra Tech., Inc. v. Harter*, 823 F. Supp. 1116, 1118 (S.D.N.Y. 1993) and *Charlebois v. J.M. Weller Assocs., Inc.*, 72 N.Y.2d 587, 535 N.Y.S.2d 356 (1988).

§§ 2801-a(1)-(4).   Accordingly, BQHC does not have the legal authority to direct Wyckoff's hospital operations, and Ross's Specific Performance Claim – which requests exactly that – must be denied as a matter of law.  This limitation placed on BQHC's authority by New York's Public Health Law is precisely what the Supreme Court of the State of New York recognized in the *Healthnet* decision.   There, the court's *holding* acknowledged that "only if a corporation is licensed under Article 28 it will have the ability to operate a hospital and to implement programs and policies to accomplish the hospital's goals."  2009 N.Y. Misc. LEXIS 4239, *8-9.  This very limitation, recognized in *Healthnet*, precludes Ross's request for specific performance here.  *Id.*

## CONCLUSION

For these reasons and those set forth in Defendants' opening papers, Ross's Veil Piercing and Specific Performance Claims should be dismissed and the Court should award Defendants such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        January 24, 2012

Respectfully submitted,

K&L GATES LLP

By: _____

Walter P. Loughlin
(Walter.Loughlin@klgates.com)
Brian D. Koosed
(Brian.Koosed@klgates.com)
Justin H. Roeber
(Justin.Roeber@klgates.com)

599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 536-3900
Facsimile:  (212) 536-3901

*Attorneys for Defendants Brooklyn-Queens Health Care, Inc. and Wyckoff Heights Medical Center*

- 10 -