UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
ROSS UNIVERSITY SCHOOL OF
MEDICINE, LTD.,

        09 Civ. 1410 (KAM) (RLM)

Plaintiff,

– against –

BROOKLYN-QUEENS HEALTH CARE,
INC. and WYCKOFF HEIGHTS MEDICAL
CENTER,

Defendants.
-------------------------------------------------X

## PLAINTIFF ROSS UNIVERSITY'S
## REPLY IN SUPPORT OF ITS MOTION TO
## PRECLUDE DEFENDANTS' EXPERT WITNESS

**BAKER & HOSTETLER LLP**

George Tzanetopoulos
191 North Wacker Drive, Suite 3100
Chicago, Illinois 60606
Tel.: (312) 416-6200
Fax: (312) 416-6201
gtzanetopoulos@bakerlaw.com

Sammi Malek
45 Rockefeller Plaza, 11th Floor
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201
smalek@bakerlaw.com

*Counsel for Plaintiff Ross University School of Medicine, Ltd.*

## INTRODUCTION

Plaintiff Ross University has moved to preclude the testimony of defendants' expert witness, Anthony G. Duffy, because his opinion regarding the first two components of Ross' damages is cumulative of Ross' expert, and because he is not qualified to render an opinion as to the third and final damage component. Defendants' attempts to save Duffy's testimony are unpersuasive.

## ARGUMENT

**I.   Defendants Fail to Demonstrate That Duffy Can Render An Opinion Regarding Ross' Lost Prepayment Balance Or Past Incremental Cost To Replace Clerkships.**

**A.   Defendants Fail To Demonstrate That Duffy's Opinion Is Not Cumulative.**

Defendants contend that Duffy's testimony is not cumulative because he "did not evaluate, let alone adopt, the reasonableness of Ms. Davis's calculations as to the first two components of Ross's alleged damages." Defs.' Opp. at 6. But, just like the same position advanced in response to Ross' motion for partial summary judgment, defendants' argument is directly at odds with their own expert's report in two critical respects. First, it is clear from Duffy's report that he merely plugged Ms. Davis's calculations verbatim into his own damage estimate. *Compare* Pl.'s Mot., Ex. 2, Duffy Report, Exhibit A *with* Ex. 3, Davis Report, Ex. A. Further, Duffy concludes that "the calculation of estimated damages set forth in the Davis Report overstates the estimated damages by $8,793,841"—the precise difference between his estimate of the third component of damages ($5,525,367) and Ms. Davis's original calculation of this component ($14,319,208). Had Duffy not "adopted" Ross' figures for the first two damage components, he would not have—indeed, could not have—opined that Ms. Davis "overstate[d]" Ross' damages by the difference in their calculations of the third component.

### B. This Court May Preclude Duffy's Testimony At Summary Judgment, Particularly Because He Did Not Disclose Any Opinion Regarding The First Two Damage Components Other Than Ross' Figures.

Defendants' also argue it would be premature to bar Duffy's testimony as a matter of principle. It might be premature to decide such an issue if there was some doubt—as there was in the cases cited by defendants—whether the challenged testimony will actually be cumulative at trial. *See United States v. Mermelstein*, 487 F. Supp. 2d 242, 266 (E.D.N.Y. 2007) ("[T]he government clarified that it has not finally decided whether [two experts] will testify at trial and that, if they do, [another expert's] testimony will be curtailed accordingly."); *Adams v. Cooper Indus., Inc.*, No. 03-476, 2006 WL 2983054, *11 (E.D. Ky. Oct. 17, 2006) (declining to limit the *number* of defendants' experts because, in part, "the defendants may decide not to present certain experts . . . or some of the experts' testimony may be rendered unnecessary" and the court had "nothing on which to rely besides the experts' preliminary Rule 26 reports"). But in this case, the parties' have already established that the *only* opinion Duffy might possibly provide on the first two damage components merely parrots Ms. Davis's conclusions. And when testimony is plainly cumulative, courts do not hesitate to exclude it. *See Mermelstein*, 487 F. Supp. 2d at 266 ("Should the government attempt to offer redundant expert testimony at trial, there is little doubt that . . . [the court] will prevent the government's witnesses from repeating themselves."). And, contrary to defendants' position, expert testimony may be barred on summary judgment when it does not meet standards of admissibility, even if doing so has a dispositive effect. *See Grant v. Pharmative, LLC*, 452 F. Supp. 2d 903, 910 (D. Neb. 2006) (excluding expert testimony and granting summary judgment because party lacked evidence to defeat motion in light of ruling).

Indeed, if Duffy has any opinion as to these damage components that is *not* cumulative of Ms. Davis's conclusions, he would be barred from offering it at trial. Duffy's report discloses only one opinion about these components—that of Ms. Davis. Pl.'s Mot., Ex. 2 at Ex. A.

Moreover, Duffy conceded that the only "work" he performed with respect to these components was to take Ms. Davis's calculations and plug them into his damages model. Pl.'s Mot., Ex. 1, Duffy Dep. at pp. 43:11-46:19, 83:6-17. Thus, Duffy is barred from offering any opinion on these damages—other than repeating Ms. Davis's damage calculations—having failed to prepare or disclose one.

II.     **Duffy's Opinions About Future Costs Of Replacement Clerkships Should Be Precluded Because He Conceded His Lack Of Qualification On The Subject.**

As for the third component, Duffy did not dispute Ms. Davis's method of calculating these damages but instead criticized the growth rate she used to determine the future costs of clerkships. Ross moved to preclude this testimony because Duffy conceded that he lacks the knowledge or expertise to render an opinion about the future cost of medical school clerkships. Defendants attempts to establish Duffy's qualifications fail for several reasons.

A.    **Duffy Conceded He Is Not An Expert Regarding Medical Clerkships.**

First, Duffy explicitly admitted he is not an expert on the cost of medical school clerkships. Duffy unequivocally answered "No" when asked "Do you consider yourself an expert about the pricing of clerkship rotations provided by hospitals to medical schools for their students?" Pl.'s Mot, Ex. 1 at p. 84:9-14. This concession alone is enough to preclude his testimony. See *Bloom v. ProMaxima Mfg. Co.*, 669 F. Supp. 2d 321, 329 (W.D.N.Y. 2009) ("[The Court] should not permit [a proffered expert] to testify" where "[a]t his pretrial deposition, [he] candidly conceded that he was not competent to testify on the issue[.]").

Defendants' argue that Ross' expert cannot "pass the [same] test" because "she, too, lacks any expertise or experience with respect to medical school clerkships specifically." Defs.' Opp. at 10. But the testimony cited by defendants does not support this bald statement. The question posed to Ms. Davis was whether her "*work in the past dealt with medical school*

3

*clerkships*"—*not* whether she was qualified to opine as to the cost of such clerkships. Defs.' Opp. at 10. Indeed, had defendants posed the latter question, the answer would have been categorically affirmative. To prepare her opinion, Ms. Davis spent hundreds of hours reviewing years of Ross' clerkship cost data; interviewed Ross' employees to understand its contracts with defendants and other institutions and the clerkship market generally; and checked her projected future clerkship rates against publicly available clerkship cost information. Pl.'s Mot., Ex. 3 at pp. 8-9, 15-16. Having performed all of this work, she certainly has the "specialized knowledge" required to offer an expert opinion as to Ross' future clerkship costs. *See* Fed. R. Evid. 702.

Unlike Ms. Davis, however, Duffy did not do anything to become familiar with the subject matter on which he opined—other than review Ms. Davis's report. Pl.'s Mot, Ex. 1 at p. 67:19– 68:3. He did not: review any data regarding historical clerkship rates, much less perform any analysis of such data (*id.* at p. 32:4–25); interview anyone familiar with the market for medical school clerkships; or even perform any research regarding clerkship markets in general (*id.* at p. 68:4-9). Moreover, Duffy did not even bother to obtain information from *his own clients* about the prices they charge other medical schools for clerkships. *Id.* at p. 68:17-20. Indeed, Duffy's experience lies in performing cash flow estimates and business valuations, which bears no obvious relation to the future cost of medical school clerkships (and defendants fail to explain any connection). This is not merely an issue of weight, as defendants contend; it is a complete lack of qualification based on a failure to perform any work whatsoever.

### B.    Duffy Is Not Qualified To Opine That CPI-U Is A Better Growth Rate.

Finally, contrary to defendants' contention, Duffy is not qualified "to critique the valuation methodology that Ms. Davis used to calculate the Clerkship Cost Growth Rate," much less opine that CPI-U is a better predictor of clerkship costs. Defs.' Opp. at 8. As described more fully in Ross' Motion to Preclude, Duffy does not quarrel with Ms. Davis's *method* of

4

calculating Ross' future clerkship costs; instead, he differs only with respect to the growth rate used to calculate the projected future increase in those costs. Defs.' Opp. at 8-9. But, once again, Duffy did not review any of the underlying data used by Ms. Davis, or review any other evidence, or study any aspect of the medical clerkship market before concluding that her growth rate was unreasonable. Therefore, having no evidentiary support for his conclusions, he has no basis to opine, as defendants argue, that Ms. Davis's opinion is "unreliable for predicting future market-wide trends" or that her growth rate "is too limited and ignores other, more appropriate measures for determining future growth rates." Defs.' Opp. at 8-9.

Moreover, Duffy provides no basis to opine that CPI-U is a more appropriate growth rate for calculating the future costs of clerkships. Duffy had no idea whether medical school clerkships are measured as part of CPI-U, which reflects the price for general goods and services in urban areas generally. Pl.'s Mot., Ex. 1 at 62:6-63:7. And he performed no research or other work to establish any correlation between CPI-U and the cost of medical clerkships. Therefore, regardless of any experience performing business valuations generally, Duffy has not established the necessary predicate—either through knowledge, experience, research, or some combination thereof—to provide an opinion as to Ross' future clerkship costs.

## CONCLUSION

Therefore, for all of these reasons, and for those set forth in Plaintiff's Motion to Preclude Defendants' Expert Witness, the Court should preclude the testimony of Anthony G. Duffy.

5

                                                Respectfully submitted,

                                                **BAKER & HOSTETLER LLP**

| | |
|---|---|
| | /s/ George Tzanetopoulos |
| Sammi Malek | George Tzanetopoulos |
| 45 Rockefeller Plaza, 11th Floor | 191 North Wacker Drive, Suite 3100 |
| New York, New York 10111 | Chicago, Illinois, 60606 |
| Tel: (212) 589-4200 | Tel: (312) 416-6200 |
| Fax: (212) 589-4201 | Fax: (312) 416-6201 |
| smalek@bakerlaw.com | gtzanetopoulos@bakerlaw.com |

                                                *Counsel for Plaintiff Ross University School of Medicine, Ltd.*