UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
ROSS UNIVERSITY SCHOOL OF
MEDICINE, LTD.,

Plaintiff,

– against –

BROOKLYN-QUEENS HEALTH CARE,
INC. and WYCKOFF HEIGHTS MEDICAL
CENTER,

Defendants.
-------------------------------------------------X

09 Civ. 1410 (KAM) (RLM)

# PLAINTIFF ROSS UNIVERSITY'S
# REPLY IN SUPPORT OF ITS MOTION
# FOR PARTIAL SUMMARY JUDGMENT

**BAKER & HOSTETLER LLP**

George Tzanetopoulos
191 North Wacker Drive, Suite 3100
Chicago, Illinois, 60606
Tel: (312) 416-6200
Fax: (312) 416-6201
gtzanetopoulos@bakerlaw.com

Sammi Malek
45 Rockefeller Plaza, 11th Floor
New York, New York 10111
Tel: (212) 589-4200
Fax: (212) 589-4201
smalek@bakerlaw.com

*Counsel for Plaintiff Ross University School of Medicine, Ltd.*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 1

I. DEFENDANTS HAVE NOT ESTABLISHED A MATERIAL ISSUE OF FACT AS TO DAMAGES. ........................................................................................ 1

    A. If This Court Precludes Defendants' Damages Expert, There Is No Issue Of Material Fact That Ross' Damages Are $20,089,501 ...................................... 1

    B. Even If This Court Declines To Preclude Defendants' Damages Expert, There Is No Issue Of Fact Regarding The Minimum Damages At Stake. ............ 3

II. ROSS IS ENTITLED TO PARTIAL SUMMARY JUDGMENT THAT BQHC BREACHED. ................................................................................................................ 5

    A. Applicable Legal Standards ................................................................................. 5

    B. Application Of The Legal Standards Precludes Defendants' Argument ............... 6

III. DEFENDANTS HAVE NOT ESTABLISHED AN ISSUE OF MATERIAL FACT AS TO THEIR AFFIRMATIVE DEFENSES. ...................................................... 9

    A. Defendants Cannot Seriously Contend That BQHC Did Not Receive Any Payments From Ross .......................................................................................... 9

    B. Defendants Fail To Point To Any Evidence That BQHC Acted As An Agent For A Disclosed Principal. ....................................................................... 10

CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Brad H. v. City of New York*, 951 N.E.2d 743, 928 N.Y.S.2d 221 ............................................... 6, 7

*Century Pacific, Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206 (S.D.N.Y. 2007) ..................... 3

*Consol. Risk Svcs., Inc. v. Automobile Dealers WC Self Insurance Trust*,
    No. 06-871, 2010 WL 2735701 (N.D.N.Y. July 9, 2010) ............................................................. 3

*Faulkner v. Nat'l Geographic Soc.*, 452 F. Supp. 2d 369 (S.D.N.Y. 2006) ..................................... 8

*Izzo v. ING Life Ins. and Annuity Co.*, 235 F.R.D. 177 (E.D.N.Y. 2005) ......................................... 9

*McDonald's Corp. v. Robert A. Makin, Inc.*,
    653 F. Supp. 401 (W.D.N.Y. 1986) ............................................................................................. 10

*Milestone Shipping, SA v. Estech Trading LLC*, No. 11-14, 2011
    WL 4344098 (S.D.N.Y. Sept. 8, 2011) .......................................................................................... 5

*Monsanto Co. v. Haskel Trading, Inc.*, 13 F. Supp. 2d 349 (E.D.N.Y. 1998) ................................. 4

*Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*,
    86 N.Y.2d 685, 660 N.E.2d 415 (1995) ........................................................................................ 8

*Ramos v. SimplexGrinnell LP*, No. 07-981, 2011 U.S. Dist. LEXIS 65593,
    *79 (E.D.N.Y. June 21, 2011) ........................................................................................................ 3

*Record Club of Am., Inc. v. United Artists Rec., Inc.*, 890 F.2d 1264 ............................................ 8

*Ruggieri v. Harrington*, 146 F. Supp. 2d 202 (E.D.N.Y.) ............................................................... 8

*Sayers v. Rochester Tel. Corp. Suppl. Mgmt. Pension Plan*, 7 F.3d 1091 (2d Cir. 1993) ............... 6

*Textron Financial Corp. v. Seven Falls Golf & River Club, LLC*,
    No. 09-312, 2011 WL 251115 (W.D.N.C. Jan. 25, 2011) ............................................................ 1

*Weinstock v. Columbia University*, 224 F.3d 33 (2d Cir. 2000) ................................................ 1, 5

## INTRODUCTION

Plaintiff Ross University School of Medicine, Ltd. ("Ross") seeks partial summary judgment on three issues: (1) damages; (2) BQHC's liability for breach of contract; and (3) six affirmative defenses asserted by defendants. Ross' motion should be granted in each respect because defendants offer no evidence to create a triable dispute on any of these issues.

## ARGUMENT

### I. Defendants Have Not Established A Material Issue Of Fact As To Damages.

Ross seeks partial summary judgment as to damages on two alternative bases. As explained more fully in its Memorandum of Law, Ross' expert calculated damages in three components totaling $20,089,501. Defendants' expert did not dispute two of the components—differing only as to a third—and opined that damages totaled $12,876,134. If the Court precludes defendants' expert, Ross seeks a finding that damages are $20,089,501; if the Court declines to do so, Ross seeks a finding that damages are at a minimum the amount calculated by defendants' expert and limiting proceedings at trial to only the disputed component.

#### A. If This Court Precludes Defendants' Damages Expert, There Is No Issue Of Material Fact That Ross' Damages Are $20,089,501.

Although defendants quibble with Ms. Davis's opinions, they do not offer any *evidence* that would create an issue of material fact regarding the amount of Ross' damages. *See Textron Financial Corp. v. Seven Falls Golf & River Club, LLC*, No. 09-312, 2011 WL 251115, *6 (W.D.N.C. Jan. 25, 2011) ("Summary judgment with respect to damages is appropriate when there is no genuine issue of material fact regarding the amount of damages claimed."). Summary judgment, as the Second Circuit has observed, is the time "to put up or shut up," *Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir. 2000), and defendants have the burden to come forward with evidence showing there is a genuine dispute for trial on this issue. Other than their

purported expert, whose testimony should be excluded, defendants do not put forth any evidence from which a reasonable fact-finder could find for them on damages.

Instead, defendants argue that even if the Court grants Ross' motion to preclude, summary judgment is not appropriate because Ms. Davis's opinion "will be the subject of intense scrutiny at trial." Defs.' Opp. at 23. For example, defendants' argue that Ms. Davis's opinions are subject to question because she looked only at Ross' payment records and failed to account for contracts that involved multi-year terms or prepayment structures. Defs.' Opp. at 23-24. But not only is this contention untrue—her expert report confirms she reviewed market rates, including for multi-year contracts, *see* App. I at pp. 14-15—but defendants offer no evidence to support their argument that other data would have yielded more reliable results.

Similarly, defendants offer the unsupported attack that Ms. Davis incorrectly assumed that Ross will fully utilize all clerkships available through the end of the Affiliation Agreement. Defs.' Opp. at 24. But again, defendants provide no evidence that creates an issue of material fact regarding these assumptions. Moreover, even defendants' expert agreed that Ross would renew the Affiliation Agreement through 2018 and fully utilize every clerkship slot available. *See* Pl.'s App. K, Report of Anthony G. Duffy, at p. 6 ("I assumed that Ross would continue to utilize the full number of clerkship slots pursuant to the Second Amendment."). Thus, there is no factual basis to attack Ms. Davis on these grounds.[1]

---

[1] Defendants raise two additional criticisms that are meritless. First, defendants argue that "Ms. Davis also assumes that Ross will not take any steps to mitigate its damages . . . [such as] raising tuition." Defs.' Opp. at 24. But Ross has no obligation to mitigate by passing along costs from defendants' breach of contract to its students. Likewise, defendants cite a newspaper article to support their argument that "Ms. Davis fails to acknowledge that a variety of legislative, political, or economic factors may dramatically alter the marketplace for medical school clerkships." Defs.' Opp. at 25. But not only does this article fail to support such a broad proposition, it is inadmissible on summary judgment. *See Century Pacific, Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 217 (S.D.N.Y. 2007) ("Newspaper articles offered for the truth of the matter asserted are inadmissible hearsay.").

2

Indeed, unlike the cases cited in defendants' Response, defendants have submitted no evidence to create an issue of material fact about the underlying data or methodology Ms. Davis used to calculate Ross' damages. *See Ramos v. SimplexGrinnell LP*, No. 07-981, 2011 U.S. Dist. LEXIS 65593, *79 (E.D.N.Y. June 21, 2011) (denying summary judgment on damages because "defendant has pointed to paper time records of individual employees that seem to be inconsistent with [the expert's] calculations with respect to those employees" and "[it] has also raised a question of fact with respect to whether [plaintiff's expert] accurately distinguished TI and non-TI hours of labor."); *Consol. Risk Svcs., Inc. v. Automobile Dealers WC Self Insurance Trust*, No. 06-871, 2010 WL 2735701, *7 (N.D.N.Y. July 9, 2010) (denying summary judgment on damages based on "issues of fact"). Therefore, if defendants' expert is precluded (which he should be), then there is no issue of material fact regarding damages and partial summary judgment is appropriate setting Ross' damages at $20,089,501.

**B.    Even If This Court Declines To Preclude Defendants' Damages Expert, There Is No Issue Of Fact Regarding The Minimum Damages At Stake.**

But even if this Court does not preclude defendants' expert, partial summary judgment is still warranted finding that the minimum damages are $12,876,134. This figure is the sum of three components: two past fixed costs, including (1) the amount of Ross' unearned prepayment ($6,277,266), and (2) Ross' incremental costs to replace clerkships from the Hospitals' closure through June 2011 ($1,073,501); plus *defendants'* estimate of future costs Ross will incur to replace lost clerkships from July 2011 to January 2018 ($5,525,367). Once again, defendants fail to offer any evidence that would create an issue of material fact as to these amounts.

Curiously, defendants argue that this Court cannot set a minimum amount of damages because their damages' expert "explicitly did *not* adopt *any* of Ms. Davis's conclusions . . . relating to the first two components of Ross' alleged damages." Defs.' Opp. at 25-26 (emphasis

3

in original). But this argument is clearly contradicted by their expert's report, which explicitly sets forth a "Summary of Damages" that includes Ms. Davis's figures for the first two categories of damages. Pl.'s App. K at Ex. A. And defendants' expert also opined that Ms. Davis overstates Ross' damages by the difference between his estimate of the third component of damages ($5,525,367) and Ms. Davis's original calculation of this component ($14,319,208). *See* Pl.'s App. K at p. 8. Such a conclusion necessarily requires Duffy to have "adopted" Ms. Davis's calculations as to the first two damage components.

More importantly, any dispute over whether Duffy "adopted" Ms. Davis's figures is immaterial without some evidence that he could offer an alternative calculation for the first two components of damages. But because Duffy did not prepare and disclose any such opinion, as defendants argue, then he cannot craft one later for trial. And because defendants have not offered any evidence to dispute the first two damage components, then there is no basis to find any material dispute as to these amounts.

And even if the Court does not preclude Duffy's testimony as to the third component of damages, there is still no material dispute as to the *minimum* amount of damages Ross incurred due to the incremental cost to replace clerkships from July 2011 through the end of the contract in January 2018. Ross' expert opined that these damages are $12,738,735; defendants' expert opined that these same damages are $5,525,367. And where proceedings on summary judgment establish a range of damages, the Court may order that trial on damages be limited to establishing the amount within that range. *See Monsanto Co. v. Haskel Trading, Inc.*, 13 F. Supp. 2d 349, 362 (E.D.N.Y. 1998). Therefore, even if this Court does not preclude defendants' expert testimony, it should still find Ross' minimum damages to be $12,876,134: the undisputed first two components of damages, plus the third component as calculated by defendants' expert.

4

## II.  Ross Is Entitled To Partial Summary Judgment That BQHC Breached.

Defendants attempt to avoid entry of summary judgment against BQHC on the issue of BQHC's breach by arguing that the contract is ambiguous. The argument is baseless.[2]

### A.  Applicable Legal Standards.

The applicable legal standards are well settled. "Ascertaining whether or not a writing is ambiguous is a question of law for the trial court." *Sayers v. Rochester Tel. Corp. Suppl. Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993) (internal quotation marks and citations omitted). "Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* at 1095.

Particularly relevant here, "[p]arties to a contract may not create an ambiguity merely by urging conflicting interpretations of the language in question, nor "does ambiguity exist where one party's view strains the contract language beyond its reasonable and ordinary meaning." *Milestone Shipping, SA v. Estech Trading LLC*, No. 11-14, 2011 WL 4344098, *6 (S.D.N.Y. Sept. 8, 2011) (quotation marks omitted). "Ambiguity is determined within the four corners of the document; it cannot be created by extrinsic evidence that the parties intended a meaning

---

[2] Defendants also make a passing attempt at arguing that Ross did not demonstrate that Ross paid what it owed under the contract. The Court need not pause long over that argument, however, because: (1) Ross in fact attached to the motion the report and testimony of its damages expert that in fact demonstrates all payments due from Ross were made, Pl.'s App. I at Ex. B; (2) the materials that Defendants submitted in opposition to the motion confirm that the payments were made, Defs.' Add'l Facts ¶¶1-4; and (3) at this stage of the proceedings, Defendants cannot avoid summary judgment with unsupported assertions that Ross may not have paid, but must come forward with evidence (which for good reason defendants did not do here, *viz.,* defendants' own motion papers contain the undisputed evidence of payment) to support the assertion of non-payment or lose the motion. *See Weinstock*, 224 F.3d at 41.

5

different than that expressed in the agreement." *Brad H. v. City of New York*, 951 N.E.2d 743, 746, 928 N.Y.S.2d 221, 224 (N.Y. 2011).

### B. Application Of The Legal Standards Precludes Defendants' Argument.

The contract provides that, in exchange for a multimillion dollar prepayment, "BQHC shall cause the Hospitals to provide clinical clerkships." Pl.'s App. B at Ross0062. The contract also contains the clause central to this dispute (the "Guaranty Clause"):

> In the event the Hospitals are not operative, and the University is not in breach of the Agreement, BQHC agrees to provide the University with an equivalent number of clerkships as agreed to herein at one or more of its other facilities.

*Id.* at Ross0064. It is undisputed that from the time that the parties entered into the contract to the present, the only "other facility" of BQHC that could provide these clerkships was Wyckoff.

Defendants concede the obvious, *i.e.*, the contract can reasonably be interpreted to require that BQHC provide replacement clerkships at Wyckoff. Defs.' Opp. at 14. They attempt to concoct ambiguity, however, by arguing that BQHC *could* have acquired other "facilities" in the future and therefore the Guaranty Clause can be read to mean that the guaranteed replacement clerkships must be provided at those as yet non-existent BQHC facilities, but *never* at Wyckoff.[3]

To state the argument is to refute it. It is ludicrous to assert that the language at issue can be construed to require that replacement clerkships *not* be provided at the only other BQHC facility that could provide them. It is certainly the case that had BQHC acquired other facilities that could provide clerkships, BQHC would have been required to provide Ross with clerkships at those facilities, too. But BQHC did not do so, and the contract language simply cannot be

---

[3] Before discussing the lack of merit in this argument, we note that defendants' assertion of it disposes of their argument that BQHC would not or could not contract to provide replacement clerkships at Wyckoff because regulatory requirements prevent it from doing so anywhere. Obviously, if, as defendants assert here, BQHC contracted to provide replacement clerkships at as yet unacquired "facilities," it would and could do so at Wyckoff.

6

reasonably read to provide that BQHC *not* provide replacement clerkships at the only other of its facilities that can provide them. As a matter of New York law, such a strained interpretation does not create an ambiguity in the contract.

Defendants also attempt to concoct ambiguity by citing (actually mis-citing) emails that defendants' claim show BQHC did not want references to "Wyckoff" in the contract. First, as discussed above, New York law does not permit ambiguity to "be created by extrinsic evidence." *Brad H.*, 951 N.E.2d at 746, 928 N.Y.S.2d at 224. On those grounds alone, defendants' claim of ambiguity fails as a matter of law and Ross is entitled to partial summary judgment.

Moreover, the Court need not be concerned that any injustice would result here from application of the "four corners" rule that New York law requires. Defendants' description of its extrinsic evidence is a gross mischaracterization. As discussed in Ross' response to defendants' motion for partial summary judgment, even a cursory review of defendants' extrinsic evidence shows BQHC's refusal to include in the contract an express reference to freezing prices under the parties' preexisting contract for the provision of clerkships at Wyckoff, not any refusal to sign a contract that included the Guaranty Clause. Pl.'s Resp. at 6-8; Pl. ¶¶38-49. Further, the evidence demonstrates that BQHC expressly and intentionally agreed to the Guaranty Clause and that its most senior executives and lawyers checked off on that agreement. *Id.* Thus, even if the Court were to consider extrinsic evidence, there still would be nothing to support defendants' argument of ambiguity. *See Faulkner v. Nat'l Geographic Soc.*, 452 F. Supp. 2d 369, 375-76 (S.D.N.Y. 2006) (summary judgment granted because "the extrinsic evidence creates no genuine issue of material fact and permits interpretation of the agreement as a matter of law").

The cases cited by defendants, in which courts find that contract language does not answer disputes over which of a number of options unspecified by the contract the claimant has

7

rights to, are entirely inapposite to this action. Thus, for example, in *Ruggieri v. Harrington*, 146 F. Supp. 2d 202 (E.D.N.Y. 2001), a tenured professor settled an employment discrimination claim against the college that employed her with a contract that permitted her to seek some positions at the College, but provided that she would not "apply for 'any administrative position'" in the future. *Id.* at 207. The court held that the language of the contract did not unambiguously answer the question of whether she breached by applying for a position as a department chair because it was unclear whether among the many jobs at the college the position department chair was or was not administrative. In contrast, this dispute is one over whether or not BQHC must provide clerkships at all at the only other of its facilities that can provide them. That question is obviously one that the contract language unambiguously answers.

Defendants' attempt to assert the doctrine of *contra proferentem* to avoid summary judgment is also plainly baseless. "Rules of construction, such as the principle that in certain circumstances a contract may be construed adversely to the party that drafted it are principles of last resort to be invoked when efforts to fathom the parties' intent have proved fruitless." *Record Club of Am., Inc. v. United Artists Rec., Inc.*, 890 F.2d 1264, 1271 (2d Cir. 1989) (citations omitted). As defendants concede, the language of the contract readily supports the interpretation that BQHC must provide replacement clerkships at Wyckoff. Defs.' Opp. at 14. And even if rules of construction factor in here, defendants' interpretation would violate the requirements that contracts must be read to give meaning to all terms, *see Izzo v. ING Life Ins. & Annuity Co.*, 235 F.R.D. 177, 186 (E.D.N.Y. 2005), and should not be interpreted to work a forfeiture unless the language explicitly requires it, *see Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 691, 660 N.E.2d 415, 418 (1995). Reading the Guaranty Clause to exclude the only BQHC facility that ever has had the ability to provide clerkships would violate both.

### III. Defendants Have Not Established An Issue Of Material Fact As To Their Affirmative Defenses.

#### A. Defendants Cannot Seriously Contend That BQHC Did Not Receive Any Payments From Ross.

Ross moved for partial summary judgment on defendants' Fourth, Fifth, Seventh, and Eighth Affirmative Defenses (impossibility, *ultra vires*, lack of authority, and mutual mistake, respectively) because a predicate to each is that defendants returned Ross' $6.2 million prepayments. Pl.'s Mem. at 9 (collecting authority). Defendants argue summary judgment cannot be entered on these affirmative defenses because they never received any payments under the contract, and thus have nothing to pay back. This argument is patently meritless.

Defendants' argument hinges on their contention that Ross made its prepayments to a bank account held by "exclusively" by Caritas. Defs.' Opp. at 20. But Ross made the prepayments only to where defendants directed they should go. The undisputed evidence is that Julius Romero, whom defendants represented in affidavits submitted to a U.S. District Court was "Assistant Vice President for Medical Education for Defendant Brooklyn Queens Health Care, Inc.," Pl.'s Add'l Facts ¶17, and Claire Mullally, whose own email signature block describes her as BQHC's in-house counsel, Roeber Opp. Dec., Ex. 16, directed Ross to make each of its prepayments to a specific account. The Affiliation Agreement also clearly shows that BQHC was the intended recipient of the funds. Pl.'s App. B at Ross0056, 0062-63 ("[Ross] agrees that *it will pay BQHC* as follows"; "[Ross] *will deposit with BQHC . . .*"; "*In consideration of such payment, BQHC shall cause* the Hospitals to provide clinical clerkships"). Finally, regardless of the account into which BQHC directed the prepayments to be deposited, it is clear that defendants shared the benefits between themselves. *See* Pl.'s Add'l Facts ¶¶96-102.

In short, there is no merit to defendants' argument that "Ross never paid any money to the Defendants (BQHC and Wyckoff)[] pursuant to the Affiliation Agreement" so that "there is

9

nothing defendants need to pay back[.]" Defs.' Opp. at 20. Instead, the undisputed evidence is that defendants have retained the balance of Ross' unearned prepayments. Pl.'s App. I at Ex. B. Thus, Ross is entitled to summary judgment in its favor on each of these defenses.

### B. Defendants Fail To Point To Any Evidence That BQHC Acted As An Agent For A Disclosed Principal.

Finally, Ross seeks summary judgment on defendants' Sixth Affirmative Defense—that "BQHC acted as agent for a disclosed principal, Caritas"—because the Affiliation Agreement clearly states that BQHC is the contracting party to be bound. Pl.'s Mem. at 11. Defendants' insist that Ross is "wrong" on the facts and the law, but their arguments miss the point.

Defendants cite no evidence that BQHC was acting on behalf of a disclosed principal. To the contrary, the Affiliation Agreement states throughout that BQHC is acting on its own behalf and is causing its subsidiary, Caritas, to perform. Pl.'s App. B at Ross0056 ("Brooklyn Queens Health Care, Inc. ("BQHC"), which *through its subsidiary*, [Caritas], owns and operates [the Hospitals]"); *id*. at Ross0062 "*BQHC shall cause the Hospitals* to provide [clerkships]"). Moreover, the undisputed evidence of the parties' negotiations only confirms this understanding. Pl.'s App. 11 at Ross009216 ("To complement a proposal *submitted by the Brooklyn Queens Healthcare, Inc.* last month" "*BQHC provides and guarantees 'green-book' clerkships* at its Caritas campuses"); Pl.'s App. 20 at Ross008748 ("Caritas encompasses Saint John's Queens Hospital and Mary Immaculate Hospital *under the auspices of Brooklyn Queens Healthcare (BQHC)*, which also operates Wyckoff Heights Medical Center.")

There is simply no basis for defendants to assert that Caritas was a disclosed principal, much less that there is a dispute over whether BQHC intended to be bound to the Affiliation Agreement. Therefore, summary judgment on defendants' Sixth Affirmative Defense is warranted, as well.

## CONCLUSION

WHEREFORE, for the foregoing reasons and for those set forth in its Memorandum of Law, Plaintiff Ross University School of Medicine, Ltd. respectfully requests that this Court enter partial summary judgment in its favor on the amount of damages at issue, defendant Brooklyn Queens Health Care, Inc.'s liability for breach of contract, and defendants' Fourth, Fifth, Sixth, Seventh, and Eighth affirmative defenses, and grant such other relief as this Court deems fit.

Respectfully submitted,

**BAKER & HOSTETLER LLP**

| | |
|---|---|
| Sammi Malek | / s/ George Tzanetopoulos |
| 45 Rockefeller Plaza, 11th Floor | George Tzanetopoulos |
| New York, New York 10111 | 191 North Wacker Drive, Suite 3100 |
| Tel: (212) 589-4200 | Chicago, Illinois, 60606 |
| Fax: (212) 589-4201 | Tel: (312) 416-6200 |
| smalek@bakerlaw.com | Fax: (312) 416-6201 |
| | gtzanetopoulos@bakerlaw.com |
| | *Counsel for Plaintiff Ross University School of Medicine, Ltd.* |