# Baker Hostetler

Baker&Hostetler LLP

191 North Wacker Drive
Suite 3100
Chicago, IL 60606-1901

T 312.416.6200
F 312.416.6201
www.bakerlaw.com

May 15, 2012

George J. Tzanetopoulos
direct dial: 312.416.6225
gtzanetopoulos@bakerlaw.com

**BY ECF**

Honorable Roanne L. Mann
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

Re:    *Ross University. v. Brooklyn-Queens Health Care Inc.*
        No. 09 Civ. 1410 (KAM) (RLM)

Dear Judge Mann:

I represent Plaintiff Ross University School of Medicine, Ltd. ("Ross") and write pursuant to Local Rule 37(3)(c) and Your Honor's Individual Rule III to request a premotion conference regarding Ross' intention to file a motion to reopen discovery on the limited issue described below.  Information has recently come to light in connection with the Brooklyn District Attorney's investigation of allegations of conflicts of interest and self-dealing lodged against board members and executives of defendant Wyckoff Heights Medical Center ("Wyckoff") that, we respectfully submit, merits this limited reopening of discovery.

As the Court will recall, this case is an action brought by Ross against Defendants Brooklyn Queens Health Care, Inc. ("BQHC") and Wyckoff for breach of a contract under which Ross advanced substantial sums to BQHC in exchange for BQHC's promise to cause two hospitals owned by one of its subsidiaries, Caritas Healthcare, Inc., to provide clinical clerkship rotations for Ross' medical students.  The contract expressly provided that if those two hospitals ceased to operate, BQHC would cause the clerkships to be provided at another of BQHC's facilities.  Wyckoff is the only other such facility.

The hospitals filed for bankruptcy and have ceased to operate, but defendants refuse to provide the promised replacement clerkships at Wyckoff.  BQHC is a shell with few assets

*Chicago    Cincinnati    Cleveland    Columbus    Costa Mesa*
*Denver    Houston    Los Angeles    New York    Orlando    Washington, DC*

Baker Hostetler

Honorable Roanne L. Mann
May 15, 2012
Page 2

other than Wyckoff. Accordingly, one of the remedies that Ross seeks for the breach is an order requiring that BQHC specifically perform its promise to cause provision of the contractually guaranteed clerkships at Wyckoff.

One of the grounds on which defendants have attempted to defend against specific performance is to claim that it would be inequitable or impractical to require Wyckoff to provide replacement clerkships to Ross because Wyckoff has contracted to provide at least some clerkships in the future to other medical schools.

As the Court will recall, this claim gave rise to a discovery dispute that the Court resolved. Ross served defendants with discovery requests that sought the details about Wyckoff's contracts with other medical schools for those clerkships. Defendants resisted, claiming that responding to the discovery requests ran the risk that alleged competitive harm would come from disclosing that information. Defendants persuaded the Court on this point and Your Honor limited the discovery to a requirement that defendants answer in good faith "narrowly targeted interrogatories requesting information regarding Wyckoff's future clerkship capacity." Exh. 1. Ross served these interrogatories, but defendants answered them only partially. Exh. 2. Defendants stated that Wyckoff presently had capacity to provide 406 clerkships, claimed that Wyckoff had contractually committed 206 of these clerkships to other schools, refused to answer as to the number of those clerkships that Wyckoff committed to others after defendants had received notice of Ross' claims in this action, and refused to answer whether Wyckoff had received any prepayment for the clerkships. *Id.*

Information uncovered recently indicates that defendants' resistance to Ross' discovery requests was not a legitimate effort to protect sensitive competitive information, but rather may have been an attempt to conceal that Rajiv Garg, the Wyckoff CEO who made the decision to dishonor the contract with Ross, arranged for the provision of Wyckoff clerkships to another school to line his own pockets. Recent New York Times and Crains New York Business articles report that the Brooklyn District Attorney has subpoenaed documents and convened a grand jury to investigate allegations of myriad conflicts of interest and self-dealing against Wyckoff's board members and executives. Among the acts of self-dealing reported is the provision of Wyckoff clerkships to a Caribbean medical school, Spartan Health Sciences University, in which Mr. Garg and former chief of surgery Dr. Rao are reported to have an ownership interest.

As the Court may recall from earlier proceedings, Julius Romero was the Assistant Vice President of Medical Education for BQHC, Caritas, and Wyckoff. Exh. 3. In that position, he negotiated and supervised clerkship contracts with medicals schools. Romero negotiated the

Baker Hostetler

Honorable Roanne L. Mann
May 15, 2012
Page 3

contracts and amendments that are in issue in this action. Rajiv Garg was on the board of
Wyckoff beginning in April of 2008 and became CEO of Wyckoff in November of 2008.
Exh. 4. Garg testified that it was he who made the decision not to provide replacement
clerkships at Wyckoff to Ross when the hospitals closed. Garg testified that he consulted
with Wyckoff's General Counsel, David Hoffman, regarding that decision. *Id.*

The information concerning Garg's reported use of these clerkships for his personal profit
appears to be substantial. The above-referenced articles report that: (1) in April 2008, the
same month in which he became a Wyckoff board member, Garg and Rao bought Spartan
Health Sciences University and signed an affiliation agreement between Spartan and Wyckoff
to provide clerkships (Exhs. 5, 6, 7); (2) the District Attorney is investigating financial ties
between Garg and Spartan and, in particular, payments made to Rao based on the number of
Spartan students that Wyckoff agreed to train (Exh. 7); (3) the investigation includes an
investigation of Hoffman's activities (Exh. 6); (4) Wyckoff's board abruptly fired Garg (Exh.
7); (5) the CEO who replaced Garg promptly forced the resignation of or dismissed Rao,
Hoffman, and Romero (Exhs. 5, 7).

Obviously, evidence that the decision making CEO personally profited from his decision to
commit the clerkships to another school, rather than use those clerkships to satisfy
defendants' contract obligations to Ross, bears directly on whether or not it would be
equitable for the Court to enter a specific performance order that required displacement of that
school. However, newspaper articles are not admissible evidence. When the Court limited
Ross' discovery on Wyckoff's dealings with other schools, it did so in response to defendants'
claims that such limitations were needed to protect competitive information. Neither the
Court nor Ross were in a position to know that the request for the limitations was to conceal
the apparent self-dealing of the CEO.

Under the circumstances, fairness dictates that Ross should now be allowed discovery on
these issues. Accordingly, Ross respectfully requests that discovery be reopened to permit
inquiry into them.

Very truly yours,

George J. Tzanetopoulos

Baker Hostetler

Honorable Roanne L. Mann
May 15, 2012
Page 4


cc:    Walter P. Loughlin