# Baker Hostetler

Baker&Hostetler LLP

191 North Wacker Drive
Suite 3100
Chicago, IL 60606-1901

T 312.416.6200
F 312.416.6201
www.bakerlaw.com

July 13, 2012

George J. Tzanetopoulos
direct dial: 312-416-6225
gtzanetopoulos@bakerlaw.com

**BY ECF**

Honorable Roanne L. Mann
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

  Re: *Ross University. v. Brooklyn-Queens Health Care Inc.*
     No. 09 Civ. 1410 (KAM) (RLM)

Dear Judge Mann:

I represent Plaintiff Ross University School of Medicine in the above-referenced matter.

As Your Honor is aware, Judge Matsumoto referred Defendants' Motion For Partial Summary Judgment [Docket No. 97] to Your Honor for Report and Recommendation. Plaintiff's Response To Defendants' 56.1 Statement Of Undisputed Facts And Additional Facts Requiring Denial Of Summary Judgment [Docket No. 102], filed in connection with Plaintiff's opposition to Defendants' motion for summary judgment, discussed (at p.57, ¶¶ 120 -124) the entry of summary judgment against Brooklyn Queens Healthcare, Inc. and Wyckoff Heights Medical Center in the United States District Court for the Southern District of Florida in *American University of the Caribbean v. Caritas Healthcare, Inc., Wyckoff Heights Medical Center, and Brooklyn Queens Healthcare, Inc.*

I write to update the Court on recent proceedings in *American University* so that the Court will have an up to date record concerning the judicial decisions entered in that case. On June 26, 2102, the United States Court Of Appeals For The Eleventh Circuit

# Baker Hostetler

affirmed the District Court's judgments. *See American University of the Caribbean v. Caritas Healthcare, Inc., Wyckoff Heights Medical Center, and Brooklyn Queens Healthcare, Inc.*, 2012 WL 2383021 (11th Cir. June 26, 2012). I have enclosed a copy of the opinion for the Court's convenience.

Sincerely,

George J. Tzanetopoulos

cc: Walter P. Loughlin

Page 1

Slip Copy, 2012 WL 2383021 (C.A.11 (Fla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 2012 WL 2383021 (C.A.11 (Fla.)))**

**H**
Only the Westlaw citation is currently available.This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Eleventh Circuit Rules 36-2, 36-3. (Find CTA11 Rule 36-2 and Find CTA11 Rule 36-3)

United States Court of Appeals,
Eleventh Circuit.
AMERICAN UNIVERSITY OF THE CARIBBEAN, N.V., a Netherlands Antilles company, Robert Bernauer, a citizen of Louisiana, Jodie Gwin, a citizen of Hawaii, Amit Misra, a citizen of California, Calin Neagoe, a citizen of Massachusetts, et al., Plaintiffs–Appellees,
v.
**CARITAS** HEALTHCARE, INC., a New York corporation, f.k.a. **Caritas** Healthcare Planning, Inc., Defendant,
**Wyckoff** Heights Medical Center, a New York corporation, Brooklyn Queens Healthcare, Inc., a New York corporation, Defendants–Appellants.

No. 10–12836.
June 26, 2012.

Appeal from the United States District Court for the Southern District of Florida. District Court Docket No. 1:08–cv–20374–AJ.

Before EDMONDSON, BARKETT, Circuit Judges, and FULLER,[FN*] District Judge.

FN* Honorable Mark E. Fuller, United States District Judge for the Middle District of Alabama, sitting by designation.

PER CURIAM:

**I. INTRODUCTION**
*1 This appeal arises out of a contract dispute in the United States District Court for the Southern District of Florida. In the proceedings below, the district court granted summary judgment in favor of the American University of the Caribbean (AUC) on its contract claim against Brooklyn–Queens Healthcare (BQHC) and Wyckoff Heights Medical Center (Wyckoff). The court awarded AUC $2,396,526.43 for repayment of a promissory note and $2,519,422.32 in consequential damages for the breach of an attendant service agreement. Claiming that the district court lacked personal jurisdiction, ignored disputed factual issues, and improperly awarded consequential damages, BQHC and Wyckoff have asked us to overturn this decision. That we will not do. The district court's decision is AFFIRMED for the reasons discussed below.

**II. BACKGROUND**
**A. The parties**
AUC is a medical school in the Netherland Antilles with a satellite office in Coral Gables, Florida. The university offers a four-year medical degree consisting of two years of basic science training at the Netherland Antilles campus followed by two years of clinical work, typically done in the United States during a clerkship with a hospital. The first clerkship year covers core specialties; the second covers electives. Medical schools compete intensely to place their students in these clerkship spots as the number of medical students has increased while the supply of clerkships has remained relatively static.

BQHC is a New York corporation and the parent company of both Caritas Healthcare and Wyckoff. Although initially a defendant in the case, Caritas Healthcare has declared bankruptcy and is no longer involved—its bankruptcy filing triggered the automatic stay. See 11 U.S.C. § 362.

**B. The deal**
This case has its roots in an agreement that

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 2383021 (C.A.11 (Fla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 2012 WL 2383021 (C.A.11 (Fla.)))**

Caritas and BQHC entered into with AUC. In 2006, Caritas and BQHC approached AUC and asked for capital to upgrade Caritas's facilities and acquire two hospitals that had recently filed for bankruptcy. AUC agreed to pay $3.5 million to Caritas up front; in exchange, AUC would receive fifty core and twenty elective clerkship slots for its students each year through the end of 2009. In other words, Caritas would pay down its debt to AUC by deducting from the loan balance $341.25 per week for each student enrolled in a clerkship at the hospital. Caritas and AUC memorialized this agreement in two documents—one a promissory note, the other an affiliation agreement. Both Wyckoff and BQHC signed onto the composite agreement as guarantors, hence their presence in this case.

### C. The dispute

Starting in early 2007, AUC placed its students in clerkships with Caritas at $341.25 per week per student, the agreed upon rate. Problems ensued, however, as AUC typically used only twenty-five or thirty of the fifty slots available for the core medical clerkships, sometimes giving Caritas short notice about the number of slots AUC planned on using. The honeymoon ended for good in early 2008 when Caritas, perhaps frustrated with AUC's failure to use all of the clerkship spots it reserved, or maybe itching to raise prices in a market short on supply yet saturated with demand, began threatening to repay the outstanding balance and cancel its deal with AUC. Caritas took the position that § 3.1 of the promissory note allowed it to terminate the deal unilaterally by repaying the loan's balance. AUC disagreed, taking the position that it only advanced the money to Caritas because Caritas had guaranteed clerkships positions for AUC's students.

*2 On January 31, 2008, AUC's counsel sent a letter to BQHC offering to pay for all fifty clerkships, whether used or unused, if Caritas would keep placing students in rotations. Caritas replied the next day, offering to pay down the note's outstanding balance by tendering repayment. Caritas also threatened to deny clerkships to AUC's students.

### D. The proceedings below

AUC and five of its students fired the first shot in litigation, filing suit on February 13, 2008, in the United States District Court for the Southern District of Florida. They initially requested a preliminary injunction and specific performance of the composite agreement. Seven days later, they filed an emergency motion for a preliminary injunction, which the district court granted. The preliminary injunction halted any imminent harm that AUC and its students would have suffered, but it stopped short of requiring Caritas to comply with all aspects of the promissory note and affiliation agreement. The district court, notably, found it had personal jurisdiction over the defendants under Florida's long-arm statute, because AUC had alleged that BQHC, Wyckoff, and Caritas failed to perform contractual obligations in Florida.

To complicate matters, Caritas filed for bankruptcy about a year after the plaintiffs initially filed suit. This triggered the automatic stay which in turn barred further proceedings against Caritas. Believing that Caritas's bankruptcy amounted to a default, AUC demanded that BQHC and Wyckoff make good on their obligations as guarantors and take over educating the students stranded by Caritas's bankruptcy. Wyckoff took on some AUC students under a separate agreement for separate consideration,[FN1] and AUC paid for those rotations upon their completion. A few months later, AUC demanded that BQHC and Wyckoff repay the remaining balance. The day after making this demand, AUC filed its Third Amended Complaint, which dropped the claim for specific performance and instead sought (1) a declaratory judgment resolving the issue of payment for the unused clerkships, (2) repayment of the note, and (3) consequential damages.

> FN1. The parties have agreed that this separate deal would not prejudice their respective legal positions here.

AUC then moved for summary judgment

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:09-cv-01410-KAM-RLM Document 130 Filed 07/13/12 Page 5 of 10 PageID #: 4501

Page 4
Slip Copy, 2012 WL 2383021 (C.A.11 (Fla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2012 WL 2383021 (C.A.11 (Fla.)))

against Wyckoff and BQHC. BQHC and Wyckoff responded by conceding liability on the promissory note. Once they did, the district court entered partial summary judgment on liability, which left the amount of damages as the only issue.

On damages for the outstanding loan balance, AUC submitted an expert's report calculating the balance under three different sets of assumptions.[FN2] Using the lowest of these figures, AUC asked for $2,396,526.43 as repayment for the note. BQHC and Wyckoff did not contest this amount directly. Instead, they argued that AUC put the cart before the horse by assuming it did not have to pay for any unused clerkships. The hospitals claimed that a January 31, 2008, letter sent by AUC to Caritas supported their argument because it stated AUC would pay for the clerkships its students did not ultimately use. The district court disagreed, holding that the letter "was, at most, an offer to modify the existing contract which neither the defendants nor AUC supported with consideration and which [Caritas] rejected." (Order Granting Motion for Partial Summary Judgment, Doc. # 139, at 4.) Accordingly, the district court found that, because AUC did not err by failing to include the unused clerkships in its damages calculation, there existed no genuine issue of material fact on the amount of the outstanding loan balance.

> FN2. The three different methods produced calculations of the remainder of the promissory note plus interest at the rate stated in the contract or at one of two penalty rates. AUC sought to recover using the lowest of the three calculations, namely, the one that used the remaining balance plus the rate of interest in the original contract.

*3 AUC also sought consequential damages in the amount it spent finding replacement clerkships for its students. To this end, AUC submitted an affidavit by Yife Tien, the university's Chief Operating Officer, indicating that it cost AUC $700 per clerkship at another hospital—a full $358.75 more than what Caritas had charged. To calculate the total replacement cost, AUC took the lowest possible balance on the note ($2,396,526.43) and divided it by the price charged by Caritas for each clerkship ($341.25) to get the total number of "clerkship weeks" owed (7,022.79). Then AUC took the difference of the price listed in the note and the cost of cover ($700–$341.25) and multiplied this amount ($358.75) by the clerkship hours owed (7,022.79) to get the total amount of consequential damages incurred ($358.75 x 7,022.78 = $2,519,422.32). The district court accepted this figure after the hospitals failed to submit contradictory evidence.

### III. DISCUSSION
#### A. Personal jurisdiction

BQHC and Wyckoff argued below that the district court lacked personal jurisdiction over them. The district court disagreed, finding that AUC's amended complaint alleged sufficient facts to establish jurisdiction under Florida's long-arm statute. We review this determination de novo. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.,* 593 F.3d 1249, 1257 (11th Cir.2010).

A federal district court sitting in diversity may exercise personal jurisdiction to the extent allowed by the law of the forum state and the Constitution's Due Process Clause. *Meier v. Sun Int'l Hotels, Ltd.,* 288 F.3d 1264, 1269 (11th Cir.2002). The plaintiff "bears the initial burden of alleging ... sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir.2009). If the plaintiff shoulders its initial burden, the defendants must make a prima facie showing on the inapplicability of the state long-arm statute. *Future Tech. Today, Inc. v. OSF Healthcare Sys.,* 218 F .3d 1247, 1249 (11th Cir.2000) (citations omitted). Should the defendants also meet their burden, the plaintiffs must substantiate the claims of jurisdiction by affidavits or other competent proof. *Id.*

BQHC and Wyckoff failed to argue to the district court or in their appellate briefs that exercising

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:09-cv-01410-KAM-RLM Document 130 Filed 07/13/12 Page 6 of 10 PageID #: 4502

Slip Copy, 2012 WL 2383021 (C.A.11 (Fla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2012 WL 2383021 (C.A.11 (Fla.)))

Page 5

personal jurisdiction would deprive them of due process. They have therefore waived this argument. Fed. R.App. P. 28(a)(5) (stating parties must submit all issues on appeal in their initial brief); *United States v. Ford,* 270 F.3d 1346, 1347 (11th Cir.2001) ("[O]ur well[-]established rule is that issues and contentions not timely raised in the briefs are deemed abandoned"). So only the first prong of the personal jurisdiction test, which asks whether AUC satisfied Florida's long-arm statute, is at issue.

Florida's long-arm statute confers jurisdiction over a nonresident defendant when the foreign entity engages in or carries on business in Florida, Fla. Stat. § 48.193(1)(a), or if it breaches a contract by failing to perform in Florida as required, *id.* § 48.193(1)(g). Under Florida law, a debtor presumptively has to pay a creditor at the creditor's place of business, FN3 absent a contractual provision stating otherwise. *Vacation Ventures, Inc. v. Holiday Promotions, Inc.,* 687 So.2d 286, 289 (Fla.Dist.Ct.App.1997). This presumption, standing alone, can satisfy Florida's long-arm statute. *See Kane v. Am. Bank of Merritt Island,* 449 So.2d 974, 975 (Fla.Dist.Ct.App.1984).

> FN3. BQHC and Wyckoff repeatedly assert that a debtor has to pay a creditor at the creditor's *principal* place of business which for AUC is at its Netherland Antilles office, not its Florida office. But none of the case law cited in the briefs support this claim. Nor do the facts show that the hospitals regularly dealt with AUC's home office. Quite to the contrary, correspondence between the parties routinely went to AUC's Florida office.

*4 Applying the burden-shifting framework, AUC's amended complaint made a number of allegations sufficient to state a prima facie case of personal jurisdiction. For example, AUC alleged that the hospitals negotiated the contract in Florida, owed their guaranty obligation there, and that Caritas's bankruptcy triggered BQHC and Wyckoff's obligations. The hospitals did nothing to rebut these assertions. In fact, the hospitals answered the amended complaint by admitting that Caritas owed its repayment obligation in Florida, which means they had notice that they too would have to perform there if Caritas defaulted (which it did). Thus, the district court correctly concluded that it had personal jurisdiction over BQHC and Wyckoff.

### B. Summary judgment on the outstanding loan balance

A motion for summary judgment looks to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). A district court should grant summary judgment when the pleadings and supporting materials show that no genuine issue exists as to any material fact and that the moving party deserves judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex v. Catrett,* 477 U.S. 317, 323 (1986). When the movant has met its initial burden, the non-movant must then designate, by documentary evidence, specific facts showing the existence of a genuine issue for trial. *Jeffery v. Sarasota White Sox, Inc.,* 64 F.3d 590, 593–94 (11th Cir.1995). The nonmoving party may not rely on allegations or denials in its own pleadings to defeat summary judgment. *See, e.g., Matsushita Elec. Indus.,* 475 U.S. at 586; *Brinson v. Raytheon Co.,* 571 F.3d 1348, 1350–51 (11th Cir.2009).

AUC shouldered its initial burden under Rule 56 by submitting an expert damages calculation. The expert calculated how much BQHC and Wyckoff owed on the note under three different scenarios, each reflecting a different method of calculation. AUC went with the lowest of these figures, $2,396,526.43, and sought recovery in that amount. This shifted the burden to BQHC and Wyckoff, requiring the hospitals to designate, by affidavits, depositions, admissions, and answers to interrogator-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:09-cv-01410-KAM-RLM Document 130 Filed 07/13/12 Page 7 of 10 PageID #: 4503

Slip Copy, 2012 WL 2383021 (C.A.11 (Fla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2012 WL 2383021 (C.A.11 (Fla.)))

ies, specific facts showing the existence of a genuine issue for trial. *Jeffery,* 64 F.3d at 593–94.

BQHC and Wyckoff argue that, because AUC sought declaratory relief regarding whether it was obligated to pay for the unused clerkships, the parties disputed an issue underlying the damages calculation, hence making summary judgment inappropriate. This argument is unpersuasive. The hospitals had ample opportunity to secure their own damages expert and submit a calculation using a more favorable set of assumptions. Or they could have deposed AUC's expert to have him run the numbers taking into account different scenarios. At a bare minimum, the hospitals could have attached affidavits from their billing department or Chief Financial Officer showing that they disputed whether AUC had to credit them for the unused clerkships. Besides, BQHC and Wyckoff should have contested this issue on AUC's motion for summary judgment on liability—the extent of the obligation created by the contract's terms is a much more natural place to argue that AUC had to pay for any unused clerkships.

*5 Yet the hospitals did none of these things. Instead, they relied mainly on the pleadings, baldly asserting AUC had to pay for the unused clerkships. This left the district court to choose between a concrete damages calculation on the one hand, and unsupported conjecture on the other. That the court choose the former over the latter does not amount to error. Indeed, naked allegations "without specific supporting facts" have "no probative value" at the summary judgment stage, *Evers v. Gen. Motors Corp.,* 770 F.2d 984, 986 (11th Cir.1985), so the district court did not err by accepting AUC's uncontradicted evidence.

The hospitals also claim that AUC's January 31, 2008, letter to Caritas that offered to pay for all clerkship spots, whether used or unused, created a genuine issue of material fact. But AUC submitted a declaration by Yife Tien stating that AUC sent the letter to induce Caritas to perform an obligation already owed. This shifted the burden to the hospitals who, again, decided to rely on conjecture rather than evidence, this time asserting that AUC could have sent the letter as a strategic admission to help secure a preliminary injunction. This assertion does not suffice: AUC's January 31, 2008, offer to pay for any unused clerkships does not give rise to the inference that AUC had to pay for the spots it had available but did not use before the January 31 offer. Nor does an offer unsupported by consideration create a valid modification, *Excess Risk Underwriters, Inc. v. Lafayette Life Ins.,* 328 F.Supp.2d 1319, 1342–43 (S.D.Fla.2004) (citations omitted), meaning that the letter would not have made AUC liable to pay for any available clerkships it did not use after January 31, 2008 either. The letter, therefore, had no effect on the damages calculation.

Finally, Wyckoff and BQHC argue, for the first time on appeal, that interpretation of the promissory note created a genuine issue of material fact, because the contract's language is evidence supporting their position. *See O'Brien v. McMahon,* 44 So.3d 1273, 1277 (Fla.Dist.Ct.App.2010). Yife Tien's declaration, which states that AUC "was not contractually obligated to" pay for all the slots, whether used or unused, shifted the burden to the hospitals. The language of the note, which the hospitals rely upon, states, "[AUC] shall be invoiced quarterly for the total number of [clerkships] ... active and outstanding ... as multiplied by [$341.25] per week." According to Wyckoff and BQHC, "active" refers to clerkships actually used whereas "outstanding" refers to any unused slots. Since this interpretation contradict's Yife Tien's declaration, the contract itself creates a genuine issue of material fact, according to the hospitals.

This argument runs into two major roadblocks. First, even assuming a genuine issue existed as to the effect of the contract's language, it likely became *immaterial* once the district court entered judgment on liability. This is especially true considering how the hospitals failed to offer evidence rebutting AUC's damages calculation. *See Murciano v. Garcia,* 958 So.2d 423, 423

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:09-cv-01410-KAM-RLM   Document 130   Filed 07/13/12   Page 8 of 10 PageID #: 4504

Page 6

Slip Copy, 2012 WL 2383021 (C.A.11 (Fla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 2012 WL 2383021 (C.A.11 (Fla.)))**

(Fla.Dist.Ct.App.2007) (per curiam) (finding that material elements of a contract claim include "(1) a valid contract; (2) a material breach; and (3) damages").

*6 Second, "generally a court will not consider an issue for the first time on appeal." *Troxler v. Owens–Illinois, Inc.,* 717 F.2d 530, 532 (11th Cir.1983). Here, the hospitals never contested in district court whether AUC had to pay for the unused clerkships under the original contract; they focused on the effect of AUC's January 31 letter, not the language of the promissory note. Accordingly, this is neither the time nor the place to litigate this issue: "as a court of appeals, we review claims of judicial error in the trial courts. If we were to regularly address questions-particularly fact—bound issues—that districts court never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court." *Access Now, Inc. v. Southwest Airlines, Co.,* 385 F.3d 1324, 1331 (11th Cir.2004). The district court's decision on the amount of the outstanding loan balance is consequently due to be affirmed.

### C. Consequential damages

The district court also granted summary judgment on AUC's claim for $2,519,422.32 in consequential damages. As a general rule, a party can recover consequential damages if, at the time the parties made the contract, the breaching party had a reason to foresee that the claimed damages would probably result. *See Hadley v. Baxendale,* 156 Eng. Rep. 145 (Ex. Ch. 1854). Florida follows this rule. *Threaf Props., Ltd. v. Title Ins. Co. of Minn.,* 875 F.2d 831, 835–36 (11th Cir.1989) (allowing recovery of consequential damages for breach of a service contract for damages "which would naturally result from the breach [of the contract], either as the ordinary consequence of such a breach or as a consequence which may under the circumstances be presumed to have been contemplated by the parties to the contract as the probable result of its breach." (quoting *First Nat'l Ins. Agency, Inc. v. Leesburg Transfer & Storage, Inc.,* 139 So.2d 476, 482 (Fla.Dist.Ct.App.1962))).

BQHC and Wyckoff have three problems with the district court's decision to award consequential damages.[FN4] The first is an asserted factual dispute on whether the hospitals entered into a service agreement or signed onto a promissory note. The second is their claim that a lender cannot recover consequential damages on a promissory note. And the third is a clause in the agreement that arguably limits the parties' remedies for a breach.

> FN4. The hospitals did not dispute the foreseeability of the damages in the district court.

Underlying the first two problems is the hospitals' stubborn insistence on reading the affiliation agreement and promissory note separately. This is folly. The affiliation agreement enumerated specific obligations for the hospitals providing the clerkships. (*See* Affiliation Agreement ¶¶ 1 (staffing requirements), 3 (requiring access to patients for students), 4 (calling for appropriate supervision of students), 6 (having hospitals provide feedback to students), 7 (requiring student evaluations).) The note's terms, moreover, make clear that a default by Caritas would trigger obligations on BQHC and Wyckoff's part to step into Caritas's shoes and become the clerkship providers. Paragraph 4 states:

*7 Brooklyn Queens acknowledges and agrees, on behalf of its wholly-owned subsidiary Wyckoff, that a Default ... by Brooklyn Queens, Caritas, MIH, and SJQH ... during the term of this Note Agreement will obligate Wyckoff to assume responsibility for this Note Agreement, including scheduling the maximum of fifty (50) AUC students receiving medical student clinical education in the Core Disciplines ... and the maximum of twenty (20) AUC students receiving medical student clinical education in the Elective Disciplines.... Further, in the event of a Default, Brooklyn Queens and Wyckoff agree to provide no more than 150 total Core Rotations for all

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:09-cv-01410-KAM-RLM Document 130 Filed 07/13/12 Page 9 of 10 PageID #: 4505

Page 7
Slip Copy, 2012 WL 2383021 (C.A.11 (Fla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2012 WL 2383021 (C.A.11 (Fla.)))

medical students receiving training at Wyckoff including those AUC medical students transferred from MIH and SJHQ and those AUC students training at Wyckoff.... The Parties agree that Brooklyn Queens and Wyckoff will have a period of ninety days from the date of default to accommodate and re-schedule the AUC medical students so transferred to Wyckoff (as a consequence of the Default) from MIH and SJHQ, and otherwise comply with the 150 Core Rotation maximum student census applicable to Wyckoff.

Given these provisions, the only conclusion one can draw is that the composite agreement had a loan repayment component and a service component. The hospitals even admitted as much in the court below. Thus, no fact question existed on the issue, and the district court correctly held, "AUC has provided evidence that the [hospitals] both breached the contract by refusing to accept their obligation to provide replacement clerkships under the contract terms and ... repudiated the contract by making clear [they] would not provide replacement clerkships in the future. The [hospitals] provided no evidence to refute this." (Order Granting Partial Summary Judgment, Doc. # 139, at 7.)

As for the hospitals' claim about the impropriety of recovering consequential damages on a promissory note, this argument not only ignores the hybrid nature of their agreement with AUC but also misconstrues Eleventh Circuit precedent. In *Federal Deposit Insurance Corporation v. University Anclote, Inc.*—the case BQHC and Wyckoff reply upon—a circuit panel construed a promissory note, finding that a guarantor had a greater obligation to the plaintiff than did the breaching debtor. In so doing, the panel stated, "The extent of the guarantor's liability depends upon the language of the guaranty itself." 764 F.2d 804, 806 (11th Cir.1985). Thus *Anclote* stands only for the proposition that a contract's language controls the scope of a guaranty agreement; it does not say that a district court cannot hold a breaching guarantor liable for more than the underlying repayment obligation. In fact, it says the opposite. *Anclote*, 764 F.2d at 807 ("A contract of guaranty may provide for greater liability than that of the principal debtor." (citing 38 C.J.S. *Guaranty* § 43 (1943))). As discussed above, the promissory note and affiliation agreement, read together, state that the hospitals not only had to repay the underlying debt incurred by Caritas but also had to do it in the way set forth in the contract—by providing clerkships to AUC's students.

*8 Lastly, BQHC and Wyckoff claim the promissory note contained a clause limiting the remedies available for a breach. Under Florida law, a remedy stated in the contract excludes other contract remedies so long as the contract's language "discloses that the parties intended to limit the remedy to the one stated." *Coastal Computer Corp. v. Team Mgmt. Sys., Inc.*, 624 So.2d 352, 353 (Fla.Dist.Ct.App.1993). In other words, Florida courts require mandatory or limiting language before they will construe remedies stated in a contract as exclusive. See, e.g., *Hatcher v. Panama City Nursing Ctr.*, 461 So.2d 288, 290 (Fla.Dist.Ct.App.1985) ("Purchaser is limited to ... $10,000.00"); *Greenstein v. Greenbrook Ltd.*, 413 So.2d 842, 843 n. 1 (Fla.Dist.Ct.App.1982) ("Neither party ... shall be entitled to specific performance"); *Dillard Homes, Inc. v. Carroll*, 152 So.2d 738, 739 (Fla.Dist.Ct.App.1963) ("the sum this day paid shall be retained by the seller as liquidated damages").

Here, neither the note nor the affiliation agreement appear to contain language that would exclude consequential damages. The note allows AUC either to enter into a written modification by agreement with the other party or terminate the agreement if an "Early Termination Event" occurs. (Doc. # 100–1, Promissory Note Agreement, § 3.5.) But this provision's language does not necessarily exclude other remedies. Rather, it says that AUC "*may*, in its sole discretion" pursue either option. And the affiliation agreement does not speak to remedies for breach, let alone limit them. Accordingly, the district court correctly found that the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Case 1:09-cv-01410-KAM-RLM   Document 130   Filed 07/13/12   Page 10 of 10 PageID #: 4506

Slip Copy, 2012 WL 2383021 (C.A.11 (Fla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 2012 WL 2383021 (C.A.11 (Fla.)))

Page 8

composite agreement did not limit AUC's damages to repayment of the loan.

## IV. CONCLUSION

The district court did not err by exercising personal jurisdiction over BQHC and Wyckoff. Nor did the court go astray by granting summary judgment in favor of AUC, because there were no genuine issues of material fact for a jury to resolve. We therefore AFFIRM the lower court's ruling.

C.A.11 (Fla.),2012.
American University of the Caribbean, N.V. v. Caritas Healthcare, Inc.
Slip Copy, 2012 WL 2383021 (C.A.11 (Fla.))

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.