Walter P. Loughlin
Brian D. Koosed
Justin H. Roeber
K&L GATES LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 536-3900
Facsimile: (212) 536-3901

*Attorneys for Defendants Brooklyn-Queens Health*
*Care, Inc. and Wyckoff Heights Medical Center*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

ROSS UNIVERSITY SCHOOL OF MEDICINE, LTD.,  :
                                            :
                        Plaintiff,          :
                                            :
            - against -                     :   09 Civ. 1410 (KAM) (RLM)
                                            :
BROOKLYN-QUEENS HEALTH CARE, INC. and       :
WYCKOFF HEIGHTS MEDICAL CENTER,             :
                                            :
                        Defendants.         :
----------------------------------------------------------------X


# DEFENDANTS' RESPONSES TO ROSS'S OBJECTIONS TO
# MAGISTRATE JUDGE MANN'S REPORT AND RECOMMENDATION

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ..............................................................................................................2

I.  Ross's Rule 72(a) Objections Should Be Rejected Because The R&R Did Not Clearly Err As To The Non-Dispositive Rulings To Which Ross Objects. .....................3

A.  The R&R Properly Denied Ross's Motion To Preclude Mr. Duffy's Testimony. ...................................................................................................3

1.  Mr. Duffy is qualified to opine on valuation methodology. ........................3

2.  Ross's critique of Mr. Duffy's methodology is unreasonable and goes only to the weight of his testimony, not its admissibility...................5

3.  Mr. Duffy's testimony will not be cumulative and any such determination would be premature at this time. ........................................6

B.  Ross's Objection To The R&R's Denial Of Its Motion To Strike Is Baseless..................................................................................................7

II.  Ross's Rule 72(b) Objections Should Be Rejected Because The R&R Did Not Clearly Err With Respect To The Dispositive Rulings To Which Ross Objects. ..............7

A.  The R&R Correctly Dismissed Ross's Specific Performance Claim Against BQHC Because Any Order Of Specific Performance Would Violate Article 28. ......................................................................................8

1.  BQHC's governance authority over Wyckoff does not extend to running Wyckoff's day-to-day hospital operations. ...................................9

2.  The R&R correctly found that the Affiliation Agreement is a "hospital contract for clinical services" that falls within Article 28. .............................................................................................10

3.  Article 28's "mission and philosophy" exception does not apply here. .....................................................................................................11

B.  The R&R Correctly Denied Ross's Summary Judgment Motion As To The Future Replacement Costs Component Of Its Alleged Damages. .................13

C.  The R&R Correctly Found That The Equivalent Clerkship Provision Is Ambiguous As A Matter Of Law. .......................................................15

CONCLUSION................................................................................................17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adams v. Cooper Indus., Inc.*,
No. 03-476-JBC, 2006 U.S. Dist. LEXIS 75565 (E.D. Ky. Oct. 17, 2006) .........................6

*Arista Records LLC v. Lime Group LLC*,
No. 06 Civ. 5936, 2011 WL 1674796 (S.D.N.Y. May 2, 2011).........................................4

*Graham v. City of New York*,
No. 08 Civ. 3518, 2010 WL 3034618 (E.D.N.Y. Aug. 3, 2010)...................................2, 3

*Hearst v. City of New York*,
No. 05 Civ. 5272, 2012 WL 1019977 (E.D.N.Y. Mar. 26, 2012) ......................................2

*Tetra Tech., Inc. v. Harter*,
823 F. Supp. 1116 (S.D.N.Y. 1993) ...............................................................................11

*United States v. Jamil*,
707 F.2d 638 (2d Cir. 1983) ............................................................................................6

*United States v. Mermelstein*,
487 F. Supp. 2d 242 (E.D.N.Y. 2007) ..............................................................................6

*Walker v. Vaughan*,
216 F. Supp. 2d 290 (S.D.N.Y. 2002) ..............................................................................2

## STATE CASES

*Charlebois v. J.M. Weller Assocs., Inc.*,
72 N.Y.2d 587, 535 N.Y.S.2d 356 (1988).......................................................................11

## FEDERAL STATUTES AND RULES

Fed. R. Civ. P. 72(a) .......................................................................................................1, 2, 3

Fed. R. Civ. P. 72(b) ...........................................................................................................1, 2

## STATE STATUTES AND REGULATIONS

8 N.Y.C.R.R. § 60.2(a)(1) .....................................................................................................11

10 N.Y.C.R.R. § 405.1(c) ......................................................................................................11

10 N.Y.C.R.R. § 405.1(d) ......................................................................................................12

N.Y. Pub. Health Law §§ 2801-a(1)-(4) ...............................................................................9

NPCL § 510(a)(1) ..................................................................................9

NPCL § 613(a) .....................................................................................9

NPCL § 706(c) .....................................................................................9

NPCL § 713(b) .....................................................................................9

NPCL § 714(a) .....................................................................................9

NPCL § 903(a)(2) .................................................................................9

## OTHER MATERIALS

Robert H. Iseman, *Active Parents in Passive Clothing*,
  17 N.Y. St. B.A. Health L.J. 26 (Winter 2012) ...................................9, 10, 11, 12

Robert P. Borsody, *Parent-Subsidiary Relationship of Not-for-Profit Corporations Raises Official Oversight Issues*, 76 N.Y. St. B.A. J. 20 (May 2004) ........................................10

Defendants Brooklyn-Queens Health Care, Inc. ("BQHC") and Wyckoff Heights Medical Center ("Wyckoff") (together, "Defendants"), hereby respond to Ross's objections, dated December 21, 2012, to the: (i) non-dispositive rulings in Magistrate Judge Mann's December 7, 2012 Report and Recommendation (the "R&R"), pursuant to Fed. R. Civ. P. 72(a) (the "Rule 72(a) Objections"); and (ii) dispositive rulings in the R&R, pursuant to Fed. R. Civ. P. 72(b) (the "Rule 72(b) Objections") (together, the "Objections").[1]

## PRELIMINARY STATEMENT

Ross's Objections are based on a misconception of the Rule 72 process for objecting to a Magistrate Judge's Report and Recommendation because they seek the wholesale rejection of each and every aspect of the R&R in which Magistrate Judge Mann did not rule in Ross's favor. Continuing this misunderstanding of this process, Ross's Objections amount to a mere repetition of arguments set forth in Ross's summary judgment papers. Nowhere in its Objections has Ross identified any "clear error" by Magistrate Judge Mann. Indeed, the only "error" that appears to underlie Ross's Objections is that the Magistrate Judge did not agree with Ross on as many points as Ross believes she should have.

Apart from Ross's improper use of the Rule 72 process to reargue its summary judgment motion, the Objections also fail on the merits. In its Rule 72(a) Objections, Ross objects to the R&R's denial of its motion to preclude the testimony of Defendants' expert, Anthony G. Duffy ("Mr. Duffy"). But Ross neither explains how Magistrate Judge Mann allegedly erred nor specifies any law or evidence that she allegedly overlooked in denying Ross's motion. Ross similarly fails to identify any error with the R&R's denial of Ross's motion to strike certain paragraphs from Defendants' Rule 56.1 Statement.

---

[1]    Capitalized terms not defined herein have the meaning attributed to them in Defendants' summary judgment papers (ECF Dkt. Nos. 97-1, 97-2, and 120) and/or the R&R (ECF Dkt. No. 134).

Turning to the Rule 72(b) Objections, Ross objects to the R&R's denial of partial summary judgment on damages, but again fails to identify any clear error or overlooked authority.  Similarly, Ross objects to the R&R's ruling that the Equivalent Clerkship Provision is ambiguous, but its only support for that objection is extrinsic evidence which further supports the R&R's (and Defendants') point that the Provision's meaning is not clear from the face of the Affiliation Agreement.  Finally, Ross's objection to the R&R's dismissal of its Specific Performance Claim against BQHC is based on an interpretation of New York's Public Health Law that would effectively rewrite that law to permit exactly what the R&R correctly found Article 28 to prohibit – the operation of a hospital by an entity not licensed to do so.

Because Ross's Objections are:  (i) premised on nothing more than the R&R's failure to agree with Ross's position, (ii) constitute a repetition of previously rejected arguments, and (iii) identify no clear error on the part of Magistrate Judge Mann, those Objections should be rejected and the parties should proceed to trial on the remaining issues in this case.

## ARGUMENT

Under Federal Rule of Civil Procedure 72, a Magistrate Judge's rulings on non-dispositive issues are reviewed for clear error, while rulings on dispositive issues are reviewed *de novo*.  *See* Fed. R. Civ. P. 72(a)-(b).  But where, as here, a party "simply reiterates [its] original arguments, the Court reviews the Report and Recommendation only for clear error," even on dispositive issues.  *Hearst v. City of New York*, No. 05 Civ. 5272, 2012 WL 1019977, at *2 (E.D.N.Y. Mar. 26, 2012) (KAM) (RML) (*quoting Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002)).  An order is "clearly erroneous only when the reviewing court, based on the entire evidence, is left with the definite and firm conviction that a mistake has been committed." *Graham v. City of New York*, No. 08 Civ. 3518, 2010 WL 3034618, at *2 (E.D.N.Y. Aug. 3, 2010) (KAM) (RML) (internal punctuation omitted).

As set forth below, Ross's Objections provide no grounds upon which to conclude that the R&R committed any mistake or misapplied any relevant law. Ross's Objections should therefore be rejected.

**I.      Ross's Rule 72(a) Objections Should Be Rejected Because The R&R Did Not Clearly Err As To The Non-Dispositive Rulings To Which Ross Objects.**

In its Rule 72(a) Objections, Ross objects to the R&R's denial of its motions to (a) preclude Defendants' expert, Mr. Duffy, from testifying at trial, and (b) strike portions of Defendants' Rule 56.1 Statement. *See generally* Rule 72(a) Objections. Neither of these non-dispositive rulings was "clearly erroneous or contrary to law." *Graham*, 2010 WL 3034618, at *2; *see also* Fed. R. Civ. P. 72(a).

**A.      The R&R Properly Denied Ross's Motion To Preclude Mr. Duffy's Testimony.**

The Court should adopt the R&R's denial of Ross's motion to preclude Mr. Duffy's testimony because, rather than identifying how Magistrate Judge Mann allegedly erred or specifying any law or evidence that she allegedly overlooked, Ross instead makes the very same arguments that the R&R rejected – namely, that: (i) Mr. Duffy is not qualified as an expert on clinical clerkship rates, and (ii) his conclusions lack a proper foundation. *See* Rule 72(a) Objections, pp. 2-11. For the same reasons that Defendants identified in their opposition to Ross's original motion – which were then adopted by the R&R – Ross's Rule 72(a) Objections do not warrant preclusion of Mr. Duffy's testimony here. *See* R&R, pp. 16-18. Without repeating those arguments in full, Defendants briefly summarize the pertinent points as follows:

**1.      Mr. Duffy is qualified to opine on valuation methodology.**

Ross contends that Mr. Duffy is not qualified to offer expert testimony at trial because "he is not an expert about the prices" of clinical clerkship rotations. Rule 72(a) Objections, p. 9. Specifically, Ross argues, as it did in its initial motion papers, that Mr. Duffy conceded at his

deposition that he is not an expert on that topic and that therefore his opinions are nothing more than his *ipse dixit*. *Id.* at 9-10; *see also* Ross Motion to Preclude, pp. 4-7.  The R&R properly rejected Ross's argument for two reasons.

*First*, as the R&R recognized, Ross misconstrues the law on the admission of expert testimony.  If an expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the expert's testimony even if the expert "lacks expertise in the specialized areas directly pertinent" to the litigation.  R&R, p. 17 (quoting *Arista Records LLC v. Lime Group LLC*, No. 06 Civ. 5936, 2011 WL 1674796, at *3 (S.D.N.Y. May 2, 2011)).  Simply put, as the *Arista* case cited by the R&R concluded, an expert "should not be required to satisfy an overly narrow test of his own qualifications." *Arista*, 2011 WL 1674796, at *3 (internal citations omitted).  Accordingly, Ross's complaint that Mr. Duffy claimed no expertise on the specific subject of clerkship pricing is unavailing.[2]

*Second*, as the R&R also recognized, Ross's argument fails because Mr. Duffy *is* an expert in the field of valuation, which is the subject of his expert opinion.  Duffy Report, pp. 7-8. Among other things, Mr. Duffy is:  (i) a partner of a financial consulting firm, with experience working on hundreds of engagements related to predictive cash flows and business valuation; and (ii) a Certified Public Accountant with business valuation designations from the American Institute of Certified Public Accountants and the National Association of Certified Valuation Analysts.  *See* R&R, pp. 16-17; *see also* Duffy Report, p. 1.  Because Mr. Duffy is an experienced valuation expert, and his opinions in this matter address issues of valuation methodology – specifically, the flaws in the methodology of Ross's expert, Ms. Davis – the R&R

_____

[2]      Ross's own expert, Ms. Davis, testified that she, too, lacks any specific expertise or experience with respect to medical school clerkships.  *See* Davis Tr., p. 13:9-11; *see also* R&R, pp. 17-18.  It bears further noting, in light of Ross's continued campaign against Mr. Duffy, that Ms. Davis's expert reports contained acknowledged errors in the calculation of damages amounting to an overestimate of $1.5 million, causing the need for a corrected version of her report to be submitted.  *See* Roeber Opp. Dec., Exh. 6.

properly concluded that he is qualified to testify.  R&R, pp. 16-18.  Ross's Rule 72(a) Objections

provide no basis to suggest that this conclusion was clearly erroneous or contrary to law.  *See*

*generally* Rule 72(a) Objections, pp. 9-11.  The R&R's ruling on this point should therefore be

adopted.

> 2.      Ross's critique of Mr. Duffy's methodology is unreasonable and
>         goes only to the weight of his testimony, not its admissibility.

As it did in its motion to preclude, Ross also challenges Mr. Duffy's opinion on the

ground that he did not conduct a "study and analysis to learn about the price of clerkships."  Rule

72(a) Objections, p. 10.  According to Ross, its expert, Ms. Davis, analyzed "years of data about

similar transactions between Ross and more than 700 other hospitals," which purportedly makes

her qualified to opine on the projected future cost of clerkships in the marketplace generally.  *Id.*

at 10-11, n.4.  Because Mr. Duffy used more general, market-based metrics to project future

clerkship costs – instead of using data solely from Ross's own files – Ross contends that Mr.

Duffy lacked a reasonable basis for projecting the future cost of clerkships.  *See id.*  Ross's

argument fails for two main reasons.

*First*, Ross's argument ignores the basic premise of Mr. Duffy's expert opinion.  Mr.

Duffy opined that it was unreasonable for Ms. Davis to calculate her projected Clerkship Cost

Growth Rate using solely Ross's historical clerkship pricing data because that information,

reflecting only Ross's particular business circumstances, is unreliable for projecting future trends

in the marketplace generally.  *See* Duffy Tr., p. 79:7-13.  Mr. Duffy cannot fairly be precluded

from testifying for not conducting the same type of historical review of Ross's clerkship pricing

data as Ms. Davis did when Ms. Davis's exclusive reliance on such data is a basis of Mr. Duffy's

opinion to the effect that her conclusions are unreliable.

*Second*, even if Ross's argument had merit (and it does not), Ross's critique of Mr. Duffy's methodology only goes to the weight of his testimony, not its admissibility.  As the R&R correctly found, "[w]hile Ross may view [Mr.] Duffy's method as less reliable or accurate than that employed by [Ms.] Davis, nothing in the record reflects that [Mr.] Duffy was relying on 'junk science' in reaching his conclusions" or otherwise disqualifies him from presenting his opinion to the jury.  R&R, p. 18.  Because Ross has failed to raise new arguments or point to new evidence suggesting that the R&R's conclusion on this point was clearly erroneous or contrary to applicable law, this objection should be rejected.

3.  <u>Mr. Duffy's testimony will not be cumulative and any such determination would be premature at this time.</u>

Ross also objects to the R&R's denial of its motion to preclude Mr. Duffy's testimony on two of the components of Ross's alleged damages on the ground that Mr. Duffy's testimony on these points would be "cumulative" of Ms. Davis's.  Rule 72(a) Objections, pp. 11-12.  The R&R properly concluded that Ross's contentions should be "swiftly rejected."  R&R, p. 15.  At this stage in the litigation, when no trial date has been set, any determination regarding cumulative testimony would be premature.  *See id.* (citing *United States v. Jamil*, 707 F.2d 638, 643 (2d Cir. 1983)).[3]  Further, Mr. Duffy made clear during his deposition and in his expert report that he did not evaluate, let alone adopt, Ms. Davis's calculations as to the first two components of Ross's alleged damages.  *See* Duffy Report, p. 2-3; Duffy Tr., pp. 44:19-46:8.  Accordingly, his testimony would not be "cumulative" of Ms. Davis's.

---

[3]  Ross's efforts to distinguish the *Jamil* decision because it did not involve an expert's opinion testimony are unpersuasive.  *See* Rule 72(a) Objections, p. 12.  District Courts in this Circuit and elsewhere have reached the same result as Magistrate Judge Mann did on this point.  *See, e.g.*, *United States v. Mermelstein*, 487 F. Supp. 2d 242, 266 (E.D.N.Y. 2007) (denying pre-trial motion to preclude allegedly cumulative expert testimony as premature because that decision should not be made until trial); *Adams v. Cooper Indus., Inc.*, No. 03-476-JBC, 2006 U.S. Dist. LEXIS 75565, at *31 (E.D. Ky. Oct. 17, 2006) (same).

For all these reasons, the R&R properly denied Ross's motion to preclude Mr. Duffy's expert testimony.  Because Ross has failed to identify any clear error with that decision, its Rule 72(a) Objections on this issue should be denied.

      B.      <u>Ross's Objection To The R&R's Denial Of Its Motion To Strike Is Baseless.</u>

Finally, the R&R denied Ross's motion to strike certain paragraphs of Defendants' Rule 56.1 Statement, but indicated that the Court would disregard any statements believed to be improper in connection with the review of the parties' summary judgment motions.  R&R, pp. 11-13.  Ross objects to this holding "only to preserve rights in the event that an assignment of error . . . should later be required."  Rule 72(a) Objections, p. 13.  Because Ross makes no effort to identify any clear error with the R&R's ruling, its objection on this point should be rejected.

**II.**    <u>**Ross's Rule 72(b) Objections Should Be Rejected Because The R&R Did Not Clearly Err With Respect To The Dispositive Rulings To Which Ross Objects.**</u>

As it did with its Rule 72(a) Objections, Ross's Rule 72(b) Objections challenge each and every one of the R&R's dispositive rulings that were not in Ross's favor.  *See generally* Rule 72(b) Objections.  Specifically, Ross objects to:  (a) the dismissal of its Specific Performance Claim against BQHC; (b) the denial of its motion for partial summary judgment calculating damages for its purported "Future Replacement Costs"; and (c) the finding that the Equivalent Clerkship Provision is ambiguous as a matter of law.  Because Ross "simply reiterates [its] original arguments [made on summary judgment], the Court reviews the [R&R] only for clear error," even for the dispositive rulings therein.  *Supra*, p. 2.  As set forth below, each of the R&R's rulings on these dispositive issues was consistent with the applicable law and admissible evidence presented, and none of these rulings was clearly erroneous.  Accordingly, Ross's Rule 72(b) Objections should be rejected.

A.     The R&R Correctly Dismissed Ross's Specific Performance Claim Against
       BQHC Because Any Order Of Specific Performance Would Violate Article 28.

In their motion for summary judgment dismissing Ross's Specific Performance Claim

against BQHC, Defendants showed that: (1) under Article 28 of New York's Public Health Law,

an entity must obtain a license from New York's Department of Health ("DOH") in order to

operate a hospital in New York State; and (2) BQHC is not, and never has been, licensed to

operate a hospital under Article 28 and, in fact, is specifically prohibited from doing so by its

certificate of incorporation.  Motion, pp. 23-27; SOUF, ¶ 26; Pl. Resp., ¶ 26.

Based on these facts, the R&R dismissed Ross's Specific Performance Claim – seeking

an order forcing BQHC to direct Wyckoff to give Ross's students clerkships at Wyckoff –

because it "would require BQHC to direct the operations of [Wyckoff] without the requisite

Article 28 license, in violation of state law."  R&R, p. 61.  Specifically, the R&R found that the

Affiliation Agreement is a "hospital contract[] for . . . clinical services," and thus an Article 28

license is required to exercise "decision-making authority" over it.  *Id.* at 58, 60-61.  Finally, the

R&R found that, even if the Affiliation Agreement is not such a contract, Ross's Specific

Performance Claim still fails because, to comply with any order of specific performance,

"BQHC would have to cause Wyckoff to hire additional medical staff, repudiate clerkship

contracts it maintains with other schools and alter its clerk-physician ratio," all of which fall

"within the exclusive purview of a licensed Article 28 'operator.'"  *Id.* at 61-62.

Ross objects to the dismissal of its Specific Performance Claim against BQHC on three

grounds, each of which fails.

1.    BQHC's governance authority over Wyckoff does not extend
      to running Wyckoff's day-to-day hospital operations.

Ross first contends that New York's Not-For-Profit Corporation Law (the "NPCL")

"empower[s] BQHC to control Wyckoff just like any other parent corporation controls a wholly-

owned subsidiary." *See* Rule 72(b) Objections, pp. 3-5; *see also* Ross SJ Opp., p. 14 (making the

same argument in opposing Defendants' motion).  This argument fails because it confuses

BQHC's ability to exercise *governance* authority over Wyckoff with the ability to exercise

*operational* authority over Wyckoff.

Under the NPCL, the governance powers that a parent entity has over its non-profit

subsidiary include the ability to:  (i) elect or remove Board members and corporate officers; (ii)

approve the disposition of all or substantially all of the non-profit's assets; and/or (iii) approve a

merger or consolidation.  *See* NPCL §§ 613(a), 706(c), 713(b), 714(a), 510(a)(1), and 903(a)(2),

respectively.  None of these governance powers involves a parent exercising authority over a

non-profit's day-to-day operations.  And with good reason, particularly in the health care

context:  as the R&R recognized, Article 28 makes clear that such operational authority cannot

be exercised in the health care setting without a license from DOH.  *See* R&R, pp. 58-62;

Motion, pp. 23-27 (citing N.Y. Pub. Health Law §§ 2801-a(1)-(4)).

Indeed, the recent article on which Ross relies so heavily in its Rule 72(b) Objections –

*Active Parents in Passive Clothing*, by Robert H. Iseman (the "Iseman Article") – emphasizes

this same distinction between governance and operational authority in its opening paragraphs,

citing the NPCL provisions noted above and stating that:

> The exercise of such membership-derived **governance authority** has
> never required the licensure of a hospital member . . . under the laws
> of New York [specifically, Article 28 of the Public Health Law] or any
> other state.   This is because **the governance rights of members
> involve areas of sponsor-level decision-making, not operational**

> **detail. Thus, unlicensed members have no authority over such key operational areas as formation of corporate policies, regulatory compliance, standards of care, or medical staff credentialing.**

Iseman Article, 17 N.Y. St. B.A. Health L.J. 26 (Winter 2012), p. 26 (emphasis added).[4]

The NPCL and the Iseman Article thus support Defendants' point that BQHC's governance authority over Wyckoff does not extend to operational control over its day-to-day activities because to do so would be inconsistent with Article 28's licensing requirements. *See also* Robert P. Borsody, *Parent-Subsidiary Relationship Of Not-For-Profit Corporations Raises Official Oversight Issues*, 76 N.Y. St. B.A. J. 20, 24 (May 2004) (cited by the R&R and noting that DOH can require a parent entity to obtain an Article 28 license "when [it] has certain *operational* powers over the Article 28-licensed hospital subsidiary") (emphasis added). Accordingly, Ross's argument that BQHC can simply "control" Wyckoff like any other subsidiary fails as a matter of law.

  2. <u>The R&R correctly found that the Affiliation Agreement is a "hospital contract for clinical services" that falls within Article 28.</u>

Ross next contends that, even if BQHC does not have plenary control over Wyckoff, an order of specific performance is still available against BQHC because, contrary to the R&R's findings, the Affiliation Agreement is not subject to Article 28's licensing requirements. *See* Rule 72(b) Objections, pp. 5-6. Specifically, Ross contends that the R&R erred because it "cited no facts" to support its finding that the Affiliation Agreement is a "hospital contract[] for . . . clinical services" and further failed to "cite any laws or regulations defining medical clerkships as 'clinical services.'" *Id.* at 5. These arguments fail for the following reasons.

---

[4]   The Iseman Article goes on to list a number of "passive-parent powers" that DOH has found do not cross the line between governance and operations, including those powers described in the NPCL. *See* Iseman Article, p. 29. None of those powers imposes on a hospital's day-to-day clinical or educational operations. *Id.*

    Further, the Iseman Article was published in Winter 2012, after the summary judgment motions had been fully briefed and submitted. It was therefore not part of the record submitted to Magistrate Judge Mann.

*First*, contrary to Ross's contentions, the fact that the Department of Education approves clerkship affiliation agreements has no bearing on whether such agreements are also contracts for "clinical services" under Article 28.  *See* Rule 72(b) Objections, pp. 5-6.

*Second*, the R&R's purported failure to point to a specific regulation defining the Affiliation Agreement as a contract for "clinical services" is no failure at all.  The plain meaning of a contract to provide clinical clerkships is, in fact, a contract for "clinical services."  10 N.Y.C.R.R. § 405.1(c); *see also* 8 N.Y.C.R.R. § 60.2(a)(1) (defining "*Clinical* clerkships" as "a supervised educational experience which is part of the *clinical* component of a program of undergraduate medical education . . . .") (emphasis added).  Indeed, the Iseman Article supports the R&R on this point, stating that "medical staff credentialing" is an "operational area[]" requiring an Article 28 license, even though Article 28's implementing regulations do not expressly define "medical staff credentialing" as being subject to Article 28.  *See* Iseman Article, p. 26; *see generally* 10 N.Y.C.R.R. § 405.1(c).

For these reasons, the R&R correctly determined that the Affiliation Agreement is a "hospital contract for . . . clinical services" subject to Article 28's licensing requirements.  Ross's Rule 72(b) Objections to the contrary identify no clear error with that determination.  The Objections on this point should therefore be rejected.[5]

3.  <u>Article 28's "mission and philosophy" exception does not apply here.</u>

Ross's third and final argument is that, even if the Affiliation Agreement is a "hospital contract for . . . clinical services" subject to Article 28's licensing requirements, Ross's Specific Performance Claim nevertheless comes within Article 28's exception whereby a parent entity

---

[5]     Because, as the R&R correctly noted, the act of entering into a "hospital contract for . . . clinical services" itself requires an Article 28 license, Ross's reliance on *Tetra Tech., Inc. v. Harter*, 823 F. Supp. 1116, 1118 (S.D.N.Y. 1993) and *Charlebois v. J.M. Weller Assocs., Inc.*, 72 N.Y.2d 587, 535 N.Y.S.2d 356 (1988) is misplaced. *See* R&R, pp. 60-61; Rule 72(b) Objections, pp. 8-9; Ross SJ Opp., p. 14.

may exercise control over its Article 28-licensed subsidiary to ensure that the subsidiary hospital "operate[s] in conformance with [its] mission and philosophy." *See* Rule 72(b) Objections, pp. 6-9. This argument also fails.

*First*, by its terms, Article 28's "mission and philosophy" exception only applies where the parent of a non-profit hospital corporation has "reserv[ed] and exercise[d] [] the power to require that the [subsidiary] hospital operate in conformance with [its] mission and philosophy." 10 N.Y.C.R.R. § 405.1(d). BQHC did not reserve that power to itself in its Bylaws or certificate of incorporation; it therefore has no power to ensure that Wyckoff "operate[s] in conformance with [its] mission and philosophy" here. *See* Roeber Orig. Dec., Exhs. 11 & 12.

*Second*, as the Iseman Article notes, the "mission and philosophy" exception was designed for a specific purpose: to permit the Catholic Church, when acting as the "religious sponsor" of Article 28-licensed hospitals, "to exercise limited authority in areas otherwise requiring licensure, for the sole purpose of meeting their canonical obligations." Iseman Article, pp. 28-29. That regulatory purpose is not implicated where, as here, Wyckoff is a secular institution. SOUF, ¶ 19; Pl. Resp., ¶ 19. Further, to expand Article 28's "mission and philosophy" exception beyond its limited purpose, as Ross suggests, would allow the exception to swallow the rule, as parent entities would effectively be able to control any part of their licensed subsidiary's operations by simply invoking a general "mission and philosophy" power. That is simply not the law. *See* Iseman Article, p. 30 ("The role of members [such as BQHC] is sponsoring *but not operating* hospitals . . . .") (emphasis added).

*     *     *     *     *

Finally, even assuming *arguendo* that Ross's Specific Performance Claim against BQHC is not barred by Article 28 (and it is), specific performance is not an appropriate equitable remedy here. As the R&R stated: "It is undisputed that, in order to effectuate the Agreement's

- 12 -

Equivalent Clerkship Provision, BQHC would have to cause Wyckoff to hire additional medical staff, repudiate clerkship contracts it maintains with other schools and alter its clerk-physician ratio." R&R, p. 61. All of these items fall "within the exclusive purview of a licensed Article 28 'operator'" and, in any event, it would be unfair to order BQHC to force Wyckoff to take such drastic measures just to comply with an alleged contractual obligation for which Ross admits money damages are an adequate remedy. *Id.* at 61-62; Rule 72(b) Objections, pp. 9-14. In short, as the Magistrate Judge determined, Ross's Specific Performance Claim against BQHC seeks relief that is contrary to New York law and would result in inequity.

       **B.**    <u>The R&R Correctly Denied Ross's Summary Judgment Motion As To The Future Replacement Costs Component Of Its Alleged Damages.</u>

     Ross also objects to the R&R's denial of its motion for partial summary judgment on the third component of its alleged damages, "Future Replacement Costs." *See* Rule 72(b) Objections, pp. 9-14. Once again, Ross contends, as it did before Magistrate Judge Mann, that: (1) Mr. Duffy should be precluded from testifying at trial, in which case Ross is entitled to summary judgment for the full amount of its Future Replacement Costs as calculated by Ms. Davis; and (2) if Mr. Duffy is not precluded, Ross is still entitled to summary judgment as to a portion of its Future Replacement Costs. *See id.* As to the former point, the R&R correctly denied Ross's motion to preclude Mr. Duffy's testimony. *Supra*, pp. 3-7. As to the latter, Ross makes two principal arguments as to why the R&R erred in denying Ross partial summary judgment on its Future Replacement Costs. *See* Rule 72(b) Objections, pp. 9-14. Both arguments fail.

     *First*, Ross contends that the R&R "reverse[d] New York law's burden of proof" on damages by requiring Ross to prove the amount of its Future Replacement Costs when, in fact, Defendants bear the burden of proof on that issue because "both [parties'] experts opined" that

Ross will incur Future Replacement Costs.  Rule 72(b) Objections, pp. 9-10.  This argument fails because its underlying premise – that Mr. Duffy somehow "conceded" or "adopted" portions of Ms. Davis's report – was expressly rejected by Magistrate Judge Mann as "without merit."  *See* Rule 72(b) Objections, pp. 11-12; R&R, pp. 44-45.  As the R&R found, Mr. Duffy was retained solely to rebut the valuation *methods* that Ms. Davis used to calculate Future Replacement Costs, without evaluating whether any such damages should in fact be awarded.  R&R, pp. 44-45.  Ross's argument that the "only uncertainty is as to" the amount of its Future Replacement Costs is therefore wrong; as the R&R recognized, Defendants contend that the "*entire* category of Future Replacement Costs [is] unduly speculative."  Rule 72(b) Objections, p. 9; R&R, p. 45 (emphasis in original).

*Second*, Ross contends that the R&R erred in finding that Defendants had put forth sufficient admissible evidence to call into question Ross's Future Replacement Costs.  *See* Rule 72(b) Objections, pp. 12-14.  This argument fails because it ignores Defendants' "specific factual attacks" showing that triable issues exist as to "the *entire* category" of Ross's purported Future Replacement Costs.  *See* R&R, pp. 45-46 (citing pages 24-25 of Defendants' opposition to Ross's motion).  Those "factual attacks" included a number of dubious assumptions revealed in Ms. Davis's expert report and deposition testimony, including her:

- Exclusive reliance on Ross's historical payment records;

- Failure to account for the decrease in clerkship cost growth rates over time;

- Failure to distinguish between contracts that, like the Affiliation Agreement, involved multi-year terms and/or prepayments, and those that did not; and

- Assumption that the parties would renew the Affiliation Agreement through 2018 and that Ross would fully utilize all clerkships available to it during that time.

Def'ts Opp., pp. 24-25.

The R&R correctly found that these and other assumptions create a genuine issue as to whether "the *entire* category of Future Replacement Costs [is] unduly speculative." R&R, pp. 45-46 (emphasis in original). For the same reason, the R&R correctly rejected Ross's request that this Court limit "trial proceedings on damages" to a specific range of Ross's Future Replacement Costs. *Id.*; *see also* Rule 72(b) Objections, p. 12. Ross identifies no clear error with the R&R's ruling on these points. Its Rule 72(b) Objections to that ruling should therefore be rejected.

C.   <u>The R&R Correctly Found That The Equivalent Clerkship Provision Is Ambiguous As A Matter Of Law.</u>

Finally, Ross objects to the R&R's conclusion that the Equivalent Clerkship Provision within the Ross-BQHC Affiliation Agreement is ambiguous as a matter of law. *See* Rule 72(b) Objections, pp. 14-17. The R&R reached that conclusion as follows:

> Looking solely at the four corners of the [Affiliation] Agreement, it is not clear which of BQHC's 'facilities' the Equivalent Clerkship Provision was meant to encompass. First, the Agreement does not define the term 'facilities,' nor does it include a reference to Wyckoff . . . . All that is clear from the plain language of the Equivalent Clerkship Provision and the contract as a whole is that BQHC owned (or contemplated acquiring) facilities . . . . Which facilities were encompassed within the Equivalent Clerkship Provision is not clear from the face of the [Affiliation] Agreement and, as such, the term 'facilities' is ambiguous . . . .

R&R, pp. 23-24.

Despite concluding that the Equivalent Clerkship Provision was ambiguous, the R&R found – erroneously, in Defendants' view – that a reasonable jury could only interpret the extrinsic evidence surrounding the Provision in Ross's favor. R&R, pp. 23-30. Ross objects to the former ruling on ambiguity; Defendants have objected to the latter. *See* Rule 72(b) Objections, pp. 14-17; Def'ts Objection (ECF Dkt. No. 137), pp. 3-10.

Specifically, Ross contends that, to find the Equivalent Clerkship Provision ambiguous, the Court would have to find that the Provision does not apply to Wyckoff, which, according to Ross, would give the Provision an unreasonable construction. *See* Rule 72(b) Objections, pp. 14-17. In Ross's view, "there is and was only one other BQHC facility that is able to provide replacement clerkships – Wyckoff" – and thus the Equivalent Clerkship Provision can have no other meaning. *Id.* at 17. Ross's argument fails for two reasons.

*First*, Ross's argument is wrong on the law. As Ross concedes, "[a]mbiguity is determined within the four corners of the [contract] [and] cannot be created by extrinsic evidence . . . ." Rule 72(b) Objections, p. 15; *see also* R&R, pp. 22-23 (same). Yet Ross's argument – that the only other BQHC "facilit[y]" is Wyckoff, so that term must mean Wyckoff – necessarily relies upon extrinsic evidence as to which "other facilities" BQHC currently has (or previously had), none of which is apparent from the face of the Affiliation Agreement. As the R&R correctly found, such extrinsic evidence is irrelevant unless and until an ambiguity is first found by looking within the four corners of the Affiliation Agreement alone. *See* R&R, p. 22. And it cannot reasonably be disputed that the meaning of the term "[BQHC's] other facilities" cannot be ascertained within those four corners. *See id.* at 23-24.

*Second*, as Defendants noted in their opposition papers, and as the R&R acknowledged, the term "[BQHC's] other facilities" could include facilities that BQHC "contemplated acquiring" at the time it signed the Affiliation Agreement. R&R, p. 23; Def'ts Opp., pp. 17-18. Thus, the premise for Ross's argument – that the term can only mean Wyckoff – is simply wrong. As the R&R correctly determined, the term "other facilities" is not defined in the Affiliation Agreement, nor can its meaning be found by reading the Equivalent Clerkship Provision in conjunction with the Agreement's other provisions. R&R, pp. 23-24. Accordingly,

the R&R correctly determined that that term is ambiguous as a matter of law.  That ruling should be adopted by this Court and Ross's Objections to the contrary should be rejected.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court:  (a) reject Ross's Rule 72(a) Objections to the R&R's non-dispositive rulings; (b) reject Ross's Rule 72(b) Objections to the R&R's dispositive rulings; and (c) grant Defendants such other and further relief as the Court deems just and proper.


Dated:  New York, New York
        January 4, 2013

                                    Respectfully submitted,

                                    K&L GATES LLP

                                    By: _____

                                    Walter P. Loughlin
                                    (Walter.Loughlin@klgates.com)
                                    Brian D. Koosed
                                    (Brian.Koosed@klgates.com)
                                    Justin H. Roeber
                                    (Justin.Roeber@klgates.com)

                                    599 Lexington Avenue
                                    New York, New York 10022
                                    Telephone:  (212) 536-3900
                                    Facsimile:  (212) 536-3901

                                    *Attorneys for Defendants Brooklyn-Queens Health Care, Inc. and Wyckoff Heights Medical Center*

## CERTIFICATE OF SERVICE

I,  Walter P. Loughlin, hereby certify that on January 4, 2013, I caused a true and correct copy of the foregoing Defendants' Responses to Ross's Objections to Magistrate Judge Mann's Report and Recommendation to be filed electronically and served via the Court's ECF system.

/s/ Walter P. Loughlin
Walter P. Loughlin